No. 24-1201

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

*Plaintiffs–Appellants*,

v.

CITY OF COLORADO SPRINGS; DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual capacity; B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual capacity; JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual capacity; ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his individual capacity; FEDERAL BUREAU OF INVESTIGATION; and THE UNITED STATES OF AMERICA,

*Defendants–Appellees.*

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

## PLAINTIFFS-APPELLANTS'S APPENDIX
## VOLUME I OF I

Theresa Wardon Benz
Jacqueline V. Roeder
Kylie L. Ngu
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado 80202
Tel.: (303) 892-9400
theresa.benz@davisgraham.com

Timothy R. Macdonald
Sara R. Neel
Anna I. Kurtz
Mark Silverstein
Laura Moraff
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, Colorado 80203
Tel.: (720) 402-3151
lmoraff@aclu-co.org

*Counsel for Jacqueline Armendariz and Chinook Center*

August 21, 2024

**PLAINTIFFS-APPELLANTS' APPENDIX**

| VOLUME I OF I | | |
|---|---|---|
| **ECF No.** | **Description** | **App. Range** |
| | Docket Report for Case No. 23-cv-01951-SKC-MDB | A 001 – A 016 |
| 12 | First Amended Complaint | A 017 – A 068 |
| 49-1 | Exhibit 1 to Motion to Dismiss by the Federal Defendants | A 069 – A 086 |
| 49-2 | Exhibit 2 to Motion to Dismiss by the Federal Defendants | A 087 – A115 |
| 51-1 | Search Warrant attached to Steckler's and Otero's Motion to Dismiss | A 116 – A 120 |
| 103 | Order on Motions to Dismiss (DKTS. 49, 50, 51, 52) | A 121 – A 161 |
| 104 | Final Judgment | A 162 |

**Query    Reports    Utilities    Help    Log Out**

APPEAL,JD4,MJ CIV PP,NDISPO,STAYDI,TERMED

# U.S. District Court - District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:23-cv-01951-SKC-MDB

| | |
|---|---|
| Armendariz et al v. City of Colorado Springs et al | Date Filed: 08/01/2023 |
| Assigned to: Judge S. Kato Crews | Date Terminated: 04/10/2024 |
| Referred to: Magistrate Judge Maritza Dominguez Braswell | Jury Demand: Plaintiff |
| Case in other court: USCA 10th Circuit, 24-01201 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Jacqueline Armendariz**                     represented by     **Anna I. Kurtz**
                                                                 ACLU of Colorado
                                                                 303 East 17th Avenue
                                                                 Suite 350
                                                                 Denver, CO 80203
                                                                 303-777-5482
                                                                 Fax: 303-777-1773
                                                                 Email: akurtz@aclu-co.org
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Jacqueline Ventre Roeder**
                                                                 Davis Graham & Stubbs LLP
                                                                 1550 17th Street
                                                                 Suite 500
                                                                 Denver, CO 80202
                                                                 303-892-9400
                                                                 Fax: 303-893-1379
                                                                 Email: jackie.roeder@dgslaw.com
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Kylie L. Ngu**
                                                                 Davis Graham & Stubbs LLP
                                                                 1550 17th Street
                                                                 Suite 500
                                                                 Denver, CO 80202
                                                                 303-892-7479
                                                                 Fax: 303-893-1379
                                                                 Email: kylie.ngu@dgslaw.com
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Laura B. Moraff**
                                                                 ACLU of Colorado
                                                                 303 East 17th Avenue
                                                                 Suite 350
                                                                 Denver, CO 80203
                                                                 617-930-6285

Email: lmoraff@aclu-co.org
*ATTORNEY TO BE NOTICED*

**Mark Silverstein**
American Civil Liberties Union
303 East 17th Street
Suite 350
Denver, CO 80203
303-777-5482
Fax: 303-777-1773
Email: msilverstein@aclu-co.org
*ATTORNEY TO BE NOTICED*

**Sara R. Neel**
American Civil Liberties Union
303 East 17th Street
Suite 350
Denver, CO 80203
303-777-5482
Fax: 303-777-1773
Email: sneel@aclu-co.org
*ATTORNEY TO BE NOTICED*

**Timothy R. Macdonald**
ACLU of Colorado
303 East 17th Avenue
Suite 350
Denver, CO 80203
303-777-5482
Email: tmacdonald@aclu-co.org
*ATTORNEY TO BE NOTICED*

**Theresa Wardon Benz**
Davis Graham & Stubbs LLP
1550 17th Street
Suite 500
Denver, CO 80202
303-892-9400
Fax: 303-893-1379
Email: theresa.benz@davisgraham.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chinook Center**                    represented by **Anna I. Kurtz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacqueline Ventre Roeder**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kylie L. Ngu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura B. Moraff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Silverstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sara R. Neel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Timothy R. Macdonald**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Theresa Wardon Benz**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Colorado Springs**                represented by   **Anne Hall Turner**
                                                             Colorado Springs City Attorney's Office
                                                             P.O. Box 1575, Mail Code 510
                                                             30 South Nevada Avenue
                                                             Suite 501
                                                             Colorado Springs, CO 80901-1575
                                                             719-385-5909
                                                             Fax: 719-385-5535
                                                             Email: anne.turner@coloradosprings.gov
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Daniel Summey**                           represented by   **Anne Hall Turner**
*a detective with the Colorado Springs*                      (See above for address)
*Police Department, in his individual*                       *TERMINATED: 10/05/2023*
*capacity*                                                   *ATTORNEY TO BE NOTICED*

                                                             **Thomas Alan Isler**
                                                             U.S. Attorney's Office
                                                             1801 California Street
                                                             Suite 1600
                                                             Denver, CO 80202
                                                             303-454-0336
                                                             Email: thomas.isler@usdoj.gov
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**United States of America**                represented by   **Thomas Alan Isler**
                                                             (See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**B.K. Steckler**                                    represented by  **Anne Hall Turner**
*a detective with the Colorado Springs*              (See above for address)
*Police Department, in his individual*               *ATTORNEY TO BE NOTICED*
*capacity*

**Defendant**

**Jason S. Otero**                                   represented by  **Anne Hall Turner**
*a sergeant with the Colorado Springs Police*        (See above for address)
*Department, in his individual capacity*             *ATTORNEY TO BE NOTICED*

**Defendant**

**Roy A. Ditzler**                                   represented by  **Anne Hall Turner**
*a police officer with the Colorado Springs*         (See above for address)
*Police Department, in his individual*               *ATTORNEY TO BE NOTICED*
*capacity*

**Defendant**

**Federal Bureau of Investigation**                  represented by  **Thomas Alan Isler**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2023 | 1 | COMPLAINT against All Defendants (Filing fee $ 402,Receipt Number ACODC-9224522)Attorney Theresa Wardon Benz added to party Jacqueline Armendariz(pty:pla), Attorney Theresa Wardon Benz added to party Chinook Center(pty:pla), filed by Chinook Center, Jacqueline Armendariz. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Benz, Theresa) (Entered: 08/01/2023) |
| 08/01/2023 | 2 | NOTICE of Entry of Appearance by Timothy R. Macdonald on behalf of Jacqueline Armendariz, Chinook CenterAttorney Timothy R. Macdonald added to party Jacqueline Armendariz(pty:pla), Attorney Timothy R. Macdonald added to party Chinook Center(pty:pla) (Macdonald, Timothy) (Entered: 08/01/2023) |
| 08/01/2023 | 3 | NOTICE of Entry of Appearance by Sara R. Neel on behalf of Jacqueline Armendariz, Chinook CenterAttorney Sara R. Neel added to party Jacqueline Armendariz(pty:pla), Attorney Sara R. Neel added to party Chinook Center(pty:pla) (Neel, Sara) (Entered: 08/01/2023) |
| 08/01/2023 | 4 | Case assigned to Magistrate Judge Maritza Dominguez Braswell. Text Only Entry (norlin, ) (Entered: 08/01/2023) |
| 08/01/2023 | 5 | SUMMONS issued by Clerk. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Magistrate Judge Consent Form) (norlin, ) (Entered: 08/01/2023) |
| 08/01/2023 | 6 | NOTICE of Entry of Appearance by Mark Silverstein on behalf of Jacqueline Armendariz, Chinook CenterAttorney Mark Silverstein added to party Jacqueline Armendariz(pty:pla), Attorney Mark Silverstein added to party Chinook Center(pty:pla) (Silverstein, Mark) (Entered: 08/01/2023) |

| 08/01/2023 | 7 | NOTICE of Entry of Appearance by Anna I. Kurtz on behalf of Jacqueline Armendariz, Chinook CenterAttorney Anna I. Kurtz added to party Jacqueline Armendariz(pty:pla), Attorney Anna I. Kurtz added to party Chinook Center(pty:pla) (Kurtz, Anna) (Entered: 08/01/2023) |
|---|---|---|
| 08/04/2023 | 8 | ORDER SETTING INITIAL CASE DEADLINES. Consent Form due by 10/18/2023. Proposed Scheduling Order due 10/18/2023. By Magistrate Judge Maritza Dominguez Braswell on 8/4/2023. (evaug ) (Entered: 08/04/2023) |
| 08/04/2023 | 9 | MINUTE ORDER: A Pre-Scheduling Conference is **SET for September 13, 2023, at 10:00 AM** before Magistrate Judge Maritza Dominguez Braswell. The Conference will be conducted by video. The parties are directed to the attached instructions for appearing by video feed. By Magistrate Judge Maritza Dominguez Braswell on 8/4/2023. Text Only Entry (mdblc1) (Entered: 08/04/2023) |
| 08/18/2023 | 10 | NOTICE of Entry of Appearance by Jacqueline Ventre Roeder on behalf of All Plaintiffs Attorney Jacqueline Ventre Roeder added to party Jacqueline Armendariz(pty:pla), Attorney Jacqueline Ventre Roeder added to party Chinook Center(pty:pla) (Roeder, Jacqueline) (Entered: 08/18/2023) |
| 08/18/2023 | 11 | NOTICE of Filing Amended Pleading re 1 Complaint, by Plaintiffs Jacqueline Armendariz, Chinook Center (Attachments: # 1 Proposed Document)(Roeder, Jacqueline) (Entered: 08/18/2023) |
| 08/18/2023 | 12 | AMENDED COMPLAINT against All Defendants, filed by Chinook Center, Jacqueline Armendariz.(Roeder, Jacqueline) (Entered: 08/18/2023) |
| 08/31/2023 | 13 | WAIVER OF SERVICE Returned Executed by Chinook Center, Jacqueline Armendariz. B.K. Steckler waiver sent on 8/24/2023, answer due 10/23/2023. (Roeder, Jacqueline) (Entered: 08/31/2023) |
| 08/31/2023 | 14 | WAIVER OF SERVICE Returned Executed by Chinook Center, Jacqueline Armendariz. City of Colorado Springs waiver sent on 8/24/2023, answer due 10/23/2023. (Roeder, Jacqueline) (Entered: 08/31/2023) |
| 08/31/2023 | 15 | WAIVER OF SERVICE Returned Executed by Chinook Center, Jacqueline Armendariz. Daniel Summey waiver sent on 8/24/2023, answer due 10/23/2023. (Roeder, Jacqueline) (Entered: 08/31/2023) |
| 08/31/2023 | 16 | WAIVER OF SERVICE Returned Executed by Chinook Center, Jacqueline Armendariz. Jason S. Otero waiver sent on 8/24/2023, answer due 10/23/2023. (Roeder, Jacqueline) (Entered: 08/31/2023) |
| 08/31/2023 | 17 | WAIVER OF SERVICE Returned Executed by Chinook Center, Jacqueline Armendariz. Roy A. Ditzler waiver sent on 8/24/2023, answer due 10/23/2023. (Roeder, Jacqueline) (Entered: 08/31/2023) |
| 09/05/2023 | 18 | NOTICE of Entry of Appearance by Thomas Alan Isler on behalf of Federal Bureau of InvestigationAttorney Thomas Alan Isler added to party Federal Bureau of Investigation(pty:dft) (Isler, Thomas) (Entered: 09/05/2023) |
| 09/05/2023 | 19 | NOTICE of Entry of Appearance by Anne Hall Turner on behalf of City of Colorado Springs, Roy A. Ditzler, Jason S. Otero, B.K. Steckler, Daniel SummeyAttorney Anne Hall Turner added to party City of Colorado Springs(pty:dft), Attorney Anne Hall Turner added to party Roy A. Ditzler(pty:dft), Attorney Anne Hall Turner added to party Jason S. Otero(pty:dft), Attorney Anne Hall Turner added to party B.K. Steckler(pty:dft), Attorney Anne Hall Turner added to party Daniel Summey(pty:dft) (Turner, Anne) (Entered: 09/05/2023) |

| | | |
|---|---|---|
| 09/07/2023 | 20 | Summons Returned Unexecuted by Chinook Center, Jacqueline Armendariz as to Federal Bureau of Investigation. (Attachments: # 1 Exhibit A - Proof of Service - FBI in Denver, # 2 Exhibit B - Proof of Service - FBI in Washington DC, # 3 Exhibit C - Proof of Service - Office of the Attorney General in Washington DC)(Roeder, Jacqueline) (Entered: 09/07/2023) |
| 09/13/2023 | 21 | COURTROOM MINUTES for Pre-Scheduling Conference held on 9/13/2023 before Magistrate Judge Maritza Dominguez Braswell: Answer deadline reset as to all defendants for 11/20/2023. Consent Form due by 9/22/2023. Motion to Stay opening brief due on or before 10/11/2023. Response due on or before 10/25/2023. Reply due on or before 11/3/2023. Proposed Scheduling Order deadline is VACATED. FTR: Courtroom 101. (evaug ) (Entered: 09/19/2023) |
| 09/22/2023 | 22 | CONSENT to Jurisdiction of Magistrate Judge by Plaintiffs Jacqueline Armendariz, Chinook Center All parties do not consent.. (Roeder, Jacqueline) (Entered: 09/22/2023) |
| 09/22/2023 | 23 | CASE REASSIGNED pursuant to 22 Consent to Jurisdiction of Magistrate Judge.All parties do not consent. This case is randomly reassigned to Judge Robert E. Blackburn and drawn to Magistrate Judge Maritza Dominguez Braswell for all further proceedings. All future pleadings should be designated as **23-cv-01951-REB.** (Text Only Entry) (jcharl, ) (Entered: 09/22/2023) |
| 09/26/2023 | 24 | MEMORANDUM RETURNING CASE by Senior Judge Blackburn. This case is randomly reassigned to Judge Charlotte N. Sweeney. All future pleadings should be designated as **23-cv-01951-CNS**. (schap, ) (Entered: 09/26/2023) |
| 09/26/2023 | 25 | ORDER REFERRING CASE to Magistrate Judge Maritza Dominguez Braswell for **non-dispositive matters**. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of Local Civ. R. 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause, (3) hear and determine pretrial matters, including discovery and other non-dispositive motions, (4) pursuant to Local Civ. R. 16.6 and at the discretion of the Magistrate Judge, convene such early neutral evaluation and/or settlement conferences and direct related procedures as may facilitate resolution of this case without the necessity of a motion or prior authorization of the undersigned. By Judge Charlotte N. Sweeney on 9/26/23. Text Only Entry (jdyne) (Entered: 09/26/2023) |
| 10/04/2023 | 26 | NOTICE of Entry of Appearance by Thomas Alan Isler on behalf of Daniel SummeyAttorney Thomas Alan Isler added to party Daniel Summey(pty:dft) (Isler, Thomas) (Entered: 10/04/2023) |
| 10/05/2023 | 27 | MOTION to Withdraw as Attorney by Defendant Daniel Summey. (Turner, Anne) (Entered: 10/05/2023) |
| 10/05/2023 | 28 | ORDER granting 27 Motion to Withdraw as Attorney. Attorney Anne Hall Turner is withdrawn as counsel for Defendant Daniel Summey. By Judge Charlotte N. Sweeney on 10/5/2023. Text Only Entry(cnsja.) (Entered: 10/05/2023) |
| 10/11/2023 | 29 | MOTION to Stay *Discovery* by Defendants City of Colorado Springs, Roy A. Ditzler, Jason S. Otero, B.K. Steckler. (Turner, Anne) (Entered: 10/11/2023) |
| 10/11/2023 | 30 | MOTION to Stay *Discovery* by Defendants Federal Bureau of Investigation, Daniel Summey. (Isler, Thomas) (Entered: 10/11/2023) |

| 10/12/2023 | 31 | MEMORANDUM regarding 29 Motion to Stay Discovery filed by B.K. Steckler, Jason S. Otero, City of Colorado Springs, Roy A. Ditzler and 30 Motion to Stay Discovery filed by Daniel Summey, Federal Bureau of Investigation. Motions 29 and 30 are referred to Magistrate Judge Maritza Dominguez Braswell, by Judge Charlotte N. Sweeney on 10/12/2023. Text Only Entry (cnsja. ) (Entered: 10/12/2023) |
|---|---|---|
| 10/13/2023 | 32 | ORDER Setting Hearing on Motion: A Motion Hearing to address Defendants' Motions to Stay at ECF 29 and 30 is **SET for November 13, 2023, at 1:00 PM** before Magistrate Judge Maritza Dominguez Braswell. The hearing will be conducted in person in Courtroom 101 of the United States District Court for the District of Colorado at Colorado Springs, located at 212 N. Wahsatch Avenue, Colorado Springs, Colorado 80903. By Magistrate Judge Maritza Dominguez Braswell on 10/13/2023. Text Only Entry (mdblc1) (Entered: 10/13/2023) |
| 10/24/2023 | 33 | Unopposed MOTION for Leave to File Excess Pages *for Response to Defendant's Motion to Stay in Excess of 10 Pages* by Plaintiffs Jacqueline Armendariz, Chinook Center. (Benz, Theresa) (Entered: 10/24/2023) |
| 10/25/2023 | 34 | MEMORANDUM regarding 33 Unopposed Motion for Leave to File Excess Pages for Response to Defendant's Motion to Stay in Excess of 10 Pages. Motion 33 referred to Magistrate Judge Maritza Dominguez Braswell, by Judge Charlotte N. Sweeney on 10/25/2023. Text Only Entry (cnsja.) (Entered: 10/25/2023) |
| 10/25/2023 | 35 | MINTUE ORDER granting 33 Plaintiffs' Unopposed Motion Requesting Leave to File Response to Defendants' Motion to Stay in Excess of 10 Pages. Plaintiffs' response to the 29 and 30 Motions to Stay shall not exceed fifteen (15) pages excluding the signature block and certificate of service. By Magistrate Judge Maritza Dominguez Braswell on 10/25/2023. Text Only Entry(mdblc1) (Entered: 10/25/2023) |
| 10/25/2023 | 36 | RESPONSE to 29 MOTION to Stay *Discovery*, 30 MOTION to Stay *Discovery* filed by Plaintiffs Jacqueline Armendariz, Chinook Center. (Roeder, Jacqueline) (Entered: 10/25/2023) |
| 11/02/2023 | 37 | NOTICE of Entry of Appearance by Laura B. Moraff on behalf of All Plaintiffs Attorney Laura B. Moraff added to party Jacqueline Armendariz(pty:pla), Attorney Laura B. Moraff added to party Chinook Center(pty:pla) (Moraff, Laura) (Entered: 11/02/2023) |
| 11/03/2023 | 38 | REPLY to Response to 29 MOTION to Stay *Discovery* filed by Defendants City of Colorado Springs, Roy A. Ditzler, Jason S. Otero, B.K. Steckler. (Turner, Anne) (Entered: 11/03/2023) |
| 11/03/2023 | 39 | MOTION to Substitute Party *United States of America for Defendant Daniel Summey as to Claim 4* by Defendant United States of America. (Attachments: # 1 Exhibit 1 - Certification of Scope of Employment)(Isler, Thomas) (Entered: 11/03/2023) |
| 11/03/2023 | 40 | REPLY to Response to 30 MOTION to Stay *Discovery* filed by Defendants Federal Bureau of Investigation, Daniel Summey. (Isler, Thomas) (Entered: 11/03/2023) |
| 11/03/2023 | 41 | MEMORANDUM regarding 39 Motion to Substitute Party United States of America for Defendant Daniel Summey as to Claim 4. Motion 39 is referred to Magistrate Judge Maritza Dominguez Braswell, by Judge Charlotte N. Sweeney on 11/3/2023. Text Only Entry (cnsja. ) (Entered: 11/03/2023) |
| 11/07/2023 | 42 | NOTICE of Entry of Appearance by Kylie L. Ngu on behalf of Jacqueline Armendariz, Chinook CenterAttorney Kylie L. Ngu added to party Jacqueline Armendariz(pty:pla), Attorney Kylie L. Ngu added to party Chinook Center(pty:pla) (Ngu, Kylie) (Entered: 11/07/2023) |

| 11/10/2023 | 43 | MINUTE ORDER: In light of the 39 Motion to Substitute, for efficiency, the Court will hear all pending referred motions on **December 18, 2023, at 1:30 PM**. The Hearing will be conducted in person in Courtroom 101 of the United States District Court for the District of Colorado at Colorado Springs, located at 212 N. Wahsatch Avenue, Colorado Springs, Colorado 80903. The Hearing set for November 13, 2023, is accordingly **vacated**. If the Court determines the Motions to Stay can be decided on the papers, it will issue a written order on those ahead of the December 18 hearing. By Magistrate Judge Maritza Dominguez Braswell on 11/10/2023. Text Only Entry (mdblc1) (Entered: 11/10/2023) |
| 11/14/2023 | 44 | Unopposed MOTION for Leave to File Excess Pages *For One Consolidated Motion to Dismiss* by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order Granting Motion)(Isler, Thomas) (Entered: 11/14/2023) |
| 11/15/2023 | 45 | ORDER granting 44 Unopposed MOTION for Leave to File Excess Pages For One Consolidated Motion to Dismiss. Defendants Federal Bureau of Investigation, Daniel Summey, and United States of America are permitted to submit a 23-page motion to dismiss. By Judge Charlotte N. Sweeney on 11/15/2023. Text Only Entry(cnsja. ) (Entered: 11/15/2023) |
| 11/17/2023 | 46 | Unopposed MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Substitute Party *United States of America for Defendant Daniel Summey as to Claim 4* by Plaintiffs Jacqueline Armendariz, Chinook Center. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order)(Benz, Theresa) (Entered: 11/17/2023) |
| 11/17/2023 | 47 | MEMORANDUM regarding 46 Unopposed Motion for Extension of Time to File Response/Reply as to 39 Motion to Substitute Party United States of America for Defendant Daniel Summey as to Claim 4. Motion 46 is referred to Magistrate Judge Maritza Dominguez Braswell, by Judge Charlotte N. Sweeney on 11/17/2023. Text Only Entry (cnsja. ) (Entered: 11/17/2023) |
| 11/17/2023 | 48 | MINUTE ORDER granting 46 Plaintiffs' Unopposed Motion for Extension of Time to Respond to Defendants' Motion to Substitute the United States for Daniel Summey as Defendant to Claim 4. Plaintiffs shall respond to the 39 Motion to Substitute on or before November 29, 2023. By Magistrate Judge Maritza Dominguez Braswell on 11/17/2023. Text Only Entry(mdblc1) (Entered: 11/17/2023) |
| 11/20/2023 | 49 | MOTION to Dismiss for Failure to State a Claim , MOTION to Dismiss for Lack of Jurisdiction by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Attachments: # 1 Exhibit 1 - Warrant 1, # 2 Exhibit 2 - Warrant 2, # 3 Exhibit 3 - Decl. of William L. Harris)(Isler, Thomas) (Entered: 11/20/2023) |
| 11/20/2023 | 50 | MOTION to Dismiss , MOTION for Joinder re 49 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction by Defendant Roy A. Ditzler. (Turner, Anne) (Entered: 11/20/2023) |
| 11/20/2023 | 51 | MOTION to Dismiss by Defendants Jason S. Otero, B.K. Steckler. (Attachments: # 1 Exhibit Facebook Search Warrant, # 2 Exhibit City Code 9.2.104, # 3 Exhibit Walls Court File, # 4 Exhibit Christiansen Court File, # 5 Exhibit US v. Kelly Complaint)(Turner, Anne) (Entered: 11/20/2023) |
| 11/20/2023 | 52 | MOTION to Dismiss by Defendant City of Colorado Springs. (Turner, Anne) (Entered: 11/20/2023) |
| 11/29/2023 | 53 | RESPONSE to 39 MOTION to Substitute Party *United States of America for Defendant Daniel Summey as to Claim 4 Pursuant to 28 U.S.C. § 2679(D)(1)* filed by Plaintiffs |

| | | |
|---|---|---|
| | | Jacqueline Armendariz, Chinook Center. (Roeder, Jacqueline) (Entered: 11/29/2023) |
| 12/05/2023 | 54 | Unopposed MOTION for Extension of Time to File Response/Reply as to 50 MOTION to Dismiss MOTION for Joinder re 49 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction , 49 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction , 51 MOTION to Dismiss , 52 MOTION to Dismiss by Plaintiffs Jacqueline Armendariz, Chinook Center. (Attachments: # 1 Proposed Order (PDF Only))(Benz, Theresa) (Entered: 12/05/2023) |
| 12/05/2023 | 55 | ORDER granting 54 Unopposed Motion for Extension of Time to File Response as to 49 MOTION to Dismiss; 50 MOTION to Dismiss; 51 MOTION to Dismiss; and 52 MOTION to Dismiss. The Plaintiffs' Responses to the Motions to Dismiss at ECF Nos. 49 , 50 , 51 , and 52 are now due on or before 12/18/2023. By Judge Charlotte N. Sweeney on 12/5/2023. Text Only Entry(cnsja. ) (Entered: 12/05/2023) |
| 12/13/2023 | 56 | REPLY to Response to 39 MOTION to Substitute Party *United States of America for Defendant Daniel Summey as to Claim 4* filed by Defendant United States of America. (Isler, Thomas) (Entered: 12/13/2023) |
| 12/14/2023 | 57 | MOTION for Leave to *File One Consolidated Response to Defendants' Motion to Dismiss* by Plaintiffs Jacqueline Armendariz, Chinook Center. (Moraff, Laura) (Entered: 12/14/2023) |
| 12/14/2023 | 58 | ORDER granting 57 Motion for Leave to File One Consolidated Response to Defendants' Motions to Dismiss. The Plaintiffs are granted leave to file one 30-page consolidated response to the pending Motions to Dismiss at ECF Nos. 49 and 50 . By Judge Charlotte N. Sweeney on 12/14/2023. Text Only Entry(cnsja. ) (Entered: 12/14/2023) |
| 12/18/2023 | 59 | RESPONSE to 51 MOTION to Dismiss filed by Plaintiffs Jacqueline Armendariz, Chinook Center. (Benz, Theresa) (Entered: 12/18/2023) |
| 12/18/2023 | 60 | RESPONSE to 50 MOTION to Dismiss MOTION for Joinder re 49 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction , 49 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Plaintiffs Jacqueline Armendariz, Chinook Center. (Benz, Theresa) (Entered: 12/18/2023) |
| 12/18/2023 | 61 | RESPONSE to 52 MOTION to Dismiss filed by Plaintiffs Jacqueline Armendariz, Chinook Center. (Benz, Theresa) (Entered: 12/18/2023) |
| 12/18/2023 | 62 | COURTROOM MINUTES for Motion Hearing held on 12/18/2023 before Magistrate Judge Maritza Dominguez Braswell: Defendant United States of America's 39 MOTION to Substitute Party *United States of America for Defendant Daniel Summey as to Claim 4* is GRANTED. Limited discovery shall be completed on or before 1/31/2024. The Court takes the parties' arguments as to imposing a stay under advisement. FTR: Courtroom 101. (evaug ) (Entered: 12/21/2023) |
| 01/05/2024 | 63 | MOTION for Leave to File Excess Pages by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order Granting Unopposed Motion)(Isler, Thomas) (Entered: 01/05/2024) |
| 01/05/2024 | 64 | ORDER granting 63 Motion for Leave to File Excess Pages. The Federal Defendants are granted leave to file up to a 19-page reply in support of their motion to dismiss 49 . By Judge Charlotte N. Sweeney on 1/5/2024. Text Only Entry(cnsja.) (Entered: 01/05/2024) |
| 01/08/2024 | 65 | TRANSCRIPT of MOTION HEARING held on 12/18/2023 before Magistrate Judge Braswell. Pages: 1-73. Prepared by: AB Litigation Services. **NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this** |

| | | |
|---|---|---|
| | | **filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 01/08/2024) |
| 01/08/2024 | 66 | REPLY to Response to 49 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Isler, Thomas) (Entered: 01/08/2024) |
| 01/09/2024 | 67 | REPLY to Response to 51 MOTION to Dismiss filed by Defendants Jason S. Otero, B.K. Steckler. (Attachments: # 1 Exhibit City Code 9.3.101)(Turner, Anne) (Entered: 01/09/2024) |
| 01/09/2024 | 68 | REPLY to Response to 52 MOTION to Dismiss filed by Defendant City of Colorado Springs. (Attachments: # 1 Exhibit E.B. Cell Phone Warrant, # 2 Exhibit ESN Facebook Warrant, # 3 Exhibit Zippered Notebook Search Warrant)(Turner, Anne) (Entered: 01/09/2024) |
| 01/09/2024 | 69 | REPLY to Response to 50 MOTION to Dismiss MOTION for Joinder re 49 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Defendant Roy A. Ditzler. (Turner, Anne) (Entered: 01/09/2024) |
| 01/16/2024 | 70 | MINUTE ORDER: In light of the parties' communications with chambers, an Informal Discovery Conference is **set for January 26, 2024, at 10:00 AM**, before Magistrate Judge Maritza Dominguez Braswell. The Conference will be conducted by video using the attached instructions. By Magistrate Judge Maritza Dominguez Braswell on 1/16/2024. Text Only Entry (mdblc1) (Entered: 01/16/2024) |
| 01/16/2024 | 71 | ORDER by Magistrate Judge Maritza Dominguez Braswell on 01/16/2024. IT IS ORDERED THAT: (1) The pending Motions to Stay Discovery (Doc. Nos. 29 , 30 ) are DENIED.(2) The parties SHALL file a Proposed Scheduling Order on or before January 26, 2024.(jrobe, ) (Entered: 01/16/2024) |
| 01/19/2024 | 72 | REASSIGNMENT OF JUDGE. This action is reassigned to Judge S. Kato Crews upon his appointment as United States District Judge. Unless otherwise ordered, the dates and times for all previously scheduled matters will be maintained. Judge Crews is located in Courtroom C201 in the Byron G. Rogers United States Courthouse and his chambers is in C-250. His telephone number is (303) 335-2117. All future pleadings should be designated as 23-cv-01951-SKC-MDB. (Text Only Entry) (schap, ) (Entered: 01/19/2024) |
| 01/24/2024 | 73 | OBJECTION/Appeal of Magistrate Judge Decision to District Court re 71 Order on Motion to Stay,,, by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Isler, Thomas) (Entered: 01/24/2024) |
| 01/24/2024 | 74 | MOTION to Stay re 71 Order on Motion to Stay,,, *Pursuant to D.C.COLO.LCivR 30.2(b), filed with the Magistrate Judge* by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Isler, Thomas) (Entered: 01/24/2024) |
| 01/25/2024 | 75 | OBJECTION/Appeal of Magistrate Judge Decision to District Court re 71 Order on Motion to Stay,,, by Defendants City of Colorado Springs, Roy A. Ditzler, Jason S. Otero, B.K. Steckler. (Turner, Anne) (Entered: 01/25/2024) |
| 01/25/2024 | 76 | MOTION to Stay re 71 Order on Motion to Stay,,, *Pursuant to D.C.COLO.LCivR 30.2(b)* by Defendants City of Colorado Springs, Roy A. Ditzler, Jason S. Otero, B.K. Steckler. |

| | | (Turner, Anne) (Entered: 01/25/2024) |
|---|---|---|
| 01/25/2024 | 77 | ORDER REFERRING MOTIONS: 76 MOTION to Stay and 74 MOTION to Stay referred to Magistrate Judge Maritza Dominguez Braswell. By U.S. District Judge S. Kato Crews on 1/25/2024. Text Only Entry (skcja, ) (Entered: 01/25/2024) |
| 01/25/2024 | 78 | Joint MOTION for Protective Order by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Attachments: # 1 Proposed Order (PDF Only) Stipulated Protective Order)(Isler, Thomas) (Entered: 01/25/2024) |
| 01/26/2024 | 79 | ORDER REFERRING MOTION: 78 Joint MOTION for Protective Order filed by Daniel Summey, United States of America, Federal Bureau of Investigation referred to Magistrate Judge Maritza Dominguez Braswell. By U.S. District Judge S. Kato Crews on 1/26/2024. Text Only Entry (skcja, ) (Entered: 01/26/2024) |
| 01/26/2024 | 80 | ORDER granting 78 Motion for Protective Order by Magistrate Judge Maritza Dominguez Braswell on 1/26/2024.(evaug ) (Entered: 01/26/2024) |
| 01/26/2024 | 81 | PROTECTIVE ORDER by Magistrate Judge Maritza Dominguez Braswell on 1/26/2024. (evaug) (Entered: 01/26/2024) |
| 01/26/2024 | 82 | COURTROOM MINUTES for Discovery Conference held on 1/26/2024 before Magistrate Judge Maritza Dominguez Braswell: Deadline for esponse to stay motions at ECF No.'s 74 ad 76 - 1/30/2024. Proposed Scheduling Order deadline extended to 2/2/2024. Depositions of Officers Summey and Gerken to be completed on or before 2/29/2024 Parties shall submit a Joint Status Report on or before 3/1/2024 pursuant to the Post-conference note. FTR: Courtroom 101. (evaug ) (Entered: 01/29/2024) |
| 01/26/2024 | | ***Set/Reset Deadlines: Proposed Scheduling Order due 2/2/2024. Status Report due by 3/1/2024. (evaug ) (Entered: 01/29/2024) |
| 01/30/2024 | 83 | RESPONSE to 76 MOTION to Stay re 71 Order on Motion to Stay,,, *Pursuant to D.C.COLO.LCivR 30.2(b),* 74 MOTION to Stay re 71 Order on Motion to Stay,,, *Pursuant to D.C.COLO.LCivR 30.2(b), filed with the Magistrate Judge* filed by Plaintiff Jacqueline Armendariz. (Roeder, Jacqueline) (Entered: 01/30/2024) |
| 02/01/2024 | 84 | MINUTE ORDER: In support of their Motions at ECF 74 and 76 , Defendants offer arguments that appear to misinterpret or overstate the Courts prior Stay Order at ECF 71 . Specifically, Defendants quote from a footnote in the Courts Stay Order to argue the Court committed clear error because it ordered full merits discovery but did not conclude discovery was necessary to adjudicate the qualified immunity question. See ECF 74 at 3 (quoting ECF 71 at 14, fn.3); see also ECF 76 at 2. However, the Courts statements in a footnote should not be read to mean that discovery on the qualified immunity issue is unnecessary. The footnote simply notes the qualified immunity issue is before the presiding judge rather than this Court, and that in this Courts estimation, the issues here are more likely to require legal determinations (as compared to other cases where qualified immunity is raised). Additionally, the Courts footnote should not be read to undermine other portions of its Stay Order describing the need for discovery and the interwoven nature of the claims, defenses, facts, and issues. See ECF 71 at 14 (discovery on the different claims and Defendants is inextricably intertwined because the warrantsthough separately issuedare tied to the same event or set of events and issues. Thus, inquiry into the facts and circumstances surrounding the claims subject to qualified immunity, will necessarily overlap with claims that are not subject to qualified immunity.). To be clear, the Court is of the view that there must be discovery into the facts and circumstances surrounding the issuance of and reliance on the warrants, and that such discovery concerns the merits of the case as well as the qualified immunity defense. Because discovery as to each is intertwined, and for all the reasons stated in the Courts Stay Order at ECF 71 , the case should proceed. Moreover, the Court agrees with |

8/15/24, 8:34 AM                                    CM/ECF - U.S. District Court:cod

| | | Plaintiffs that under any potentially applicable test, Defendants have not offered a sufficient basis to stay application of the Courts Stay Order, and the Motions at ECF [74] and [76] are therefore DENIED. By Magistrate Judge Maritza Dominguez Braswell on 2/1/2024. Text Only Entry(evaug ) (Entered: 02/01/2024) |
|---|---|---|
| 02/02/2024 | [85] | Proposed Scheduling Order by Plaintiffs Jacqueline Armendariz, Chinook Center. (Moraff, Laura) (Entered: 02/02/2024) |
| 02/02/2024 | [86] | Second MOTION to Stay re [71] Order on Motion to Stay,,, *Pursuant to D.C.COLO.LCivR 30.2(b) Directed To the District Judge, and for Expedited Ruling* by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Isler, Thomas) (Entered: 02/02/2024) |
| 02/05/2024 | [87] | Second MOTION to Stay re [71] Order on Motion to Stay,,, *Pursuant to D.C.COLO.LCivR 30.2(b) by the City Defendants, and for Expedited Ruling* by Defendants City of Colorado Springs, Roy A. Ditzler, Jason S. Otero, B.K. Steckler. (Turner, Anne) (Entered: 02/05/2024) |
| 02/05/2024 | [88] | MINUTE ORDER: A Scheduling Conference is **set for February 20, 2024, at 1:00 PM** before Magistrate Judge Maritza Dominguez Braswell. The Conference will be conducted by video using the attached instructions. By Magistrate Judge Maritza Dominguez Braswell on 2/5/2024. Text Only Entry (mdblc1) (Entered: 02/05/2024) |
| 02/07/2024 | [89] | RESPONSE to [73] , [75] Objection/Appeal of Magistrate Judge Decision *Denying Stay of Discovery* filed by Plaintiffs Jacqueline Armendariz, Chinook Center. (Roeder, Jacqueline) (Entered: 02/07/2024) |
| 02/08/2024 | 90 | ORDER overruling [73] and [75] APPEALS OF MAGISTRATE JUDGE DECISION to District Court; granting in part [86] and [87] Motions to Stay.

Before the Court are Defendants' respective second motions to stay (Dkts. 86 and 87) and for expedited ruling, directed to the District Judge under Local Rule 30.2(b). The Court rules on these motions without awaiting responses under Local Rule 7.1(d).

The second motions to stay implicate the motions to dismiss (Dkts. 49-52) that are pending before this Court. Since this Court has not referred the motions to dismiss to the magistrate judge, this Court had an opportunity not reasonably available to the magistrate judge when she considered the Defendants' original motions to stay--that being the ability to take a preliminary peek at the motions to dismiss. *See, e.g., Warden v. Tschetter Sulzer, P.C.*, No. 22-CV-00271-WJM-NRN, 2022 WL 1487576, at *4 (D. Colo. May 11, 2022) ("some courts have also adopted a 'preliminary peek' approach in deciding whether to stay a case pending resolution of a dispositive motion"); *Bacote v. Fed. Bureau of Prisons*, No. 17-CV-03111-RM-NRN, 2019 WL 5964957, at *2 (D. Colo. Nov. 13, 2019) (no controlling law precludes a preliminary peek).

This Court has taken that peek and finds the motions to dismiss raise colorable arguments regarding the applicability of qualified immunity that are not discovery dependent under the circumstances alleged in the First Amended Complaint. (Dkt. 12.) *See, e.g., Messerschmid v. Millender*, 565 U.S. 535, 546 (2012) ("The validity of the warrant is not before us. The question instead is whether Messerschmidt and Lawrence are entitled to immunity from damages, even assuming that the warrant should not have been issued."). Moreover, the motions to dismiss seek dismissal of all claims in some shape or form, and one raises subject matter jurisdiction over at least one Defendant (although the latter argument may be premature depending on the status of the United States as a party).

It is not this Court's usual practice to take a preliminary peek at the relative merits of motions to dismiss when considering a motion to stay. But having done so here, the Court |

A 012

finds good cause to partially grant the second motions to stay in consideration of Fed. R. Civ. P. 1 and the Court's own convenience. For example, rulings on the motions to dismiss have the potential to narrow the claims and issues for discovery purposes and trial. And while not all Defendants may claim qualified immunity here, under the circumstances of this case, the Court finds a stay of all discovery is warranted. *See generally A.A. ex rel. Archuletta v. Martinez*, No. 12-CV-00732-WYD-KMT, 2012 WL 5974170, *2 (D. Colo. Oct. 9, 2012) (finding discovery should not be stayed only as to one defendant, but as to all); *see also Griffith v. El Paso Cnty., Colorado*, No. 21-CV-00387-CMA-NRN, 2022 WL 20286303, at *2 (D. Colo. Nov. 2, 2022) (disfavoring piecemeal discovery). It is ORDERED that the Second Motions to Stay are PARTIALLY GRANTED. Discovery shall be stayed pending a ruling on the motions to dismiss; however, any ongoing or necessary discovery to the Westfall Act issues shall proceed. The parties are ORDERED to contact the Chambers of Magistrate Judge Dominguez Braswell to set a discovery schedule and discovery limitations in this regard, to the extent this discovery hasn't already been set.

The Court FURTHER OVERRULES the Objections (Dkts. 73 and 75) to the magistrate judge's non-dispositive order at Dkt. 71, as MOOT. To be clear, however, the magistrate judge is patently correct that raising qualified immunity does not trigger an automatic stay of discovery, as Defendants argue. The Court finds nothing clearly erroneous or contrary to law in the magistrate judge's Order denying the original motions to stay, but the matter is ultimately now mooted by this Court granting the second motions to stay.

SO ORDERED by U.S. District Judge S. Kato Crews on 2/8/2024.
Text Only Entry (skclc1) (Entered: 02/08/2024)

| 02/12/2024 | 91 | MINUTE ORDER: In light of the presiding judge's decision to stay all discovery (other than Westfall discovery), the Court hereby vacates the February 20, 2024, Scheduling Conference. The Proposed Scheduling Order (ECF 85 ) shall not be entered, and the parties are directed to file a new proposed scheduling order ten days after the resolution of the pending motions to dismiss. By Magistrate Judge Maritza Dominguez Braswell on 2/12/2024. Text Only Entry (mdblc1) (Entered: 02/12/2024) |
|---|---|---|
| 03/01/2024 | 92 | Joint STATUS REPORT by Plaintiffs Jacqueline Armendariz, Chinook Center. (Benz, Theresa) (Entered: 03/01/2024) |
| 03/07/2024 | 93 | **ORDER FOR ADDITIONAL BRIEFING, DUE MARCH 18, 2024**: This matter is before the Court *sua sponte* in consideration of the claims of qualified immunity by the individual law enforcement defendants (LEDs) in their respective and pending motions to dismiss. The First Amended Complaint (FAC) includes in the First and Second Claims for Relief allegations of the LEDs' violation of the First Amendment. Those allegations raise the subjective intent of one or more of the LEDs in procuring the search warrants at issue. *See, e.g.,* Dkt. 12 at paragraphs 7, 77, 86, 94, and 109. As a result, the Tenth Circuit's decision in *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642 (10th Cir. 1988) appears to be implicated. *See id.* at 647 ("The other claims asserted... are more difficult to resolve under the *Harlow* standard. Plaintiffs in this case contend that the federal defendants conspired with state officials to conduct the search for the purpose of interfering with their exercise of first amendment speech and associational rights. They also allege that defendants were motivated by racial animus. For claims of this type, the governmental actor's intent, motive, or purpose is the critical element.").

In *Pueblo*, the Tenth Circuit suggests that when a plaintiff's claims require proof of an improper motive, "[b]ecause the officials' state of mind is an essential element of these claims, the wholly objective [qualified immunity] inquiry suggested by [the Supreme Court in] *Harlow* is inappropriate here."). *Id.* at 648. No party references *Pueblo* in their briefing on the motions to dismiss. Because the allegations in the FAC suggest the state of |

A 013

mind of one or more LED is an essential element of Plaintiff's First Amendment claims, the Court seeks additional briefing from the applicable parties regarding the application of *Pueblo*, if at all, to the qualified immunity question before the Court on the First Amendment claims.

To be clear, the Court reads *Pueblo* as allowing for (or requiring) application of the objective reasonableness standard to the question of qualified immunity on Plaintiff's Fourth Amendment claims. But the case suggests an objective reasonableness standard *plus* a subjective component or analysis applies to the qualified immunity question on Plaintiff's First Amendment claims. *Id.* at 649 (suggesting a heightened pleading standard applies). The case raises at least two questions for the Court: (1) assuming this precedent applies, the Tenth Circuit applied it on a motion for summary judgment--does it equally apply on a motion to dismiss or may it only be resolved at the summary judgment stage?; and (2) the Tenth Circuit suggests a heightened pleading standard applies in this context-- what is that standard and does the FAC meet it?

It is **ORDERED** that the applicable parties submit simultaneous briefs **on or before March 18, 2024, not exceeding 10 pages, regarding the application of** *Pueblo* **to the LEDs' claims of qualified immunity.** No response briefs are allowed without leave of Court. Oral argument may be necessary after the Court's review of the additional briefs.

By U.S. District Judge S. Kato Crews on 03/07/2024. Text Only Entry (Crews, S.) (Entered: 03/07/2024)

| | | |
|---|---|---|
| 03/14/2024 | 94 | MINUTE ORDER: The Court has reviewed the parties' 92 Joint Status Report and issues the following directives. First, the briefing schedule for Plaintiffs' re-substitution motion is accepted as proposed. Plaintiffs' motion shall be filed by April 19, 2024; the United States shall respond by May 10, 2024; and Plaintiffs shall reply by May 24, 2024. Second, an Evidentiary Hearing is **set for July 1, 2024, at 1:00 PM** before Magistrate Judge Maritza Dominguez Braswell. The Hearing will be held in Courtroom 101 of the United States District Court for the District of Colorado at Colorado Springs, located at 212 N. Wahsatch Avenue, Colorado Springs, Colorado 80903. However, the Evidentiary Hearing will be vacated if the Court determines it unnecessary upon review of the briefing. Finally, the Court will not order a deposition of Defendant Ditzler, but he and all other witnesses should plan to attend the evidentiary hearing and offer testimony. By Magistrate Judge Maritza Dominguez Braswell on 3/14/2024. Text Only Entry (mdblc1) (Entered: 03/14/2024) |
| 03/18/2024 | 95 | BRIEF re 93 Order,,,,,,,,,,,, by Defendants Roy A. Ditzler, Jason S. Otero, B.K. Steckler. (Turner, Anne) (Entered: 03/18/2024) |
| 03/18/2024 | 96 | BRIEF re 93 Order,,,,,,,,,,,,, by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Isler, Thomas) (Entered: 03/18/2024) |
| 03/18/2024 | 97 | BRIEF re 93 Order,,,,,,,,,,,,, *Additional Briefing per March 7, 2024 Order* by Plaintiffs Jacqueline Armendariz, Chinook Center. (Benz, Theresa) (Entered: 03/18/2024) |
| 03/22/2024 | 98 | Unopposed MOTION to Vacate *and Reset Evidentiary Hearing Scheduled for July 1, 2024,* by Defendants Federal Bureau of Investigation, Daniel Summey, United States of America. (Isler, Thomas) (Entered: 03/22/2024) |
| 03/22/2024 | 99 | MEMORANDUM: re 98 Unopposed MOTION to Vacate *and Reset Evidentiary Hearing Scheduled for July 1, 2024,* filed by Daniel Summey, United States of America, Federal Bureau of Investigation. Motions referred to Magistrate Judge Maritza Dominguez Braswell. By U.S. District Judge S. Kato Crews on 3/22/2024. Text Only Entry (skcja, ) (Entered: 03/22/2024) |

| 03/25/2024 | [100](#) | MINUTE ORDER: Based on the parties' communications with chambers, an Informal Discovery Conference is **set for April 3, 2024, at 9:00 AM** before Magistrate Judge Maritza Dominguez Braswell. The Conference will be conducted by video using the attached instructions. By Magistrate Judge Maritza Dominguez Braswell on 3/25/2024. Text Only Entry (mdblc1) (Entered: 03/25/2024) |
| 04/03/2024 | [102](#) | COURTROOM MINUTES for Discovery Hearing held on 4/3/2024 before Magistrate Judge Maritza Dominguez Braswell.. FTR: Courtroom 101. (evaug ) (Entered: 04/07/2024) |
| 04/07/2024 | [101](#) | TRANSCRIPT of Telephonic Discovery Conference held on January 26, 2024 before Magistrate Judge Braswell. Pages: 1-24. **NOTICE - REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed in the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Patterson Transcription Company, ) (Entered: 04/07/2024) |
| 04/10/2024 | [103](#) | ORDER granting the following motions: [49](#) Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction, [50](#) Motion to Dismiss and Motion for Joinder, [51](#) Motion to Dismiss, and [52](#) Motion to Dismiss. The First Claim for Relief is dismissed without prejudice against Summy, Ditzler, and the City. The Second and Third Claims for Relief are dismissed without prejudice against Steckler, Otero, and the City. The Fourth and Fifth Claims for Relief are dismissed without prejudice. The Sixth Claim for Relief is dismissed without prejudice. Judgment shall enter accordingly. Entered by U.S. District Judge S. Kato Crews on 4/10/2024. (cpear) (Main Document 103 replaced on 4/10/2024) (cpear). (Entered: 04/10/2024) |
| 04/10/2024 | [104](#) | FINAL JUDGMENT pursuant to [103](#) Order on Motions to Dismiss. Entered by the Clerk of the Court on 4/10/2024. (cpear) (Entered: 04/10/2024) |
| 04/24/2024 | [105](#) | NON-STIPULATED Proposed Bill of Costs by Defendants City of Colorado Springs, Roy A. Ditzler, Jason S. Otero, B.K. Steckler. Parties conferred on 4/17/2024. |
| | | The following category or categories remain under dispute: Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case. Costs incident to taking of depositions. |
| | | Per court procedure, any objection to the Proposed Bill of Costs is due within 14 days (Attachments: # [1](#) Exhibit Exhibit A, # [2](#) Affidavit Affidavit of Anne H. Turner in Support of Defendants Bill of Costs)(Turner, Anne) (Entered: 04/24/2024) |
| 05/08/2024 | [106](#) | OBJECTIONS to [105](#) Proposed Bill of Costs,, by Plaintiffs Jacqueline Armendariz, Chinook Center. (Roeder, Jacqueline) (Entered: 05/08/2024) |
| 05/09/2024 | [107](#) | NOTICE OF APPEAL as to [104](#) Judgment by Plaintiffs Jacqueline Armendariz, Chinook Center (Filing fee $ 605, Receipt Number ACODC-9678161) (Benz, Theresa) (Entered: 05/09/2024) |
| 05/10/2024 | [108](#) | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the [107](#) Notice of Appeal filed by Chinook Center, Jacqueline Armendariz to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # [1](#) Preliminary Record)(jrobe, ) (Entered: 05/10/2024) |

CM/ECF - U.S. District Court:cod

| 05/13/2024 | 109 | USCA Case Number 24-1201 for 107 Notice of Appeal filed by Chinook Center, Jacqueline Armendariz. (jrobe, ) (Entered: 05/13/2024) |
| 05/24/2024 | 110 | TRANSCRIPT ORDER FORM re 107 Notice of Appeal by Plaintiffs Jacqueline Armendariz, Chinook Center (Benz, Theresa) (Entered: 05/24/2024) |
| 05/24/2024 | 111 | LETTER TO USCA and all counsel certifying the record is complete as to 107 Notice of Appeal filed by Chinook Center, Jacqueline Armendariz. A transcript order form was filed stating that a transcript is not necessary. ( Appeal No. 24-1201) Text Only Entry (jrobe, ) (Entered: 05/29/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/15/2024 08:34:49 | | |
| **PACER Login:** | dgslawfirm | **Client Code:** | 777777.7777.tben |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-01951-SKC-MDB |
| **Billable Pages:** | 15 | **Cost:** | 1.50 |

A 016

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF COLORADO**

Civil Action No. 1:23-cv-01951-MDB

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

Plaintiffs,

v.

CITY OF COLORADO SPRINGS;

DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual capacity;

B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual capacity;

JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual capacity;

ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his individual capacity; and

FEDERAL BUREAU OF INVESTIGATION;

Defendants.

---

**FIRST AMENDED COMPLAINT**

---

**INTRODUCTION**

1.      This action addresses the Colorado Springs Police Department's ("CSPD")

unconstitutional and invasive search and seizure of the phones, computers, devices, and private

chats of people and groups whose message CSPD dislikes.

2.      Over the last several years, CSPD has engaged in a concerted campaign against

activists in the region, abusing its powers to target them through infiltration, surveillance, and

dragnet warrants to search and seize their personal devices and digital data without justification.

CSPD's actions expose a pervasive disregard for longstanding constitutional rules meant to constrain law enforcement and protect personal privacy, with far-reaching implications for everyone in our community.

3.      The case arises out of CSPD officers' actions following a housing rights march in Colorado Springs on July 31, 2021. Plaintiff Chinook Center and several other groups helped organize the constitutionally protected housing march.  Plaintiff Jacqueline Armendariz marched at the event, along with prominent Chinook Center members and other activists concerned about the local housing crisis.

4.      CSPD targeted Chinook Center leaders for arrest at the march, sharing pictures of the activists in advance and stating that they would get a "boot to the head." Ultimately, a CSPD commander ordered arrests of prominent Chinook Center members for marching in the street, even after the protestors complied with police requests to move onto the sidewalk.

5.      Colorado Springs police then obtained a search warrant—one of several that are the subject of this lawsuit—to search the Chinook Center's private chats on Facebook Messenger.  The warrant did not even purport to be supported by probable cause. It was not limited to a search for any particular evidence, let alone evidence of a particular crime, and it was unlimited as to topics.  The warrant was an unjustified effort to intrude on the private messages of a group whose political expression the CSPD dislikes.

6.      CSPD also arrested and charged Armendariz for dropping her bicycle in the path of an officer during the march, even though the officer easily avoided the bicycle and was not injured in any way.  CSPD seized Armendariz's cell phones, her laptops, and an external hard drive without any justification or probable cause that they contained specific, particularized

evidence of the alleged bike-dropping crime. Then CSPD sought and executed a warrant to copy her phones and devices in their entirety and search them for evidence of her political views, her political associations, and her relationship with the Chinook Center. There was no probable cause for this search and it was not limited to a search for any particular evidence.

7.    The warrants targeting Chinook and Armendariz were part of a pattern and practice of unconstitutional actions intended to teach activists a lesson: Colorado Springs police would retaliate against political expression with dragnet warrants to chill free speech.

8.    CSPD's repeated justification to copy, search, and retain the contents of activists' phones and computers was that people use their phones to take pictures and send messages. Tolerating or accepting this justification would eviscerate the Fourth Amendment and justify unbounded intrusions into the privacy of anyone even associated with someone accused of a crime. Unless called to account in this lawsuit, the police could seize and search the phones and devices of anyone in our community.

9.    Fortunately, the state and federal constitutions were intended to prohibit precisely the types of general warrants at issue here, where police search private homes and private data roaming for evidence of some unspecified bad acts. Our constitution recognized the profound danger that these types of warrants would have on freedom and liberty and precluded them. Indeed, these types of general warrants were common in the time of King George and helped lead to the American Revolution.

10.    Plaintiffs Jacqueline Armendariz and the Chinook Center bring this action to hold the City of Colorado Springs and its officers accountable for their unconstitutional practices and stop this Orwellian surveillance.

A 019

## PARTIES

**A.    Plaintiffs**

11.    The Chinook Center (sometimes, "Chinook") is a 501(c)(3) non-profit and volunteer membership organization that serves as a clearinghouse for progressive activism in Colorado Springs. Opened by Jon Christiansen, Shaun Walls, Samantha Christiansen, and others in the summer of 2019, the Chinook Center was founded against the backdrop of racial justice protests sparked by the police killing of George Floyd in the summer of 2020 and, closer to home, the 2019 CSPD killing of De'Von Bailey.

12.    Since its inception, the Chinook Center has provided a community space for existing and emerging organizations and activists to build connections and facilitate projects for a diverse array of grassroots work, including a "Housing for All" campaign that serves to address the housing crisis in Colorado.

13.    Ms. Armendariz is a resident of Colorado. She has been a volunteer and participant in activities sponsored or promoted by the Chinook Center.

**B.    Defendants**

14.    Defendant City of Colorado Springs is a municipal corporation incorporated in the State of Colorado. It carries out law enforcement activity through CSPD. All officers and employees of CSPD are agents of the City of Colorado Springs. The City of Colorado Springs is responsible for ensuring that its officers carry out their duties without violating the constitutional and statutory rights of the individuals with whom they come in contact.

A 020

15.     At all times relevant to this Complaint, defendant Daniel Summey ("Summey") was a detective with CSPD and a peace officer under C.R.S. § 24-31-901(3) acting under color of state law and within the scope of his employment. He is sued in his individual capacity.

16.     At all times relevant to this Complaint, defendant B.K. Steckler ("Steckler") was employed as a detective by CSPD and a peace officer under C.R.S. § 24-31-901(3) acting under color of state law and within the scope of his employment. He is sued in his individual capacity.

17.     At all times relevant to this Complaint, defendant Jason S. Otero ("Otero") was employed as a sergeant by CSPD and a peace officer under C.R.S. § 24-31-901(3) acting under color of state law and within the scope of his employment. He is sued in his individual capacity.

18.     At all times relevant to this Complaint, defendant Roy A. Ditzler ("Ditzler") was employed as a detective by CSPD and a peace officer under C.R.S. § 24-31-901(3) acting under color of state law and within the scope of his employment. He is sued in his individual capacity.

19.     Defendant Federal Bureau of Investigation (FBI) is a federal law enforcement agency and acted through the Rocky Mountain Regional Computer Forensics Laboratory (RMRCFL), an FBI-run forensic computer laboratory in Centennial, Colorado.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiffs' federal claims arise under the laws of the United States, including the Constitution of the United States, 42 U.S.C. § 1983, and 18 U.S.C. § 2707.

A 021

21.     This court has supplemental jurisdiction over Plaintiffs' closely related state law claims pursuant to 28 U.S.C. § 1367.

22.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All plaintiffs and defendants reside within the District of Colorado, and the actions and threatened actions occurred within the District of Colorado.

## FACTUAL ALLEGATIONS

### CSPD Prepares to Arrest Targeted Activists at Housing March on July 31, 2021

23.     The Chinook Center and other local activists wanted to bring attention to the lack of affordable housing and the associated housing crisis in Colorado Springs, as well as the end of the federal eviction moratorium which was set to occur on July 31, 2021.  To highlight the deficiencies in the City's housing policies and the end of the federal eviction moratorium, they called for a housing rally and march on July 31, 2021, proclaiming that "housing is a human right." July 31 was also the day that the City of Colorado Springs planned a parade and a celebration of its sesquicentennial.

24.     The actions by CSPD at and following the housing march in 2021 were precipitated by relevant history between CSPD and Colorado Springs activists.

25.     Among other things, CSPD and the FBI had been spying on the Chinook Center and other activist groups since the summer of 2020, with CSPD Detective April Rogers masquerading undercover as an activist, participant, and volunteer with Chinook and allied organizations. Detective Rogers provided a fake name (Chelsie Kurti) to the organizations and posed as an activist interested in supporting their work. On information and belief, knowing that the activists were politically active, Detective Rogers registered to vote under the fake name that

6

A 022

she provided to activists, which itself is a crime. The initiation of surveillance of the activist community in Colorado Springs coincided with the racial justice protests in the summer of 2020, in response to the May 2020 police killing of George Floyd and the August 2019 killing by CSPD of a 19-year-old black man in Colorado Springs named De'Von Bailey.

26.     In particular, on August 3, 2020, the one-year anniversary of De'Von's killing (August 3, 2019), racial justice activists took part in a protest in the Pulpit Rock neighborhood at the home of the CSPD police officer who shot De'Von Bailey. As described below, that protest so outraged CSPD officers that they began an extraordinary campaign against activists to retaliate and surveil the social justice organizations in Colorado Springs. In fact, the day after the protest at Pulpit Rock, Detective Rogers reached out to Chinook leaders and even offered to donate a filing cabinet to their office space.

27.     Detective Rogers began regularly communicating with leaders at the Chinook Center and volunteering with other non-profit organizations that used Chinook's space. She gained access to Chinook-affiliated organizations' membership records, cell phones, and email accounts.

28.     On information and belief, CSPD and the FBI were using Detective Rogers to spy on Chinook and other activists and gather information about the social justice activist community in Colorado Springs.  CSPD had prepared reports about many of the activists associated with the Chinook Center and other organizations that they later used to target Chinook leaders at the housing march.  The reports contained photographs of Chinook leaders and others likely taken from social media like Facebook, Instagram, and LinkedIn.  On information and belief, these dossiers were compiled as part of a warrantless program known as Social Media

7

Exploitation (SOMEX), in which the FBI or local police obtain, compile, and systematize

information from social media for the purpose of monitoring and targeting activists.

29.     During the course of Rogers' infiltration, CSPD learned about the planned July

31, 2021 housing march. As CSPD gathered information, officers decided that, if given the

opportunity at the march, they would arrest Chinook Center leaders and other activists, including

Jon Christiansen and Shaun Walls.  CSPD officers wanted to arrest Chinook leaders because of

their general animus toward Chinook and other activists CSPD perceived to be associated with

past demonstrations, including those at the home of the CSPD officer at Pulpit Rock, and the

particular message of the Chinook Center in juxtaposing the sorry state of housing policy with

the City's sesquicentennial celebration.

30.     CSPD Commander John Koch was in charge of the CSPD response to the 2021

housing march. He had also played a significant supervising role in investigating activists

following the 2020 protest at the Pulpit Rock neighborhood.

31.     In a report, Koch wrote that the housing protest was "being headed by the

Chinook Center and Shaun Walls, who was affiliated with the center." In Koch's view, the

Chinook Center and Walls had been "instrumental" in the protest at the Pulpit Rock

neighborhood the prior year (which Koch called a "riot"), even though neither Chinook nor any

of its leaders had been charged with any crimes associated with the protest.

32.     With respect to the July 31, 2021 housing march, Commander Koch declared

that he was "concerned protesters would engage in unlawful activity designed to disrupt the

public celebration." This "concern" was entirely inconsistent with the stated intentions of the

marchers to exercise their constitutionally protected rights of free speech and expression, to bring awareness to the housing crisis in Colorado Springs, and not to disrupt anything.

33.    On July 31, 2021, as the activists began to assemble in a local park before the housing march, CSPD officers sat in police cruisers waiting for the march to begin and observed the gathering activists. While in their vehicles waiting, CSPD officers reviewed a printout containing photos of activists they hoped to arrest. On information and belief, this printout was the result of the SOMEX program, supplemented by information obtained from the secret infiltration and surveillance of the Chinook Center and other activists by undercover CSPD officers.

34.    Before the housing march had even started, CSPD Officer Scott Alamo sat in his police cruiser and spoke to his fellow officers. His body camera was recording this discussion. While Officer Alamo reviewed the report with photos of the Colorado Springs activists, he remarked to his fellow officers: "Well, boys. We sit, we wait, we get paid."

35.    The officers proceeded to share with each other fantasies of violence toward the protestors. When referring to media observing the crowd of activists, one officer asked: "why the fuck are they paying attention to them?" Another officer responded: "Because they care. We fucked up somebody from the media." Later, because they were worried that the housing march might disrupt the sesquicentennial parade, another CSPD officer remarked: "Just get on that bullhorn and be like, 'Hey if y'all would like to see a parade and like to see these motherfuckers to quit interrupting it, just handle that for us… stone 'em all to death." A CSPD officer responded: "Call us when we need to collect the bodies."

36.    After remarking that there were undercover informants and plainclothes officers in the group of protestors, and as he looked at a photo of Jon Christiansen (one of the leaders of the Chinook Center), Officer Alamo remarked "Christiansen . . . was the white guy? The Professor?" His comment, likely referring to Christiansen's position as a sociology professor at the University of Colorado – Colorado Springs, reveals Officer Alamo's background knowledge regarding details of Christiansen's life. Continuing to look at photos of activists, Officer Alamo proclaimed: "Boot to the face. It's going to happen."

37.    Officer Alamo later stated: "Should we EPSO SWAT the shit outta these dudes and just throw flash-bangs at everyone?" Another CSPD officer responded with "Stingers!" referring to the less-lethal Stinger grenades that police have used on protestors. Officer Alamo responded approvingly and affirmatively with "Ah, Stingers!"

38.    A CSPD lieutenant, Chacon, reported that "the information given to me was that if the group began to march in the street, we would be making contact and effecting arrest." On information and belief, typical police practice is to seek compliance from protestors exercising their First Amendment rights, as opposed to "effecting arrest." But CSPD wanted to make arrests at this march—of community leaders in particular—to punish Chinook and affiliated activists for their First Amendment-protected activities.

39.    Eventually, after gathering at the local park, the protestors began their march for housing. At various points, because there were no sidewalks, and streets were already blocked by police vehicles, some marchers walked in the street.  When police officers made requests that marchers get out of the street, the marchers complied with the requests.

10

40.     Notwithstanding the marchers' compliance with the police request to get out of the street, CSPD commander Koch ordered that arrests be made. Commander Koch acknowledged, "Although I was advised shortly thereafter the protesters had gotten back on the sidewalk and off South Nevada Avenue, I directed their arrest for the previous obstruction of traffic."  This decision was consistent with CSPD's plan to send a message by arresting and targeting particular activists, including Chinook leaders.

41.     CSPD officers then tackled and subsequently arrested Chinook Center leader Shaun Walls, who had been at the front of the march carrying a white flag emblazoned with the Chinook Center logo. Jon Christiansen, another Chinook leader, was also arrested. Although police estimated that there were at least 50 other individuals who had walked in the street, the CSPD officers focused their attention on the two leaders of the Chinook Center to send a message in retaliation for their First Amendment-protected activities.

42.     Ms. Armendariz was walking her bicycle in the bike lane near the front of the march when police tackled Mr. Walls. She was wearing a blue bike helmet, sunglasses, and a "Housing is a human right" t-shirt. She witnessed police officers tackle and jump on Shaun Walls. She saw another officer in riot gear running towards her. Ms. Armendariz then dropped her bike. The bike landed between Ms. Armendariz and the officer. The officer avoided the bike and continued toward the protestors untouched by Ms. Armendariz's bicycle. The encounter was captured on multiple CSPD police body-worn cameras, as well as a CSPD overhead drone.

43.     Although officers did not arrest Ms. Armendariz at the scene, CSPD subsequently decided that dropping the bicycle in front of the officer was a case of felony attempted aggravated assault on a police officer, identified as Officer Anthony Spicuglia.

A 027

44.     Several weeks later, in a presentation to the City Council, the Colorado Springs City Attorney said the woman who "threw her bicycle in front of an officer" had not yet been identified, but that police were working on it.

### CSPD Seeks Warrants for Chinook Center's Facebook Messages

45.     A few days after the housing demonstration, CSPD sought search warrants for "All Facebook Messenger chats tied" to the Chinook Center Facebook page.

46.     The Chinook Center's Facebook Messenger chats were private, confidential, and not available to the public.  The private chats provide an opportunity for political organizing, debate, and advocacy among Chinook members.

47.     The affidavit did not even purport to establish probable cause for a warrant to issue.

48.     The sole justification in CSPD's affidavit seeking disclosure of the Chinook messenger chats was that "the protest was organized" by the Chinook Center and that its Facebook page contained details regarding the March for Housing.

49.     There was no indication as to why the private messages would contain relevant evidence beyond the police's assertion that they could gain "material evidence in this case."

50.     The affidavit identified no particular crime or even person under investigation.

51.     The affidavit noted only that, "[i]t is your affiant's experience people involved in illegal demonstrations use social media to organize planned events."

52.     The affidavit did not specify what was "illegal" about the constitutionally protected housing march.

A 028

53.    Had CSPD known who or what it was looking for in connection with its investigation, its officers could have limited the scope of the application for search warrant accordingly, rather than rummage through the communications of a hub of political organizing.

54.    The only limitation on the scope of the warrant for Chinook Center's Facebook records was the time period of July 27 to August 2, 2021.

55.    Defendant Steckler drafted, and Detective Otero reviewed and approved, the affidavit submitted to the state district court in support of the warrant to search the Chinook Center's Facebook messages.

56.    The warrant was served on Facebook, which complied with the warrant.  There was no prior notice provided to the Chinook Center or any Chinook member.

### CSPD Identifies and Arrests Ms. Armendariz

57.    Defendant Summey was assigned the task of identifying the person who dropped her bike at the housing march. Summey pored over the body worn camera footage and the CSPD's overhead drone footage. He conducted multiple internet searches.  He found photographs and other information showing that Ms. Armendariz was the person who dropped her bike in front of the officer at the housing march.  He also found information indicating that she had been politically active and that she had some connection to the Chinook Center.  On August 6, 2021, Defendant Summey submitted an affidavit to obtain an arrest warrant for Armendariz, as well as a warrant to search her home.

58.    Defendant Summey's arrest warrant affidavit is rife with his derogatory opinions and assertions about First Amendment-protected activities, including those of the

A 029

Chinook Center and other activists in Colorado Springs. Throughout, Defendant Summey

equates political expression, activity, and associations with criminality.

59.     Defendant Summey asserted in the affidavit that he has participated in

investigations regarding "illegal" protest activity, but he does not provide any explanation of

what made certain protest activity "illegal."

60.     Defendant Summey asserted in the affidavit that he has "become familiar" with

people who are "regularly involved" in what he called "illegal protest activity." Among those

people, Defendant Summey asserted, are "members and associates of the Chinook Center." Here

again, Defendant Summey did not explain what made any particular protest activity "illegal." He

did not describe which "members and associates" of the Chinook Center he was referring to,

identify any prior wrongdoing on their part, nor explain how they "regularly" engaged in

undefined "illegal" protest activity.

61.     On information and belief, among the ways that Defendant Summey "became

familiar" with members of the Chinook Center and their First Amendment protected activities

was through the undercover spying operation and infiltration of the Chinook Center by CSPD

officer April Rogers.

62.     Defendant Summey characterized the Chinook Center as "a local umbrella

organization that is the central hub for multiple political activist groups and their members."

63.     Defendant Summey stated that the Chinook Center had posted on social media

that a march was planned regarding housing in Colorado Springs for July 31, 2021. Summey

included a snip from the Chinook Center social media site stating that "Housing Is A Human

Right"; that "The Housing Crisis in this city can't be ignored any longer"; and that "We are

going to March on July 31 and we'll also be distributing meals, personal items, and tents to our unhoused community members who bear the worst of the crisis daily."

64.    In the arrest warrant affidavit, Defendant Summey explained that he found that Ms. Armendariz was a Facebook friend of Shaun Walls, and that the photos on her personal Facebook page matched police photos of her from the demonstration. He confirmed her identity by checking her driver's license photograph. He also checked her utilities account, her vehicle registration, and confirmed her mailing address.

65.    Defendant Summey supported his identification of Ms. Armendariz by the photos on her Facebook profile.  In the affidavit, Summey stated that he located a photo on Ms. Armendariz's Facebook profile in which she was wearing a helmet and notes that, "the helmet that is light blue in color and gets darker toward the bottom."  Summey concluded that the helmet "appears to be the same helmet worn by the suspect that attempted to assault Officer Spicuglia." Summey included the following photo in the affidavit:

15

Attachment A
Page 9 of 24

Your Affiant located the following photo on Armendariz's open Facebook profile, dated July 3rd, 2021. Please note the helmet that is light blue in color and gets darker towards the bottom. This helmet appears to be the same helmet worn by the suspect that attempted to assault Officer Spicuglia.



66.    Defendant Summey also located a photo on Ms. Armendariz's Facebook page that showed her wearing shoes that he concluded "appear to be the same shoes worn by the suspect that attempted to assault Officer Spicuglia" and that Ms. Armendariz had visible tattoos on her hip "in the same location the suspect has a tattoo." Summey included the following photo:

A 032

On Armendariz's Facebook page, Your Affiant located a photo from RISE Southeast showing Armendariz standing in front of a camera dated July 19th, 2021. Your Affiant noted Armendariz is on multiple photos associated to RISE Southeast. The photo below shows Armendariz wearing gray Nike shoes with a white sole that appear to be the same shoes worn by the suspect that attempted to assault Officer Spicuglia. Your Affiant would also note that tattoos are visible on Armendariz's hip in the same location the suspect has a tattoo.



67.     Defendant Summey included another photo from Ms. Armendariz's Facebook profile in which he asserts that she is "again wearing the same shoes and helmet as the female that attempted to assault Officer Spicuglia." He also asserts that: "the bicycle Armendariz is holding is purple in color with straight handlebars that are white on the grips. The bicycle also has a green sticker just below where the handlebars connect to the bicycle. The bicycle appears to be the same bicycle the female attempted to assault Officer Spicuglia with." He included the following photograph:

A 033

The following photo is also from RISE Southeast, and is located on Armendariz's Facebook profile. Armendariz appears to be again wearing the same shoes and helmet as the female that attempted to assault Officer Spicuglia. Please note the bicycle Armendariz is holding is purple in color with straight handlebars that are white on the

D0212021CR004694                                          DISCOVERY PAGE 185

Attachment A
Page 10 of 24

grips. The bicycle also has a green sticker just below where the handlebars connect to the bicycle. The bicycle appears to be the same bicycle the female attempted to assault Officer Spicuglia with.



A 034

68.     Defendant Summey's affidavit specifically calls out the political messages that protestors had on their clothing. He notes that some protestors wore red shirts with the words "Housing is a Human Right."

69.     Following his observation that "several" protestors carried "red flags," he asserts: "Your Affiant would note that the red flag is significant in that it is a radical political symbol, and designates this march, which ultimately was declared unlawful, as revolutionary and radical in nature."

70.     Defendant Summey's statement that the march was "declared unlawful" is a false statement. There was no such declaration. Detective Summey's statement that the waving of a red flag during a march "designates" it as "revolutionary" and "radical" in nature is also false. Detective Summey provided no explanation as to why believing that "Housing is a Human Right" or that "distributing meals, personal items, and tents to our unhoused community members" could be equated with "revolution." Summey's focus on the alleged "political symbol" of a red flag shows disregard for the First Amendment protected-activity of the people. Summey also failed to note that Shaun Walls had been carrying a white flag at the front of the housing march or the significance of having both red and white flags at the march.

71.     Defendant Summey's affidavit demonstrated that he was using indiscriminate internet research to skew his political analysis of red flags. His affidavit cites and quotes the website "Age of Revolution" as providing the following supposedly erudite explanation of red flags: "Today the red flag has, predominantly, become a symbol of socialism and communism. Its European origins date back to the Middle Ages, when a red streamer flying from the mast of a

A 035

warship signaled a willingness to fight to the death, with no surrender. But its radical political

roots lie firmly in the Age of Revolution."

72.     Defendant Summey does not explain why he chose to include a random website

explanation purporting to give a radical meaning to the use of red flags in his affidavit to arrest

and search the home of Ms. Armendariz, who was accused of a split-second decision to drop her

bike in front of an officer at a housing march. On information and belief, Summey intended to

sensationalize the alleged bike-dropping crime by tying it to "socialism," "communism" and a

"willingness to fight to the death with no surrender."

73.     Defendant Summey could have cited, but did not, the Merriam-Webster

dictionary definition of red flag, which includes "a warning signal or sign" and "something that

indicates or draws attention to a problem, danger, or irregularity."

74.     Defendant Summey also asserted that he located a professional Twitter handle

for Ms. Armendariz "in which she appears to appeal for social justice causes." Summey does not

explain what crime is typically associated with "appeal[ing] for social justice causes" or why

such information is relevant for CSPD's request to arrest Ms. Armendariz for dropping her bike.

75.     Defendant Summey reproduced a photo from Ms. Armendariz's Twitter profile:

A 036



76.    The Twitter profile stated: "Professional truth teller. Here for the worker. My sarcastic tweets about yt supremacy and TX history make GOP racists BIG MAD. Views are mine alone."

77.    Defendant Summey once again relied on political speech and First Amendment protected activities, this time from Ms. Armendariz's Twitter profile, to purport to establish evidence of nefarious intent.

78.    Defendant Summey noted Ms. Armendariz's use of the phrase "yt supremacy," and stated that he "was unfamiliar with the term 'yt.'"

79.    Not to be deterred, Defendant Summey found a definition for "yt folx" using a website he describes in his affidavit as "dictionary.com." Despite the fact that Ms. Armendariz's Twitter profile does NOT use the term "yt folx," Summey pressed ahead. His affidavit included the following quote:

In her profile, Armendariz references "yt supremacy". Your Affiant was unfamiliar with the term "yt", and using dictionary.com found the following definition for "yt folx":

"The *yt* in *yt folx* appears to stem from the slang term *whitey*. Whitey, evidenced since at least the 1830s, has been used by black Americans to disparage white people, especially implying oppression and racial discrimination. By at the early 2000s online, *whitey* was spelled phonetically at *yt*." The information can be found at https://www.dictionary.com/e/slang/yt-folx/.

80.     Defendant Summey did not state that this language comes from the "Slang Dictionary" of dictionary.com.

81.     Moreover, Defendant Summey did not include another part of the dictionary.com definition of "yt folx" – the part of the definition that comes first and before the quote he does include. Dictionary.com begins its definition by answering the question "What does Yt Folx Mean?" and explains that the term "yt folx" as an "often humorous" term used "to call out white privilege, racism, or cultural appropriation": "*Yt folx* is internet slang for 'white folks.' Sometimes serious but often humorous, *yt folx* is typically used by people of color, usually black Americans to call out white privilege, racism, or cultural appropriation." (available at dictionary.com/e/slang/yt-folx/).

82.     Defendant Summey did not explain whether it is part of CSPD law enforcement training and policy to use dictionary.com as part of an investigation, to omit material parts of internet slang definitions when they are used, or to use internet definitions to ascribe discriminatory motives to suspects based on their online speech objecting to white supremacy.

83.     Then, using only part of the pseudo-definition from the "Slang Dictionary" of dictionary.com of a term that Armendariz did not use, Defendant Summey ascribed racist motives to Armendariz's use of the term "yt supremacy" and claimed that she had a "disdain for white people":

It appears Armendariz uses the term "yt" in an attempt to disparage white people, showing her disdain for white people. Please note that the officer she attempted to assault was a white male.

84.    Defendant Summey did not attempt to show how opposition to white supremacy could be equated to a "disdain" for white people.

85.    Defendant Summey then devoted two pages of the affidavit to material from Ms. Armendariz's LinkedIn account, which revealed that she worked as a Regional Representative for Senator Bennet. Summey confirmed this by further checking a legislative website.

86.    Defendant Summey again sought to use Ms. Armendariz's constitutionally protected speech and associations as a relevant basis for the warrant, asserting that "Armendariz appears to be very active politically," and claiming that the protest on July 31, 2021 was "politically motivated." Summey repeated the false assertion that the protest "turned unlawful."

**Defendant Summey Submits and Defendant Steckler Approves an Unreasonable Application to Seize Ms. Armendariz's Devices**

87.    At the same time they obtained an arrest warrant for Ms. Armendariz, on August 6, 2021, Defendant Summey submitted and Defendant Steckler approved an affidavit to obtain a search warrant to search Ms. Armendariz's home and seize the items they determined she was wearing or using at the housing march: her blue bicycle helmet, her red shirt with "Housing is a Human Right" written on it, her gray Nike shoes with white soles, and her purple bicycle. Defendants also sought authorization to take a photograph of the tattoo on Ms. Armendariz's right hip/thigh.

88.    CSPD, however, did not stop at obtaining a warrant for this particularized, specific evidence. Instead, Defendants obtained a search warrant for all "digital media storage

23

devices" associated with Ms. Armendariz, including all "phones, computers, tablets, thumb drives, and external hard drives" they could find in Ms. Armendariz's home.  In other words, CSPD sought a general warrant to seize every electronic device they could find at Ms. Armendariz's home with absolutely no probable cause that such devices would contain specific, particularized evidence of a particular crime, much less the particular crime—attempted assault of a police officer—of which she was accused.

89.     On August 18, 2021, CSPD took Ms. Armendariz into custody outside of her residence and conducted a search of her home.

90.     During the search of Ms. Armendariz's home, CSPD officers found and seized the specific items identified in the search warrant:  her blue bike helmet, the red "Housing is a Human Right" shirt, and the gray Nike shoes with white soles.

91.     During their roaming search, CSPD officers also found and seized three cell phones, two computers, and an external hard drive from Ms. Armendariz's home.  One of the computers had a sticker indicating it was a work computer and that it was the property of US Senator Michael Bennet's Office and US Senate Property.  Defendant Summey asserted that "people often engage in personal communications with their work devices," so he seized that computer as well.

92.     Defendant Summey saw a bicycle in the back of Ms. Armendariz's vehicle. Summey asserted that the bicycle was purple in color with a green sticker and that the bicycle "clearly matched the bicycle that was used in the attempted assault on Officer Spicuglia." CSPD then seized and towed Ms. Armendariz's vehicle and subsequently seized the bicycle.  Defendant Summey determined that the bicycle had damage and scratch marks to the outside of the left

handlebar and that the bike during the incident had stuck the ground hard on the left side of the

handlebars.

93.     Accordingly, after seizing the clothing, helmet, and shoes that Ms. Armendariz

was wearing at the protest, as well as the purple bicycle she had at the march, and photographing

her tattoo, CSPD had no doubt that Ms. Armendariz was the person who had dropped her bicycle

at the march.

94.     But Defendants would not stop there. They had Ms. Armendariz's computers,

cell phones, and hard drive and they would try to comb through her electronic world, with no

reasonable suspicion and with no particularity, to continue their campaign of surveilling and

seeking to suppress political speech and expression.

**Defendant Summey Submits and Defendant Steckler Approves an
Unreasonable Application to Search the Contents of Ms. Armendariz's Devices**

95.     On August 20, 2021, after conclusively determining that Ms. Armendariz was

the person who had dropped her bike in front of the officer at the rally, Defendant Summey

submitted an affidavit to obtain a search warrant to search Ms. Armendariz's three cell phones,

her two computers, and her external hard drive.  Summey's affidavit to search the devices

repeated the litany of conclusions from his arrest affidavit and his affidavit to seize the devices,

but also added more.

96.     Defendant Summey requested a warrant to search Ms. Armendariz's six digital

devices for the following reams of personal data:

> Photos, videos, messages (Whether they be text messages or any application on the phone
> or computer capable of sending messages) emails, and location data, for the time period
> of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation. This
> time period would allow for any planning leading up to the crime, the period when the

crime took place, and the subsequent taking of credit for committing a violent act against a police officer.

And key word search of the devices for the following words:

Police, officer, cop, pig, bike, bicycle, attack, assault, 1501 celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Crustyansen, Chrischeeansen, Shaun, Walls, as these terms would be relevant to the investigation regardless of the time period in which they occurred.

97.     On information and belief, the goal of Defendant Summey's affidavit was to obtain permission to search Ms. Armendariz's digital devices not for further proof she was the protestor who dropped her bike, but for information about the Chinook Center, its activities, and her own political expression.

98.     The reasoning in Defendant Summey's affidavit purports to justify searching Ms. Armendariz's devices primarily on the basis of her affiliation with the Chinook Center and Summey's animus toward their protected First Amendment- protected views and activities.

99.     On information and belief, the police search of Ms. Armendariz's devices and seizure of Chinook's private chats were intended to limit the Chinook Center's ability to serve effectively as what Summey characterized as a "central hub" for "political activist groups."

100.     Relying on cherry-picked sources, unfounded assumptions, and leaps of logic, Defendant Summey repeated the spurious conclusions of malintent from his arrest affidavit regarding his observations of Ms. Armendariz and other activists' First Amendment-protected expression, activities, and associations.

101.     Defendant Summey's affidavit wholly failed to establish probable cause that Ms. Armendariz's digital devices would contain evidence of any crime, let alone the particular

crime for which she was charged. Instead, Summey's explanation for law enforcement interest in the content of Ms. Armendariz's data was based entirely on her social and political associations.

102.     Moreover, Defendant Summey sought to justify the search of Ms. Armendariz's devices through vague and conclusory assertions, which if accepted, would justify a police fishing expedition through the personal electronic data of any person going about their ordinary lives.

103.     Defendant Summey asserted that based on his familiarity with "people who protest as part of a group," and his "training and experience," he "knows that people who engage in illegal protest activity frequently carry their phones with them to take photos of their activity and message others who are also participating in illegal protest activity."

104.     Defendant Summey did not explain how these practices distinguished people engaged in so-called "illegal protest" activity from the other 300-plus million Americans who carry their phones and use them to take photos of their activities and message others. Nor could he: Summey's purported justification for searching Ms. Armendariz's phones and computers would serve as a basis to search the phones and devices of any person charged with any crime.

105.     Defendant Summey further claimed that his "training and experience" led him to conclude that "people who commit illegal activity in furtherance of the ideology or goals of anarchist or anti-government groups share information with others through messaging applications, emails, or text in order to take credit for their actions and gain standing or notoriety in such groups" and "take videos or photos of themselves or others engaged in illegal activity, or engaged in group activities leading up to the illegal activity." Summey failed to explain what training or experience produced these conclusions.

A 043

106.    He also failed to point to any evidence that Ms. Armendariz was part of "anarchist or anti-government groups," or to explain how dropping her bike was "in furtherance of the ideology or goals" of such unspecified groups. And he again did not explain how such sharing differs than the behavior of every other American with a phone.

107.    Defendant Summey falsely asserted that Ms. Armendariz's bike-dropping was carried out "in furtherance of the ideology or goals of anarchist or anti-government groups."

108.    Defendant Summey sought authorization to search her devices based on her political expression, including what Summey alleged was her "connection to the activist community" and her purported "closeness with Christiansen and Walls." Such closeness, Summey alleged, was based on their alleged interest in similar social or political causes, including attending a protest and Armendariz appearing on a podcast to discuss social issues.

109.    Defendant Summey reproduced some social media posts by Shaun Walls that were critical of police. He mentioned the protest at Pulpit Rock that Chinook leaders Christiansen and Walls attended. Defendant Summey continued his focus on political speech and political association as a basis to search the devices of Ms. Armendariz.

110.    Not only did Defendant Summey point to Ms. Armendariz's political and social ties as the sole motivation to search her data, he also sought broad authority to search *all* of her devices rather than limit the scope of the search to any subset. To justify a general search through all of Armendariz's electronic data, Summey asserted that he was "aware that people regularly attach their phones to their computers, and use their computers to back up their phones, or transfer photos from their phones to save space on their phones" and "that people store digital data on numerous devices, to include tablets, thumb drives, and external hard drives."

111.    Defendant Summey signed the Application and Affidavit and stated after the signature line that he was "Employed by" the Colorado Springs Police Department and that his position was Task Force Officer. The Application and Affidavit provided that the "Agency" for whom it was submitted as "Colorado Springs Police Department" and gave "Agency Number 21-29044."

112.    Defendant Summey prepared and submitted the 24-page affidavit that was Attachment A to the Application and Affidavit for Search Warrant, seeking a warrant to search for and extract data from Ms. Armendariz's digital devices. In the affidavit, Summey stated that he was a Police Officer for CSPD and that he had been employed by CSPD for over 6 years. He also noted his assignment to the FBI Joint Terrorism Task Force.

113.    On information and belief, CSPD Detective B.K. Steckler reviewed and approved both the Applications and Affidavits for Search Warrant that Defendant Summey prepared for Ms. Armendariz's devices, thereby authorizing and causing an unlawful search and seizure.

114.    On information and belief, Detective Steckler was Defendant Summey's supervisor for purposes of the Applications and Affidavits for Search Warrant to seize and search Ms. Armendariz's devices.

115.    Detective Steckler initialed the affidavits as Defendant Summey's supervisor and gave his badge number as 2145.

116.    On August 20, 2021, Colorado Springs Deputy District Attorney R. Short filed with the district court in El Paso County a request for sealing the search warrant for the search of Armendariz's digital devices.

A 045

117.    The request recounted that the criminal case against Ms. Armendariz was initiated by CSPD and given Case Number 21-29044 in El Paso County Colorado.

118.    The state court approved the request and issued the warrant.

119.    For the bike dropping incident at the housing march, Ms. Armendariz ultimately reached a plea agreement for obstructing a peace officer, received a deferred judgment, and successfully served six months of unsupervised probation.

**CPSD and the FBI Unlawfully Copy and Search Ms. Armendariz's Private Data**

120.    The Fourth Amendment requires that a search warrant must describe the things to be seized with sufficient particularity to prevent a general, exploratory rummaging in a person's belongings.

121.    The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.

122.    Warrants that authorize police to search for documents and digital data, as opposed to distinctive physical objects, require greater care in enforcing the particularity requirement because of the potential they carry for a very serious intrusion into personal privacy.

123.    The particularity requirement is even more important with respect to searches of computers and cell phones because of the police's ability to conduct a wide-ranging search into a person's private affairs.

124.    Where the materials sought to be seized may be protected by the First Amendment, as was the case with Ms. Armendariz's devices, the requirements of the Fourth Amendment must be applied with scrupulous exactitude.

125.     As the U.S. Supreme Court has recognized, the physical realities that used to limit potential police invasions of privacy do not apply when it comes to cell phones and similar devices, which can store enough personal information in a pocket to reconstruct "the sum of an individual's private life." *Riley v. California*, 573 U.S. 373, 394 (2014).  The Tenth Circuit similarly recognized that "[t]he modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important."  *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009).

126.     In violation of Ms. Armendariz's constitutional rights, CSPD enlisted the help of the FBI to unlawfully seize, search, and copy ***all*** of Armendariz's personal devices.

127.     Ms. Armendariz's digital devices were taken to an FBI-run forensic computer laboratory, the Rocky Mountain Regional Computer Forensics Laboratory (RMRCFL). On information and belief, the role of the RMRCFL is to extract the data from the digital devices that the warrant orders to be extracted. On information and belief, it begins by making an exact digital copy of the data on the digital device.

128.     CSPD and the FBI searched these devices for the words "human" "right" "housing" "protest" and "police," among many other terms, without any time limitation whatsoever.  They also seized and reviewed ***all*** of Armendariz's private personal photos, videos, text messages, and emails for more than a two-month period, again unlimited by subject or topic.

A 047

129.     On information and belief, both CSPD and the FBI continue to retain all of the

data and information copied from Ms. Armendariz's phones and devices, even though they have

no legitimate need or basis to do so.

### The Custom, Policy, and Practice of the City of Colorado Springs

130.     The unconstitutional search warrants targeting Chinook Center and Ms.

Armendariz's digital devices were obtained by Colorado Springs police officers as part of a

custom, policy, and practice of CSPD and the City of Colorado Springs.

131.     Pursuant to that custom, policy, and practice, when CSPD officers conduct a

post-event investigation of offenses that occurred during a demonstration or protest, police seek

broad-reaching warrants to search digital devices and social media accounts of participants and

even non-participants who associate with persons who participated. Instead of narrowly targeting

information and evidence relevant or necessary for a criminal prosecution of particular, specified

crimes under investigation, these warrants broadly seek information about activities, expression,

views, and associations that are protected by the First Amendment and Article II, sections 10 and

24 of the Colorado Constitution. In doing so, they fail to comply with the constitutionally

required standard of scrupulous exactitude that governs warrants seeking First Amendment-

protected materials.

132.     Pursuant to this custom, policy, and practice, CSPD procures warrants

authorizing unreasonable searches and seizures that fail in multiple ways to comply with the

particularity requirements of the state and federal constitutions. They contain insufficient

limitations on the scope of the search. The warrants are not as specific as the circumstances and

the officers' knowledge would allow. In addition, the scope of the information or evidence sought exceeds whatever probable cause may be established in the affidavit seeking the warrant.

133.    The latter flaw is starkly evident in CSPD's affidavits seeking warrants to search digital devices and social media messages in pursuit of individual participants who may have committed a violation in connection with a public protest. CSPD officers routinely and consistently fail to establish any concrete specific factual nexus between the evidence they seek and the digital device or social media account they seek to search. Instead, CSPD officers assert that they know, allegedly from their "experience" and "training," that persons who engage in the activity under investigation, whether it be a violation of law or mere participation in a public exercise of constitutional rights, regularly send and receive photos, messages, and other information through electronic communications. Such broad generalizations are untethered to any specific facts about a particular person, a particular electronic device, or a particular social media account. Given the use of smart-phones by more than 300 million Americans, the CSPD's custom, policy, and practice would support a search of the electronic communications of anyone who has any association with any event that prompts an investigation. Searches based on such fact-free generalizations that apply universally rather than specifically to the individual case, are not reasonable searches; they are not based on probable cause to believe that evidence will be found in the particular device or account to be searched.

134.    In seeking these overbroad warrants to obtain information about constitutionally protected political associations, CSPD officers regularly seek to obtain information about all participants in a protest, rather than focusing solely on particular individuals whose actions may have violated the law. In their warrant applications, CSPD officers regularly mischaracterize a

33

demonstration where some individuals violate the law as an "illegal protest" or a "riot," characterizations that unjustifiably implicate the organizers and all the participants, and they attempt to justify casting their overbroad net by asserting, vaguely, that the wide net they cast may identify "additional suspects."

135.    Examples of CSPD's custom, policy, and practice of seeking overbroad warrants to search digital devices include efforts to obtain information that would reveal who organized a protest, who participated in a protest, who communicated with persons who organized or participated in a protest, and the substance of those communications, without regard to whether that information is evidence of crime.

136.    CSPD's policy and practice is illustrated by its officers' investigation of criminal offenses that some individuals committed at a protest on August 3, 2020. On that date, activists held a demonstration to commemorate the one-year anniversary of the shooting and killing of De'Von Bailey at the hands of Colorado Springs police officers. The location was a residential neighborhood that included the home, on Pulpit Rock Drive, of the officer who was accused of shooting and killing De'Von Bailey.

137.    More than 100 people participated in the event, which included signs, banners, chants, and marching in the street. Some participants were armed. The group stopped in front of the officer's home, where the chanting continued and various participants made speeches. About twenty minutes into the demonstration, a vehicle approached on Pulpit Rock, but it stopped, as some participants were standing in the street. According to police, at least two of the persons carrying weapons stood in front of the vehicle. One participant positioned his own vehicle perpendicular to the curb so as to block the approaching vehicle's passage. A few minutes later, a

34

second vehicle arrived and stopped next to the first one. Its passage was also blocked, both by people in the street and the demonstrator's perpendicularly positioned vehicle. After a few additional minutes of confrontation, the participant moved his vehicle and the two blocked vehicles made their way through the crowd. The confrontation lasted less than ten minutes.

138.    In CSPD's later-written reports, (but not at the scene), CSPD asserted that the protest had become a "riot" pursuant to C.R.S. § 18-9-101.

139.    No arrests were made at the event, but CSPD launched an intensive investigation. Six weeks later, Colorado Springs police arrested two persons for alleged "riot" and "menacing." CSPD officers continued their investigation of the De'Von anniversary commemoration for much of the following year. They obtained warrants for physical searches of homes and vehicles; they obtained warrants to search cell phones and other digital devices; warrants to search private information on social media accounts, and additional warrants issued to cell phone companies for customer data records. The applications to search social media and digital devices reflect CSPD detectives' hearty appetite for information that would reveal who participated in the protest, who communicated with persons who participated in the protest, and the substance of those communications.

### Search of E.B.'s phone

140.    Almost six months after the De'Von Bailey commemoration, CSPD determined that M.A. was one of the participants who stood in front of the blocked vehicles while armed with a gun. Detectives seized not only M.A.'s phone, but also the phone of M.A.'s partner, E.B. The CSPD's affidavit to search E.B.'s phone illustrates CSPD's unconstitutional custom, policy,

and practice of obtaining dragnet warrants to intimidate and chill First-Amendment protected activity.

141.    CSPD had no evidence that E.B.had attended the protest. The application to search E.B.'s phone was based on her perceived romantic relationship with M.A. Based on her relationship with M.A. CSPD asserted that E.B.'s phone would contain material evidence. Such a theory would justify seizing and searching the phones and computers of anyone in a relationship with someone accused of any offense, in violation of the Fourth Amendment. Even worse, CSPD sought and obtained a warrant to search for **_all_** emails, internet searches, voicemail, text messages, logs of incoming and outgoing calls, photos, videos, contact and phone book information. The warrant did not limit the search to any specific crime and was for a six-month period of time. This is precisely the type of general search warrant – and here, someone not even accused or suspected of an offense – that is prohibited by the state and federal constitutions' prohibition of unreasonable searches.

### Search of Empowerment Solidarity Network

142.    CSPD's warrant applications also reflect a custom, policy, and practice of assuming, in the absence of evidence, that individuals who are suspected of committing an offense in the course of a protest or demonstration, are acting at the direction of the organizations that initiated the event and justify dragnet warrants of the organizations themselves. That unfounded assumption permeates the affidavits seeking authorization to search Chinook Center's Facebook account and Armendariz's digital devices and violates long-established constitutional law, including *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

143.      The same unjustified assumption infects CSPD applications for search warrants

obtained in connection with the De'Von anniversary protest. CSPD named the Empowerment

Solidarity Network as an organizer of the August 3 demonstration, and it sought a warrant to

search the organization's Facebook records. The affidavit for search warrant contains no

information linking the Empowerment Solidarity Network with any criminal activity. The sole

basis for asserting that there was probable cause that the Facebook records would provide

evidence of criminal activity was the group's role in announcing the protest and the stated intent

of a person, identified as a leader of Empowerment Solidarity Network, to plan similar events in

the future.

144.      The affidavit explains that CSPD sought "to identify persons that were in

contact with the Empowerment Solidarity Network in the weeks and days leading up to, during,

and after the event that took place on 08/03/2020." The affidavit further explained that obtaining

the Facebook messages "will assist with better understanding the event planning process,

specifically to determine if the armed subjects were directed to use intimidation and force

towards uninvolved citizens travelling through the area, and to help identify the unknown

actors." The warrant sought all Facebook records for a six-week period, including listing of

Facebook "friends" of the organization and all private messages. Here, again, CSPD's efforts

were designed to and would have the natural effect of intimidating and chilling First-Amendment

protected activity.

**Search of membership lists of expressive/advocacy organizations**

145.      Another CSPD application for a warrant targeting First Amendment

associations sought authority to seize and search a zipped notebook found during a search of

the home of one of the suspects for whom CSPD obtained an arrest warrant. According to the

CSPD affidavit, the notebook included "organizational information" and "rosters, contact

information, and personal identification" of members of two groups: the John Brown Gun Club

and Redneck Revolt. The affidavit claimed that both groups were ""a far-left political group that

organizes predominantly among working-class people. The group supports gun rights and

members often openly carry firearms. The group's political positions are anti-capitalist, anti-

racists, and anti-fascist."

146.    The affidavit clearly identified the two groups as associations engaged in

political expression. It did not link either group to any criminal activity whatsoever, nor did it

link either group to the events of August 3, 2020. Nevertheless, the affidavit asserted that the

documents in the zippered notebook "would be critical material evidence" to identify suspects

"who have yet to be identified and charged from the riot that occurred in Colorado Springs, CO

on 08/03/2020." This is another example of CSPD's custom, policy, and practice of using

unconstitutional warrants in an attempt to chill and suppress protected speech, assembly, and

rights of association.

**Warrant for names of participant's Facebook friends**

147.    Even when CSPD detectives seek a single clearly identifiable piece of evidence,

they draft a warrant far too broad in scope that intrudes unjustifiably on private communications

and associations protected by the First Amendment and Colorado's Freedom of Speech

provision. Plaintiff Jacqueline Armendariz posted a nine-minute video of portions of the De'Von

anniversary protest on her Facebook page. Detectives wanted to obtain an "official" copy of the

video from Facebook to provide to the prosecution as potential evidence. Instead of drafting a

warrant that was narrowly tailored to obtain the specific video they sought, their warrant lists a full page of categories of records that Facebook was commanded to produce, including Ms. Armendariz's private listing of Facebook friends and their Facebook IDs. These examples, and others, demonstrate CSPD's custom, policy, and practice of using unconstitutional warrants in an attempt to chill and suppress protected speech, assembly, and rights of association protected by the First Amendment and the Colorado Constitution.

## FIRST CLAIM FOR RELIEF

**Unlawful Search and Seizure in Violation of First and Fourth Amendments to U.S. Constitution; 42 U.S.C. § 1983**

**(Armendariz against Defendant Summey, Defendant Ditzler, City of Colorado Springs)**

148.    The First Amendment prohibits the government from "abridging the freedom of speech" or the "right of the people peaceably to assemble."

149.    The Fourth Amendment to the U.S. Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It requires that "no warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

150.    The animating concerns of the First and Fourth Amendments converge where the power of search and seizure is used as an instrument for stifling liberty of expression. As such, where a search and seizure targets expressive material and associative conduct, the protections of the Constitution are amplified: the Fourth Amendment must be applied with scrupulous exactitude, and the First Amendment may require more than ordinary Fourth Amendment compliance.

A 055

151.    The search and seizure of Ms. Armendariz's devices and digital data was unjustified, retaliatory, and carried out pursuant to dragnet warrants that not only swept up protected expressive and associational materials but failed to comply with basic constitutional requirements.

152.    Ms. Armendariz's digital devices contain a wealth of private and sensitive First Amended-protected information.

153.    The Armendariz search warrants failed to limit adequately the scope of the privacy intrusion it authorized.

154.    The Armendariz search warrant (a) violated the particularity requirement; (b) exceeded the scope of probable cause established in the affidavit; (c) failed to limit the search to evidence of a specific crime; (d) affirmatively rejected a date-range limitation; and (e) failed to limit the discretion of the officer executing the search.

155.    In addition, the search warrant failed to exhibit the "scrupulous exactitude" required of searches that target views, associations, and activities that the First Amendment protects. The searches for key words "police, officer, cop, pig, and yt" broadly target any and all mentions, views, or discussions that implicate such critical public issues as race and policing. Similarly, the search for any file with the word "protest" includes a wide range of First Amendment views and activity that has no connection to the crime under investigation.

156.    The search and seizure of Ms. Armendariz's digital data was not reasonable under the circumstances.

157.    On information and belief, investigation of the charge of attempted assault furnished no need to search Ms. Armendariz's laptops, cell phones, and external hard drives.

A 056

158.    Investigation of the charge of attempted assault could have been achieved through less intrusive means.

159.    In his capacity as a CSPD officer and in furtherance of a CSPD investigation, Defendant Summey drafted and submitted the applications for search warrants that caused and resulted in the unconstitutional search and seizure of Ms. Armendariz's devices and digital data.

160.    In his capacity as a CSPD officer and in furtherance of a CSPD investigation, Detective Ditzler reviewed and approved the applications for search warrants that caused and resulted in the unconstitutional search and seizure of Ms. Armendariz's devices and digital data.

161.    The deficiencies of the affidavit and applications for search warrants would have been apparent to any reasonably well-trained officer applying clearly established law.

162.    In the manner described above, Defendants Summey and Ditzler were personally involved in or personally directed, controlled, or authorized the actions that violated Ms. Armendariz's constitutional rights. Defendants' actions set in motion a series of events they knew or reasonably should have known would cause others to deprive Ms. Armendariz of her constitutional rights.

163.    Defendant Ditzler knew of and acquiesced to the constitutional violations committed by his subordinate. In doing so, Ditzler disregarded known or obvious consequences of his actions, exhibiting deliberate indifference to Ms. Armendariz's rights.

164.    As a direct and proximate cause of Defendants' actions, Ms. Armendariz's constitutional rights were violated, entitling her to relief. Additionally, as a direct and proximate cause of Defendants' actions, Ms. Armendariz suffered injuries, including mental and emotional distress.

165.    The unconstitutional search warrants targeting Ms. Armendariz's digital devices were obtained as part of a custom, policy, and practice of CSPD and the City of Colorado Springs.

166.    Ms. Armendariz is entitled to an award of damages from each of the Defendants responsible for the violation of her rights, including Defendants Summey, Ditzler, and Colorado Springs; an award of reasonable attorney's fees and costs; and such additional relief as the Court deems just.

167.    In addition, Defendant City of Colorado Springs retains copies of the illegally seized materials and confidential information.

168.    The City of Colorado Springs has no legitimate interest in retaining copies of Armendariz's digital devices, which were seized in purported connection with a now-ceased criminal prosecution.

169.    Armendariz is entitled to an equitable award of injunctive relief ordering the City of Colorado Springs to return or destroy all copies of Armendariz's digital devices and all files of information extracted from those devices in its possession and/or control.

### SECOND CLAIM FOR RELIEF

**Unlawful Search and Seizure in Violation of First and Fourth Amendments to U.S. Constitution; 42 U.S.C. § 1983**

**(Chinook Center against Detective Steckler, Detective Otero, City of Colorado Springs)**

170.    The allegations of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

A 058

171.    The Chinook Facebook warrant authorized the search and seizure of private messages of the Chinook Center, its members, and associates, all of whom had a reasonable expectation of their privacy.

172.    The private messages contained First Amendment-protected information about the social and political views and activities of the Chinook Center, its members, and its associates.

173.    The search and seizure of the Chinook Center's private Facebook messages was unjustified, retaliatory, and carried out pursuant to a warrant that not only swept up protected expressive and associational materials but failed to comply with basic constitutional requirements.

174.    The affidavit in support of the warrant was wholly lacking in probable cause.

175.    The warrant also failed to comply with the Fourth Amendment because:

    a) The warrant violated the particularity requirement;

    b) The warrant failed to limit sufficiently the scope of the search; and

    c) The warrant failed to limit the search to evidence of a specific crime.

176.    In his capacity as a CSPD officer and in furtherance of a CSPD investigation, Detective Steckler drafted and submitted the application for search warrant that resulted in the unconstitutional search and seizure targeting the Chinook Center.

177.    In his capacity as a CSPD officer and in furtherance of a CSPD investigation, Detective Otero reviewed and approved the application for search warrant that resulted in the unconstitutional search and seizure targeting the Chinook Center.

178.    In the manner described above, Defendant Steckler and Detective Otero were personally involved in or personally directed, controlled, or authorized the actions which violated the Chinook Center's constitutional rights. Defendants' actions caused and set in motion a series of events they knew or reasonably should have known would cause others to intrude upon the Chinook Center and its members' constitutional rights.

179.    The deficiencies of the affidavit and application for search warrant would have been apparent to any reasonably well-trained officer applying clearly established law.

180.    Defendants disregarded known or obvious consequences of their actions, exhibiting deliberate indifference to the Chinook Center's rights.

181.    As a direct and proximate cause of Defendants' actions, the Chinook Center's constitutional rights were violated, entitling it to relief.

182.    The unconstitutional search warrant targeting Chinook Center was obtained by CSPD as part of a custom, policy, and practice of CSPD and the City of Colorado Springs.  That custom and policy was a cause of the violation of Chinook Center's rights.

183.    The Chinook Center is entitled to an award of actual, nominal and/or punitive damages from each of the Defendants responsible for the violation of its rights, including Defendants Steckler, Otero, and Colorado Springs; an award of reasonable attorney's fees and costs; and such additional relief as the Court deems just.

A 060

### THIRD CLAIM FOR RELIEF

**Unlawful Search in Violation of Stored Communications Act,**
**18 U.S.C. 2707, for violations of 18 U.S.C. 2703(a), (b), and (d)**
**(Chinook Center against Detective Steckler, Detective Otero, City of Colorado Springs)**

184.    The allegations of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

185.    A search warrant or court order requiring the disclosure of a wire or electronic communication by a third-party provider of electronic communications services or remote computing services such as Facebook must comply with the Stored Communications Act.

186.    Facebook is an electronic communication service and a provider of remote computing services which provides users with the ability to send or receive and store wire or electronic communications.

187.    The private Facebook messages of the Chinook Center, its members, and associates were wire and electronic communications stored for less than 180 days through Facebook's system.  The warrant to require disclosure of these private messages failed to comply with the requirements of 18 U.S.C. § 2703(a).  It also failed to comply with the requirements of 18 U.S.C. § 2703(b).

188.    The warrant ordering disclosure of the contents of these private Facebook messages was not supported by an affidavit establishing probable cause.  The affidavit seeking the warrant fails to identify a specific crime for which evidence is sought.  Nor does it show that evidence of crime will be found in the records sought.  Thus, the warrant for these private messages fails to comply with the requirements of either 18 U.S.C. § 2703(a) or 2703(b)(1)(A).

A 061

189.     The warrant also fails to comply with the requirements of 18 U.S.C. 2703(b)(1)(B).  To comply with that subsection, the government must provide prior notice to the subscriber or customer.  Here, the warrant affirmatively forbids such prior notice.  In addition, the affidavit fails to identify "specific and articulable faces showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation," as required by 18 U.S.C. § 2703(d).   Thus, the warrant fails to comply with the requirements of 18 U.S.C. § 2703(b)(1)(B)(ii), which references and incorporates the standard of § 2703(d).

190.     The deficiencies of the affidavit and application for search warrant, and the warrant that issued, would have been apparent to any reasonably well-trained officer applying clearly established law.

191.     Chinook Center did not receive prior notice of the warrant seeking disclosure of its Facebook account information, including the contents of its and its members' wire or electronic communications.  Pursuant to the warrant, Facebook provided the defendants with Chinook Center's records, information, and electronic files, including private confidential communications.

192.     Chinook Center did not consent to such disclosure of the records of its Facebook account or the contents of its or its members' wire or electronic communications.

193.     The agents of the City of Colorado Springs who sought and approved and served the warrant for Chinook Center's Facebook records acted with a knowing and intentional state of mind.   Pursuant to 18 U.S.C. § 2702, Chinook Center is a person aggrieved by the violations of the Stored Communications detained in this Complaint.

194.    Chinook Center suffered actual damages, for which it seeks nominal

compensation as well as punitive damages.

## FOURTH CLAIM FOR RELIEF

**Deprivation of Rights in Violation of Colo. Const. art. II §§ 7, 10, 24;
C.R.S. § 13-21-131**

**(Armendariz against Defendant Summey, Defendant Ditzler)**

195.    The allegations of the foregoing paragraphs are incorporated by reference as

though fully set forth herein.

196.    Article II, section 7 of the Colorado Constitution forbids unreasonable searches

and seizures and protects the privacy of Ms. Armendariz's files. Articles II, section 10 of the

Colorado Constitution protects the freedom of speech. Article II, section 24 of the Colorado

Constitution protects the right to assemble for the common good, and to apply to those invested

with the powers of government for redress of grievances by petition or remonstrance. Article II

sections 7, 10, and 24 of the Colorado Constitution create binding obligations on Defendant

Summey and Ditzler and the City of Colorado Springs.

197.    The Colorado Constitution places heightened limitations on searches and

seizures that target protected expression and associations.

198.    The search and seizure of Ms. Armendariz's devices and digital data violated

article II sections 7, 10, and 24 of the Colorado Constitution.

199.    Defendant Summey drafted and submitted the applications for search warrants

that subjected Ms. Armendariz, or caused Ms. Armendariz to be subjected to, a search and

seizure of her devices and digital data that deprived her of individual rights secured by article II

sections 7, 10, and 24 of the Colorado Constitution.

A 063

200.    Detective Ditzler reviewed and approved the applications for search warrants that subjected Ms. Armendariz, or caused Ms. Armendariz to be subjected to, a search and seizure of her devices and digital data that deprived her of individual rights secured by article II sections 7, 10, and 24 of the Colorado Constitution.

201.    Defendants Summey and Ditzler failed to intervene to prevent the deprivation of Ms. Armendariz's individual rights secured by article II sections 7, 10, and 24 of the Colorado Constitution.

202.    Ms. Armendariz is entitled to an award of damages against Defendants Summey and Ditzler for the deprivation of her individual rights secured by article II, sections 7, 10, and 24 of the Colorado Constitution.

203.    The City of Colorado Springs retains copies of Ms. Armendariz's digital devices that were the fruits of its agents' unlawful search and seizure.

204.    The City of Colorado Springs has no legitimate interest in retaining copies of Ms. Armendariz's digital devices, which were seized in purported connection with a now-ceased criminal prosecution.

205.    Ms. Armendariz is entitled to an equitable award of injunctive relief ordering the City of Colorado Springs to return or destroy all copies of Ms. Armendariz's digital devices in its possession and/or control.

A 064

## FIFTH CLAIM FOR RELIEF

**Deprivation of Rights in Violation of Colo. Const. art. II §§ 7, 10 & 24;
C.R.S. § 13-21-131
(Chinook Center against Detective Steckler, Detective Otero)**

206.     The allegations of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

207.     Article II, section 7 of the Colorado Constitution forbids unreasonable searches and seizures and protects the privacy of Chinook Center's and its members' electronic communications on its private Facebook page. Articles II, section 10 of the Colorado Constitution protects the freedom of speech. Article II, section 24 of the Colorado Constitution protects the right to assemble for the common good, and to apply to those invested with the powers of government for redress of grievances by petition or remonstrance. Article II sections 7, 10, and 24 of the Colorado Constitution create binding obligations on Detectives Steckler and Otero.

208.     The Colorado Constitution places heightened limitations on searches and seizures that target protected expression and associations.

209.     The search and seizure of Chinook Center's Facebook messages violated article II sections 7, 10, and 24 of the Colorado Constitution.

210.     Detective Steckler drafted and submitted the application for search warrant that subjected the Chinook Center, or caused the Chinook Center to be subjected to, a search and seizure of its and private messages that deprived it and its members of rights secured by article II sections 7, 10, and 24 of the Colorado Constitution.

211.    Detective Otero reviewed and approved the application for search warrant that subjected the Chinook Center, or caused the Chinook Center to be subjected to, a search and seizure of its and private messages that deprived it and its members of rights secured by article II sections 7, 10, and 24 of the Colorado Constitution.

212.    Detectives Steckler and Otero failed to intervene to prevent the deprivation of the Chinook Center and its members' rights secured by article II sections 7, 10, and 24 of the Colorado Constitution.

213.    The Chinook Center is entitled to an award of nominal damages against Detectives Steckler and Otero for the deprivation of its rights and the rights of its members secured by article II, sections 7, 10, and 24 of the Colorado Constitution.

## SIXTH CLAIM FOR RELIEF

### Injunctive Relief under U.S. Const. Amends. I & IV; 5 U.S.C. § 702

### (Armendariz against Federal Bureau of Investigation)

214.    The allegations of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

215.    On information and belief, Defendant Federal Bureau of Investigation retains copies of electronic files obtained from Ms. Armendariz's digital devices.  The Federal Bureau of Investigation's failure to return or destroy the materials constitutes a continuing and ongoing seizure that violates the Fourth Amendment.

216.    Ms. Armendariz is entitled to an award of injunctive relief under the Constitution of the United States and 5 U.S.C. § 702 ordering the return or destruction of Ms. Armendariz's digital data.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Armendariz respectfully requests the following relief:

a.     An award of damages pursuant to 42 U.S.C. § 1983 and C.R.S. § 13-21-131 against Defendants Summey, Ditzler, and the City of Colorado Springs;

b.     An award of punitive damages against Defendants Summey and Ditzler;

c.     An injunction ordering the City of Colorado Springs and Federal Bureau of Investigation to return or delete the electronic copies of Ms. Armendariz's digital devices and the files extracted from them;

d.     An award of costs and attorney's fees pursuant to 42 U.S.C. § 1988 and C.R.S. § 13-21-131(3); and

e.     Such additional relief as the Court deems just.

WHEREFORE, the Chinook Center respectfully requests the following relief:

a.     An award of actual, nominal, and/or punitive damages against Defendants Steckler, Otero, and the City of Colorado Springs pursuant to 42 U.S.C. § 1983 and C.R.S. § 13-21-131;

b.     An award of actual damages in a nominal amount and punitive damages against Detective Steckler, Detective Otero, and the City of Colorado Springs pursuant to 18 U.S.C. § 2707(c);

c.     An award of costs and attorney's fees pursuant to 42 U.S.C. § 1988 and C.R.S. § 13-21-131(3); and

d.     Such additional relief as the Court deems just.

The Chinook Center and Ms. Armendariz hereby demand a trial by jury.

Dated: August 18, 2023

Respectfully submitted,


*s/ Jacqueline V. Roeder*
Jacqueline V. Roeder
Theresa Wardon Benz

51

A 067

Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
303-892-9400
jackie.roeder@dgslaw.com
theresa.benz@dgslaw.com
elise.reecer@dgslaw.com

*In cooperation with the ACLU Foundation of Colorado*

Timothy R. Macdonald
Sara R. Neel
Annie I. Kurtz
Mark Silverstein
American Civil Liberties Union Foundation of Colorado
303 E. 17th Ave., Suite 350, Denver, CO 80203
720-402-3151
tmacdonald@aclu-co.org
sneel@aclu-co.org
akurtz@aclu-co.org
msilverstein@aclu-co.org

*Attorneys For Plaintiffs*

A 068

# EXHIBIT 1

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:    270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **2002 Legacy Ridge View, Apartment ▇▇** **City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency: Colorado Springs Police Department    Agency Number: 21-29044 | Division:**Criminal**    Ctrm: |

## SEARCH WARRANT

Whereas Task Force Officer Daniel Summey, 5156 has made an Application and Affidavit, which is attached and expressly incorporated into this Search Warrant in reference, to the Court for the issuance of a Search Warrant, and; Whereas the application is in proper form and probable cause is found for the issuance of a Search Warrant to search the person(s) and or premises specified in the application.

THEREFORE, the applicant, and any other peace officer into whose hands this Search Warrant shall come, is hereby ordered, with the necessary and proper assistance, to enter and search within the next fourteen (14) days the person(s), property, and/or premise(s), location and any appurtenances thereto, description of which is:

**2002 Legacy Ridge View, Apartment ▇▇, City of Colorado Springs, County of El Paso, State of Colorado; 2002 Legacy Ridge View, Apartment ▇▇, is a two story townhome in a row of townhomes. The exterior front is red brick on the first floor, and tan siding on the second floor.  The front door is green in color, with the numbers ▇▇, black in color, above the front door**

The following person(s), property or thing(s) will be searched for and, if found, seized:

### See Attachment B which is hereby incorporated in reference

as probable cause has been found to believe that it:

- ☐ Is stolen or embezzled, or
- ☐ Is designed or intended for use in committing a criminal offense, or
- ☒ Is or has been used as a means of committing a criminal offense, or
- ☐ Is illegal to possess, or
- ☒ Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or
- ☐ Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or
- ☐ Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or
- ☐ That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

Furthermore, a copy of this warrant is to be left with the person whose premises or person is searched along with a list of any and all items seized at the time of its execution. If said person cannot be located or identified, a copy of the search Warrant and the list of property seized shall be left at the place from which the property was taken.

Further, a return shall be promptly made to this Court upon the execution of this Search Warrant along with an inventory of any property taken. The property seized shall be held in some safe place until the Court shall further order.

Sworn and subscribed before me this day Friday, August 6, 2021 at ⟨2:05⟩ AM / ⟨PM⟩

Magistrate / Judge: _____

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | ▲COURT USE ONLY▲ |
|---|---|
| Court Address:    270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | |
| 2002 Legacy Ridge View, Apartment ▪, City of Colorado Springs, County of El Paso, State of Colorado | Case/File Number: |
| Agency: Colorado Springs Police Department    Agency Number: 21-29044 | Division:**Criminal**    Ctrm: |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

The undersigned, a peace officer as defined in 16-2.5.101, Colorado Revised Statutes 1973, as amended, being first duly sworn on oath moves the Court to issue a Warrant to search those person(s), property, and/or premises known as:

**2002 Legacy Ridge View, Apartment ▪, City of Colorado Springs, County of El Paso, State of Colorado; 2002 Legacy Ridge View, Apartment ▪, is a two story townhome in a row of townhomes. The exterior front is red brick on the first floor, and tan siding on the second floor. The front door is green in color, with the numbers ▪, black in color, above the front door**

The undersigned states that there exists probable cause to believe that the following person, property or thing(s) to be searched for, and if found, seized will be found on the aforementioned person(s) and or premises and are described as follows:

### See Attachment B which is hereby incorporated in reference

The grounds for the seizure of said person(s), property or thing(s) are that probable cause exists to believe that it:

☐    Is stolen or embezzled, or

☐    Is designed or intended for use as a means of committing a criminal offense, or

☒    Is or has been used as a means of committing a criminal offense, or

☐    Is illegal to possess, or

☒    Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or

☐    Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or

☐    Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or

☐    That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

The facts submitted in support of this application are set for in the accompanying attachment designated as **Attachment A** which is attached hereto and made a part hereof.

Applicant: _Daniel Summey 5156_

Daniel Summey 5156

Employed By:   Colorado Springs Police Department

Position:   Task Force Officer

Sworn and subscribed before me this day <u>Friday, August 6, 2021</u>.

Magistrate / Judge: _____

A 070

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:    270 South Tejon Street<br>                      Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of<br><br>**2002 Legacy Ridge View, Apartment█ City of Colorado Springs, County of El Paso, State of Colorado** | ▲COURT USE ONLY▲<br><br>Case/File Number: |
| Agency Name: Colorado Springs Police Department     Agency Number: 21-29044 | Division:**Criminal**     Ctrm: |

## ATTACHMENT A

The following affidavit is made in the support of a request for the issuance of a search warrant for: **2002 Legacy Ridge View, Apartment █, City of Colorado Springs, County of El Paso, State of Colorado; 2002 Legacy Ridge View, Apartment █, is a two story townhome in a row of townhomes. The exterior front is red brick on the first floor, and tan siding on the second floor. The front door is green in color, with the numbers █ black in color, above the front door**.

Your Affiant, Task Force Officer Daniel Summey, 5156, a Police Officer for the Colorado Springs Police Department and so employed for over 6 years and now currently assigned to the FBI Joint Terrorism Task Force, state under oath that I have personal knowledge of the following facts:

Your Affiant is a sworn peace officer with the Colorado Springs Police Department (CSPD), and has served as a Task Force Officer in the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF) since August of 2020, and served as a CSPD Intelligence Detective from 2018 to 2020.  Your Affiant has served as a Bias-Motivated Crimes subject matter expert for CSPD since 2018 and has collected information regarding Bias-Motivated Crimes and Groups in the Colorado Springs metro area.  Your Affiant has also provided in-person training and information to outside agencies in the Colorado Springs metro area regarding white supremacists and hate groups.  Your Affiant has participated in investigations regarding illegal protest activity and has become familiar with people who are regularly involved in illegal protest activity, including members and associates of the Chinook Center.

On 7/31/2021, the City of Colorado Springs hosted a celebration for the 150th anniversary of the founding of the city.  In the leadup to the event, the Chinook Center, a local umbrella organization that is the central hub for multiple political activist groups and their members, posted on social media that a march was planned regarding housing in Colorado Springs. Please see the following snip of social media discussing a march:

Supervisor Initials / IBM: _RAD 2145_

Attachment A
Page 2 of 15



During the ensuing march, protesters immediately and intentionally walked in the roadway and obstructed traffic. Several protesters were arrested, to include Jonathan Christiansen DOB: ████ 1978 and Shaun Walls DOB: ████ 1980, both of whom are affiliated with the Chinook Center. Protesters involved in the march wore similar clothing, to include red shirts with the words "Housing is a Human Right". Several of the protesters carried red flags. Your Affiant would note that the red flag is significant in that it is a radical political symbol, and designates this march, which ultimately was declared unlawful, as revolutionary and radical in nature. The website Age of Revolution states – "Today the red flag has, predominantly, become a symbol of socialism and communism. Its European origins date back to the Middle Ages, when a red streamer flying from the mast of a warship signalled a willingness to fight to the death, with no surrender. But its radical political roots lie firmly in the Age of Revolution." Information can be found at https://ageofrevolution.org/200-object/red-flag/.

On 8/4/2021, Your Affiant was tasked with assisting Gold Hill property detectives with identifying a female that attempted to strike a uniformed Colorado Springs Police Department Officer, Anthony Spicuglia 4925, with a bicycle as he ran to assist other police officers who were attempting to take Shaun Walls into custody. Walls was actively resisting officers who were attempting to take him into custody. Your Affiant observed Officer Thane Gilmore's 1697 bodycam, which offered a good view of the attempted assault on Officer Spicuglia by the unidentified female.

Your Affiant observed Officer Spicuglia enter the recording from the left side of the screen at a sprint, heading towards officers who were attempting to take Shaun Walls into custody. A female was riding up the street on a bicycle in the path Officer Spicuglia was taking to get to Walls. As Officer Spicuglia approached the female, she got off the bicycle and threw it at Officer Spicuglia with the clear intent to strike him with it, as he was sprinting at and by her. Officer Spicuglia was very nearly struck by the bicycle and had to slow his sprint towards other officers and jump to avoid the bicycle as it hit the ground in front of him. Had the bicycle made contact with

A 072

Officer Spicuglia as he was running by at a sprint, it almost certainly would have caused bodily injury to him, possibly even serious bodily injury, as he was sprinting on a paved roadway while wearing bulky, heavy police gear. The bodycam video clearly showed the female showed intent to strike Officer Spicuglia with the bicycle as he sprinted by, as there was no logical reason for her to exit the bicycle and throw it at an officer as he was sprinting at and by her. There were no other protesters around the female, and therefore no one she could have been attempting to throw or roll the bicycle to.

Your Affiant understands that sometimes one or two angles may not tell the whole story, so your Affiant located footage from a CSPD Unmanned Aerial Surveillance (UAS) drone. The UAS captured a good view of the attempted assault from above the crowd. Your Affiant noted that the unidentified female was far away from all other protesters and had no logical reason to exit the bicycle and throw it directly at Officer Spicuglia as he sprinted past. Your Affiant again noted Officer Spicuglia had to slow his sprint towards officers in need of assistance taking an actively resisting subject into custody, and jump, to avoid the bicycle the female attempted to strike him with.

Your Affiant snipped several images of the female from Officer Gilmore's bodycam. Your Affiant also snipped a photo of the bicycle from Officer Spicuglia's bodycam and a photo of the incident taken by the UAS. Please see the following photos with relevant information about each photo:





The above photos are taken from Officer Gilmore's bodycam, and captures the moment the suspect attempted to assault Officer Spicuglia as he was sprinting by to assist Officers with taking Walls into custody.

Attachment A
Page 4 of 15



The photo above, taken from Officer Gilmore's bodycam footage, shows the female directly after she attempted to assault Officer Spicuglia. Please note that she has a unique cat tattoo on her right hip/thigh area. The cat appears to be black in color with uncolored eyes. Also note the handlebars on the bicycle are straight with white on the grips.

Attachment  A
Page 5 of 15



The above photo was taken from Officer Gilmore's bodycam.  Please note the gray Nike shoes with white soles, and the purple colored bicycle used by the suspect to attempt to assault Officer Spicuglia. Please also note the helmet, which is light blue in color at the top, and gets darker towards the bottom of the helmet.

Attachment  A
Page 6 of 15



The above photo is taken from Officer Gilmore's bodycam.  Please note again the unique cat tattoo with uncolored
eyes, and the light blue helmet that gets darker towards the bottom of the helmet.

Attachment A
Page 7 of 15



The above photo was taken from Officer Spicuglia's bodycam and shows the bicycle just as it was thrown down in front of him while he was running towards the crowd to assist officers with taking Shaun Walls' into custody. Please note the bicycle is purple in color and has handlebars with white grips on them. There is a green sticker on the front of the bicycle just below where the handlebars connect to the bicycle.

Attachment A
Page 8 of 15



The above photo was taken from CSPD UAS footage as the attempted assault on Officer Spicuglia occurred. Please note the black police SUV in the bottom right of the image. The female with light colored helmet, standing by the downed bicycle, with Officer Spicuglia directly beside the suspect and the bicycle, is the suspect in this case. Please note, there is no one she could have been attempting to pass the bicycle to in the area.

Your Affiant began to look into open source social media to determine if the female is an associate of Jonathan Christiansen or Shaun Walls, as she was participating in a protest that was advertised by the Chinook Center and Shaun Walls. Your Affiant discovered Shaun Walls is associated with a person on Facebook who uses the name J.R. Armendariz (Facebook ID: 10103081958348051). Your Affiant checked local law enforcement databases and discovered CSPD has had contact with Jacqueline Rose Armendariz DOB: ▮1987 SSN: ▮9489 in the past. Your Affiant checked the driver's license photo of Jacqueline Rose Armendariz, and discovered the driver's license photo matches the female in the photos on J.R. Armendariz's Facebook profile, which means this is likely a Facebook profile owned by Jacqueline Rose Armendariz.



Please see above snip from Facebook of Shaun Walls promoting the protest.

A 078

Attachment A
Page 9 of 15

Your Affiant located the following photo on Armendariz's open Facebook profile, dated July 3rd, 2021. Please note the helmet that is light blue in color and gets darker towards the bottom. This helmet appears to be the same helmet worn by the suspect that attempted to assault Officer Spicuglia.



On Armendariz's Facebook page, Your Affiant located a photo from RISE Southeast showing Armendariz standing in front of a camera dated July 19th, 2021. Your Affiant noted Armendariz is on multiple photos associated to RISE Southeast. The photo below shows Armendariz wearing gray Nike shoes with a white sole that appear to be the same shoes worn by the suspect that attempted to assault Officer Spicuglia. Your Affiant would also note that tattoos are visible on Armendariz's hip in the same location the suspect has a tattoo.



Attachment A
Page 10 of 15

The following photo is also from RISE Southeast, and is located on Armendariz's Facebook profile. Armendariz appears to be again wearing the same shoes and helmet as the female that attempted to assault Officer Spicuglia. Please note the bicycle Armendariz is holding is purple in color with straight handlebars that are white on the grips. The bicycle also has a green sticker just below where the handlebars connect to the bicycle. The bicycle appears to be the same bicycle the female attempted to assault Officer Spicuglia with.



Attachment A
Page 11 of 15

Your Affiant located a twitter handle for Armendariz. Pease see the following photo from
@JRArmendarizTwitter, which also appears to be owned by Armendariz. Please note the same cat tattoo with
uncolored eyes on her right hip/thigh area. This tattoo matches the tattoo location and shape of the tattoo on the
suspect that attempted to assault Officer Spicuglia:



Attachment  A
Page 12 of 15

The female in the bodycam snips and Jacqueline Armendariz appear to be the same person due to multiple similarities.

First, the female that attempted to assault Officer Spicuglia has a tattoo of a cat head with unfilled eyes on her right hip.  Multiple bodycam snips and photos from social media show it appears to be the same tattoo located on the same spot on the body as Jacqueline Armendariz.

Second, Armendariz can be seen on a bicycle in the photo from RISE Southeast.  The bicycle is purple with straight white colored handlebars.  The bicycle also has a green sticker located just below the area where the handlebars connect to the bicycle.  The bicycle used in the attempted assault on Officer Spicuglia appears to be the same bicycle.

Third, the female that attempted to assault Officer Spicuglia has on gray Nike shoes with white soles.  Armendariz can be seen wearing what appears to be the same shoes on her open source social media.

Fourth, the helmet worn by the suspect matches the helmet worn by Armendariz in multiple photos on her social media.

Your Affiant also discovered a professional Twitter profile for Armendariz, in which she appears to appeal for social justice causes.  Please see photo of Armendariz's Twitter profile:



In her profile, Armendariz references "yt supremacy".  Your Affiant was unfamiliar with the term "yt", and using dictionary.com found the following definition for "yt folx":

"The *yt* in *yt folx* appears to stem from the slang term *whitey*. *Whitey*, evidenced since at least the 1830s, has been used by black Americans to disparage white people, especially implying oppression and racial discrimination. By at the early 2000s online, *whitey* was spelled phonetically at *yt*."  The information can be found at https://www.dictionary.com/e/slang/yt-folx/.

A 082

Attachment  A
Page 13 of 15

It appears Armendariz uses the term "yt" in an attempt to disparage white people, showing her disdain for white people.  Please note that the officer she attempted to assault was a white male.

Your Affiant located a LinkedIn account for Armendariz, which shows she is active politically in Colorado Springs and Pueblo.  Please see the following photos of the LinkedIn page:



**Jacqueline Armendariz**

Regional Representative at U.S. Senate

Greater Colorado Springs Area · 322 connections

Join to Connect

 U.S. Senate

 New Mexico State University

## About

Bilingual public servant and communications professional powered by a passion for accountability, integrity and building community. Diverse spectrum of skills and knowledge gained through more than a decade of media and government career experience, including as an award-winning journalist for metro dailies with circulations of up to 88,880 and publishing work cited by outlets such as The Rachel Maddow Show and The Texas Tribune. Experience creating strategic plans and partnerships in the community, addressing concerns and questions from the public and delivering effective, engaging presentations to a wide array of audiences and stakeholders.

A 083

Attachment  A
Page 14 of 15

## Experience



**U.S. Senate**

2 years 10 months

**Regional Representative**

Jul 2020 - Present · 1 year 2 months

Pueblo, Colorado, United States

**Military & Veterans Constituent Advocate**

Nov 2018 - Jul 2020 · 1 year 9 months

Colorado Springs, Colorado Area



**Legislative Aide**

City of Colorado Springs

Dec 2017 - Nov 2018 · 1 year

City Hall Council Office



**Independent Contractor**

Various

Dec 2016 - Oct 2017 · 11 months

Colorado Springs, Colorado Area

Contractor/Associate with:

Walker Schooler District Management

Colorado Springs Independent

MiNDFUL

New Age Medical

Nike Factory Store

Your Affiant further discovered Armendariz is a Regional Representative for US Senator Michael Bennet. Armendariz is listed as a Regional Representative for Bennet on legistorm.com, which appears to be a website that tracks congressional staffers and has other information on the US Government.  Armendariz's information can be found at: https://www.legistorm.com/person/Jacqueline_R_Armendariz/313120.html.

Your Affiant would note Armendariz appears to be very active politically, and the protest that turned unlawful on 7/31/2021 was politically motivated.

Your Affiant located a podcast, wherein Jacqueline Armendariz from the RISE movement discussed the need for affordable housing in the southeast part of town.  The podcast was dated 7/28/2021.  During the interview with Armendariz, she stated she lives at the intersection of Circle and Monterey and discussed an apartment complex being gutted near her.  That podcast can be found at: http://studio809radio.com/the-renewal-of-southeast-colorado-springs-with-jacqueline-armendariz-from-rise-and-catherine-duarte-from-the-city-of-colorado-springs/.

A 084

Attachment A
Page 15 of 15

At this time, Your Affiant believes Armendariz is in violation of the following Colorado Revised Statutes:

18-2-101 Criminal Attempt - Second Degree Assault – Class 5 Felony (F5)

Your Affiant is familiar with illegal protest activity and people who protest as part of a group. Due to Your Affiant's training and experience, Your Affiant knows people who engage in illegal protest activity frequently carry their phones with them to take photos of their activity and message others who are also participating in illegal protest activity. Your Affiant also knows that phones regularly track the location of their user and can show where a person is at a given date and time. Your Affiant is also aware that people regularly attach their phones to their computers, and use their computers to back up their phones, or transfer photos from their phones to save space on their phones. Your Affiant knows that people store digital data on numerous devices, to include tablets, thumb drives, and external hard drives.

Your Affiant had a check of local utilities conducted and discovered Armendariz has an active utilities at 2002 Legacy Ridge View, apartment ███ located in the city of Colorado Springs, county of El Paso, State of Colorado. Your Affiant also had Armendariz's driver's license (issued on 5/6/2017) and vehicle registration (Updated in June 2021) checked, and found 2002 Legacy Ridge View, apartment ███ listed there as well. This corroborates the information Armendariz provided on the podcast dated 7/28/2021, as the intersection of South Circle Drive and Monterey Road is approximately 300 feet from Armendariz's apartment building.

Your Affiant is requesting permission to search 2002 Legacy Ridge View, apartment ███ and to seize the blue helmet seen being worn by the suspect, the red shirt reading "Housing is a Human Right", grey Nike shoes with white soles, the purple bicycle with green sticker located just below where the handlebars attach, and all digital media storage devices, to include phones, computers, tablets, thumb drives, external hard drives, or any other item that holds digital media. Your Affiant also requests permission to photo the tattoo on Armendariz's right hip/thigh.

The above mentioned items would be material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia

Your Affiant is a Task Force Officer with the FBI and regularly works joint investigations with CSPD and the FBI. As such, Your Affiant requests permission for the FBI to be allowed to participate in the search.

Therefore, based on the above described facts and circumstances, Your Affiant respectfully moves the Court for issuance of a search warrant for search of those person(s), property and/or premises known as: **2002 Legacy Ridge View, Apartment ███ City of Colorado Springs, County of El Paso, State of Colorado; 2002 Legacy Ridge View, Apartment ███, is a two story townhome in a row of townhomes. The exterior front is red brick on the first floor, and tan siding on the second floor. The front door is green in color, with the numbers ███, black in color, above the front door.**

Applicant: _Daniel Summey 5156_

Daniel Summey 5156

Employed By: Colorado Springs Police Department

Position: Task Force Officer

This affidavit was sworn and subscribed before me this day, Friday, August 6, 2021.

Magistrate / Judge: _____

A 085

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | ▲COURT USE ONLY▲ |
|---|---|
| Court Address:   270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | |
| **2002 Legacy Ridge View, Apartment█ City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency Name: Colorado Springs Police Department    Agency Number: 21-29044 | Division:**Criminal**    Ctrm: |

## ATTACHMENT B

The following person(s), property and/or premise(s) will be searched for and, if found, seized:

- Blue helmet seen being worn by the suspect in attachment A.
- Red Shirt with "Housing is a Human Right" written on it, seen being worn by the suspect in attachment A
- Grey Nike shoes with white soles, seen being worn by the suspect in attachment A
- Purple bicycle with green sticker just below where the handlebars attach, used by the suspect as a weapon and seen in attachment A
- Digital media storage devices, to include phones, computers, tablets, thumb drives, and external hard drives found to be associated with Jacqueline Armendariz
- Photo of the cat tattoo with unfilled eyes located on Jacqueline Armendariz's right hip/thigh
- Indicia of ownership or occupancy to include but not limited to telephone bills, utility bills, letters of: **2002 Legacy Ridge View, Apartment█, located in the City of Colorado Springs, County of El Paso, State of Colorado**

NO OTHER ITEMS ARE SOUGHT FOR SEIZURE

Supervisor Initials / IBM: _____

A 086

# EXHIBIT 2

## RECEIVED

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | | AUG 3 0 2021 |
|---|---|---|
| Court Address:   270 South Tejon Street<br>Colorado Springs, Colorado 80903 | | |
| RE: Search Warrant of | | CLERKS OFFICE<br>▲COURT USE ONLY▲ |
| Black Seagate External Hard Drive Serial: NA87E7RW<br>Silver HP Laptop with unknown Serial<br>HP Elite 735G6 Computer Serial: 5CG00226VH<br>Motorla XT1687 cell phone with unknown serial<br>Apple iPhone A1660 with unknown serial<br>Samsung 9M-N97OU1 Serial: 35919710038638<br>Currently located at the Colorado Springs Police Department Police Operations Center,<br>located at 705 S Nevada Ave<br>; Located within: City of Colorado Springs, County of El Paso, State of Colorado | | Case/File Number:<br><br>21-2351 |
| Agency: Colorado Springs Police Department | Agency Number: 21-29044 | Division:**Criminal**   Ctrm: |

### SEARCH WARRANT

Whereas Task Force Officer Daniel Summey, 5156 has made an Application and Affidavit, which is attached and expressly incorporated into this Search Warrant in reference, to the Court for the issuance of a Search Warrant, and; Whereas the application is in proper form and probable cause is found for the issuance of a Search Warrant to search the person(s) and or premises specified in the application.

THEREFORE, the applicant, and any other peace officer into whose hands this Search Warrant shall come, is hereby ordered, with the necessary and proper assistance, to enter and search within the next fourteen (14) days the person(s), property, and/or premise(s), location and any appurtenances thereto, description of which is:

**Black Seagate External Hard Drive Serial: NA87E7RW**

**Silver HP Laptop with unknown Serial**

**HP Elite 735G6 Computer Serial: 5CG00226VH**

**Motorla XT1687 cell phone with unknown serial**

**Apple iPhone A1660 with unknown serial**

**Samsung 9M-N97OU1 Serial: 35919710038638**

**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**

**; Located within: City of Colorado Springs, County of El Paso, State of Colorado**

The following person(s), property or thing(s) will be searched for and, if found, seized:

### See Attachment B which is hereby incorporated in reference

as probable cause has been found to believe that it:

- ☐ Is stolen or embezzled, or
- ☐ Is designed or intended for use in committing a criminal offense, or
- ☐ Is or has been used as a means of committing a criminal offense, or
- ☐ Is illegal to possess, or
- ☒ Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or
- ☐ Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or
- ☐ Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or
- ☐ That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

A 087

Furthermore, a copy of this warrant is to be left with the person whose premises or person is searched along with a list of any and all items seized at the time of its execution. If said person cannot be located or identified, a copy of the search Warrant and the list of property seized shall be left at the place from which the property was taken.

Further, a return shall be promptly made to this Court upon the execution of this Search Warrant along with an inventory of any property taken. The property seized shall be held in some safe place until the Court shall further order.

Sworn and subscribed before me this day Friday, August 20, 2021 at _4:28_ AM / PM

Magistrate / Judge: _____

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:    270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **Black Seagate External Hard Drive Serial: NA87E7RW**<br>**Silver HP Laptop with unknown Serial**<br>**HP Elite 735G6 Computer Serial: 5CG00226VH**<br>**Motorla XT1687 cell phone with unknown serial**<br>**Apple iPhone A1660 with unknown serial**<br>**Samsung 9M-N97OU1 Serial: 359197100383638**<br>**Currently located at the Colorado Springs Police Department Police Operations Center,**<br>**located at 705 S Nevada Ave**<br>**; Located within: City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency: Colorado Springs Police Department        Agency Number: 21-29044 | Division:**Criminal**    Ctrm: |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

The undersigned, a peace officer as defined in 16-2.5.101, Colorado Revised Statutes 1973, as amended, being first duly sworn on oath moves the Court to issue a Warrant to search those person(s), property, and/or premises known as:

**Black Seagate External Hard Drive Serial: NA87E7RW**

**Silver HP Laptop with unknown Serial**

**HP Elite 735G6 Computer Serial: 5CG00226VH**

**Motorla XT1687 cell phone with unknown serial**

**Apple iPhone A1660 with unknown serial**

**Samsung 9M-N97OU1 Serial: 359197100383638**

**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**

**; Located within: City of Colorado Springs, County of El Paso, State of Colorado**

The undersigned states that there exists probable cause to believe that the following person, property or thing(s) to be searched for, and if found, seized will be found on the aforementioned person(s) and or premises and are described as follows:

### See Attachment B which is hereby incorporated in reference

The grounds for the seizure of said person(s), property or thing(s) are that probable cause exists to believe that it:

☐     Is stolen or embezzled, or

☐     Is designed or intended for use as a means of committing a criminal offense, or

☐     Is or has been used as a means of committing a criminal offense, or

☐     Is illegal to possess, or

☒     Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a
         statute of the State of Colorado, or

☐     Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute
         of the State of Colorado, or

☐     Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado
         under circumstances involving a serious threat to the public safety, or order, or to the public health, or

☐     That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful
         arrest order is outstanding.

The facts submitted in support of this application are set for in the accompanying attachment designated as
**Attachment A** which is attached hereto and made a part hereof.

A 089

Attachment B

Applicant: _Daniel Summey 5156_

Daniel Summey 5156

Employed By: Colorado Springs Police Department

Position: Task Force Officer

Sworn and subscribed before me this day <u>Friday, August 20, 2021</u>.

Magistrate / Judge: _____

A 090

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:   270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **Black Seagate External Hard Drive Serial: NA87E7RW**<br>**Silver HP Laptop with unknown Serial**<br>**HP Elite 735G6 Computer Serial: 5CG00226VH**<br>**Motorla XT1687 cell phone with unknown serial**<br>**Apple iPhone A1660 with unknown serial**<br>**Samsung 9M-N97OU1 Serial: 359197100383638**<br>**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**<br>**; Located within: City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency Name: Colorado Springs Police Department   Agency Number: 21-29044 | Division:**Criminal**   Ctrm: |

## ATTACHMENT A

The following affidavit is made in the support of a request for the issuance of a search warrant for: **Black Seagate External Hard Drive Serial: NA87E7RW**

**Silver HP Laptop with unknown Serial**

**HP Elite 735G6 Computer Serial: 5CG00226VH**

**Motorla XT1687 cell phone with unknown serial**

**Apple iPhone A1660 with unknown serial**

**Samsung 9M-N97OU1 Serial: 359197100383638**

**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**

**; Located within: City of Colorado Springs, County of El Paso, State of Colorado.**

Your Affiant, Task Force Officer Daniel Summey, 5156, a Police Officer for the Colorado Springs Police Department and so employed for over 6 years and now currently assigned to the FBI Joint Terrorism Task Force, state under oath that I have personal knowledge of the following facts:

Your Affiant is a sworn peace officer with the Colorado Springs Police Department (CSPD), and has served as a Task Force Officer in the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF) since August of 2020, and served as a CSPD Intelligence Detective from 2018 to 2020. Your Affiant has served as a Bias-Motivated Crimes subject matter expert for CSPD since 2018 and has collected information regarding Bias-Motivated Crimes and Groups in the Colorado Springs metro area. Your Affiant has also provided in-person training and information to outside agencies in the Colorado Springs metro area regarding white supremacists and hate groups. Your Affiant has participated in investigations regarding illegal protest activity and has become familiar with people who are regularly involved in illegal protest activity, including members and associates of the Chinook Center.

On 7/31/2021, the City of Colorado Springs hosted a celebration for the 150th anniversary of the founding of the city. In the leadup to the event, the Chinook Center, a local umbrella organization that is the central hub for multiple political activist groups and their members, posted on social media that a march was planned regarding housing in Colorado Springs. Please see the following snip on social media by the Chinook Center:

Supervisor Initials / IBM:

A 091

Attachment A
Page 2 of 24



Chinook Center
July 10 at 8:43 AM · ⊙

The Housing Crisis in this city can't be ignored any longer. We are going to March on July 31 and we'll also be distributing meals, personal items, and tents to our unhoused community members who bear the worst of the crisis daily. This affects us all! Greed got us this crisis - solidarity is the way we take the power back!
Keep your eye out as details emerge and save the date!



During the ensuing march, protesters immediately and intentionally walked in the roadway and obstructed traffic. Several protesters were arrested, to include Jonathan Christiansen DOB: ▉▉▉1978 and Shaun Walls DOB: ▉▉▉1980, both of whom are affiliated with the Chinook Center. Protesters involved in the march wore similar clothing, to include red shirts with the words "Housing is a Human Right". Several of the protesters carried red flags. Your Affiant would note that the red flag is significant in that it is a radical political symbol, and designates this march, which ultimately was declared unlawful, as revolutionary and radical in nature. The website Age of Revolution states – "Today the red flag has, predominantly, become a symbol of socialism and communism. Its European origins date back to the Middle Ages, when a red streamer flying from the mast of a warship signalled a willingness to fight to the death, with no surrender. But its radical political roots lie firmly in the Age of Revolution." Information can be found at https://ageofrevolution.org/200-object/red-flag/.

On 8/4/2021, Your Affiant was tasked with assisting Gold Hill property detectives with identifying a female that attempted to strike a uniformed Colorado Springs Police Department Officer, Anthony Spicuglia 4925, with a bicycle as he ran to assist other police officers who were attempting to take Shaun Walls into custody. Walls was actively resisting officers who were attempting to take him into custody. Your Affiant observed Officer Thane Gilmore's 1697 bodycam, which offered a good view of the attempted assault on Officer Spicuglia by the unidentified female.

Your Affiant observed Officer Spicuglia enter the recording from the left side of the screen at a sprint, heading towards officers who were attempting to take Shaun Walls into custody. A female was riding up the street on a bicycle in the path Officer Spicuglia was taking to get to Walls. As Officer Spicuglia approached the female, she got off the bicycle and threw it at Officer Spicuglia with the clear intent to strike him with it, as he was sprinting at and by her. Officer Spicuglia was very nearly struck by the bicycle and had to slow his sprint towards other officers and jump to avoid the bicycle as it hit the ground in front of him. Had the bicycle made contact with Officer Spicuglia as he was running by at a sprint, it almost certainly would have caused bodily injury to him, possibly even serious bodily injury, as he was sprinting on a paved roadway while wearing bulky, heavy police gear. The bodycam video clearly showed the female showed intent to strike Officer Spicuglia with the bicycle as he sprinted by, as there was no logical reason for her to exit the bicycle and throw it at an officer as he was

A 092

Attachment A
Page 3 of 24

sprinting at and by her. There were no other protesters around the female, and therefore no one she could have been attempting to throw or roll the bicycle to.

Your Affiant understands that sometimes one or two angles may not tell the whole story, so your Affiant located footage from a CSPD Unmanned Aerial Surveillance (UAS) drone. The UAS captured a good view of the attempted assault from above the crowd. Your Affiant noted that the unidentified female was far away from all other protesters and had no logical reason to exit the bicycle and throw it directly at Officer Spicuglia as he sprinted past. Your Affiant again noted Officer Spicuglia had to slow his sprint towards officers in need of assistance taking an actively resisting subject into custody, and jump, to avoid the bicycle the female attempted to strike him with.

Your Affiant snipped several images of the female from Officer Gilmore's bodycam. Your Affiant also snipped a photo of the bicycle from Officer Spicuglia's bodycam and a photo of the incident taken by the UAS. Please see the following photos with relevant information about each photo:





The above photos are taken from Officer Gilmore's bodycam, and captures the moment the suspect attempted to assault Officer Spicuglia as he was sprinting by to assist Officers with taking Walls into custody.

A 093

Attachment A
Page 4 of 24



The photo above, taken from Officer Gilmore's bodycam footage, shows the female directly after she attempted to assault Officer Spicuglia. Please note that she has a unique cat tattoo on her right hip/thigh area. The cat appears to be black in color with uncolored eyes. Also note the handlebars on the bicycle are straight with white on the grips.

Attachment A
Page 5 of 24



The above photo was taken from Officer Gilmore's bodycam. Please note the gray Nike shoes with white soles, and the purple colored bicycle used by the suspect to attempt to assault Officer Spicuglia. Please also note the helmet, which is light blue in color at the top, and gets darker towards the bottom of the helmet.

Attachment A
Page 6 of 24



The above photo is taken from Officer Gilmore's bodycam. Please note again the unique cat tattoo with uncolored eyes, and the light blue helmet that gets darker towards the bottom of the helmet.



The above photo was taken from Officer Spicuglia's bodycam and shows the bicycle just as it was thrown down in front of him while he was running towards the crowd to assist officers with taking Shaun Walls' into custody. Please note the bicycle is purple in color and has handlebars with white grips on them. There is a green sticker on the front of the bicycle just below where the handlebars connect to the bicycle.

Attachment A
Page 8 of 24



The above photo was taken from CSPD UAS footage as the attempted assault on Officer Spicuglia occurred. Please note the black police SUV in the bottom right of the image. The female with light colored helmet, standing by the downed bicycle, with Officer Spicuglia directly beside the suspect and the bicycle, is the suspect in this case. Please note, there is no one she could have been attempting to pass the bicycle to in the area.

Your Affiant began to look into open source social media to determine if the female is an associate of Jonathan Christiansen or Shaun Walls, as she was participating in a protest that was advertised by the Chinook Center and Shaun Walls. Your Affiant discovered Shaun Walls is associated with a person on Facebook who uses the name J.R. Armendariz (Facebook ID: 10103081958348051). Your Affiant checked local law enforcement databases and discovered CSPD has had contact with Jacqueline Rose Armendariz DOB: ████ 1987 SSN: ████ 9489 in the past. Your Affiant checked the driver's license photo of Jacqueline Rose Armendariz, and discovered the driver's license photo matches the female in the photos on J.R. Armendariz's Facebook profile, which means this is likely a Facebook profile owned by Jacqueline Rose Armendariz.



Please see above snip from Facebook of Shaun Walls promoting the protest.

Attachment A
Page 9 of 24

Your Affiant located the following photo on Armendariz's open Facebook profile, dated July 3rd, 2021. Please note the helmet that is light blue in color and gets darker towards the bottom. This helmet appears to be the same helmet worn by the suspect that attempted to assault Officer Spicuglia.



On Armendariz's Facebook page, Your Affiant located a photo from RISE Southeast showing Armendariz standing in front of a camera dated July 19th, 2021. Your Affiant noted Armendariz is on multiple photos associated to RISE Southeast. The photo below shows Armendariz wearing gray Nike shoes with a white sole that appear to be the same shoes worn by the suspect that attempted to assault Officer Spicuglia. Your Affiant would also note that tattoos are visible on Armendariz's hip in the same location the suspect has a tattoo.



The following photo is also from RISE Southeast, and is located on Armendariz's Facebook profile. Armendariz appears to be again wearing the same shoes and helmet as the female that attempted to assault Officer Spicuglia. Please note the bicycle Armendariz is holding is purple in color with straight handlebars that are white on the

Attachment A
Page 10 of 24

grips. The bicycle also has a green sticker just below where the handlebars connect to the bicycle. The bicycle appears to be the same bicycle the female attempted to assault Officer Spicuglia with.



Your Affiant located a twitter handle for Armendariz. Pease see the following photo from @JRArmendarizTwitter, which also appears to be owned by Armendariz. Please note the same cat tattoo with uncolored eyes on her right hip/thigh area. This tattoo matches the tattoo location and shape of the tattoo on the suspect that attempted to assault Officer Spicuglia:



The female in the bodycam snips and Jacqueline Armendariz appear to be the same person due to multiple similarities.

First, the female that attempted to assault Officer Spicuglia has a tattoo of a cat head with unfilled eyes on her right hip. Multiple bodycam snips and photos from social media show it appears to be the same tattoo located on the same spot on the body as Jacqueline Armendariz.

Second, Armendariz can be seen on a bicycle in the photo from RISE Southeast. The bicycle is purple with straight white colored handlebars. The bicycle also has a green sticker located just below the area where the handlebars connect to the bicycle. The bicycle used in the attempted assault on Officer Spicuglia appears to be the same bicycle.

Third, the female that attempted to assault Officer Spicuglia has on gray Nike shoes with white soles. Armendariz can be seen wearing what appears to be the same shoes on her open source social media.

Fourth, the helmet worn by the suspect matches the helmet worn by Armendariz in multiple photos on her social media.

Attachment A
Page 12 of 24

Your Affiant also discovered a professional Twitter profile for Armendariz, in which she appears to appeal for social justice causes. Please see photo of Armendariz's Twitter profile:



In her profile, Armendariz references "yt supremacy". Your Affiant was unfamiliar with the term "yt", and using dictionary.com found the following definition for "yt folx":

"The *yt* in *yt folx* appears to stem from the slang term *whitey*. *Whitey*, evidenced since at least the 1830s, has been used by black Americans to disparage white people, especially implying oppression and racial discrimination. By at the early 2000s online, *whitey* was spelled phonetically at *yt*." The information can be found at https://www.dictionary.com/e/slang/yt-folx/.

It appears Armendariz uses the term "yt" in an attempt to disparage white people, showing her disdain for white people. Please note that the officer she attempted to assault was a white male.

Your Affiant located a LinkedIn account for Armendariz, which shows she is active politically in Colorado Springs and Pueblo. Please see the following photos of the LinkedIn page:

A 102

Attachment  A
Page 13 of 24



**Jacqueline Armendariz**

Regional Representative at U.S. Senate

Greater Colorado Springs Area · 322 connections

**Join to Connect**

U.S. Senate

New Mexico State University

## About

Bilingual public servant and communications professional powered by a passion for accountability, integrity and building community. Diverse spectrum of skills and knowledge gained through more than a decade of media and government career experience, including as an award-winning journalist for metro dailies with circulations of up to 88,880 and publishing work cited by outlets such as The Rachel Maddow Show and The Texas Tribune. Experience creating strategic plans and partnerships in the community, addressing concerns and questions from the public and delivering effective, engaging presentations to a wide array of audiences and stakeholders.

Attachment A
Page 14 of 24

## Experience



**U.S. Senate**
2 years 10 months

**Regional Representative**
Jul 2020 – Present · 1 year 2 months
Pueblo, Colorado, United States

**Military & Veterans Constituent Advocate**
Nov 2018 - Jul 2020 · 1 year 9 months
Colorado Springs, Colorado Area



**Legislative Aide**
City of Colorado Springs
Dec 2017 - Nov 2018 · 1 year
City Hall Council Office

**Independent Contractor**
Various
Dec 2016 - Oct 2017 · 11 months
Colorado Springs, Colorado Area
Contractor/Associate with:
Walker Schooler District Management
Colorado Springs Independent
MiNDFUL
New Age Medical
Nike Factory Store

Your Affiant further discovered Armendariz is a Regional Representative for US Senator Michael Bennet. Armendariz is listed as a Regional Representative for Bennet on legistorm.com, which appears to be a website that tracks congressional staffers and has other information on the US Government. Armendariz's information can be found at: https://www.legistorm.com/person/Jacqueline_R_Armendariz/313120.html.

Your Affiant would note Armendariz appears to be very active politically, and the protest that turned unlawful on 7/31/2021 was politically motivated.

Your Affiant located a podcast, wherein Jacqueline Armendariz from the RISE movement discussed the need for affordable housing in the southeast part of town. The podcast was dated 7/28/2021. During the interview with Armendariz, she stated she lives at the intersection of Circle and Monterey and discussed an apartment complex being gutted near her. That podcast can be found at: http://studio809radio.com/the-renewal-of-southeast-colorado-springs-with-jacqueline-armendariz-from-rise-and-catherine-duarte-from-the-city-of-colorado-springs/.

At this time, Your Affiant believes Armendariz is in violation of the following Colorado Revised Statutes:

18-2-101 Criminal Attempt - Second Degree Assault – Class 5 Felony (F5)

A 104

Attachment A
Page 15 of 24

Your Affiant is familiar with illegal protest activity and people who protest as part of a group. Due to Your Affiant's training and experience, Your Affiant knows people who engage in illegal protest activity frequently carry their phones with them to take photos of their activity and message others who are also participating in illegal protest activity. Your Affiant also knows that phones regularly track the location of their user and can show where a person is at a given date and time. Your Affiant is also aware that people regularly attach their phones to their computers, and use their computers to back up their phones, or transfer photos from their phones to save space on their phones. Your Affiant knows that people store digital data on numerous devices, to include tablets, thumb drives, and external hard drives. On 8/19/2021, Armendariz contacted Your Affiant by phone, and requested I contact her employer's office and speak with her supervisor. On 8/19/2021, I contacted Amy Friedman by phone at ▇▇▇▇▇▇▇▇ Friedman confirmed Armendariz attended the protest in her personal capacity, and said Armendariz sent her digital media of the protest. Your Affiant requested the videos from Friedman, who stated Senator Bennet's Office and lawyers would look into it.

Your Affiant had a check of local utilities conducted and discovered Armendariz has an active utilities account at 2002 Legacy Ridge View, apartment ▇, located in the city of Colorado Springs, county of El Paso, State of Colorado. Your Affiant also had Armendariz's driver's license (issued on 5/6/2017) and vehicle registration (Updated in June 2021) checked, and found 2002 Legacy Ridge View, apartment ▇ listed there as well. This corroborates the information Armendariz provided on the podcast dated 7/28/2021, as the intersection of South Circle Drive and Monterey Road is approximately 300 feet from Armendariz's apartment building.

On 8/6/2021, Your Affiant authored an arrest warrant for Armendariz for Criminal Attempt – Second Degree Assault, and a search warrant for her residence, 2002 Legacy Ridge View, apartment ▇. Your Affiant met with the Honorable Judge Miles at the El Paso County Courthouse on 8/6/2021, where Judge Miles granted the search and arrest warrant.

On 8/18/2021, at approximately 0750 hours, Armendariz was taken into custody outside of her residence. A search of her residence was completed, and the blue helmet, red shirt with "Housing is a Human Right", gray Nike shoes with white soles, a black Seagate External Hard Drive serial number NA87E7RW, a silver HP laptop with unknown serial number, an HP Elite 735G6 serial number 5CG00226VH, a Motorola XT1687, an Apple iPhone A1660 with unknown serial number, and a blue Samsung Galaxy cell phone serial number 359197100383638, and indicia of occupancy were seized. Your Affiant would note there are stickers on the HP Elite 735G6 denoting it is a work computer, and is property of US Senator Michael Bennet's Office, and is US Senate Property. Your Affiant is aware that this is a work computer given to Armendariz, as Your Affiant spoke with a staff member of Senator Bennet's Office over the phone. The work computer was found in Armendariz's possession during a search of her residence. In Your Affiant's training and experience, people often engage in personal communications with their work devices even though it is oftentimes not allowed by company policy.

Your Affiant saw a bicycle in the back of Armendariz's vehicle, visible from outside the vehicle through the windows, that was purple in color with a green sticker below where the handlebars attach to the vehicle. The bicycle clearly matched the bicycle that was used in the attempted assault on Officer Spicuglia. Your Affiant had the vehicle secured and towed to the CSPD Impound Lot.

On 8/18/2021, Your Affiant authored a search warrant to search Armendariz's vehicle, a 2014 Blue Nissan Rogue VIN: ▇▇▇▇▇▇▇▇4726 with Colorado license plate ▇▇431 and seize the bicycle, along with indicia of ownership of the vehicle. On 8/18/2021, Your Affiant met with the Honorable Judge Rotolo at the El Paso County Courthouse, where Judge Rotolo reviewed and granted the search warrant.

On 8/18/2021, at approximately 1120 hours, Your Affiant arrived at the CSPD Impound Lot, where the vehicle was located. Your Affiant searched the vehicle, and seized the bicycle, found to be a purple Diamondback Topanga bicycle with serial number I4H09771. Your Affiant observed the bicycle had damage to the outside of the left handlebar. The damage appeared to be scratch marks consistent with being thrown down hard on the ground. Your Affiant would note that it appears on bodycam that the bicycle used in the attempted assault on Officer Spicuglia struck the ground hard on the left outside of the handlebars.

Attachment A
Page 16 of 24

Your Affiant is familiar with digital technology, and is aware that people regularly attach their phones to their computers, and use their computers to back up their phones, or transfer photos from their phones to save space on their phones. Your Affiant knows that people store digital data on numerous devices, to include tablets, thumb drives, and external hard drives. In Your Affiant's training and experience, people who commit illegal activity in furtherance of the ideology or goals of anarchist or anti-government groups share this information with others though messaging applications, emails, or texts in order to take credit for their actions and gain standing or notoriety in such groups. In Your Affiant's training and experience, people who engage in illegal activity in furtherance of the ideology or goals of anarchist or anti-government groups take videos or photos of themselves or others engaged in illegal activity, or engaged in group activities leading up to the illegal activity. Your Affiant is aware the cell phones regularly track location information of the user and can oftentimes place a person at a location if given a date and time.

Your Affiant is aware that Chinook Center is an anarchist or anti-government organization as mentioned in the previous paragraph, and a leader of the Chinook Center, namely Shaun Walls, has called for violence against police officers and their families in the past, and has discussed revolution and uprisings against the government. Please see social media snips from Shaun Walls calling for violence against police officers and their families, revolution against the government, and riots:



**Shaun Walls**
14 hrs

•••

Riots work (.)

Rioting is more effective than following the process and always has been

The process isn't set up to bring about changing anything. You have to break the process

 39

21 Comments

A 106

Attachment A
Page 17 of 24

 **Shaun Walls**
Yesterday at 6:19 AM

A lot of us never did shit to them.. They're so used to ppl being scared of them I bet they'd be beside themselves if their houses started getting shot up randomly

# The police have NEVER pepper sprayed the Ku Klux Klan, and never shot rubber bullets at them. Someone explain. I'll wait.

 35                                    6 Comments  11 Shares

A 107

Attachment A
Page 18 of 24

 **Shaun Walls**
3 hrs ●

This is what will make them think twice since losing their job is off the table.



THEBLAZE.COM
**More than 36 street gangs in Chicago reportedly vow to shoot on sight any cop who has a weapon drawn in public**

A 108

 **Shaun Walls**
17 hrs

Good cops believe they are the actual Law itself this is why they treat ppl however they want. And he has other good cops to back him up not tell him to back up.

But they don't think about you pulling up to their house the next day . bet CSPD better think twice because they terrorize ppl where they live everyday.. Life has taught me over and over It's no fun when the rabbit got the gun.

Watch the oohhhhh "be careful" comments lol keep that shit to yourself.. I know exactly what I said and so do they



2,919 Views

**Jay Moody**
17 hrs

!!!SPREAD THE WORD!! Ladies and Gents! Now you see why we do what we do! So lets stop talking about blacks killing blacks! Look at this mess 😕 😕 😕 Wayment the fact that the cops dont care about being recorded is crazy 🤐 🤐 🤐 sickness ARREST THE COPS!!!! Spread the word!!!! ALL THE COPS!!!!



**Shaun Walls**
52 mins · 🌐                                                          ...

Who's next





**Trash Syndicate**                                      👍 Like Page
12 hrs · 🌐

Wisconsin Department of Corrections Building  Kenosha WI

M CJ TV

---

**Shaun Walls**                                                    ...
23 hrs · 🌐

Here's why you cant tell me voting changes shit.. Especially when you're telling me a cop being the VP is the right answer.

I'm telling y'all there won't be not a damn thing changing until this shit gets burnt or blown tf up.
Cops aren't going to suddenly change and switch up how it's being played until every one of them needs to hurry home to protect their families when they do this shit.

Kill three of their wives or kids anywhere in the nation and watch the shit stop. Magically.
Tired of tap dancing around what's a threat and what's not these mfs is killing us for free and then still going to Walmart in the same city got to be fuckin kidding me.

In a war the logistics lines are evaluated and destroyed. The only thing feeding that system is the people that still go to be cops. Might as well stop trying to "fix" the system and trick it into reversing its self , takes its fuel away

Attachment A
Page 21 of 24



**Shaun Walls**
21 hrs

I just realized the fear these police put in y'all got you thinking I'm scared too. When's the last time you looked me in the face and talked to me?

You're trippin like a mf bro. I left my fear somewhere and forgot where it's at already ..got me fucked up.

The revolution has come, off the pigs, time to pick up the guns..
We repeated that shit and meant every last word of it. Come see

https://youtu be/Fe4RVOw3Cdk



👍 Like        💬 Comment        ↪ Share

👍😆 15

Your Affiant would note that Walls actively resisted arrest, and it appears Armendariz attempted to assault a uniformed police officer at protest march that was sponsored by Chinook Center that turned unlawful. Your Affiant would note there appears to be a close relationship that exists between Walls and Armendariz, wherein they are friends on social media, Armendariz attended an event that Walls promoted on social media, and she attempted to assault an officer who was attempting to take Walls into custody. Your Affiant is aware that along with Shaun Walls, the previously mentioned Jonathan Christiansen and his wife Samantha Christiansen DOB: ▮▮▮▮ 1978, are leaders of the Chinook Center, and opened the Chinook Center. This is made evident by a social media post from Shaun Walls on the next page:

A 111

Attachment A
Page 22 of 24



Shaun Walls is with Jon Crustyansen and Sam Roberts Chrischeeansen.
July 13 🕓

We're coming up on our first year with the Chinook Center... this commercial we shot just before getting the space was coordinated by the men's soccer team at CC where they raised halla money for us before we even opened.

This is the day I had a chance to take a quick nap back in the action to appreciate what we were doing and realizing all the shit we got into since then is only the first year 😂 😂 😂 I love what our community has created and I can't wait to celebrate our one... See More

520 raised for Chinook Center
1 person donated.                    Donate

Shaun Walls
July 13 2020 🕓
Had to document Sam actually talking in front of a camera.. She's dope if she wanted she could make people pay her to talk.
Chinook Center OG 👊

Your Affiant would note that the above post, wherein Walls is with "Jon Crustyansen" and "Sam Roberts Chrischeeansen and references opening the Chinook Center, shows the connection between Walls and Jon and Sam Christiansen, and that they were the ones that opened the Chinook Center.  Jon Crustyansen (FBID: 1075987819) and Sam Roberts Chrischeeansen (FBID: 677499237) are accounts that, due to the numerous photos of both Jon and Sam Christiansen on both pages, appear to be owned by Jon and Sam Christiansen.

Your Affiant is aware that the Chinook Center, and Chinook Center member groups, have promoted other protests that turned violent in the past, namely the Pulpit Rock protest where numerous activist groups and their members unlawfully protested outside of CSPD Officer Van't Land's residence on the anniversary of Van't Land shooting and killing De'Von Bailey.  During that protest, numerous protesters showed up armed, and several were arrested after pointing their weapons at people who were driving through the neighborhood, attempting to get to their respective homes.

Your Affiant is aware that Armendariz appeared in an episode of Just COS, which is hosted by Jon Christiansen and Shaun Walls, that was posted to YouTube on August 16, 2020, seen at https://www.youtube.com/watch?v=E8n_-dcRsac

The Episode is titled Episode Lucky 13, and it contains discussion from Jon Christiansen and Shaun Walls about the Pulpit Rock Protest.  Christiansen initially states that MOVE (Note that Chinook Center lists MOVE as a member organization on their website) and Empowerment Solidarity Network were the organizers, but later numerous context clues provided by Walls and Christiansen show that they also helped plan the protest.  Note that

A 112

Attachment A
Page 23 of 24

at the 5:16 mark of the video, Walls states, "We were very well organized", and went on to state, "We got our message across." At the 5:35 mark, Jon Christiansen states, "We had decided it was ok for people to bring long guns, um, because we knew that there were some threats out there." This statement shows that Jon Christiansen played a role in okaying protesters bringing firearms to the protest, and therefore had a hand in the planning of the protest. Those firearms, which by his own words were okayed by Christiansen, were later used to menace citizens driving through the neighborhood, and several arrests were made. This shows a pattern of protest activity that has turned illegal associated with the Chinook Center and Chinook Center member organizations.

At the 8:13 mark, Armendariz introduces herself to the audience, providing her name as Jacqueline Armendariz. Armendariz appearing on Just COS shows her connection to the activist community, and her closeness with Christiansen and Walls.

Your Affiant is seeking permission to search the digital devices recovered from Armendariz's person and residence, , a black Seagate External Hard Drive serial number NA87E7RW, a silver HP laptop with unknown serial number, an HP Elite 735G6 serial number 5CG00226VH, a Motorola XT1687, an Apple iPhone A1660 with unknown serial number, and a blue Samsung Galaxy cell phone serial number 359197100383638, to seize any photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation. This time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer.

Your Affiant is aware that Shaun Walls began posting about "Housing is a Human Right" on 6/5/2021 and has provided a snip of that post below. Your Affiant believes this is likely the time that planning for the unlawful protest began.

 **Shaun Walls**
June 5 · ⊘

As you get yourself together this morning for this beautiful weather don't forget that you live in a city where human beings are forced to sleep in fields under tents with their kids.. a city where you most definitely will have to step over or around a human being sleeping on the concrete sidewalk in the middle of the day. And don't forget today's the 5th.. late fees start today -that's the punishment capitalists apply when you don't have enough of their money on time. Have a great day guys 😬
#HousingForAll #NOW

https://www.facebook.com/Colorado-Springs-Housing-4-All-Coalition-109577171298115/



 Colorado Springs Housing 4 All Coalition          👍 Like

⭕⭕😊 22

A 113

Attachment A
Page 24 of 24

Your Affiant is also requesting permission to perform a key word search of the devices for the following words:

Police, officer, cop, pig, bike, bicycle, attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Shaun, Walls, as these terms would be relevant to the investigation regardless of the time period in which they occurred.

The above mentioned items would be material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia.

Your Affiant is a Task Force Officer with the FBI and regularly works joint investigations with CSPD and the FBI. As such, Your Affiant requests permission for the FBI to be allowed to participate in the search.

Therefore, based on the above described facts and circumstances, Your Affiant respectfully moves the Court for issuance of a search warrant for search of those person(s), property and/or premises known as: **Black Seagate External Hard Drive Serial: NA87E7RW**

**Silver HP Laptop with unknown Serial**

**HP Elite 735G6 Computer Serial: 5CG00226VH**

**Motorla XT1687 cell phone with unknown serial**

**Apple iPhone A1660 with unknown serial**

**Samsung 9M-N97OU1 Serial: 359197100383638**

**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**

**; Located within: City of Colorado Springs, County of El Paso, State of Colorado.**

Applicant: _Daniel Summey 5156_

Daniel Summey 5156

Employed By:  Colorado Springs Police Department

Position:  Task Force Officer

This affidavit was sworn and subscribed before me this day Friday, August 20, 2021.

Magistrate / Judge: _____

A 114

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:    270 South Tejon Street<br>                      Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **Black Seagate External Hard Drive Serial: NA87E7RW**<br>**Silver HP Laptop with unknown Serial**<br>**HP Elite 735G6 Computer Serial: 5CG00226VH**<br>**Motorla XT1687 cell phone with unknown serial**<br>**Apple iPhone A1660 with unknown serial**<br>**Samsung 9M-N97OU1 Serial: 359197100383638**<br>**Currently located at the Colorado Springs Police Department Police Operations Center,**<br>**located at 705 S Nevada Ave**<br>**; Located within: City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency Name: Colorado Springs Police Department     Agency Number: 21-29044 | Division:**Criminal**    Ctrm: |
| **ATTACHMENT B** | |

The following person(s), property and/or premise(s) will be searched for and, if found, seized:

- Photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation. This time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer.
- key word search of the devices for the following words:
  Police, officer, cop, pig, bike, bicycle, attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Crustyansen, Chrischeeansen, Shaun, Walls, as these terms would be relevant to the investigation regardless of the time period in which they occurred.

NO OTHER ITEMS ARE SOUGHT FOR SEIZURE

Supervisor Initials / IBM: _____

A 115

Page: 118    Date Filed: 08/21/2024    Document: 28    Appellate Case: 24-1201

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | RECEIVED |
|---|---|
| Court Address:  270 South Tejon Street<br>Colorado Springs, Colorado 80903 | AUG 0 3 2021 |
| RE: Search Warrant of | ▲COURT USE ONLY▲<br>CLERK'S OFFICE |
| **Facebook, Inc**<br>**1601 Willow Road, Menlo Park, CA 94025** | Case/File Number: |
| **Target Identifier: https://www.facebook.com/chinookcenter** | 21-2156 |
| Agency: Colorado Springs Police Department   Agency Number: 21-28345 | Division:**Criminal**   Ctrm: |

## SEARCH WARRANT

Whereas Detective B. K. Steckler, 2771 has made an Application and Affidavit, which is attached and expressly incorporated into this Search Warrant in reference, to the Court for the issuance of a Search Warrant, and; Whereas the application is in proper form and probable cause is found for the issuance of a Search Warrant to search the person(s) and or premises specified in the application.

THEREFORE, the applicant, and any other peace officer into whose hands this Search Warrant shall come, is hereby ordered, with the necessary and proper assistance, to enter and search within the next fourteen (14) days the person(s), property, and/or premise(s), location and any appurtenances thereto, description of which is:

**Facebook, Inc, 1601 Willow Road, Menlo Park, CA 94025, Target Identifier:**
**https://www.facebook.com/chinookcenter**

The following person(s), property or thing(s) will be searched for and, if found, seized:

**See Attachment B which is hereby incorporated in reference**

as probable cause has been found to believe that it:

- ☐ Is stolen or embezzled, or
- ☐ Is designed or intended for use in committing a criminal offense, or
- ☐ Is or has been used as a means of committing a criminal offense, or
- ☐ Is illegal to possess, or
- ☒ Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or
- ☐ Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or
- ☐ Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or
- ☐ That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

Furthermore, a copy of this warrant is to be left with the person whose premises or person is searched along with a list of any and all items seized at the time of its execution. If said person cannot be located or identified, a copy of the search Warrant and the list of property seized shall be left at the place from which the property was taken.

Further, a return shall be promptly made to this Court upon the execution of this Search Warrant along with an inventory of any property taken. The property seized shall be held in some safe place until the Court shall further order.

AUG 0 3 2021

Sworn and subscribed before me this day _____ at _1400_ AM (PM)

~~Magistrate~~ / Judge: _____

A 116

Page: 119   Date Filed: 08/21/2024   Document: 28   Appellate Case: 24-1201

| | |
|---|---|
| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
| Court Address:  270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of<br><br>**Facebook, Inc**<br>**1601 Willow Road, Menlo Park, CA 94025**<br><br>**Target Identifier: https://www.facebook.com/chinookcenter** | ▲COURT USE ONLY▲<br><br>Case/File Number: |
| Agency: Colorado Springs Police Department       Agency Number: 21-28345 | Division:**Criminal**      Ctrm: |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

The undersigned, a peace officer as defined in 16-2.5.101, Colorado Revised Statutes 1973, as amended, being first duly sworn on oath moves the Court to issue a Warrant to search those person(s), property, and/or premises known as:

**Facebook, Inc, 1601 Willow Road, Menlo Park, CA 94025, Target Identifier:**
**https://www.facebook.com/chinookcenter**

The undersigned states that there exists probable cause to believe that the following person, property or thing(s) to be searched for, and if found, seized will be found on the aforementioned person(s) and or premises and are described as follows:

### See Attachment B which is hereby incorporated in reference

The grounds for the seizure of said person(s), property or thing(s) are that probable cause exists to believe that it:

- ☐ Is stolen or embezzled, or
- ☐ Is designed or intended for use as a means of committing a criminal offense, or
- ☐ Is or has been used as a means of committing a criminal offense, or
- ☐ Is illegal to possess, or
- ☒ Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or
- ☐ Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or
- ☐ Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or
- ☐ That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

The facts submitted in support of this application are set for in the accompanying attachment designated as **Attachment A** which is attached hereto and made a part hereof.

Applicant:  *B. K. S. #2771*
B. K. Steckler 2771

Employed By:  Colorado Springs Police Department

Position:  Detective

Sworn and subscribed before me this day  AUG 03 2021  .

~~Magistrate~~ / Judge:  _____

A 117

Page: 120     Date Filed: 08/21/2024     Document: 28     Appellate Case: 24-1201

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:  270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **Facebook, Inc**<br>**1601 Willow Road, Menlo Park, CA 94025**<br><br>**Target Identifier: https://www.facebook.com/chinookcenter** | Case/File Number: |
| Agency Name: Colorado Springs Police Department     Agency Number: 21-28345 | Division:**Criminal**     Ctrm: |

## ATTACHMENT A

The following affidavit is made in the support of a request for the issuance of a search warrant for: **Facebook, Inc, 1601 Willow Road, Menlo Park, CA 94025, Target Identifier: https://www.facebook.com/chinookcenter**.

Your Affiant, Detective B. K. Steckler, 2771D, who has been employed for the past seventeen years as a sworn police officer for the Colorado Springs Police Department. Your affiant's current assignment is working as an investigator within the Colorado Springs Police Department's Gold Hill Investigations Unit.

On 08/02/21, your affiant was contacted by Lieutenant M. Chacon, 2300, who asked if your affiant would research a tip regarding a Facebook post that was posted after arrest were made for Obstructing Passage or Assembly, and Resisting, Interference with a Public Official on South Tejon Street just south of East Fountain Boulevard on 07/31/21 at approximately 1137 hours. Your affiant is aware South Tejon Street just south of East Fountain Boulevard is located in the City of Colorado Springs, County of El Paso, and State of Colorado.

On 07/31/21 in the morning hours, Colorado Springs Police Officers were working in the Colorado Springs Downtown area for the "COS 150: Downtown Celebration." The event included a parade route through the downtown commercial district of Colorado Springs and included a festival following the parade.

At approximately 1137 hours, officers were summoned by Lieutenant Chacon to the area of South Tejon Street, just south of East Fountain Boulevard in response to a group of approximately 60 protestors illegally marching northbound up South Tejon Street, blocking vehicle traffic in the process. Officers arrived and formed a line in the road to block the path of the protestors. The protestors turned eastbound on East Mill Street in an apparent attempt to move around the police line. Officers repositioned their police line to block the protestors from moving northbound up South Nevada Avenue. The group was led by a black male with a bald head and wearing a red shirt with camouflage shorts. The male was carrying a wooden stick that was approximately four feet in length, that he utilized as a walking stick. Lieutenant Chacon gave numerous verbal warnings to the group to inform them it was illegal to march in the roadway and they needed to immediately exit the roadway to the sidewalk or face arrest. The announcements were made with a bullhorn megaphone and could be heard clearly. The protestors continued to block both northbound and southbound lanes of South Nevada Avenue. The male with the bald head and wearing the red shirt and camouflage shorts extended his middle finger toward the police line. Lieutenant Chacon ordered the arrest of the male who was later identified as Mr. Shaun Eugen Walls DOB ▮▮▮▮▮▮▮ Prior to the arrest of Mr. Walls, the protestors turned back toward South Tejon Street by walking through the Nevada Auto Sales car lot located between South Nevada Avenue and South Tejon Street.

Officers attempted to arrest Mr. Walls in the area of South Tejon Street and East Fountain Boulevard on the east sidewalk. Mr. Walls was actively resisting the officers attempts to control him by remaining on his feet and attempting to pull away from officers. Officers were eventually able to affect the arrest of Mr. Walls.

On 08/02/21, an anonymous tip was received regarding a Facebook post from 07/31/21 under the name of Shaun Walls. The post was from 07/31/21 at 10:39 P.M. and stated, "Now it's fun... it was work before.. I could whoop all them pigs and they felt it too. I laid down so we could keep fighting with purpose. You can watch or

Supervisor Initials / IBM: _(signature)_

A 118

help idgaf. I'm going to #Fuck12." The profile for the post was https://www.facebook.com/profile.php?id=100008489040279.

Your affiant completed a search warrant for the Facebook profile under the name of Shaun Walls and it was presented to the Honorable Judge D. Peacock. Judge Peacock signed the warrant, and it was served to Facebook, Inc on 08/02/21.

On 08/03/21, your affiant became aware of two more Facebook profiles that had bearing on this case. The first profile was provided by the same anonymous who stated a profile under the name of Nicholas Crutcher had a Facebook account that had pictures and videos from the protest and included some photographs of Mr. Walls being taken into custody by Colorado Springs Police officers. The profile was https://facebook.com/sir.n.crutcher.

On 08/03/21 at approximately 1015 hours, Detective J. Granillo, 3876, contacted me and stated a second profile was under the name of the Chinook Center was located in which the protest was organized under the events tab. The profile for the Chinook Center was https:www.facebook.com/chinookcenter. I went to the site and was able to see details regarding a "March for Housing" set for 07/31/21 and stating the rally point was Dorchester Park, located at 1130 South Nevada Avenue.

Your affiant believes the information gained from the two Facebook profiles will be material evidence in this case. It is your affiant's experience people involved in illegal demonstrations use social media to organize planned events. It is your affiant's belief the demonstration was organized prior to 07/31/21.

Your Affiant has checked and verified that the service for the target identified as https://www.facebook.com/chinookcenter is provided by Facebook, Inc . Your Affiant has received training in conducting investigations involving social networking and cellular communications service providers such as Facebook, Inc. Your Affiant has personal knowledge that Facebook, Inc will accept service of Search Warrants issued from other states and will comply with orders of the Court to provide records as requested pursuant to provisions of the United States Electronics Communications Privacy Act, 18 U.S.C. § 2703.

Your affiant would respectfully request that pursuant to the Stored Communications Act, Title 18 USC 2703(c), specific and articulable facts have been shown to reasonably believe the target https://www.facebook.com/chinookcenter, service provider, Facebook, Inc, for which records are being sought is of relevant interest in the offense shown.Therefore, based on the above described facts and circumstances, Your Affiant respectfully moves the Court for issuance of a search warrant for search of those person(s), property and/or premises known as: **Facebook, Inc, 1601 Willow Road, Menlo Park, CA 94025, Target Identifier: https://www.facebook.com/chinookcenter**.

Applicant: _____

B. K. Steckler 2771

Employed By: _Colorado Springs Police Department_

Position: _Detective_

This affidavit was sworn and subscribed before me this day _____ AUG 03 2021 _____.

Magistrate / Judge: _____

A 119

Page: 122

Date Filed: 08/21/2024

Document: 28

Appellate Case: 24-1201

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:   270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **Facebook, Inc**<br>**1601 Willow Road, Menlo Park, CA 94025** | Case/File Number: |
| **Target Identifier: https://www.facebook.com/chinookcenter** | |
| Agency Name: Colorado Springs Police Department          Agency Number: 21-28345 | Division:**Criminal**      Ctrm: |

## ATTACHMENT B

The following person(s), property and/or premise(s) will be searched for and, if found, seized:

All subscriber information tied to Facebook profile: https:www.facebook.com/chinookcenter to include names, phone numbers, and addresses.

All Facebook posts for profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.

All Facebook Messenger chats tied to Facebook profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.

All Facebook Events for profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.

---

Pursuant to 18 U.S.C. § 2705(b) this Court Orders that:  Facebook, Inc

The target user account(s) identified above; subscriber: ☐ MAY be notified

☒ MAY NOT be notified

Magistrate / Judge: _____

### NO OTHER ITEMS ARE SOUGHT FOR SEIZURE

Supervisor Initials / IBM: _____

A 120

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-01951-SKC-MDB

JACQUELINE ARMENDARIZ and
CHINOOK CENTER,

     Plaintiffs,

v.

CITY OF COLORADO SPRINGS,
DANIEL SUMMEY, in his individual capacity,
B.K. STECKLER, in his individual capacity,
JASON S. OTERO, in his individual capacity,
ROY A. DITZLER, in his individual capacity,
FEDERAL BUREAU OF INVESTIGATION, and
UNITED STATES OF AMERICA.

---

**ORDER ON MOTIONS TO DISMISS (DKTS. 49, 50, 51, 52)**

---

     Before the Court are four separate motions to dismiss the First Amended

Complaint (FAC). Dkts. 49, 50, 51, and 52.[1] The FAC alleges six claims for relief. Dkt.

12. The first Motion to Dismiss is by Defendants Daniel Summey, the Federal Bureau

of Investigation, and the United States. Their Motion (Dkt. 49) seeks dismissal of

Claims 1, 4, and 6. The second Motion to Dismiss is by Defendant Roy Ditzler. His

---

[1] The Court uses "Dkt. __" to refer to entries from the CM/ECF electronic docket. All
references to page numbers within an electronic docket entry are to the page number
found in the CM/ECF blue-font header.

1

Motion (Dkt. 50) seeks dismissal of Claims 1 and 4, and he also joins in the first Motion to Dismiss. The third Motion to Dismiss is brought by Defendants B.K. Steckler and Jason Otero. Their Motion (Dkt. 51) seeks dismissal of Claims 2, 3, and 5. The fourth and final Motion to Dismiss is brought by Defendant City of Colorado Springs. Its Motion (Dkt. 52) seeks dismissal of Claims 1, 2, and 3.

The Motions to Dismiss are all fully briefed. The Court requested additional briefing related to the individual law enforcement defendants' claims of qualified immunity. Dkt. 93. The Court has carefully considered the Motions and their full briefing, the additional briefing submitted in compliance with the Court's order, and relevant legal authorities. No hearing is necessary.

As explained in detail below, because the FAC fails to plausibly allege a constitutional violation, the First and Second Claims for Relief are barred against Defendants Summey, Ditzler, Steckler, and Otero, based on their qualified immunity. Those claims correspondingly fail against the City because there can be no municipal liability in the absence of a constitutional violation. The Third Claim for Relief against Defendants Steckler, Otero, and the City fails for similar reasons considering the FAC's failure to plausibly plead a constitutional violation regarding the Facebook Warrant. The Sixth Claim for Relief against Defendant FBI fails because the FAC does not plausibly plead a Fourth Amendment violation for the return of copies of records obtained with a lawful search warrant. And because all the federal law claims fail, the Court declines to exercise supplement jurisdiction over the state law claims—

2

Claims 4 and 5, and the Court additionally lacks subject matter jurisdiction over Claim 4 as asserted against the United States. The Motions to Dismiss are thus GRANTED.

### BACKGROUND

This background is taken from the well-pleaded factual allegations in the FAC, which the Court accepts as true and views in the light most favorable to Plaintiffs. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). The individual defendants are all law enforcement personnel employed by Defendant City of Colorado Springs. The Court sometimes refers to Defendants Summey, Steckler, Otero, and Ditzler as the Law Enforcement Defendants or LEDs. The case arises out of the LEDs' actions following a housing rights march in Colorado Springs on July 31, 2021. Dkt. 12 at ¶3. Plaintiff Chinook Center and several other groups helped organize the march. *Id.* Plaintiff Jacqueline Armendariz marched at the event, along with prominent Chinook Center members and other activists concerned about the local housing crisis. *Id.*

Ultimately, a commander from the Colorado Springs Police Department ordered arrests of prominent Chinook Center members for marching in the street even after they complied with police requests to move onto the sidewalk. *Id.* at ¶¶4, 40. The arrests included Chinook Center leader Shaun Walls who had been at the front of the march carrying a white flag with the Chinook Center logo. *Id.* at ¶41.

3

Plaintiff Armendariz was also eventually arrested. During the march, she was walking her bicycle in the bike lane near the front of the march when police tackled Walls, which she witnessed. *Id.* at ¶42. When she saw another officer in riot gear running towards her, she dropped her bike. *Id.* The bike landed between her and the officer. *Id.* The officer avoided the bike and continued toward the protestors. *Id.* The encounter was captured on multiple police body-worn cameras and a police department overhead drone. *Id.*

Although officers did not arrest Armendariz at the scene, they subsequently decided that dropping the bicycle in front of the officer was a case of felony attempted aggravated assault on a police officer, identified as Officer Anthony Spicuglia. *Id.* at ¶43. Defendant Summey was assigned the task of identifying the person who committed the alleged offense. *Id.* at ¶57. He pored over officer body worn camera, drone footage, and conducted multiple internet searches. *Id.* He found photographs and other information showing that Armendariz was the person who dropped her bike in front of the officer at the housing march. *Id.* He also found information indicating that she had been politically active and had some connection to the Chinook Center. *Id.*

On August 6, 2021, Summey submitted an affidavit to obtain an arrest warrant for Armendariz. *Id.* At the same time, he submitted, and Defendant Ditzler approved, an affidavit to obtain a search warrant to search Armendariz's home and seize the items they determined she was wearing or using at the housing march. *Id.* at ¶¶160,

4

162, 200; *see also* Dkt. 49-1. The warrant included the seizure of all "digital media storage devices" associated with Armendariz, including all "phones, computers, tablets, thumb drives, and external hard drives" found in her home. Dkt. 12 at ¶88; Dkt. 49-1 at p.18. When officers arrested Armendariz outside her home on August 18, 2021, they searched her home and seized items specified in the warrant. Dkt. 12 at ¶¶89-94.

On August 20, 2021, after conclusively determining that Armendariz was the person who dropped her bike in front of the officer at the rally, Summey submitted a second affidavit to obtain a warrant to search Armendariz's three cell phones, her two computers, and her external hard drive. *Id.* at ¶95. Summey's affidavit to search the devices repeated the litany of conclusions from his arrest affidavit and his affidavit to seize the devices, but also added more, including specified key words to use to search the electronic devices. *Id.* at ¶¶95-96. Ditzler reviewed and approved Summey's warrant application and affidavit for the search of Armendariz's devices. *Id.* at ¶¶160, 162, 200.

The police department enlisted the help of the FBI to search, seize, and copy Armendariz's electronic devices. *Id.* at ¶¶126-28. The FBI continues to retain copies of the data. *Id.* at ¶129. Armendariz ultimately reached a plea agreement for obstructing a peace officer, received a deferred judgment, and successfully served six months of unsupervised probation. Dkt. 12 at ¶119.

As for Plaintiff Chinook Center, a few days after the housing demonstration, police sought a search warrant for "All Facebook Messenger chats tied" to the Chinook Center Facebook page. Dkt. 12 at ¶45; *see also* Dkt. 51-1. Steckler drafted, and Otero reviewed and approved, the affidavit submitted to the state district court in support of the warrant. Dkt. 12 at ¶55. The warrant was served on Facebook, which complied with it. *Id.* at ¶56.

Plaintiffs bring six claims for relief, asserted as follows:

| PLAINTIFF | CLAIM | DEFENDANTS |
|---|---|---|
| Armendariz | **First Claim for Relief:** unlawful search and seizure in violation of First and Fourth Amendments; 42 U.S.C. § 1983 | Summey Ditzler City of Colorado Springs |
| Chinook Center | **Second Claim for Relief:** unlawful search and seizure in violation of First and Fourth Amendments; 42 U.S.C. § 1983 | Steckler Otero City of Colorado Springs |
| Chinook Center | **Third Claim for Relief:** unlawful search in violation of Stored Communications Act | Steckler Otero City of Colorado Springs |
| Armendariz | **Fourth Claim for Relief:** Deprivation of Rights in violation of Colo. Const. Art. II §§ 7, 10, 24; Colo. Rev. Stat. § 13-21-131 | United States[2] Ditzler |
| Chinook Center | **Fifth Claim for Relief:** Deprivation of Rights in violation of Colo. Const. Art. II §§ 7, 10, 24; Colo. Rev. Stat. § 13-21-131 | Steckler Otero |

---

[2] In a prior order (Dkt. 62), the Honorable Magistrate Judge Maritza Dominguez Braswell granted the United States' Motion to substitute itself as a party for Summey as to Claim 4.

6

| Armendariz | **Sixth Claim for Relief:** injunctive relief under First[3] and Fourth Amendments; 5 U.S.C. § 702 | FBI |

## LEGAL PRINCIPLES

### A.     Motions under Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While the Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (cleaned up).

The *Twombly/Iqbal* pleading standard requires courts to take a two-prong approach to evaluating the sufficiency of a complaint. *Iqbal*, 556 U.S. at 678–79. The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 678. The second prong requires the court to

---

[3] *See infra* n.9.

7

A 127

assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Conclusory allegations are those that express "a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary (11th ed. 2019); *see also Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (Conclusory allegations fail to apprise defendants "of the conduct that forms the basis of the charges against them."); *Morris v. Thaler*, 425 F. App'x 415, 421 (5th Cir. 2011) (Conclusory allegations are "vague, lacking in specifics, or amount to mere recitations of the relevant legal standards without any supporting factual narrative.").

**B.    Qualified Immunity**

Qualified immunity shields individual defendants in Section 1983 actions unless their conduct was unreasonable based on clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted). The court has discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

8

Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Raising the qualified immunity defense with a motion under Rule 12(b)(6) subjects the defendant to a more challenging standard than what applies at the summary judgment stage. *Id.* "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* (cleaned up). The court must consider whether the facts alleged in the complaint plausibly allege a violation of a constitutional right, and whether the right at issue was clearly established. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

And because the Section 1983 claims here involve allegations of unconstitutional search and seizure warrants obtained and executed by law enforcement, the Court may also consider the warrants and their supporting affidavits because these documents are alleged in the FAC, they are central to Plaintiff's Section 1983 claims, and no party has raised a dispute about their authenticity. *See N. Arapaho Tribe v. Becerra*, 61 F.4th 810, 814 (10th Cir. 2023). Any "factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir.1997).

"Qualified immunity applies equally to reasonable mistakes of law and fact." *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). When a defendant raises qualified immunity in defense of an unlawful search and seizure claim, courts examine whether the defendant violated clearly established law by determining whether the officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. *Id.* at 1141. This is known as "arguable probable cause." *Id.* A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed for the search or seizure. *Id.*

Further, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). But the inquiry doesn't end there. Qualified immunity should not be granted when the officer seeking the warrant misrepresented or omitted material facts to the judge rising to the level of a deliberate falsehood or reckless disregard for the truth. *Stonecipher*, 759 F.3d at 1142. Or, when it is obvious no reasonably competent officer would have concluded a warrant should issue, such as when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 565 U.S. at 547 (internal quotations and citation omitted). But the threshold to establish the latter is high— the Supreme Court has explained that in the ordinary course, "an officer cannot be

expected to question the magistrate [judge]'s probable-cause determination" because it is the judge's "responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* (quoting and citing *United States v. Leon*, 468 U.S. 897, 921 (1984)).

**ANALYSIS**

Plaintiffs sued Summey, Steckler, Otero, and Ditzler, each in their individual capacity for their respective roles in securing one or more of the warrants alleged in the FAC. The LEDs each claim qualified immunity on Plaintiffs' First and Fourth Amendment claims (Claims 1 and 2). The Court first addresses application of qualified immunity to the Fourth Amendment claims.

**A.     Qualified Immunity and the FAC's Fourth Amendment Claims**

**1.     Summey and the Armendariz Warrants**

The Court first considers whether the FAC plausibly alleges Summey violated a constitutional right by obtaining and executing Warrant 1 (home search and seizure) and Warrant 2 (device search and seizure). Because the Court finds the FAC fails to plausibly allege a constitutional violation respecting Summey and the Armendariz Warrants, he is entitled to qualified immunity.

The Fourth Amendment's warrant requirement provides "no Warrants shall issue, but upon probable cause," and a warrant must "particularly [describe] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The

11

warrant must "describe the things to be seized with sufficient particularity to prevent a 'general, exploratory rummaging in a person's belongings.'" *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The Fourth Amendment also requires "the scope of the warrant be limited to the specific areas and things for which there is probable cause to search." *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988).

Whether probable cause exists is a "flexible, common-sense standard, and no single factor or factors is dispositive." *United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018) (cleaned up). It "is not a high bar: It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up). Generally, a reviewing court should give great deference to a neutral judge's determination of probable cause who approved the warrant. *See United States v. Leon*, 468 U.S. 897, 914 (1984).

Probable cause exists only when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). There must be a "nexus . . . between suspected criminal activity and the place to be searched." *United States v. Mora*, 989 F.3d 794, 800 (10th Cir. 2021) (quoting *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009)). A finding of probable cause also considers the totality of the information in any affidavit attached to, and incorporated into, the warrant. *See United States v. Suggs*, 998 F.3d 1125, 1135 (10th Cir. 2021).

12

### a.    Violation of a Constitutional Right

The Court has examined Warrants 1 and 2 and Summey's supporting affidavits. *Eckert v. Dougherty*, 658 F. App'x 401, 411 n.1 (10th Cir. 2016) (taking judicial notice of warrant application and search warrant, even though they were not submitted by the plaintiff, to review a motion to dismiss based on qualified immunity); *Rathbun v. Montoya*, 628 F. App'x 988, 990 n.2 (10th Cir. 2015) (considering motion to dismiss based on qualified immunity and drawing facts from the search warrant and supporting affidavit referenced in the amended complaint). The Court finds the Armendariz Warrants have sufficient indicia of probable cause and particularity to support their issuance and execution.

Warrant 1 is a packet consisting of a completed Application and Affidavit for Search Warrant, Attachment A ("Affidavit 1"), and Attachment B which lists the items to be seized. Dkt. 49-1. According to Affidavit 1, Summey was investigating Armendariz for a violation of Colo. Rev. Stat. § 18-2-101, criminal attempt – second degree assault (a class five felony), for her alleged attempted assault of Officer Spicuglia with her bicycle. *Id.* at p.17. Summey was tasked with helping detectives identify "a female that attempted to strike [Officer Spicuglia] with a bicycle as he ran to assist other police officers who were attempting to take Shaun Walls into custody." *Id.* at p.4.

Warrant 1 sought entry into Armendariz's home to search and seize property that was or had "been used as a means of committing" the crime or that "[w]ould be

13

A 133

material evidence in a subsequent criminal prosecution[.]" *Id.* at 49-1 at pp.1, 2. More specifically, and in pertinent part, it sought the seizure of "Digital media storage devices, to include phones, computers, tablets, thumb drives, and external hard drives found to be associated with Jacqueline Armendariz." *Id.* at p.18.

Affidavit 1 describes Summey's observations of the alleged assault as seen from another officer's body camera and it contains multiple still photo images of the alleged assault from drones or other cameras. *Id.* at pp.4-10. The affidavit also describes Summey's identification of Armendariz through her active use of multiple social media sites, to include Facebook, a personal Twitter handle, a professional Twitter profile, and LinkedIn. *Id.* at pp. 11-15. Her Facebook post from July 3, 2021, includes what appears to be a "selfie" of Armendariz while wearing the same or similar bicycle gear she wore during the protest leading to her arrest. Dkt. 49 at p. 12; Dkt. 49-1 at p.11. The affidavit also describes her association with Shaun Walls, who was the individual Officer Spicuglia was running to arrest when Armendariz is alleged to have attempted to assault the officer with her bicycle. *Id.* at p.10.

The Court finds this information alone establishes probable cause for the search and seizure of the items listed in Warrant 1. As concerns Armendariz's digital devices that were the subject of Warrant 1, based on the evidence of her use of social media, her social media connection to Walls, the selfie she took and posted to Facebook days before the protest while out on her bike, and her other various posts referencing her social activism, it was reasonable for Summey to believe there was

14

probable cause that material evidence for use in a subsequent prosecution of the alleged crime would be found on those devices. *See Messerschmidt*, 565 U.S. at 1248-49 (noting the Fourth Amendment allows a search for evidence that will aid in a particular conviction such as evidence that helps to establish motive); *Andresen v. Maryland*, 427 U.S. 463, 483-84 (1976) (although a warrant authorized only search and seizure of evidence relating to a crime involving one described property lot, the seizure of documents pertaining to another lot in the same subdivision was allowed because it was relevant to the target's intent to defraud); *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 3749449, at *17 (N.D. Cal. Sept. 22, 2010) ("Certainly, the Ginn affidavit established that there was probable cause to seize cell phone records in relation to the Estrada homicide—records that may have offered insight into the motive, execution, cover-up, and publicity of the homicide.").

Warrant 2 is also comprised of an Application and Affidavit for Search Warrant, Attachment A ("Affidavit 2"), and Attachment B which lists the items to be seized. Dkt. 49-2. Affidavit 2 contains all the information from Affidavit 1, in addition to a description of the items law enforcement seized from their execution of Warrant 1. And in the Affidavit 2, Summey indicates he learned that Armendariz sent her employer digital media of the protest. *Id.* at p.19.

Affidavit 2 also contains averments about Summey's claimed awareness of the "Chinook Center [as] an anarchist or anti-government organization" whose members have promoted protests that turned violent in the past; purported ties between

15

Armendariz and the Chinook Center and its founders, including Walls; numerous descriptions of Walls' social activism including his calling for "violence against police officers and their families;" and a "pattern of protest activity that has turned illegal associated with the Chinook Center and Chinook Center member organizations." Dkt. 49-2 at pp.20-27.

> Summey also stated the following in Affidavit 2:
>
> Your Affiant would note that Walls actively resisted arrest, and it appears Armendariz attempted to assault a uniformed police officer at (sic) protest march that was sponsored by Chinook Center that turned unlawful. Your Affiant would note there appears to be a close relationship that exists between Walls and Armendariz, wherein they are friends on social media, Armendariz attended an event that Walls promoted on social media, and she attempted to assault an officer who was attempting to take Walls into custody.

*Id.* at p.25. Summey sought permission to search the digital devices recovered from Armendariz's person and residence during the execution of Warrant 1, and to seize "any photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation." *Id.* at p.27. He claimed this "time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer." *Id.*

He also requested permission to perform a key word search of the devices using specified terms stating "these terms would be relevant to the investigation regardless of the time period in which they occurred:" "Police, officer, cop, pig, bike, bicycle,

attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Shaun, Walls[.]" *Id.* at pp.27 and 29.

The Court also finds Warrant 2 was supported by arguable probable cause for the search of the specified electronic devices and using the proposed search terms. *See Stonecipher*, 759 F.3d at 1141 ("Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."). The factual averments Summey lays out in both warrants are colored by his descriptions of what he either knows from, or has encountered based on, his training and experience, which is an appropriate consideration bearing on probable cause. *See, e.g.*, *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009) ("Our reading of the scope of the 'computer records' subject to search, narrowing it to looking for drug related evidence, comes from the text of the warrant . . . coupled with the specifics of the supporting affidavit[.]"); *United States v. Spruell-Ussery*, No. 22-cr-20027-01, 2023 WL 7696546, at *6 (D. Kan. Nov. 15, 2023) (officer's professional experience may serve as a source of probable cause). And notably, both warrants experienced two levels of approval, first by Summey's supervisor and then by a neutral judicial officer who found probable cause and signed the warrants. Dkt. 49-1 at p.1; Dkt. 49-2 at p.2; *Messerschmidt*, 565 U.S. at 555 ("The fact that the officers secured these approvals is certainly pertinent in

17

assessing whether they could have held a reasonable belief that the warrant was supported by probable cause.").

Both warrants also meet the particularity requirement. The purpose of particularity "is to establish practical guidelines about what can be searched and seized, leaving nothing to the discretion of the officers executing the warrant." *United States v. Palms*, 21 F.4th 689, 698 (10th Cir. 2021). The Fourth Amendment requires warrants for computer searches to "affirmatively limit the search to evidence of specific . . . crimes or specific types of material." *Id.* (cleaned up). But "practical accuracy rather than technical precision" is what matters. *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) (internal quotations and citations omitted). For example, search warrants need not identify a specific criminal statute under investigation for them to possess the requisite particularity. *Palms*, 21 F.4th at 698-99. Nor do warrants involving computer searches have to contain "a particularized computer search strategy." *United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005).

Warrants 1 and 2 are sufficiently particular. Both attached and incorporated by reference Affidavits 1 and 2, respectively. Dkt. 49-1 at p.1; Dkt. 49-2 at p.1. Both Affidavits referenced the specific criminal statute under investigation—*i.e.*, Colo. Rev. Stat. § 18-2-101. Dkt. 49-1 at p.17; Dkt. 49-2 at p.18; *cf. Palms*, 21 F.4th at 698–99 ("To be sufficiently particular, search warrants do not have to identify specific statutes for the crimes to which they are limited."). Warrant 1 identified the specific

18

A 138

residential premises to be searched and requested the seizure of specific items listed in Attachment B and "used as a means of committing a criminal offense" or that would be "material in a subsequent criminal prosecution[.]" Dkt. 49-1 at pp.1, 17 ("The above mentioned items would be material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia."), 18.

Warrant 2 identified six different electronic devices seized during the first search and requested to seize from those devices "material evidence in a subsequent criminal prosecution[.]" Dkt. 49-2 at p.1. And Warrant 2 is limited to a three-month period (6/5/2021 to 8/7/2021) for the seizure of certain tangible items and uses specified key words to limit the forensic search of the seized electronic devices. *Palms*, 21 F.4th at 698 ("Such a broad authorization is permissible under our precedent, so long as the warrant contained some 'limiting principle.'") (citing *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017)). The supporting affidavit, Affidavit 2 sought permission to perform a key word search of the seized devices using at least 24 specified search terms. *Id.* at p.28. Its Attachment B listed those key words and noted no time frame applied to the key word search because "these terms would be relevant to the investigation regardless of the time period in which they occurred." Dkt. 49-2 at p.29. Attachment B also listed tangible items to be seized, including: "Photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this

19

investigation. This time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer." *Id.*

Plaintiff raises Summey's arguably self-serving descriptions of certain facts and events in his supporting affidavits—such as his references to "illegal" protest activity; his positing that red flags symbolize socialism and communism; his conclusion that Armendariz uses "yt" to disparage white people; and his conclusion that Armendariz is "active politically"—to argue these demonstrate the unlimited bounds of the Warrants. *See generally* Dkt. 60. But those descriptions and characterizations, whether or not accurate or self-serving, are not material to the finding of probable cause or particularity for the reasons stated above. *See also Messerschmidt*, 565 U.S. at 546 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.") (cleaned up).

For these reasons, the FAC fails to plausibly allege a violation of the Fourth Amendment against Summey, entitling him to qualified immunity. *See Eckert*, 658 F. App'x at 401 (affirming trial court's dismissal of Section 1983 Fourth Amendment claim and finding of qualified immunity where facts described in affidavit supporting search warrant amounted to probable cause).

###### b.    A Clearly Established Right

To be sure, even assuming there was a violation of Armendariz's Fourth Amendment rights, the Court agrees with Summey that Plaintiff has failed to discern any clearly established law. Plaintiff has not adduced Tenth Circuit or Supreme Court precedent, or a clear weight of authority from other courts, clearly establishing that an officer violates the Fourth Amendment when they specify a criminal statute under investigation in a search and seizure warrant, include limiting principles in the warrant around the criminal statute or criminal conduct under investigation, and have that warrant approved first by a supervisor and second by a neutral judicial officer who found probable cause.

The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). This means the law cannot merely be implicated by applicable precedent; instead, "the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (cleaned up); *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (Supreme Court precedent does not require a case directly on point but does require a case that places the constitutional question beyond debate; the inquiry is in the specific context of the case and not general propositions). This level of specificity is particularly important in Fourth Amendment cases where it is "'sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer

21

A 141

confronts.'" *City of Tahlequah*, 595 U.S. at 12-13 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (the clearly established right must be defined with specificity particularly in the Fourth Amendment context); *D.C. v. Wesby*, 583 U.S. 48, 64 (2018) ("While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate.") (cleaned up).

Armendariz argues in her Response that her "right to be free from unreasonable searches and seizures was clearly established when Defendants prepared and obtained the warrants at issue." Dkt. 60 at p.24. No doubt. But this formulation defines the clearly established right at the too-high-level of generality the Supreme Court shuns. *City of Tahlequah*, 595 U.S. at 12. The right at issue in this case is more particularized. *City of Escondido, Cal.*, 139 S. Ct. at 503; *D.C.*, 583 U.S. at 64.

This is principally true when considering Supreme Court and Tenth Circuit precedent holding that "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'" *Messerschmidt*, 565 U.S. at 546 (2012); *see also Stonecipher*, 759 F.3d at 1142-43. This is particularly apt where, as here, there is insufficient pleading that the officer who sought the warrant misrepresented or omitted material facts to the judge rising to the level of a deliberate

falsehood or reckless disregard for the truth, or that the warrant was so obviously lacking in probable cause that no reasonably competent officer would have concluded a warrant should issue. *See Messerschmidt*, 565 U.S. at 547; *Stonecipher*, 759 F.3d at 1142-43; *see also Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. [T]he challenger's attack must be more than conclusory[.]").

Based on the above, Armendariz has failed to show Summey's conduct violated clearly established law, further entitling him to qualified immunity on the First Claim for Relief. *See Cuervo v. Salazar*, No. 20-CV-0671-WJM-GPG, 2021 WL 1534607, at *9 (D. Colo. Apr. 19, 2021) (dismissing Fourth Amendment claim where plaintiff failed to demonstrate defendants violated a clearly established right in conducting the search of her property and thus failed to meet her burden to overcome the defense of qualified immunity).

### 2. Ditzler and the Armendariz Warrants

Defendant Ditzler reviewed and approved Warrants 1 and 2 prior to their approval by the judges.[4] Dkt. 12 at ¶¶160-63. The FAC fails to plausibly allege a

---

[4] The FAC inconsistently pleads that Steckler approved one or more of the Armendariz Warrants. *Compare* Dkt. 12 at ¶¶87, 113 (referring to Steckler's approval), *with* ¶¶160-63, 200 (referring to Ditzler's approval). But the inconsistency is of no matter because the documents themselves show they were approved by Ditzler. Dkt. 49-1 at p.3 (initialed by "RAD"); Dkt. 49-2 at p.5 (same); *see also* Dkt. 50 n.1.

constitutional violation against him for the same reasons discussed above concerning Summey. Thus, Ditzler also enjoys qualified immunity.

### 3.    **Steckler and the Chinook Facebook Warrant**

The Court has examined the Facebook Warrant and Steckler's supporting affidavit. Dkt. 51-1. The Facebook Warrant is a packet consisting of a completed Application and Affidavit for Search Warrant, Attachment A ("Steckler Affidavit"), and Attachment B which lists the items to be seized. *Id.* The Facebook Warrant attaches and incorporates the Steckler Affidavit and Attachment B by reference. *Id.* at p.1.

According to the Steckler Affidavit, Steckler was investigating arrests made for "Obstructing Passage or Assembly, and Resisting, Interference with a Public Official" that occurred during a protest involving approximately 60 individuals on July 31, 2021. Dkt. 51-1 at p.3. He received an "anonymous tip" on August 2, 2021, regarding a Facebook post from the date of the protest under the name of Shaun Walls (who was arrested). The following day Steckler "became aware" of two more Facebook profiles "that had bearing on this case." *Id.* at p.4. One of the profiles contained pictures and videos from the protest and included photos of Walls being arrested. *Id.*

Detective Granillo alerted Steckler to the second Facebook profile, which was under the name Chinook Center and "in which the protest was organized under the events tab." *Id.* Steckler went to Chinook's Facebook page and "was able to see details

24

regarding a 'March for Housing' set for 07/31/21 . . . ." *Id.* Steckler went on to aver he believed "the information gained from the two Facebook profiles will be material evidence in this case. It is your affiant's experience people involved in illegal demonstrations use social media to organize planned events. It is your affiant's belief the demonstration was organized prior to 07/31/21." *Id.*

His affidavit cites 18 U.S.C. § 2703 as the basis for his warrant request, and Steckler avers that "specific and articulable facts have been shown to reasonably believe the target [Facebook URL], service provider, Facebook, Inc., for which records are being sought is of relevant interest in the offense shown." *Id.* Attachment B identifies the items to be seized as:

> All subscriber information tied to Facebook profile: https:www.facebook.com/chinookcenter to include names, phone numbers, and addresses.
>
> All Facebook posts for profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.
>
> All Facebook Messenger chats tied to Facebook profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.
>
> All Facebook Events for profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.

*Id.* at p.5. And the warrant states there is probable cause to believe the information to be seized "[w]ould be material evidence in a subsequent criminal prosecution[.]" *Id.* at p.1.

Steckler sought the Facebook Warrant under 18 U.S.C. § 2703(c), which allows a governmental entity to "require a provider of electronic communication service or

remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity" either obtains a search warrant or a court order for disclosure. *See* 18 U.S.C. § 2703(c)(1)(A) (regarding a warrant); *id.* §§ 2703(c)(1)(B) (regarding a court order for disclosure). The latter is a lower standard than the probable cause required for issuing a warrant. *United States v. Herron*, 2 F. Supp. 3d 391, 401 (E.D.N.Y. 2014); *United States v. Cooper*, No. 13-CR-00693-SI-1, 2015 WL 881578, at *4 n.3 (N.D. Cal. Mar. 2, 2015); *United States v. Mack*, No. 3:13-CR-00054 MPS, 2014 WL 6085306, at *1 (D. Conn. Nov. 13, 2014).

Under either standard, the Court finds the Facebook Warrant meets it. After Walls and others were arrested during the protest on July 31, 2021, Steckler was investigating "Obstructing Passage or Assembly, and Resisting, Interference with a Public Official" related to those arrests. He had evidence of Walls' and others' use of Facebook to post information about the July 31 protest that resulted in multiple arrests, including evidence that Chinook organized and had details about the protest on the events tab on its Facebook account. On these facts alone, it was objectively reasonable for Steckler to believe there was probable cause that material evidence for use in a subsequent prosecution(s) involving those arrested would be found within the subscriber information, posts, messenger chats, and events tab of the Chinook Facebook profile.

The Facebook Warrant is also sufficiently particular. It is limited to evidence involving specific arrests for specific infractions all occurring on July 31, 2021, and Attachment B further limits the information sought to a seven-day period of July 27 to August 2, 2021. *Matter of Search of Kitty's E.*, 905 F.2d at 1374 (stating "there is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized.") (internal quotations and citation omitted). And like the Armendariz Warrants discussed above, Steckler presented the Facebook warrant first to a supervisor for approval and second to a judge who reviewed and approved the warrant, finding probable cause. Dkt. 51-1; Dkt. 12 at ¶177.

For these reasons, the FAC fails to plausibly allege a violation of the Fourth Amendment against Steckler entitling him to qualified immunity. In the alternative, Chinook has also failed to adduce clearly established law for the reasons discussed above regarding the Armendariz Warrants.

### 4.    Otero and the Facebook Warrant

Defendant Otero reviewed and approved the Facebook Warrant prior to its submission to the judge. Dkt. 12 at ¶177. The FAC fails to plausibly allege a constitutional violation against him for the same reasons discussed above concerning Steckler. Thus, Otero also enjoys to qualified immunity.

### B.      Qualified Immunity and the FAC's First Amendment Claims

The FAC alleges the Armendariz and Facebook Warrants also violated the First Amendment. It alleges the warrants were obtained as an action of retaliation against Plaintiffs and that the warrants swept up "First Amendment-protected information" and "expressive and associational materials." Dkt. 12 at ¶¶151-52, 172-73.

To establish a § 1983 retaliation claim alleging a violation of the First Amendment, a plaintiff must plead and prove (1) she was engaged in a constitutionally protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's actions were substantially motivated as a response to her exercise of her First Amendment speech rights. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). In the paradigm of cases involving alleged retaliatory arrests or retaliatory prosecutions based on the First Amendment, the Supreme Court has held the lack of probable cause is also a required element of these retaliation claims. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723-25 (2019) (retaliatory arrest); *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) (retaliatory prosecution). Other district courts have applied this requirement to pleading claims for retaliatory searches. *See Chavez v. City of Albuquerque*, No. 13-cv-557, 2014 WL 12796875, at *3 (D.N.M. Apr. 14, 2014) ("[T]he Court believes that the reasoning set forth in *Hartman* applies equally to this situation. . . . Therefore, . . . a plaintiff claiming that a search

warrant was executed in retaliation for a protected activity is required to show a lack of probable cause as an element of that claim."); *see also Hall v. Putnam Cnty. Comm'n*, No. 22-cv-0277, 2024 WL 559603, at *10 (S.D.W. Va. Feb. 12, 2024).

The Court finds these authorities persuasive and agrees that the reasoning in *Hartman* for requiring pleading the lack of probable cause in a retaliatory prosecution case applies equally to a claim of a retaliatory search especially where, as here, the searches were conducted based on warrants approved by neutral judicial officers.[5] *Hartman*, 547 U.S. at 261-62 (discussing the absence of probable cause is a necessary showing in part because "the defendant will be a nonprosecutor, an official, like an inspector here, who may have influenced the prosecutorial decision but did not himself make it[.]"); *see also Nieves*, 139 S. Ct. at 1725 (discussing the need for a showing of the absence of probable cause in a retaliatory arrest case in part because "policing certain events like an unruly protest would pose overwhelming litigation risks. Any inartful turn of phrase or perceived slight during a legitimate arrest could land an officer in years of litigation.").

---

[5] The cases Plaintiffs rely on for the proposition that warrants must describe the things to be seized with "scrupulous exactitude" pertain to situations where the basis for the search and seizure was the ideas or speech itself. *See Stanford v. Texas*, 379 U.S. 476, 485 (1965); *Matter of Search of Kitty's E.*, 905 F.2d 1367, 1372–73 (10th Cir. 1990). The FAC here fails to plausibly plead the basis of the warrants in this case was in and of itself the ideas, speech, or associations of either Plaintiff versus the alleged criminal statutes or criminal conduct under investigation.

29

For the reasons discussed above, the FAC fails to plausibly plead the absence of probable cause regarding the Armendariz and Facebook Warrants.[6] *Frey v. Town of Jackson*, 41 F.4th 1223, 1238 (10th Cir. 2022) ("Even accepting Plaintiff's allegations as true that retaliatory animus motivated officers in whole or in part when they prolonged Plaintiff's detention, probable cause still supported the detention."). The FAC's numerous allegations that the warrants lacked probable cause are conclusory, particularly after this Court's review of the warrants. *GFF Corp.*, 130 F.3d at 1385 ("factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true.").

---

[6] The Court requested additional briefing from the parties (Dkt. 93) regarding a case they did not discuss which appeared to the Court may be applicable to the matters at hand. Dkt. 93 (citing *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642 (10th Cir. 1988). The parties' submissions were appreciated and informative. But based on the Court's analysis herein, it has determined *Pueblo Neighborhood Health Centers* is not applicable to the circumstances of this case. *See, e.g., Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997) ("We have held in our discussion of plaintiffs' constitutional claim that plaintiffs' inference of subjective bad faith in the officers' omission of information from the affidavit does not eliminate the officers' ability to rely on a valid warrant supported by probable cause."); *see also Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("Our cases have repeatedly rejected this approach [of considering officers' subjective motivations]. An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify [the] action." (cleaned up; emphasis and bracketed text in original); *New York v. P.J. Video, Inc.*, 475 U.S. 868, 875 (1986) ("We think, and accordingly hold, that an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally.").

Nor does the FAC allege any similarly situated individuals were treated differently than either or both Plaintiffs. *See, e.g., id.* at 1232 ("[W]hen pursuing a claim for retaliatory arrest against a law-enforcement officer, a plaintiff must plead either that the officer lacked probable cause to arrest or that the officer historically has not arrested similarly situated people who were not engaged in the same type of speech.") (citing *Nieves*, 139 S. Ct. at 1726-27). Indeed, it in fact appears to allege the opposite. *See* Dkt. 12 at ¶¶130-47.

For these reasons, the FAC fails to allege a plausible violation of the First Amendment by the LEDs, further entitling them to qualified immunity on the First and Second Claims for Relief, respectively.

**C.    The City's Municipal Liability Re: the First and Fourth Amendments**

Plaintiffs' First and Second Claims for Relief as against the City are based on a theory of municipal liability. Dkt. 12 at ¶¶130-47, 165, 182; *see Monell v. Department of Social Services*, 436 U.S. 658 (1978). Because the Court has found the FAC fails to plausibly allege a constitutional violation by the LEDs, it necessarily means the FAC fails to state plausible First and Fourth Amendment claims against the City. *Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if [the] employee committed no constitutional violation.").

## D.    Third Claim for Relief Alleging a Violation of the Stored Communications Act (SCA)

Based on this Court's above-conclusion and analysis that the Facebook Warrant was supported by sufficient probable cause under 18 U.S.C. § 2703(c), and thus, the FAC fails to state a plausible constitutional violation respecting that warrant, Chinook's Third Claim for Relief fails to state a plausible claim. *See Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997) (where a valid warrant authorized seizure of computer equipment, officers were entitled to the good faith defense under 18 U.S.C. § 2707(e), as a matter of law, for their reliance on the warrant). The Plaintiffs cite no authority to suggest the SCA imposes requirements more demanding than the Fourth Amendment.[7] *See, e.g., id.* ("The plaintiffs have not persuaded us the statute imposes a requirement stricter than the Fourth Amendment[.]")

## E.    Sixth Claim for Injunctive Relief

Armendariz asserts this claim against the FBI.[8] Aside from incorporating previous allegations in the FAC by reference, the Sixth Claim reads, in its entirety:

---

[7] This is true even when considering the FAC's allegations that Chinook received no prior notice of the Facebook Warrant. The judge who issued the warrant did so under 18 U.S.C. § 2705(b), which allows the government to apply for, and the court to issue, an order delaying notification of the existence of a warrant. Dkt. 51-1; 18 U.S.C. § 2705(b); see also 18 U.S.C. 2703(b)(1)(B)(ii) ("except that delayed notice may be given pursuant to section 2705 of this title").

[8] In her Response to the City's Motion to Dismiss, Armendariz suggests Claim 6 is also brought against the City. Dkt. 61 at p.16 ("Plaintiffs acknowledge that the headings of their state constitutional and injunctive relief claims erroneously did not

215. On information and belief, Defendant Federal Bureau of Investigation retains copies of electronic files obtained from Ms. Armendariz's digital devices. The Federal Bureau of Investigation's failure to return or destroy the materials constitutes a continuing and ongoing seizure that violates the Fourth Amendment.

216. Ms. Armendariz is entitled to an award of injunctive relief under the Constitution of the United States and 5 U.S.C. § 702 ordering the return or destruction of Ms. Armendariz's digital data.

Dkt. 12. The FAC does not allege the FBI continues to possess Armendariz's electronic devices; rather, it alleges she seeks the return or destruction of the digital *copies* they made (and retain) from those devices. Dkt. 12 at ¶215.

The FBI argues, in relevant part, that its collection of this evidence was lawful under the Fourth Amendment, and even if it wasn't, its retention of electronic copies obtained in violation of the Fourth Amendment does not violate the constitution. Armendariz counters generally that the FBI's continued retention of these copies raises constitutional issues distinct from the lawfulness of the search and seizure, and in any event, other courts have recognized the Fourth Amendment is implicated by a delay in the return of property seized by the government for a criminal

---

identify the City. But the Amended Complaint makes clear throughout that Plaintiffs have stated a claim for injunctive relief against the City for the wrongful retention of Armendariz's files.") This argument is insincere. The FAC expressly indicates it is asserted *only* against the FBI. Dkt. 12 at p.50. To the extent Armendariz now claims it is also asserted against the City, the Court finds it fails to state a plausible claim against the City, and moreover, Plaintiff may not amend the FAC in this regard with her responsive pleading. *See Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1201 n.2 (D. Colo. 2015) ("Plaintiffs cannot amend their complaint by adding factual allegations in response to [a] motion to dismiss.").

investigation.[9] Dkt. 28 at pp.27-28. The Court agrees with the FBI that the Fourth
Amendment does not provide a remedy for its ongoing retention of these digital
copies, but for reasons not discussed by either party.

What appears to distinguish this case from those cited by the parties is the fact
that Armendariz pleaded guilty to a lesser offense—obstructing a peace officer—
received a deferred judgment, and successfully completed her six-month
unsupervised probation. Dkt. 12 at ¶119. The prior criminal proceedings against her
have ended. And Armendariz does not seek monetary damages associated with the
FBI's ongoing retention of the copies of her digital media. She instead only seeks
injunctive relief in the form of an order for the return or destruction of those copies.
*Id.* at ¶216.

Based on these allegations, the Sixth Claim for Relief does not plausibly plead
a violation of the Fourth Amendment. The appropriate claim appears to be one for
return of property under Fed. R. Crim. P. 41(g) (formerly Rule 41(e) until the rule
was amended in 1989). "A cause of action under Rule 41(e) for return of property has
been recognized as a valid cause of action in the Tenth Circuit and other federal
courts[.]" *Lowrie v. United States*, 558 F. Supp. 1029, 1032 (D. Colo. 1983) (citing

---

[9] While the heading for the Sixth Claim for Relief titles the claim as seeking injunctive
relief under the First and Fourth Amendments, the claim expressly alleges only a
violation of the Fourth Amendment. Dkt. 12 at ¶215 (alleging "The [FBI]'s failure to
return or destroy the materials constitutes a continuing and ongoing seizure that
violates the Fourth Amendment.").

cases). "Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint." *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996) (internal quotations and citations omitted); *see also Clymore v. United States*, 415 F.3d 1113, 1117 (10th Cir. 2005) ("Although Clymore's action is brought pursuant to Rule 41(e), a federal rule of *criminal* procedure, proceedings surrounding the motion for return of property seized in a criminal case are *civil in nature*[.]") (cleaned up; emphases in original); *Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 394 (2d Cir. 2023) ("[W]hile Rule 41(g) is a rule of criminal procedure, we have also long held that where, as here, a motion under that rule is filed after a criminal proceeding has ended, the district court should construe such a motion as initiating a civil action in equity.") (cleaned up); *U.S. v. Martinez*, 241 F.3d 1329, 1330-31 (11th Cir. 2001) (noting Second, Third, Sixth, Seventh, Eighth, and Ninth Circuits agree that motions for return of property under then Rule 41(e) made after criminal proceedings ended should be treated as civil proceedings for equitable relief).

Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). Prior to its amending in 1989, then Rule 41(e) "provided a method for enforcing the protection against unreasonable search and seizure guaranteed by the Fourth Amendment." 3A Fed. Prac. & Proc. Crim. § 690 (4th ed. 2023). But, as amended, Rule 41(g) now "provides that an aggrieved person

may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it." Fed. R. Crim. P. 41(g) notes to 1989 amendment.

Following the 1989 amendments, the Tenth Circuit has held that Rule 41(g) motions are now "solely for the return of property[,]" drawing a distinction between Fourth Amendment claims seeking redress for an alleged unlawful seizure and claims seeking the return of property (whether or not lawfully seized).[10] *Matter of Search of Kitty's E.*, 905 F.2d 1367, 1370 (10th Cir. 1990) ("Illegality of a search for purposes of Rule 41(e) and the scope of the exclusionary rule have been separated by the 1989 amendments."); *see also United States v. Anh Ngoc Dang*, 559 F. App'x 660, 662 (10th Cir. 2014) ("The issue of whether the deputy marshals violated the Fourth Amendment is distinct from the appropriate disposition of the cash seized."); *United*

---

[10] The partial concurrence in the *Lindell* case, which case Armendariz cites extensively, also draws this distinction. Concurring in part, Circuit Judge Colloton dissented from that portion of the majority opinion that purported to reverse the district court for not balancing the interests of the parties to determine whether the government could justify its continued possession of Lindell's cell phone that it lawfully seized. *Lindell v. United States*, 82 F.4th 614, 623 (8th Cir. 2023). Judge Colloton observed that the majority's "discussion concerns a ruling that was never made on a motion that was never filed. . .. The majority exceeds the proper scope of appellate jurisdiction by purporting to rule on a different dispute concerning the retention of seized property[.]" *Id.* He explained: "If Lindell now wishes to secure a return of his old phone . . . then he may file a straightforward motion for return of property based on the length of retention. The parties may then address the matter in proper briefing and evidentiary presentations[.]" *Id.*

*States v. Giannukos*, No. 15-20016-01-DDC, 2020 WL 6680384, at *2 (D. Kan. Nov.

12, 2020) (Rule 41(g) "governs requests for return of property seized in connection

with a criminal investigation."); *Lintzeris v. City of Chicago*, 276 F. Supp. 3d 845, 849

(N.D. Ill. 2017) ("Complaints about the return of property, lawfully seized, do not

implicate the Fourth Amendment.").

The Sixth Claim for Relief simply seeks the return or destruction of copies of

property seized in connection with a completed criminal case. And in this Court's

above-analysis, the Court has found the seizure to be lawful. For these reasons, the

Sixth Claim for Relief fails to state a plausible claim for relief under the Fourth

Amendment.[11] *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992)

(holding the validity of a claim is determined by which constitutional right is alleged

to have been infringed and then by the specific standard governing that right).

## F.    State Law Claims under Colo. Rev. Stat. § 13-21-131

### 1.    Claim 4 against the United States

During a hearing before the Honorable Magistrate Judge Maritza Dominguez

Braswell on December 18, 2023, Judge Dominguez Braswell granted the United

---

[11] The Court considered whether it was appropriate to construe the Sixth Claim for
Relief as alleging a claim for return of property under Rule 41(g). But first,
Armendariz is represented by counsel, and therefore, the rule requiring the Court to
liberally construe a *pro se* litigant's filings does not inure to her. Second, it is not clear
to the Court that, even if so construed, it would be fair to then attempt to analyze the
allegations as currently pleaded under a Rule 41(g) standard, particularly also where
the parties have not briefed or argued the matter under a Rule 41(g) analysis.

States' motion brought under 28 U.S.C. § 2679(d)(1) to substitute itself for Summey on Claim 4. Dkt. 62; *see also* Dkt. 39. The United States generally enjoys sovereign immunity from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). But Congress has waived the United States' sovereign immunity through the Federal Tort Claims Act ("FTCA") for the wrongful act or omission of an employee of the federal government while acting within the scope of their employment, and if a private person would be liable to the claimant under the law of the state where the allegedly wrongful act occurred. *See* 28 U.S.C. § 1346(b)(1). It is the plaintiff's burden to establish subject matter jurisdiction under the FTCA. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

To benefit from the FTCA's waiver of sovereign immunity, claimants must first exhaust administrative processes with the appropriate federal agency before suing in federal court. *See* 28 U.S.C. § 2675(a). Under Section 2675(a), no action may be filed against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." This presentment requirement is jurisdictional, must be strictly construed, and cannot be waived. *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991).

The FAC does not plausibly allege compliance with 28 U.S.C. § 2675(a). True, as she argues, Armendariz had no reason to know Summey was acting as a federal employee. But Supreme Court and Tenth Circuit case law require strict compliance

with the administrative procedures mandated by the FTCA. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (requiring "strict adherence to the procedural requirements" of § 2675(a)); *Bradley*, 951 F.2d at 270 (the FTCA's requirements must be strictly construed); *see also Smith v. United States*, 245 F.3d 790 (5th Cir. 2000) (unpublished table decision) (finding lack of subject-matter jurisdiction where plaintiffs failed FTCA exhaustion because they did not know the defendant was a federal employee); *Miller v. Mayers Mem'l Hosp.*, No. 209CV01687 MCE KJM, 2009 WL 3048690, at *2 (E.D. Cal. Sept. 18, 2009) ("[E]ven assuming that Plaintiff was indeed unaware of Watson's employment status, that lack of knowledge does not excuse compliance with § 2675(a)."); *Chin v. Wilhelm*, 291 F. Supp. 2d 400, 403-04 (D. Md. 2003) (dismissing claims under the FTCA for failure to present an administrative claim despite plaintiffs' lack of knowledge that the officer was a federal agent); *Bigg v. Selective Serv. Sys.*, No. CV-92-2610 (CPS), 1993 WL 547458, at *2 (E.D.N.Y. Nov. 26, 1993), *aff'd*, 28 F.3d 102 (2d Cir. 1994) (dismissing complaint where "plaintiff has not given any indication in his complaint or in his response papers of having met the requirements of section 2675(a). Indeed, plaintiff admits that he did not know that he could (or should) have filed an administrative claim with the Selective Service.").

The out-of-circuit cases Armendariz cites are either at odds with the required strict construction of the FTCA or they also involved issues related to the statute of limitations, which is not an issue here. Because the FAC fails to plausibly allege

Armendariz's compliance with 28 U.S.C. § 2675(a), Claim 4 is dismissed as against the United States.

### 2.    Claims 4 (against Ditzler) and 5 (against Steckler and Otero)

"Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Plaintiff's remaining claims (Claims 4 and 5) arise under a Colorado statute, Colo. Rev. Stat. § 13-21-131. There is no compelling reason to maintain jurisdiction over the state law claims considering this Court's findings pertaining to, and dismissal of, Plaintiff's federal law claims and state law claim against the United States. The Court thus declines to exercise jurisdiction over the state law claims and dismisses them on that basis.[12] 28 U.S.C. § 1367(c)(3).

*        *        *

---

[12] Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, the Court need not address the merits of the arguments concerning those claims. Moreover, the parties have a dispute pending before Judge Dominguez Braswell regarding Plaintiffs' challenge to the United States' substitution for Summey. Even assuming Summey was the proper party to Claim 4, the claim would still be dismissed based on the Court's declination of supplemental jurisdiction.

40

A 160

For the reasons shared above, the Motions to Dismiss at Dkts. 49, 50, 51, and 52, are GRANTED as follows:[13]

1. The First Claim for Relief is DISMISSED without prejudice, against Summey, Ditzler, and the City;

2. The Second and Third Claims for Relief are DISMISSED without prejudice, against Steckler, Otero, and the City;

3. The Fourth and Fifth Claims for Relief are DISMISSED without prejudice;

4. The Sixth Claim for Relief is DISMISSED without prejudice; and

5. The Clerk of Court shall terminate this action.

DATED:    April 10, 2024

BY THE COURT:

S. Kato Crews
United States District Judge

---

[13] The Court does not reach the parties *Bivens'* or other arguments not addressed herein.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01951-SKC-MDB

JACQUELINE ARMENDARIZ and
CHINOOK CENTER,

      Plaintiffs,

v.

CITY OF COLORADO SPRINGS,
DANIEL SUMMEY, in his individual capacity,
B. K. STECKLER, in his individual capacity,
JASON S. OTERO, in his individual capacity,
ROY A. DITZLER, in his individual capacity,
FEDERAL BUREAU OF INVESTIGATION, and
UNITED STATES OF AMERICA,

      Defendants.

---

## FINAL JUDGMENT

---

    In accordance with the orders filed during the pendency of this case, and

pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

    Pursuant to the Order on Motions to Dismiss (Dkts. 49, 50, 51, 52) [ECF No.

103] of District Judge S. Kato Crews entered on April 10, 2024, it is

    ORDERED that judgment is hereby entered in favor of the defendants and

against the plaintiffs.   It is

    FURTHER ORDERED that this case is terminated.

    Dated at Denver, Colorado this 10th day of April, 2024.

                FOR THE COURT:
                JEFFREY P. COLWELL, CLERK


                __ s/C. Pearson, Deputy Clerk____