No. 24-1201

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
————————————

JACQUELINE ARMENDARIZ AND CHINOOK CENTER,

PLAINTIFFS-APPELLANTS,

V.

CITY OF COLORADO SPRINGS; DANIEL SUMMEY, IN HIS INDIVIDUAL
CAPACITY; B.K. STECKLER, IN HIS INDIVIDUAL CAPACITY; JASON S.
OTERO, IN HIS INDIVIDUAL CAPACITY; ROY A. DITZLER, IN HIS INDIVIDUAL
CAPACITY; THE FEDERAL BUREAU OF INVESTIGATION; AND THE UNITED
STATES OF AMERICA,

DEFENDANTS-APPELLEES.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
HONORABLE S. KATO CREWS
D.C. NO. 23-CV-01951-SKC-MDB

————————————

**ANSWER BRIEF FOR FEDERAL APPELLEES**
————————————

MATTHEW T. KIRSCH
Acting United States Attorney

MARISSA R. MILLER
Assistant U.S. Attorney
1801 California Street
Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100

Attorneys for Federal Appellees

**ORAL ARGUMENT IS NOT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iv

STATEMENT OF RELATED CASES ............................................................... x

CITATION CONVENTION .............................................................................. x

STATEMENT OF JURISDICTION .................................................................. x

STATEMENT OF THE ISSUES ........................................................................ 1

STATEMENT OF THE CASE ........................................................................... 2

I.   Jacqueline Armendariz joins a protest.  When police
     attempt to arrest the protest's leader, she drops her
     bicycle in an officer's path. ........................................................... 2

II.  Detective Summey obtains a warrant to search
     Armendariz's home and seize her electronic devices.
     He receives a second warrant to search them. ........................... 4

III. Armendariz and the Chinook Center bring this lawsuit.
     The defendants file motions to dismiss. ..................................... 9

IV.  The district court dismisses all the claims in the
     complaint. ......................................................................................... 12

SUMMARY OF ARGUMENT .......................................................................... 13

ARGUMENT ...................................................................................................... 17

I.   The warrant to seize Armendariz's devices did not
     violate the Fourth Amendment.  Even if it did,
     Detective Summey is entitled to qualified immunity. ............... 17

     A.   The first warrant did not violate the Fourth
          Amendment because the affidavit established a
          nexus between Armendariz's offense and her
          electronic devices. .............................................................. 18

i

B.     Because the Opening Brief fails to argue that the first warrant clearly violated the Fourth Amendment, Armendariz has forfeited any claim that Detective Summey is not entitled to qualified immunity. .......................................................................... 29

C.     In any event, Detective Summey is protected by qualified immunity............................................................. 32

II.    The warrant to search Armendariz's devices did not violate the Constitution.  Regardless, Detective Summey is entitled to qualified immunity. ............................. 36

    A.     The second Armendariz warrant satisfied the Fourth Amendment's particularity requirement. ........... 37

    B.     Detective Summey's affidavit did not unconstitutionally expand the scope of the warrant.  Regardless, he is entitled to qualified immunity. .......................................................................... 43

    C.     The keyword search did not render the warrant defective.  Even if it did, the detective is entitled to qualified immunity. ....................................................... 49

    D.     Armendariz forfeited any challenge to the two-month search for photos, videos, messages by failing to raise this claim below........................................ 55

    E.     The second warrant does not violate the First Amendment. Even if it does, any violation was not clearly established ....................................................... 55

III.   The district court properly denied Armendariz's request for an injunction against the FBI................................. 59

    A.     Armendariz has forfeited this issue on appeal by failing to explain why the district court's analysis was incorrect. .................................................................. 60

B.    In any event, Rule 41(g) is the appropriate vehicle for Armendariz's claim. ........................................ 63

CONCLUSION ........................................................................... 66

CERTIFICATE OF COMPLIANCE ............................................... 67

CERTIFICATE OF SERVICE ...................................................... 68

# TABLE OF AUTHORITIES

## Federal Cases

*Adler v. Wal-Mart Stores,*
  144 F.3d 664 (10th Cir. 1998) ............................................................. 31

*Andresen v. Maryland,*
  427 U.S. 463 (1976) ........................................................................... 38

*Asinor v. D.C.,*
  111 F.4th 1249 (D.C. Cir. 2024) ......................................................... 61

*Auraria Student Hous. v. Campus Vill. Apartments,*
  843 F.3d 1225 (10th Cir. 2016) ........................................................... 25

*Baca v. Menyhert,*
  19 F.3d 33 (10th Cir. 1994) ................................................................ 18

*Bronson v. Swensen,*
  500 F.3d 1099 (10th Cir. 2007) ........................................................... 30

*Cassady v. Goering,*
  567 F.3d 628 (10th Cir. 2009) ....................................................... 30, 48

*City of Tahlequah v. Bond,*
  595 U.S. 9 (2021) .............................................................................. 32

*Coolidge v. New Hampshire,*
  403 U.S. 443 (1971) ........................................................................... 37

*D.C. v. Wesby,*
  583 U.S. 48 (2018) ................................................................. 32, 33, 59

*Dease v. Webb,*
  791 F. App'x 744 (10th Cir. 2019) (unpublished) ........................... 60, 62

*Doe v. Woodward,*
  912 F.3d 1278 (10th Cir. 2019) ..................................................... 18, 37

*Farmer v. Brennan,*
  511 U.S. 825 (1994) ........................................................................... 65

iv

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
    386 U.S. 714 (1967) ............................................................... 64

*GFF Corp v. Associated Wholesale Grocers*,
    130 F.3d 1381 (10th Cir. 1997) ............................................... 3

*Hinck v. United States*,
    550 U.S. 501 (2007) .......................................................... 63-64

*Illinois v. Gates*,
    462 U.S. 213 (1983) .............................................................. 24

*Illinois v. Rodriguez*,
    497 U.S. 177 (1990) .............................................................. 45

*In re Overstock Sec. Litig.*,
    119 F.4th 787 (10th Cir. 2024) .............................................. 31

*Lindell v. United States*,
    82 F.4th 614 (8th Cir. 2023) .................................................. 62

*Maryland v. Garrison*,
    480 U.S. 79 (1987) ............................................................... 37

*Matter of Search of Kitty's E.*,
    905 F.2d 1367 (10th Cir. 1990) .............................................. 61

*Matter of the Search of Twenty-Six (26) Digital Devices & Mobile Device
    Extractions*,
    2022 WL 998896 (D.D.C. Mar. 14, 2022) .............................. 64

*Messerschmidt v. Millender*,
    565 U.S. 535 (2012) .............................................................. 35

*Mink v. Knox*,
    613 F.3d 995 (10th Cir. 2010) ................................... 30, 38, 48

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) .............................................................. 65

*New York v. P.J. Video, Inc.*,
    475 U.S. 868 (1986) ....................................................... 57, 58

*Nixon v. City & Cnty. of Denver,*
   784 F.3d 1364 (10th Cir. 2015) ........................................................ 60

*Pleasant v. Lovell,*
   876 F.2d 787 (10th Cir. 1989) .......................................................... 57

*Reedy v. Werholtz,*
   660 F.3d 1270 (10th Cir. 2011) ........................................................ 62

*Reps. Comm. for Freedom of Press v. Am. Tel.,*
   593 F.2d 1030 (D.C. Cir. 1978) ....................................................... 57

*Sandoz Inc. v. Amgen Inc.,*
   582 U.S. 1 (2017) .............................................................................. 63

*Stanford v. Texas,*
   379 U.S. 476 (1965) .......................................................................... 56

*Trump v. United States,*
   54 F.4th 689 (11th Cir. 2022) .......................................................... 65

*United States v. Anh Ngoc Dang,*
   559 F. App'x 660 (10th Cir. 2014) (unpublished) .............................. 61

*United States v. Bacon,*
   900 F.3d 1234 (10th Cir. 2018) ........................................................ 65

*United States v. Biglow,*
   562 F.3d 1272 (10th Cir. 2009) ......................................... 19, 20, 22, 25

*United States v. Brooks,*
   427 F.3d 1246 (10th Cir. 2005) ................................................ 39, 46, 48

*United States v. Burgess,*
   576 F.3d 1078 (10th Cir. 2009) ......................... 21, 34, 40-41, 47, 50, 53

*United States v. Christie,*
   717 F.3d 1156 (10th Cir. 2013) ............................... 39, 47, 48, 50, 52, 53

*United States v. Contreras,*
   905 F.3d 853 (5th Cir. 2018) ............................................................ 28

*United States v. Cotto,*
  995 F.3d 786 (10th Cir. 2021)..............................................................37

*United States v. Dunnican,*
  961 F.3d 859 (6th Cir. 2020)................................................................23

*United States v. Freeman,*
  70 F.4th 1265 (10th Cir. 2023) ...........................................................23

*United States v. Ganias,*
  824 F.3d 199 (2d Cir. 2016) ................................................................64

*United States v. Griffith,*
  867 F.3d 1265 (D.C. Cir. 2017) .....................................................26, 27

*United States v. Grimmett,*
  439 F.3d 1263 (10th Cir. 2006)......................................................50, 52

*United States v. Hargus,*
  128 F.3d 1358 (10th Cir. 1997)............................................................25

*United States v. Le,*
  173 F.3d 1258 (10th Cir. 1999)............................................................38

*United States v. Leary,*
  846 F.2d 592 (10th Cir. 1988)....................................................30, 47-48

*United States v. Leon,*
  468 U.S. 897 (1984) ..............................................................24, 35, 36

*United States v. Loera,*
  923 F.3d 907 (10th Cir. 2019)............................................27, 51, 52, 53

*United States v. Mora,*
  989 F.3d 794 (10th Cir. 2021)......................................19, 20, 25, 26, 28

*United States v. Otero,*
  563 F.3d 1127 (10th Cir. 2009)............................................................39

*United States v. Palms,*
  21 F.4th 689 (10th Cir 2021) .......................................39, 41, 48, 52, 53

*United States v. Reichling,*
781 F.3d 883 (7th Cir. 2015)................................................28

*United States v. Russian,*
848 F.3d 1239 (10th Cir. 2017).................................39, 40, 49

*United States v. Sadlowski,*
948 F.3d 1200 (10th Cir. 2020)..........................................40

*United States v. Salas,*
106 F.4th 1050 (10th Cir. 2024) .............................27, 39, 40

*United States v. Tuter,*
240 F.3d 1292 (10th Cir. 2001)..........................................36

*United States v. Wagner,*
951 F.3d 1232 (10th Cir. 2020)....................................46, 49

*United States v. Walker,*
918 F.3d 1134 (10th Cir. 2019)....................................30, 31

*United States v. Walser,*
275 F.3d 981 (10th Cir. 2001)......................................21, 34

*Vincent v. Nelson,*
51 F.4th 1200 (10th Cir. 2022) ..........................................60

*Voss v. Bergsgaard,*
774 F.2d 402 (10th Cir. 1985)................................30, 38, 48

*Yumukoglu v. Provident Life & Acc. Ins. Co.,*
36 F. App'x 378 (10th Cir. 2002) (unpublished) ..................31

*Zurcher v. Stanford Daily,*
436 U.S. 547 (1978) ...........................................................58

## State Cases

*People v. Banks,*
983 P.2d 102 (Colo. App. 1999)..........................................23

# Federal Statutes & Rules

5 U.S.C. § 702 ................................................................... 10, 11

28 U.S.C. § 1291................................................................... x

28 U.S.C. § 1331................................................................... x

28 U.S.C. § 1343................................................................... x

42 U.S.C. § 1983........................................................ 10, 11, 63

10th Cir. R. 10.4(B)........................................................17-18

10th Cir. R. 10.4(D)(2) ...........................................17, 36, 59

10th Cir. R. 28(A)....................................................17, 36, 59

Fed. R. Crim. P. 41(e) ........................................................ 61

Fed. R. Crim. P. 41(g) ..........................2, 13, 16, 17, 60, 61, 62, 63, 64, 65

# State Statutes

Colo. Rev. Stat. § 18-2-101 ...........................................4, 41, 44

Colo. Rev. Stat. § 18-3-203 ..............................................23, 41

# Other Authorities

Wayne R. LaFave, *Search and Seizure* § 4.5(a) (6th ed.) .......................51

## STATEMENT OF RELATED CASES

None.

## CITATION CONVENTION

This brief cites to the Appellants' Appendix using the abbreviation and page number in the bottom right corner: e.g., "A43" refers to page 43 of the Appellants' Appendix.  Citations to the Appellees' Supplemental Appendix also use the abbreviation and page number from the bottom right corner: e.g., "Supp. App. 239" refers to page 239 of the Appellees' Supplemental Appendix.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and § 1343.  Final judgment was entered on April 10, 2024.  A162.  The plaintiffs filed a timely notice of appeal on May 9, 2024.  A15 (*see* ECF No. 107).   This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

In July 2021, Colorado Springs threw a parade to celebrate the 150th anniversary of its founding. Protesters used the parade to rally against the city's housing policies. Plaintiff Jacqueline Armendariz was part of that group. When police tried to arrest the leader of the protest, she threw her bicycle at an officer.

A few days later, she was arrested for attempted assault. Law enforcement also applied for a warrant to search her home. Citing her active use of social media to plan and document similar events, the application sought permission to seize Armendariz's personal electronic devices. A judge granted the warrant, and the items were seized.

Law enforcement then obtained a second warrant to conduct a limited search of those devices for evidence of the attempted assault. After the FBI performed this search, it returned Armendariz's devices to her. She ultimately pled guilty to obstructing a peace officer.

I.    Did the district court correctly find that the first Armendariz warrant established the required nexus to Armendariz's electronic devices? Even if that warrant was defective, is Detective Daniel Summey entitled to qualified immunity?

1

II.    Did the trial court properly hold that the second warrant did not violate the First or Fourth Amendments?  Regardless, is the detective protected by qualified immunity?

III.    Did the district court correctly determine that Armendariz's request for an injunction against the FBI should have been brought as a motion under Fed. R. Crim. P. 41(g) instead?  Has Armendariz waived this issue?

#### STATEMENT OF THE CASE

### I.    Jacqueline Armendariz joins a protest.  When police attempt to arrest the protest's leader, she drops her bicycle in an officer's path.

On July 31, 2021, the city of Colorado Springs held a parade to celebrate the 150th anniversary of its founding.  A22.  The Chinook Center—a local hub for progressive activism—chose to capitalize on the event and organized a march alongside the parade.  A18-20, A22, A71-72.  The march was intended to protest the city's housing policies and the lack of affordable housing in the area.  A71-72.

Thirty-four-year-old Jacqueline Armendariz attended the protest on her bicycle.  A78.  During the event, Colorado Springs police officers arrested several protesters.  A27.  One of them was Shaun Walls,

2

Armendariz's friend and the leader of the protest. A27. According to Armendariz, she was walking her bicycle when she saw an officer running toward her. She dropped her bike and it landed between her and the officer. A27. The officer avoided the bike and any injury. A27.

Colorado Springs police saw the incident differently. A72-73. Shaun Walls was actively resisting arrest, and Officer Anthony Spicuglia was running to assist his colleagues. A72. Armendariz got off her bicycle and deliberately threw it at Officer Spicuglia. A72. She had no reason to get off her bike, and there was no one else to whom she could have been trying to throw it. A73. The officer had to jump at the last second to avoid potentially serious injury. A72-73.[1]

Because police did not arrest Armendariz at the time, they didn't know who the woman on the bike was. A27-28. Colorado Springs Detective Daniel Summey was assigned to investigate. A27-28, A124.

---

[1] These allegations come from the warrants and not the complaint. They are properly included here because the district court considered the warrants when it granted the motions to dismiss. *See* A129 (quoting *GFF Corp v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true.")).

During this time, the detective also served as a Task Force Officer in the FBI's Joint Terrorism Task Force.  Supp. App. 5.

Detective Summey didn't just rely on what the other officers told him.  Instead, he used footage from multiple police bodycams and an overhead drone to determine what happened.  A29, A72-78.  After reviewing the footage extensively, he concluded that the woman with the bike had committed attempted second-degree assault on a peace officer under Colorado law.  A85.  Detective Summey was able to identify Armendariz by comparing footage from the incident to photos of her on various social media platforms.  A29, A124.

## II.  Detective Summey obtains a warrant to search Armendariz's home and seize her electronic devices.  He obtains a second warrant to search them.

The police arrested Armendariz and applied for a warrant to search her home.  A124.  In his affidavit, Detective Summey stated that he was investigating Armendariz for a violation of Colo. Rev. Stat. § 18-2-101 ("Criminal Attempt – Second Degree Assault – Class 5 Felony (F5)).  A71-85.  He requested permission to search for and seize property that was or had been "used as a means of committing" the crime or that "[w]ould be material evidence in a subsequent

prosecution." A70. That included Armendariz's bike and helmet, as well as the clothing and shoes she wore that day. A85.

Detective Summey also sought permission to seize "all digital media storage devices, to include phones, computers, tablets, thumb drives, external hard drives, or any other item that holds digital media." A85. To support that request, the detective detailed the significant role that digital evidence had already played in his investigation. A78-84. The detective had first identified Armendariz based on her Facebook friendship with Shaun Walls. A78. Then he confirmed her identity by comparing footage from the protest with photos that Armendariz had posted of herself on Facebook, Twitter, and LinkedIn. A79-83.

One of these photos was from a similar event shortly before July 31st. A78-84. Armendariz had taken a picture of herself attending the event on the same bike, wearing the same helmet, and posted it to Facebook. A78-84. Another photo from the event showed Armendariz speaking to a video camera on a tripod, as if she were giving an interview. A79. Detective Summey included these photos and other posts in his affidavit to demonstrate that Armendariz frequently used

social media (and thus her electronic devices) to organize, promote, and document events for political causes. A82-84.

The affidavit also cited Detective Summey's training and experience. He explained that people who attend marches or protests "frequently carry their phones with them to take photos and message others." A85. This information, in addition to Armendariz's use of social media, demonstrated a fair probability that her phone would contain photos from July 31st and/or messages between herself and others about the incident. Location data from the phone would also confirm she attended the protest that day. A85. Detective Summey sought permission to seize Armendariz's computers and other digital storage devices too, noting that these kinds of files can be transferred to or backed up on other personal electronics. A85.

Detective Summey's affidavit was reviewed and approved by his supervisor, Sergeant Roy Ditzler. A57. Then he submitted the application to a judge. A57. The judge issued the warrant, which expressly incorporated the detective's attached affidavit. A69-70.

When the police executed the warrant, they seized three cell phones, two laptops, and an external hard drive. A125. Two days later,

Detective Summey applied for a second warrant to search them.  A87.

The affidavit for the second warrant contained much of the same

information as the first.  However, there were two notable additions.

First, the detective spoke directly with Armendariz's supervisor,

who told him that Armendariz had attended the protest and sent her

videos—confirming that she did, in fact, have footage of the event.

A105.  Second, the affidavit spent more time discussing a potential

political motive that could indicate the assault was intentional.  A106-

14.  Additional research by Detective Summey revealed that Shaun

Walls had repeatedly called for violence against police officers and their

families.  A106-14.  Armendariz was friends with Walls, a member of

his organization, and tried to assault a police officer running to arrest

him.  She'd also appeared on an episode of Walls's podcast in which he

discussed the Pulpit Rock protest.  A113.  (That event, which Walls

helped organize, resulted in armed protesters gathering outside the

home of a local police officer.  A113.)

Accordingly, the affidavit requested permission to search Armendariz's devices for "any photos, videos, messages . . . emails, and location data for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation." A113. As the detective explained, this period would include "any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer":

> Your Affiant is seeking permission to search the digital devices recovered from Armendariz's person and residence, , a black Seagate External Hard Drive serial number NA87E7RW, a silver HP laptop with unknown serial number, an HP Elite 735G6 serial number 5CG00226VH, a Motorola XT1687, an Apple iPhone A1660 with unknown serial number, and a blue Samsung Galaxy cell phone serial number 359197100383638, to seize any photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation. This time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer.

A113.

Detective Summey also sought permission to search her electronics for the following words:

> Police, officer, cop, pig, bike, bicycle, attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Shaun, [and] Walls.

A114. This search was not confined to a specific timeframe. A114. But the affidavit clarified that the keyword search was designed to locate

"material evidence in the subsequent prosecution of Armendariz for

attempting to assault Officer Spicuglia":

> Your Affiant is also requesting permission to perform a key word search of the devices for the following words:
>
> Police, officer, cop, pig, bike, bicycle, attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Shaun, Walls, as these terms would be relevant to the investigation regardless of the time period in which they occurred.
>
> The above mentioned items would be material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia.

A114.

Once again, the warrant application was reviewed and approved

by Detective Summey's supervisor.  A57.  The application went to a

different judge this time.  The judge issued the warrant, which

expressly incorporated the attached affidavit.  A87-90.  Detective

Summey then brought Armendariz's devices to an FBI-run forensic

computer lab.  A88.  The lab conducted the limited search authorized by

the warrant and returned the devices to Armendariz.  A47-48.

## III. Armendariz and the Chinook Center bring this lawsuit. The defendants file motions to dismiss.

Roughly six months after her arrest, Armendariz pled guilty to

obstructing a peace officer.  A46.  She received a deferred judgment and

completed a term of unsupervised probation.  A46.

In August 2023, Armendariz and the Chinook Center filed this
lawsuit. A4. The operative complaint raised six claims. A55-66. This
Answer Brief addresses only two, Claims 1 and 6:

| PLAINTIFF | CLAIM FOR RELIEF | DEFENDANTS |
|---|---|---|
| Armendariz | **First Claim for Relief:** unlawful search and seizure in violation of First and Fourth Amendment; 42 U.S.C. § 1983 | Summey Ditzler City of Colorado Springs |
| Armendariz | **Sixth Claim for Relief:** injunctive relief under First and Fourth Amendments; 5 U.S.C. § 702 | FBI |

A126.

The first claim alleged that Detective Summey violated the First
and Fourth Amendments because he drafted and submitted the
warrant applications for Armendariz's phones and computers. A55-58.
Armendariz argued that the first warrant was unconstitutional because
law enforcement didn't have probable cause to seize these items. A56-
57; Supp. App. 256-61. She asserted that the second warrant was
defective because it did not satisfy the Fourth Amendment's
particularity requirement. A56; Supp. App. 251-56. Armendariz sought

damages from Detective Summey in his personal capacity under 42 U.S.C. § 1983. A58.

The sixth claim alleged that the FBI continued to violate the Fourth Amendment by retaining the data it obtained from Armendariz's devices. A66. Citing the Constitution and 5 U.S.C. § 702, i.e., the Administrative Procedure Act, Armendariz requested an injunction ordering the FBI to return her data or destroy it. A66.

Collectively, the defendants filed four motions to dismiss. *See generally* Supp. App. Detective Summey argued that the first claim should be dismissed because Armendariz did not plead a plausible violation of the Fourth Amendment. Supp. App. 10-17. But even if she did, the detective said, he was entitled to qualified immunity. Any violation was not clearly established, and it was objectively reasonable for him to rely on warrants issued by neutral judges. Supp. App. 17-21.

The FBI argued that the sixth claim should be dismissed because the Fourth Amendment does not govern the disposition of lawfully seized property. Supp. App. 23-25. Regardless, the agency said, the FBI was not required to expunge data from its records. *Id.*

11

## IV.  The district court dismisses all the claims in the complaint.

The district court granted the motions to dismiss.  A123.

The court held that the first claim should be dismissed because it failed to plead a plausible Fourth Amendment violation.  A134.  The court found that the first warrant properly authorized the seizure of Armendariz's devices.  A134.  There was a fair probability that law enforcement would find evidence of her offense on those items, given (1) Armendariz's active use of social media; (2) her online connection to Walls; (3) the selfie she took on her bike shortly before the protest; and (4) posts she made referencing her social activism.  A134-35.

The district court also found that the second warrant was sufficiently particular under the Fourth Amendment.  A137.  Detective Summey's affidavit clearly identified the specific crime under investigation.  A138.  The warrant contained other limits, too, including search terms and a date range.  A139-141.

The district court went on to hold that—even if the warrants did violate the Constitution—Detective Summey was entitled to qualified immunity.  A141.  It was Armendariz's burden to establish that the detective's conduct violated clearly established law.  Yet she failed to

identify authority from the Tenth Circuit or the Supreme Court with a level of specificity that placed this question beyond dispute.  A141. Furthermore, the fact that two separate judges approved these nearly identical warrants confirmed that not every objectively reasonable officer would have known they were unlawful (if they were).  A142.

The district court also dismissed Armendariz's request for an injunction against the FBI.  A153.  The court held that the Fourth Amendment did not provide the remedy for the FBI's ongoing retention of Armendariz's data.  A154.  Instead, the appropriate claim was a motion for the return of her property under Fed. R. Crim. P. 41(g). A154-57.  The court declined to construe Armendariz's claim—which cited only the Fourth Amendment and the Administrative Procedure Act—as a request under Rule 41(g).

This appeal followed.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's dismissal of the claims against Detective Summey and the FBI.

I.     Armendariz's first argument on appeal is that the warrant to seize her cellphones and computers violated the Fourth Amendment.

Specifically, she claims that Detective Summey's affidavit failed to establish the required nexus between her offense and those items. The district court correctly rejected this argument. The affidavit included evidence that Armendariz frequently used social media to (a) document and promote similar political events and (b) communicate with other social activists like Shaun Walls. This created a fair probability that law enforcement would find evidence of the offense—such as photos, videos, messages, or location data—on her devices.

However, the Court doesn't need to address that issue to resolve the claim against Detective Summey. Though the Opening Brief argues that the first warrant was unconstitutional, it fails to address whether the alleged violation was clearly established. As a result, Armendariz has forfeited any challenge to the district court's alternative holding, and this Court can and should affirm on that ground alone.

But even if the Court chooses to address this issue, Armendariz cannot prevail. She has not identified any authority from the Supreme Court or this one that establishes—with the required level of specificity—that this affidavit failed to show a nexus between her electronic devices and the offense. Consequently, there was no decision

14

that placed the unconstitutionality of the detective's conduct beyond dispute. The fact that Detective Summey's supervisor, a neutral judge, and a federal district court also concluded this warrant was valid confirms that qualified immunity must apply.

**II.**    Next, Armendariz turns her attention to the warrant that authorized law enforcement to search her devices. She insists that this warrant violated the Fourth Amendment because it lacked the required particularity. The district court properly rejected this argument, too. The second warrant limited the search to evidence of a specific offense— attempted second-degree assault—and further restricted the search with keywords and date ranges. This was not a general warrant that let police rummage freely through Armendariz's devices.

Though she makes several arguments to the contrary, none are persuasive. First, Armendariz says that the affidavit's scattered references to illegal protests, red flags, and the word "yt," expanded the scope of the warrant beyond the attempted assault. But the affidavit repeatedly states that it is directed toward finding evidence of the attempted assault, and a reasonable officer would have read the warrant as being so limited. Second, Armendariz insists that the

15

search methods prescribed by the warrant make it insufficiently particular. They do not. The Tenth Circuit has consistently held that warrants for phones or computers don't require any restrictions on how the search is performed. Such challenges more properly go to the reasonableness of the manner in which the search was conducted—an argument that Armendariz has never made and therefore forfeited.

Lastly, Armendariz argues that this warrant was subject to heightened scrutiny because it implicates the First Amendment and it doesn't meet that higher standard. However, the Supreme Court rejected that argument decades ago. The second warrant complied with the key requirements of the Fourth Amendment's warrant clause— probable cause, particularity, and approval by a neutral judicial officer—and that was enough.

**III.** Finally, Armendariz asks the Court to revive her request for an injunction against the FBI. The district court dismissed that claim on the ground that Fed. R. Crim. P. 41(g) provided the proper vehicle for relief. But Armendariz doesn't discuss this threshold ruling at all; she merely repeats her arguments from below. By failing to explain how the district court erred, she has forfeited any challenge to its ruling.

Even if she hasn't, the Court should affirm the dismissal of this claim.  Armendariz's request for injunctive relief would require the district court to exercise its inherent equitable powers.  But that "drastic remedy" is reserved for situations in which an individual has no other means of relief.  Because Rule 41(g) offers Armendariz a specific statutory remedy, an injunction is not warranted here.

ARGUMENT

I.  **The warrant to seize Armendariz's devices did not violate the Fourth Amendment.  Even if it did, Detective Summey is entitled to qualified immunity.**

**Issue raised and ruled upon:**  Armendariz does not show where this issue was raised and ruled upon, as required by 10th Cir. R. 28(A) ("For each issue raised on appeal, all parties must cite the precise references in the record where the issue was raised and ruled on.").  Nor does the Appellants' Appendix include the relevant briefing on this issue, as required by 10th Cir. R. 10.4(D)(2) ("When the appeal is from an order disposing of a motion . . . , the motion . . . and any responses and replies filed in connection with that motion or pleading must be included in the record or appendix.").  Each of these violations provides an independent basis on which the Court may decline to address this issue. 10th Cir. R.

17

10.4(B) ("When the party asserting an issue fails to provide a record or

appendix sufficient for considering that issue, the court may decline to

consider it."); *see, e.g.*, *Baca v. Menyhert*, 19 F.3d 33 (10th Cir. 1994)

("We decline to address this argument because Baca's brief does not

identify where he raised this argument below.").

Detective Summey addressed this issue in his motion to dismiss

and his reply.  Supp. App. 10-21, 299-310.  The district court held that

the first warrant did not violate the Fourth Amendment, but if it did,

the detective was entitled to qualified immunity.  A131-35; A141-43.

**Standard of review:**  The Court reviews the district court's dismissal

of this claim de novo.  *See, e.g.*, *Doe v. Woodward*, 912 F.3d 1278, 1228

(10th Cir. 2019).

### A. The first warrant did not violate the Fourth Amendment because the affidavit established a nexus between Armendariz's offense and her electronic devices.

Armendariz's first claim on appeal challenges the constitutionality

of the warrant that authorized the seizure of her cellphones, computers,

and other digital storage devices.  She contends that this warrant

violated the Fourth Amendment because there was not a fair

probability that evidence of her offense would be found on those devices. Op. Br. 16-18.  The district court correctly rejected this argument.

Under the Fourth Amendment, a warrant must articulate some connection, or "nexus," between the criminal offense and the place to be searched in order to establish probable cause.  *See, e.g.*, *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009); *United States v. Mora*, 989 F.3d 794, 800 (10th Cir. 2021).  The nexus component requires the government to establish a fair probability that evidence will be found in a certain location.  *Biglow*, 562 F.3d at 1279; *Mora*, 989 F.3d at 800. Like probable cause, it is a "practical, nontechnical conception," that looks to "the totality of the circumstances" and is "designed to operate in conjunction with the commonsense, practical considerations of everyday life."  562 F.3d at 1280-81.

Factors relevant to this analysis include "the nature of the evidence sought," and "all reasonable inferences as to where a criminal would likely keep such evidence."  *Id.* at 1279.  "Whether a sufficient nexus has been established . . . [thus] necessarily depends upon the facts of each case."  *Id.*  In drug trafficking cases, for example, a nexus between the defendant's crime and their residence is presumed.  *See id.*

19

at 1279-80; *Mora*, 989 F.3d at 801.  If there is probable cause to believe a defendant is dealing drugs, there will generally be probable cause to search their home.  *See id.*

 In other cases, however, probable cause to search a person's home—or their car, or their electronic devices—requires something more than probable cause that they committed a crime.  *See Biglow*, 562 F.3d at, 1279.  There must be "additional evidence" linking the offense to the place to be searched.  *Id.*  Still, the Tenth Circuit's "case law reveals that little 'additional evidence' is generally required to satisfy the Fourth Amendment's strictures."  *Id.*

To that end, the Court has "identified three categories of 'additional evidence,' each of which, standing alone, can satisfy the Fourth Amendment nexus requirement."  *Mora*, 989 F.3d at 804 (Tymkovich, J., concurring) (citing *Biglow*, 562 F.3d at 1279).  These are: (1) direct evidence or personal knowledge that evidence or contraband is located in the place at issue, (2) an affiant officer's statement that certain evidence, in their professional experience, is likely to be found in that location, and (3) inferences reasonably drawn from the government's evidence.  *Id.*

20

The affidavit here established nexus via both (2) and (3).

First, Detective Summey stated that in his professional experience, protesters frequently bring their phones with them to take pictures and message others. As a result, it was fair to infer that Armendariz brought her phone to the protest on July 31st, and that she may have taken photos, videos, and/or messaged others. *See, e.g., United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009) (warrant to search computer issued based on affidavit's assertion that "persons involved in narcotics often keep photographs of coconspirators or photographs of illegal narcotics"); *United States v. Walser*, 275 F.3d 981, 984 (10th Cir. 2001) ("Based on his experience and a 40-hour 'Cybercop' course he had completed, [the special agent] had reason to believe there might be ledgers of drug transactions or images of drug use . . . saved on the computer's hard drive.").

Under *Biglow*, that alone was sufficient. But the affidavit also provided facts particularized to Armendariz and her offense that independently established nexus. When Detective Summey was researching Armendariz, he found a photo that she'd posted to Facebook shortly before the protest. A79. Armendariz had taken a picture of

21

herself at a similar event on the bike that she used in the assault.  This "selfie," which the detective included in his affidavit, made it more likely that Armendariz brought her phone to the protest, and that it contained photos, videos, or other relevant evidence.  So did the photo of her speaking to a man with a video camera.  A79.

Nor were those pictures an aberration.  Instead, and as the affidavit made clear, these posts were part of a larger pattern.  Armendariz was active on social media and regularly used these platforms to plan events and advocate for political causes.  A82-83.  The same month as the protest, she used Facebook to promote and document a similar event in the community.  Her posts also revealed that she belonged to a group of political activists who frequently interacted with each other online.  *See* A78 (Facebook friendship with Walls, who promoted July 31st protest on same platform); A79 (comments from others on Armendariz's selfie, including, "You are a good organizer, Chica").  Given this, it was reasonable to infer that Armendariz had not only taken photos or videos at the protest, but that she'd messaged others in that community—like Shaun Walls—about what happened.  *See Biglow*, 562 F.3d at 1280 ("[M]agistrate judges

may draw their own reasonable conclusions, based on the Government's affidavit and the practical considerations of everyday life, as to the likelihood that certain evidence will be found at a particular place.").

Texts, emails, or Facebook messages in which Armendariz described or discussed the incident or plans for the protest would have been critical if the case went to trial. Intent to cause bodily injury is an element of attempted second-degree assault under Colorado law. *See* Colo. Rev. Stat. § 18-3-203; *People v. Banks*, 983 P.2d 102, 107 (Colo. App. 1999) ("[Section] 18-3-203(c), second degree assault on a police officer, requires the prosecution to prove that defendant intended to cause bodily injury to prevent a police officer from performing a lawful duty."). In all likelihood, Armendariz would have argued that she lacked the required intent—i.e., that she dropped her bike by accident. Messages to Walls or others in which she admitted that her actions were deliberate would provide material evidence of her guilt. *See, e.g.*, *United States v. Freeman*, 70 F.4th 1265, 1276 (10th Cir. 2023) (text message from defendant provided material evidence of mens rea); *United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020) (text messages admissible to show necessary element of intent).

23

The district court thus correctly held that, "based on the evidence of her use of social media, her social media connection to Walls, the selfie she took and posted to Facebook days before the protest while out on her bike, and her various other posts referencing her social activism," "it was reasonable for Summey to believe there was probable cause that material evidence for use in a subsequent prosecution of the alleged crime would be found on those devices." A134.

Of course, "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause." *United States v. Leon*, 468 U.S. 897, 914 (1984). That is why the Supreme Court has stressed that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Illinois v. Gates*, 462 U.S. 213, 237 (1983). This "reflects both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case." *Id.*; *Leon*, 468 U.S. at 914 ("[T]he preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination.").

On appeal, Armendariz faults the detective's affidavit for citing his own training and experience to establish nexus.  But this Court has long recognized that "magistrate judges may rely on the opinion of law enforcement officers as to where contraband or other evidence may be kept." *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). As discussed already, it is well settled that the nexus requirement can be satisfied through "an affiant officer's statement that certain evidence—in his or her professional experience—is likely to be found in a certain location." *Biglow*, 562 F.3d at 1279.[2]

Armendariz nevertheless insists this wasn't enough, pointing to this Court's decision in *Mora*, 989 F.3d 794.  But that case doesn't help her.  What made the warrant in *Mora* problematic was not that it relied on an officer's statement about his training and experience.  The problem was that it relied *solely* on one such statement—the officer's assertion that "alien smugglers often use electronic communication

---

[2]  To the extent *Mora* can be read to hold that an affiant officer's statement is not sufficient to establish nexus, it conflicts with the Tenth Circuit's previous opinion in *Biglow*.  "[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." *Auraria Student Hous. v. Campus Vill. Apartments*, 843 F.3d 1225, 1235 (10th Cir. 2016).

devices, GPS devices, and electronic banking systems to conduct operations and store records"—to search Mora's entire home. *Id.* at 801. As this Court held, the Fourth Amendment required at least some facts "specific to Defendant's crime or circumstances." *Id.* at 802.

That's not what happened here. Although Detective Summey did cite his training and experience, he also provided facts specific to Armendariz and her offense. And unlike in *Mora*, these statements were not simply "an afterthought." *Id.* at 801 n.3 (noting that this boilerplate statement "comprise[d] one hand-written paragraph at the bottom of an otherwise typed, four-page document"). The affidavit repeatedly stressed her social media activity, the digital trail she left behind, and how specific photos and messages had already provided relevant evidence—and would likely continue to do so.

Armendariz also cites *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), but that case is even further afield. In *Griffith*, the D.C. Circuit took issue with a warrant that allowed officers to search the defendant's entire home for a cellphone. *Id.* at 1269-70. The affidavit conveyed no reason to think the defendant even owned a cellphone; in fact, the record contained several reasons to suspect he

26

didn't.  *Id.* at 1272-75.  Armendariz's case is thus easily distinguished: law enforcement had good reason to think she owned a phone, brought it to the protest, and used it to document the event for social media.

Finally, Armendariz seems to suggest that law enforcement was required to demonstrate nexus or probable cause with respect to each individual device.  *See* Op. Br. 14, 16, 18.  But she doesn't cite any case law for this proposition, and this Court has never held as much. Instead, the Tenth Circuit has consistently emphasized that "investigators executing a warrant can look anywhere where evidence described in the warrant might conceivably be located."  *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019).  That is especially true in this context.  When it comes to electronic searches, the Court's "precedents demonstrate a shift *away* from considering . . . 'what' a particular warrant permitted the government agents to search (i.e., 'a computer' or 'a hard drive')."  *Id.* (emphasis added); *cf. United States v. Salas*, 106 F.4th 1050, 1058 (10th Cir. 2024) (rejecting particularity challenge to warrant authorizing officials to seize all electronic devices in defendant's home, on his person, or in his vehicle).

Furthermore, other circuits have recognized that it is or "should have been common knowledge to judges (like other members of the public) that images sent via cell phones or Facebook accounts may be readily transferred to other storage devices." *United States v. Reichling*, 781 F.3d 883, 886 (7th Cir. 2015); *cf. Mora*, 989 F.3d at 801 (factors relevant to nexus analysis include "the extent of a suspect's opportunity for concealment"). As the Seventh Circuit put it, "the law does not require judges to pretend they are babes in the woods." *Id.* at 886. And where, as here, the affidavit includes a specific statement explaining that evidence might be located on multiple devices, that objection has even less force. *Reichling*, 781 F.3d at 886 ("It may have been prudent for the agent preparing the search warrant affidavit to have included this fact in the affidavit itself, in case his application ended up on the desk of a Luddite jurist, but we do not think it was required."); *United States v. Contrera*s, 905 F.3d 853, 859 (5th Cir. 2018) (rejecting same argument because warrant's "affidavit noted that cell phones can easily be used in conjunction with computers to transfer, view, back up, or store child pornography images").

**B.  Because the Opening Brief fails to argue that the first warrant clearly violated the Fourth Amendment, Armendariz has forfeited any claim that Detective Summey is not entitled to qualified immunity.**

The district court properly held that the first warrant demonstrated a sufficient nexus between Armendariz's offense and her devices to establish probable cause.  But it also dismissed this claim on another basis—namely, that Defendant Summey was entitled to qualified immunity because the first warrant did not violate clearly established law.  A143.

On appeal, Armendariz fails to challenge that alternative holding.  The Opening Brief argues that the first warrant failed to establish the required nexus.  Op. Br. 14-18.  It also asserts that Detective Summey is not protected by qualified immunity.  Op. Br. 34-40.  But nowhere does the section on qualified immunity address whether the first warrant violated clearly established law.  Armendariz does not contend that *Mora* (the only Tenth Circuit case she cites) placed this legal question beyond dispute—let alone explain how that decision does so given the very different facts of this case.

Instead, the only cases this section contains address particularity.[3]  But Armendariz's challenge to the first warrant focuses on nexus (or probable cause), not particularity.  It's the second warrant she says lacks particularity.  Her discussion of qualified immunity is therefore dedicated exclusively to whether the *second* warrant violated clearly established law.

To be sure, scattered statements in the Opening Brief suggest she intended to challenge this part of the order below.  But the brief never addresses that question anywhere, and "cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine." *Bronson v. Swensen*, 500 F.3d 1099, 1104-05 (10th Cir. 2007); *accord Walker*, 918 F.3d at 1151 (holding issue waived where "the few words that the government expended on this topic consist of little more than generalized and conclusory statements").

---

[3]  The Fourth Amendment cases Armendariz cites in this section are *Voss v. Bergsgaard*, 774 F.2d 402, 404-05 (10th Cir. 1985); *Mink v. Knox*, 613 F.3d 995, 1010-12 (10th Cir. 2010); *United States v. Leary*, 846 F.2d 592, 607-09 (10th Cir. 1988)*,* and *Cassady v. Goering*, 567 F.3d 628, 639 (10th Cir. 2009).  Because these cases all involved warrants that were insufficiently particular, Armendariz doesn't rely on any of them to argue that the first warrant failed to establish a nexus.

As such, Armendariz wholly neglects to argue that the first warrant violated clearly established law and has therefore forfeited any challenge to that ruling. *See, e.g.*, *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) ("[The] briefing-waiver rule applies equally to arguments that are inadequately presented in an opening brief . . . such as those presented only in a perfunctory manner."); *Adler v. Wal-Mart Stores*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). Because that part of the order below represents an alternative holding, her failure to address it is fatal. *See, e.g.*, *In re Overstock Sec. Litig.*, 119 F.4th 787, 808 (10th Cir. 2024); *Yumukoglu v. Provident Life & Acc. Ins. Co.*, 36 F. App'x 378, 383 (10th Cir. 2002) (collecting cases holding that appellant who fails to challenge an alternative holding waives any claim with respect to lower court's disposition of issue). Given this, the Court can and should affirm dismissal of the claim against Detective Summey on that basis, at least to the extent this claim relies on the unconstitutionality of the first warrant.

### C.    In any event, Detective Summey is protected by qualified immunity.

Even if the Court chooses to address this issue, it should hold that Detective Summey is entitled to qualified immunity.  The first warrant did not violate clearly established law, and the detective's reliance on this warrant—which was approved by his supervisor and issued by a neutral judge—was objectively reasonable.

When law enforcement officials are sued in their individual capacity, they are shielded by qualified immunity as long as their conduct did not violate clearly established law.  "Clearly established" means that, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).  Put another way, the law must "place the constitutionality of the officer's conduct beyond debate." *Id.*  This "demanding standard" protects "all but the plainly incompetent or those who knowingly violate the law." *Id.*

In addition, the Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021).  It is not enough that a rule be "suggested by then-existing precedent.  The precedent must be clear

32

enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63.

Thus, even if Armendariz hadn't forfeited this argument, she could not prevail. She has not identified any case from the Supreme Court or this one that involved similar facts and clearly establishes that this affidavit did not demonstrate a nexus sufficient to support a finding of probable cause. Because electronic searches pose difficult and novel Fourth Amendment questions, previous cases addressing the concepts of nexus or probable cause in other factual contexts do not provide sufficient guidance.

As the Supreme Court has instructed, when it comes to qualified immunity, "specificity" is "especially important in the Fourth Amendment context." *Wesby*, 583 U.S. at 63. Probable cause "turns on the assessment of probabilities in particular factual contexts," and "[g]iven its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered." *Id.* A "body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause." *Id.* Here, there is not a single case on point.

This is also why Armendariz's reliance on *Mora* does not take her far. In *Mora*, the Court was concerned with whether a nexus existed between the defendant's specific crime—there, human trafficking—and his home. While the opinion deals with nexus generally, it offers little insight into the question here: whether particularized facts about Armendariz's use of social media to promote and document political events, combined with commonsense inferences about how people use their phones, created a fair probability that officials would find evidence of the offense on her phone or computer.

Furthermore, to the extent *Mora* is relevant, it indicates that Detective Summey's conduct was proper. *Mora* teaches that nexus requires at least some facts particularized to a defendant and her crime. Because Detective Summey's affidavit expressly connected Armendariz's social media use (and thus her digital devices) to her crime and his investigation, *Mora* does not clearly establish that this warrant was unconstitutional. *See also Burgess*, 576 F.3d at 1092 (warrant to search computer issued based on statement that drug dealers often keep photos of drugs or their coconspirators on these devices); *Walser*, 275 F.3d at 984 (computer warrant issued because,

based on agent's "experience and a 40-hour 'Cybercop' course," computer might contain ledgers of drug transactions or images of drug use).

Finally, two other facts confirm that even if the warrant was unconstitutional—which it wasn't—a reasonable officer would not have been on notice of that constitutional problem.  First, Detective Summey had his supervisor review and approve the affidavit.  When an officer does this, it "provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause."  *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012).

More importantly, this warrant was also reviewed and approved by a judge.  While that doesn't dispose of the issue entirely, "[t]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner."  *Id.* (citing *Leon*, 468 U.S. at 922-23).  Where that occurs, qualified immunity should be denied only if the judge "so obviously erred that any reasonable officer would have recognized the error."  *Id.* at 556. "[T]he occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose

personal liability on a lay officer in the face of judicial approval of his actions." *Id.*; *see also United States v. Tuter*, 240 F.3d 1292, 1300 (10th Cir. 2001) ("Police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant.").

If this warrant had flaws, they were not obvious to Detective Summey, his supervisor, the judge who approved it—or even the court below. Given this, Armendariz has failed to meet her burden to demonstrate that qualified immunity doesn't apply here.

## II. The warrant to search Armendariz's devices did not violate the Constitution. Regardless, Detective Summey is entitled to qualified immunity.

**Issued raised and ruled upon:** Again, the Opening Brief fails to show where this issue was raised below (as required by 10th Cir. R. 28(A)), and the Appellants' Appendix does not include the relevant briefing on this matter (as required by 10th Cir. R. 10.4(D)(2)). Each of these violations provides an independent basis on which the Court may decline to address this argument.

Detective Summey raised these arguments in his motion to dismiss and his reply. Supp. App. 11-13, 15, 17-19, 299-310. The

district court held that the second warrant did not violate the First or Fourth Amendments, but even if it did, the detective was protected by qualified immunity.  A131-43.

**Standard of review:**  The Court reviews the district court's dismissal of this claim de novo.  *See, e.g.*, *Woodward*, 912 F.3d at 1228.

### A.    The second Armendariz warrant satisfied the Fourth Amendment's particularity requirement.

The district court correctly held that the second warrant, which authorized a limited search of Armendariz's personal electronics, was sufficiently particular.

Under the Fourth Amendment, a warrant must describe with "particular[ity] . . . the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The particularity requirement is designed to prevent general warrants that allow the government to rummage freely through a person's home or belongings with no clear objective.  *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

To satisfy the particularity test, a warrant must "describe the items to be seized with as much specificity as the government's knowledge and circumstances allow."  *United States v. Cotto*, 995 F.3d

786, 798 (10th Cir. 2021). Because law enforcement doesn't always know what they will uncover, a warrant can allow officials to seize any item relevant to the crime under investigation. *See, e.g., Andresen v. Maryland*, 427 U.S. 463, 479-82 (1976) (upholding warrant authorizing seizure of "fruits, instrumentalities and evidence of crime at this [time] unknown" because warrant only allowed seizure of evidence relevant to specific crime); *United States v. Le*, 173 F.3d 1258, 1275 (10th Cir. 1999) ("[W]e have repeatedly stated that even generally phrased warrants are valid when they are phrased as specifically as the circumstances and the nature of the activity under investigation permit.").

This Court has invalidated warrants only when they failed to contain "any mention of any particular crime" that constrained the search. *Mink v. Knox*, 613 F.3d 995, 1011 (10th Cir. 2010). *Compare id.* (invalidating warrant where "there was no reference anywhere in the warrant to any particular crime, much less to the Colorado criminal libel statute"); *and Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) (holding warrant did not satisfy particularity requirement because "[i]t authorized government agents to rummage through all of defendant's records seeking *any* information pertaining to *any* federal

crime" (emphasis added)); *with United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013) (finding warrant limited to information "related to the murder, neglect, and abuse of a child" sufficiently particular); *and United States v. Brooks*, 427 F.3d 1246, 1252-53 (10th Cir. 2005) (upholding warrant that authorized officers to search a computer "for evidence of child pornography").

The same principle applies to warrants for cellphones and computers. *See United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009); *United States v. Salas*, 106 F.4th 1050, 1057 (10th Cir. 2024). While these devices "can contain enormous amounts of information, and relevant evidence can be stored in any location," the primary question remains the same: Does the warrant "affirmatively limit the search to evidence of specific . . . crimes or specific types of material"? *United States v. Palms*, 21 F.4th 689, 697-98 (10th Cir 2021).

The Tenth Circuit has characterized its decisions as "draw[ing] a recognizable line in considering how much particularity is required for computer searches." *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017). The Court has "held electronic searches invalid 'where [it] could discern *no limiting principle*: where, for example, the warrant

permitted a search of 'any and all' information, data, devices, programs, and other materials." *Salas*, 106 F.4th at 1057.  But as long as the Court "can discern some 'limiting principles' to the warrant, broad authorizations are permissible." *Id.*; *accord Russian*, 848 F.3d at 1245 (stating that computer warrants will typically "pass the particularity test if they limit their scope either 'to evidence of specific federal crimes or to specific types of materials'").

The second Armendariz warrant was sufficiently particular under this standard.  The text of the warrant identified the precise cellphones, computers, and hard drive to be searched by make, model, and serial number, where available.  A87.  As for the items to be seized, the warrant authorized law enforcement to seize "the following person(s), property or thing(s)" based on "probable cause . . . to believe that [they] . . . [w]ould be material evidence in a subsequent criminal prosecution." A87.  The warrant directed the reader to its attachments, which it expressly incorporated, for that list of "person(s), property or things." *See, e.g.*, *United States v. Sadlowski*, 948 F.3d 1200, 1205 (10th Cir. 2020) (holding that supporting affidavit can cure lack of particularity in warrant as long as document is attached and incorporated); *Burgess*,

576 F.3d at 1091-92 (using affidavit to interpret scope of warrant permitting search of "computer records").

The attachments included Detective Summey's affidavit, which filled in the necessary details. The detective described the incident on July 31st at length and explained how he identified Armendariz as the perpetrator. *See* A91-114. He concluded that she had committed a crime under Colorado law: "Criminal Attempt – Second Degree Assault – Class 5 Felony," in violation of Colo. Rev. Stat. § 18-2-101.[4] Then he requested authority to search her devices for two categories of evidence.

First, the warrant sought permission to search for and seize "photos, videos, messages[,] emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation." A113. The affidavit explained that "[t]his time

---

[4] The crime at issue is technically defined by two statutory violations. One of these, which the detective cited, is criminal attempt. *See* Colo. Rev. Stat. § 18-2-101. The other, which he did not, is second-degree assault on a police officer. *See* Colo. Rev. Stat. § 18-3-203(c) ("A person commits the crime of assault in the second degree if: . . . With intent to prevent one whom he or she knows, or should know, to be a peace officer, . . . from performing a lawful duty, he or she intentionally causes bodily injury to any person."). Detective Summey's failure to cite the second statute, which has never been noted by Armendariz, is not problematic. *See, e.g.*, *Palms*, 21 F.4th at 698-99.

period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer."  A113.

Second, if law enforcement wanted to look for evidence outside that timeframe, they could do so only through a keyword search.  The affidavit proffered several terms.  Roughly half were proper nouns involving the Chinook Center and its leaders ("Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Shaun, Walls").  A114.  The others focused on the protest ("Police, officer, cop, pig, bike, bicycle, attack, assault, 150th, celebration, protest, housing, human, right, yt").  A114.  As the affidavit explained, these terms would be used to identify "material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia."  A114.

These limits confirm that the second Armendariz warrant was not the kind of general warrant abhorred by the Framers.  It did not allow law enforcement to rummage through her devices in search of any evidence of any crime.  Rather, the warrant permitted a limited search for evidence of one crime only: the attempted second-degree assault that

42

took place on July 31st.  The district court did not err in holding this

warrant satisfied the Fourth Amendment.

**B.    Detective Summey's affidavit did not unconstitutionally expand the scope of the warrant. Regardless, he is entitled to qualified immunity.**

Armendariz nevertheless argues that the second warrant was

insufficiently particular.  She complains that the warrant "specifies no

crime and refers only to 'this investigation,'" and that "'this

investigation' [was] a fishing expedition [that] encompass[ed] political

viewpoints and any information about Chinook or any of its leaders."

Op. Br. 20.  These claims depend on a strained reading of the

supporting affidavit, and one this Court should reject.

To be sure, the warrant itself did not specify a crime.  But

Detective Summey's affidavit—which was attached to the warrant and

expressly incorporated—plainly did.  The vast majority of his affidavit

was devoted to describing the offense under investigation and

explaining how he identified Armendariz as the perpetrator.  A91-101.

Were there any doubt, the detective explicitly concluded that

Armendariz committed attempted second-degree assault.  *See* A104

("Your Affiant believes Armendariz is in violation of the following

Colorado Revised Statutes: 18-2-101 Criminal Attempt – Second Degree Assault – Class 5 Felony (F5)"). And the remainder of the affidavit repeatedly referred back to that specific crime. *See, e.g.*, A105 ("the attempted assault"), A111 ("Armendariz attempted to assault a uniformed police officer").

Still, Armendariz insists that the warrant was too vague because it refers to "this investigation," and that phrase could be construed extremely broadly. She asks the Court to do just that, citing Detective Summey's comments about red flags and communism, the word "yt," Shaun Walls's posts advocating violence against police, and various references to "illegal protest activity."

The Court should reject this argument for three reasons.

First, whatever their merits, these remarks did not expand the scope of the warrant. This information merely went to a working theory of the case—namely, that the attempted assault was intentional and motivated by animus toward the police. As the Opening Brief emphasizes, tensions between police and the Chinook Center were high when the protest took place. Armendariz was friends with Shaun Walls, a member of his organization, and used physical force to try to

44

stop an officer from arresting him. So that was hardly an unreasonable theory of the case. *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) ("[W]hat is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable.").

Second, Armendariz asks the Court to concentrate on the phrase "this investigation" while ignoring all surrounding context. This includes the long description of the attempted assault (and the identification of its perpetrator) that preceded that phrase. It also includes the important words that immediately followed it.

For example, the affidavit requested permission to search a two-month period for photos and messages "determined to be relevant to this investigation." A113. Even if that phrase was ambiguous, the next sentence eliminated any potential ambiguity: "This time period would allow for any planning leading up to *the crime*, the period when *the crime* took place, and *the subsequent taking of credit for committing a violent act against a police officer*." A113. (emphasis added). In other

45

words, "this investigation" focused on one crime and one crime only: the attempted assault that happened on July 31st.

The affidavit also refers to "this investigation" in its request to perform a keyword search. A114. But the next sentence clarified that "[t]he above mentioned items would be material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia." A114. Logically, then, "this investigation" referred only to the investigation of that particular crime.

Lastly, even if one could construe the phrase "this investigation" broadly, that does not mean this Court should. Indeed, the Tenth Circuit has consistently rejected similar invitations to invalidate warrants on this basis. In *United States v. Brooks*, for example, the Court acknowledged that it was possible to read the warrant at issue as "authoriz[ing] a broad, unchanneled search." 427 F.3d at 1252. When read in context, however, the opening language implicitly limited the scope of the search. *Id.* So that was how the Court chose to read it. *Id.*; *see also United States v. Wagner*, 951 F.3d 1232, 1248 (10th Cir. 2020) ("Although a few of the 16 categories of items listed for seizure did not reference a specific subject matter, . . . Mr. Wagner may not rely on

46

selective portions of a warrant that, read in context, contained

sufficiently particularized language requiring a nexus with child

pornography"); *Burgess*, 576 F.3d at 1091-92 (using context provided by

affidavit to reject reading of warrant that would allow "a search of all

computer records without description or limitation"); *cf. Christie*, 717

F.3d at 1165 (declining to suppress evidence because warrant was

"surely open to interpretation").

The same principle applies here.  Armendariz relies on selective

portions of the warrant, removed from context, to read it as authorizing

an unconstitutionally broad search.  But even if it is possible to read the

warrant that way, that is not how a reasonably well-trained officer

would understand it.  Not when the warrant as a whole makes clear

that its focus was the attempted assault.

Finally, even if this warrant was unlawful, Detective Summey is

entitled to qualified immunity.  Armendariz cites various decisions,

including *Leary*, *Voss, Cassady*, and *Mink*, to argue that the warrant

was plainly unconstitutional.  But neither the facts of those cases nor

the (very general) principles they articulate clearly establish that this

warrant violated the Fourth Amendment.  *See Leary*, 846 F.2d at 607-

09 (warrant invalid because it allowed officials to seize any business record related to any violation of federal export laws); *Voss*, 774 F.2d at 404-05 (warrant unconstitutional because it permitted government to seize all business records and was not restricted to evidence of tax fraud); *Mink*, 613 F.3d at 1010-11 (warrant unconstitutional because it contained no reference to any crime); *Cassady*, 567 F.3d at 639 (warrant unconstitutional because it authorized seizure of all possible evidence of any crime). In none of those decisions did the Tenth Circuit invalidate a warrant that (1) identified a specific crime, (2) cabined the evidence law enforcement could seize, and (3) imposed affirmative limits on the methods by which officials could search for that evidence.

What is more, the Tenth Circuit's decisions in *Palms, Christie*, and *Brooks* hold that a warrant is sufficiently particular if it does (1) alone. *See Palms*, 21 F.4th at 689-99 (upholding warrant to seize evidence of "human trafficking"); *Christie*, 717 F.3d at 1165 (upholding warrant to seize "all records and information related to the murder, neglect, and abuse" of a specific child); *Brooks*, 427 F.3d at 1252-53 (upholding warrant to search computer "for evidence of child pornography"). There is therefore nothing in this Court's case law that

48

would put "every reasonable officer" on notice that this warrant lacked

particularity.  Coupled with the fact that the warrant was approved by

his supervisor and a neutral judge, there is no basis on which to deny

Detective Summey qualified immunity.

> **C.   The keyword search did not render the warrant defective.  Even if it did, the detective is entitled to qualified immunity.**

Next, Armendariz challenges the keyword search prescribed by

the affidavit.  For the most part, she characterizes these arguments as

going to lack of particularity; at other times, however, she suggests they

represent a lack of probable cause.  *See* Op. Br. 24, 26-27.  Regardless of

how this argument is framed, the Court should reject it.

First, the keyword search contained in the warrant does not

render it insufficiently particular.  It is long settled in this circuit that

particularity does not require warrants for computers or cellphones to

impose restrictions on how the search can be conducted.  *See, e.g.*,

*Wagner*, 951 F.3d at 1247 ("Although a warrant must describe with

particularity the items sought on a computer,  . . . it need not include a

particularized computer search strategy.");  *Russian*, 848 F.3d at n.1

1245 ("[L]ike other circuits, we have previously declined to require a

search protocol for computer searches, since courts are better able to assess the reasonableness of search protocols ex post.").

The particularity requirement has never "been understood to demand of a warrant technical precision, or elaborate detail, but only practical limitations affording reasonable specificity." *Christie*, 717 F.3d at 1166.  It would be "folly for a search warrant to attempt to structure the mechanics of the search." *Burgess*, 576 F.3d at 1094.  Just as "[o]ne would not ordinarily expect a warrant to search filing cabinets for evidence of drug activity to prospectively restrict the search to 'file cabinets in the basement' or to file folders labeled 'Meth Lab' or 'Customers,' there is no reason to so limit computer searches." *Id.* Doing so "would unduly restrict legitimate search objectives." *Id.*

Ultimately, the search "process must remain dynamic." *Id.*; *see United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006) ("[A] computer search may be as extensive as reasonably required to locate the items described in the warrant.").  Because of this, search warrants typically "contain few—if any—restrictions on where within a computer or other electronic storage device the government is permitted to

search." *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019). And that does not offend the Fourth Amendment.

Armendariz also suggests that the keywords make the warrant unconstitutional because there wasn't probable cause to support each individual term. But that is not how probable cause works. Law enforcement must show a fair probability that evidence will be found in the place to be searched. Once probable cause is established with respect to that location, the "rule is that investigators executing a warrant can look anywhere where evidence described in the warrant might conceivably be located." *Loera*, 923 F.3d at 916.

That is why, for example, police don't need probable cause with respect to each room in a home. *See, e.g.*, Wayne R. LaFave, *Search and Seizure* § 4.5(a) (6th ed.) ("[T]here [is] no authority to support such a room-by-room probable cause limitation."). If there is probable cause to search a person's house for drugs, officers can search the bathroom, the linen closet, and the kitchen pantry—even if they have no specific reason to think that drugs are hidden there.

The same principle applies to computers and cellphones. Just as evidence or contraband can be hidden in many places, "[c]omputer files

can be misnamed by accident, disguised by intention, or hidden altogether, leaving investigators at a loss to know ex ante what sort of search will prove sufficient to ferret out the evidence they legitimately seek." *Christie*, 717 F.3d at 1166.  Because there are "infinite places within a computer that electronic evidence might conceivably be located," *Loera*, 923 F.3d at 916, "a computer search may be as extensive as reasonably required to locate the items described in the warrant." *Grimmett*, 439 F.3d at 1270.

        This is not to say that the Fourth Amendment provides no protection against officials rummaging through phones and computers. It does.  But as this Court first suggested in *Christie*—and then confirmed in *Loera* and *Palms*—that protection comes from the requirement that searches be executed in a reasonable manner.  *See Loera*, 923 F.3d at 916-17 (explaining that this Court has shifted away from analyzing ex ante restrictions in warrants in favor of reviewing post hoc the reasonableness of the search methods employed); *Palms*, 21 F.4th at 700-01 & n.12 (same).  That is because "courts are better able to assess the reasonableness of search protocols ex post, in light of the

52

totality of the circumstances and where evidence and experts from both sides can be entertained and examined." *Christie*, 717 F.3d at 1166.

Armendariz's attempts to challenge the keyword search are thus doctrinally misplaced. Even if officials should have used different search terms (or confined that search to certain dates), these claims go to the idea that the search wasn't conducted in a reasonable manner. They are not arguments that the warrant lacked particularity or probable cause. *See, e.g.*, *Palms*, 21 F.4th at 700-01 (evaluating how computer was searched under the rubric of reasonableness); *Loera*, 923 F.3d at 921-23 (analyzing method of search for reasonableness); *Burgess*, 576 F.3d at 1092 (evaluating scope of search itself). A computer search warrant is not insufficiently particular if it lacks date restrictions, because warrants aren't designed to prescribe how police should search. As this Court has recognized, that work is done by the requirement that searches be executed in a reasonable manner.

The problem for Armendariz is that she has never made such an argument. She has consistently challenged the constitutionality of the *warrant*, and not the reasonableness of the search itself. *See, e.g.,* Supp. App. 250-61 ("The Warrants Violated Armendariz's Constitutional

rights."). Consequently, she has long forfeited any claim that the government conducted its search in an unreasonable manner.

Even if there is some merit to this claim, Detective Summey would still be protected by qualified immunity. The Tenth Circuit has never held that a warrant must contain search protocols or restrictions to satisfy the particularity requirement. As a result, it has never invalidated a warrant on the grounds that the search terms included were overly broad. At the time the detective drafted this warrant, then, there was not a single case to guide his choice of search methods. There was not, for example, a Tenth Circuit decision addressing the selection of appropriate date restrictions or search terms.

If anything, the fact that Detective Summey chose to include search restrictions demonstrates his efforts to respect the Fourth Amendment. It certainly doesn't suggest incompetence or a knowing violation of the law. Thus, while Armendariz may fault his failure to "carefully tailor" those terms, Op. Br. 24, the lack of any sufficiently similar precedent means that qualified immunity applies.

**D.**    **Armendariz forfeited any challenge to the two-month limitation on the search for photos, videos, messages by failing to raise this claim below.**

The Opening Brief also challenges the other restriction the warrant imposed on this search, which allowed officers to review photos, videos, messages, and location data to seize information relevant to the investigation, but also restricted that review to data from a two-month period. Because Armendariz never raised this argument below, she has forfeited that claim.

In any event, this argument stumbles on the same hurdle as her challenge to the keyword search. These arguments don't go to the particularity of the *warrant*, but the reasonableness of the manner in which the search was conducted. Because Armendariz's briefing has always focused on the validity of the warrant, not the search itself, the Court should reject this argument.

**E.**    **The second warrant does not violate the First Amendment. Even if it does, any violation was not clearly established.**

Finally, Armendariz asserts that the second warrant violated the First Amendment. Though the precise contours of this claim are

unclear, she argues that the second warrant is subject to heightened standards because it implicates First Amendment interests.[5]

Armendariz dusts off the Supreme Court's decision in *Stanford v. Texas*, 379 U.S. 476 (1965), to support this claim.  In *Stanford*, the Court considered a search warrant that allowed the government to seize all materials related to the Communist Party of Texas.  *Id.* at 477-78. The decision found the warrant unconstitutional, emphasizing that the particularity requirement "is to be accorded the most scrupulous exactitude when the 'things [to be seized]' are books, and the basis for their seizure is the ideas which they contain."  *Id.* at 482.

But as the district court correctly recognized, *Stanford* doesn't apply here.  This warrant didn't authorize the government to seize items based on "the ideas which they contain[ed]."  The warrant was viewpoint neutral; it allowed officers to seize evidence of an attempted assault.  That relevant search terms could reveal unrelated political content was an indirect consequence of the offense's location (a political

---

[5]  The district court interpreted this argument as a claim for retaliation under the First Amendment.  A148-50.  Because the Opening Brief makes no reference to that theory (or the district court's analysis of it), Armendariz has abandoned any reliance on that claim.

protest) and its victim (an on-duty police officer).  *See* A149 n. 29 ("The [complaint] fails to plausibly plead the basis of the warrants in this case was in and of itself the ideas, speech, or associations of either Plaintiff versus the alleged criminal statutes or criminal conduct under investigation.").  Even if this warrant does implicate the First Amendment, "the [F]irst [A]mendment does not protect against investigation of suspected criminal activity."  *Pleasant v. Lovell*, 876 F.2d 787, 803 (10th Cir. 1989).  Rather, these rights are "[s]ubject to the general and incidental burdens that arise from good faith enforcement of otherwise valid criminal and civil laws that are not themselves solely directed at curtailing the free flow of information." *Reps. Comm. for Freedom of Press v. Am. Tel.*, 593 F.2d 1030, 1051 (D.C. Cir. 1978).

Moreover, it is not clear what remains of *Stanford* today.  Twenty years after that decision, the Supreme Court addressed "the proper standard for issuance of a warrant authorizing the seizure of materials presumptively protected by the First Amendment" in *New York v. P.J. Video, Inc.* 475 U.S. 868, 869, 871 (1986).  The Court rejected the idea that there was "a higher standard for evaluation of a warrant application seeking to seize such things as books and films," noting that

it had "never held or said that such a 'higher' standard is required by the First Amendment." *Id.* at 874.  Instead, "an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." *Id.* at 874-75; *accord Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978) ("Properly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the [First Amendment] harms that are assertedly threatened by warrants.").

Thus, despite Armendariz's claims, this warrant was not subject to a higher standard merely because it may have allowed law enforcement to view expression protected by the First Amendment.  The constitutional requirements for the warrant—particularity and probable cause—remain the same.  And for the reasons above, this warrant satisfied those requirements.

Finally, even if this warrant was problematic under the First Amendment, the cases cited by Armendariz—*Voss, Stanford*, and

*Zurcher*—do not clearly establish that this warrant was unconstitutional. *Stanford* and *Zurcher* do little more than acknowledge that First Amendment rights can be implicated by search warrants. *Voss* comes closer but is still a far cry from meeting Armendariz's burden. Unlike the warrant in *Voss*, the affidavit here cited a specific criminal violation and thus provided the required particularity. Because none of these decisions "clearly prohibit" Detective Summey's "conduct in the particular circumstances before him," qualified immunity must apply. *Wesby*, 583 U.S. at 63.

## III. The district court properly denied Armendariz's request for an injunction against the FBI.

**Issued raised and ruled upon:** The Opening Brief does not indicate where this argument was raised below (as required by 10th Cir. R. 28(A)). Nor does the Appellants' Appendix include the relevant briefing (as required by 10th Cir. R. 10.4(D)(2)). Each violation provides an independent basis on which the Court may decline to address this issue.

The FBI addressed this claim in its motion to dismiss and the subsequent reply. Supp. App. 23-25, 312-13. Ultimately, the district court "agree[d] with the FBI that the Fourth Amendment does not provide a remedy for its ongoing retention of these digital copies."

A154.  But it did so "for reasons not discussed by either party," namely, that "[t]he appropriate claim appears to be one for return of property under Fed. R. Crim. P. 41(g)."  A154; *see generally* A154-57.

### A. Armendariz has forfeited this issue on appeal by failing to explain why the district court's analysis was incorrect.

The Opening Brief has forfeited this claim by failing to address the district court's ruling.  As this Court has stressed, "the first task of an appellant is to explain to us why the district court's decision was wrong." *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015).  An appellant *must* "explain what was wrong with the reasoning that the district court relied on in reaching its decision." *Id.*; *accord Vincent v. Nelson*, 51 F.4th 1200, 1223 (10th Cir. 2022).  "[F]ailure to explain why the district court's order was wrong waives any argument for reversal." *Dease v. Webb*, 791 F. App'x 744, 746 (10th Cir. 2019) (unpublished).

Armendariz's sixth claim requested an injunction "ordering the return or destruction of [her] data." A66.  In dismissing this claim, the district court ruled that "[t]he appropriate claim appears to be one for return of property under Fed. R. Crim. P. 41(g)," and declined to

construe that claim as a request under Rule 41(g).  A154, 157.  But the

Opening Brief does not mention this threshold ruling—that the plaintiff

failed to pursue her claim through the proper procedural vehicle—at all,

let alone engage with that ruling in any meaningful way.

Armendariz does not explain why the district court's analysis was

incorrect.  She does not, for example, argue that a motion under Rule

41(g) is not the proper vehicle for relief.  Nor does she concede that she

*could* bring such a motion, while asserting that her injunctive claim

should still be allowed to proceed.  Instead, she simply repeats her

arguments from below, even though the district court explicitly declined

to rule on that basis.  *See* A154.[6]

This omission is particularly glaring given that two of the

decisions on which the Opening Brief relies expressly reference Rule

41(g).  *See Asinor v. D.C.*, 111 F.4th 1249, 1259 (D.C. Cir. 2024)

---

[6]  Nor does Armendariz address the authorities cited by the district court, such as *United States v. Anh Ngoc Dang*, 559 F. App'x 660, 662 (10th Cir. 2014) ("The issue of whether the deputy marshals violated the Fourth Amendment is distinct from the appropriate disposition of the cash seized."), or *Matter of Search of Kitty's E.*, 905 F.2d 1367, 1370 (10th Cir. 1990) (noting that 1989 amendments made relief in the form of return of property available under Rule 41(e) without showing an illegal search or seizure).

(addressing Fourth Amendment claim where plaintiffs had already filed unsuccessful motion under Rule 41(g)); *Lindell v. United States*, 82 F.4th 614, 621 (8th Cir. 2023) (characterizing defendant's constitutional claims as "coupled with a Rule 41(g) request for the return of property"). In *Lindell*, Judge Colloton wrote separately to chastise the majority for addressing "a ruling that was never made on a motion that was never filed"—i.e., a motion under Rule 41(g). *Id.* at 623 (Colloton, J., concurring in part and dissenting in part). If the defendant "wishe[d] to secure a return of his old phone," Judge Colloton concluded, he should "file a straightforward motion for property based on the length of retention." *Id.* The district court's order quoted this concurrence. A156 n.10. Yet Armendariz doesn't even acknowledge it.

As a result, the Opening Brief has forfeited any argument here by failing to brief it adequately, and the Court should decline to consider the issue. *See Dease*, 791 F. App'x at 746; *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) ("The argument section of Plaintiffs'

opening brief does not challenge the court's reasoning on this point. We therefore do not address the matter.").[7]

## B.    In any event, Rule 41(g) is the appropriate vehicle for Armendariz's claim.

If the Court chooses to address this claim, it should affirm the district court's decision. Because Armendariz already has a specific statutory remedy, the Court should reject her invitation to use its equitable powers to fashion a new one.

As the district court recognized, Armendariz has a remedy that she declined to pursue. Fed. R. Crim. P. 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." This provision is not limited to defendants in criminal cases. Nor does it require a party to demonstrate a Fourth Amendment violation.

Where, as here, "a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1, 16 (2017); *see also Hinck v. United*

---

[7] Of note, Armendariz's ongoing § 1983 claims presumably subject any data relating to those claims to a litigation hold.

*States*, 550 U.S. 501, 506 (2007) ("[It is a] well-established principle that, in most contexts, a precisely drawn, detailed statute pre-empts more general remedies."); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 720 (1967) ("When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied."). Because Rule 41(g) already offers a way to adjudicate these claims, the Court should be reluctant to imply a new remedy.

Rule 41(g) *is* a statutory remedy. The Federal Rules of Criminal Procedure are authorized by Congress, and Congress has the power to repeal, amend, or supersede them at any time. *See United States v. Ganias*, 824 F.3d 199, 219-20 (2d Cir. 2016) ("It is worth observing, then, that Rule 41(g) constitutes a statutory solution (as opposed to a purely judicially constructed one) to at least one facet of the retention problem."); *accord Matter of the Search of Twenty-Six (26) Digital Devices & Mobile Device Extractions*, 2022 WL 998896, at *12 (D.D.C. Mar. 14, 2022) ("[T]he Federal Rules of Criminal Procedure provide a statutory mechanism through which an owner may seek the return of lawfully seized and retained property.").

64

Moreover, an injunction would require the court to exercise its equitable jurisdiction. Yet "[i]t is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *United States v. Bacon*, 900 F.3d 1234, 1238 (10th Cir. 2018). As discussed above, Armendariz has an adequate legal remedy in the form of Rule 41(g).

She was not free to bypass that remedy. "An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity, and any litigant making such an appeal must show that the intervention of equity is *required*." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (emphasis added). Because the "less drastic remedy" provided by Rule 41(g) is "sufficient to redress [her] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010); *see Trump v. United States*, 54 F.4th 689, 697 (11th Cir. 2022) (rejecting argument that "would allow any subject of a search warrant to invoke a federal court's

equitable jurisdiction," because that would "make equitable jurisdiction not extraordinary, but instead quite ordinary").

## CONCLUSION

The Court should affirm the decision below.

DATED this 2nd day of December, 2024.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

/s/ Marissa R. Miller

MARISSA R. MILLER
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(B)(i), I certify that the

**ANSWER BRIEF FOR FEDERAL APPELLEES** is proportionally spaced and

contains <u>12,700</u> words, according to the Microsoft Word software used

in preparing the brief.


DATED:  December 2, 2024         /s/ Kayla Keiter
                                 KAYLA KEITER
                                 U.S. Attorney's Office

## CERTIFICATE OF SERVICE

I hereby certify that on <u>December 2, 2024</u>, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

<u>/s/ Kayla Keiter</u>
KAYLA KEITER
U.S. Attorney's Office