No. 24-1201

IN THE
United States Court of Appeals for the Tenth Circuit

———————

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

Plaintiffs-Appellants,

v.

CITY OF COLORADO SPRINGS; DANIEL SUMMEY, a detective with the
Colorado Springs Police Department, in his individual capacity; B.K. STECKLER, a
detective with the Colorado Springs Police Department, in his individual capacity;
JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his
individual capacity; ROY A. DITZLER, a police officer with the Colorado Springs
Police Department, in his individual capacity; FEDERAL BUREAU OF
INVESTIGATION; and THE UNITED STATES OF AMERICA,

Defendants-Appellees.

———————

On Appeal from the
United States District Court for the District of Colorado
Civil Action No. 23-cv-01951-SKC-MDB
(Hon. S. Kato Crews)

———————

**SUPPLEMENTAL APPENDIX**
**Volume I of II**

———————

ANNE H. TURNER
OFFICE OF THE CITY ATTORNEY OF THE
CITY OF COLORADO SPRINGS
30 South Nevada Avenue, Suite 501
Colorado Springs, Colorado 80903
(719) 385-5909

Attorney for Defendants-Appellees City of Colorado Springs,
Bradley K. Steckler, Jason S. Otero, and Roy A. Ditzler

# TABLE OF CONTENTS

Page

Doc. 49, Motion to Dismiss by the Federal Defendants ............................................3

    Doc. 49-1, Armendariz Apartment Warrant.....................................................27

    Doc. 49-2, Armendariz Devices Warrant  ........................................................45

    Doc. 49-3, Declaration of William L. Harris ...................................................74

Doc. 50, Ditzler's Motion to Dismiss and Joinder in
Summey's/United States' Motion to Dismiss ....................................................77

Doc. 51, Steckler's and Otero's Motion to Dismiss .................................................87

    Doc. 51-1, Chinook Facebook Search Warrant...............................................100

    Doc. 51-2, City Code 9.2.104 (Obstructing Passage) ....................................105

    Doc. 51-3, Walls Court File ...........................................................................108

    Doc. 51-4, Christiansen Court File.................................................................156

    Doc. 51-5, US v. Kelly Complaint .................................................................194

Doc. 52, City of Colorado Springs' Motion to Dismiss ........................................210

Doc. 59, Plaintiffs' Response to Steckler and Otero's Motion to
Dismiss .............................................................................................................221

Doc. 60, Plaintiffs' Combined Response in Opposition to Motion to
Dismiss by the Federal Defendants and Ditzler's Motion to
Dismiss and Joinder .........................................................................................239

Doc. 61, Plaintiffs' Response in Opposition to the City of Colorado
Springs' Motion to Dismiss ..............................................................................273

CERTIFICATE OF SERVICE ...............................................................................291

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01951-CNS-MDB

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

     Plaintiffs,

v.

CITY OF COLORADO SPRINGS,
DANIEL SUMMEY, a detective with the Colorado Springs Police Department,
in his individual capacity,
B.K. STECKLER, a detective with the Colorado Springs Police Department,
in his individual capacity,
JASON S. OTERO, a sergeant with the Colorado Springs Police Department,
in his individual capacity,
ROY A. DITZLER, a police officer with the Colorado Springs Police Department,
in his individual capacity, and
FEDERAL BUREAU OF INVESTIGATION.

     Defendants.

---

## MOTION TO DISMISS BY THE FEDERAL DEFENDANTS

---

Defendant Summey, the FBI, and the United States move to dismiss Claims 1, 4, and 6 of the First Amended Complaint, ECF No. 12. Undersigned counsel conferred with Plaintiff's counsel regarding this motion on November 14, 2023, and Plaintiff opposes this motion.

### INTRODUCTION

In 2021, Plaintiff Jacqueline Armendariz was arrested on charges of attempted assault of a police officer, stemming from an incident during a protest in Colorado Springs. She pleaded guilty to a lesser offense. Now, she challenges whether the search warrants—which, among other things, authorized searching her digital devices for evidence related to the crime—violated the First and Fourth Amendments of the U.S. Constitution or the state constitution.

1

Claim 1 (against Defendant Summey) must be construed as a *Bivens* claim because Summey obtained the warrants in his capacity as a "Task Force Officer" for the FBI's Joint Terrorism Task Force. The claim presents a new *Bivens* context because, among other things, it arises under a different provision of the Fourth Amendment than the claim in *Bivens* itself and because the searches were conducted pursuant to warrants, implicating different Fourth Amendment interests. And special factors counsel hesitation in creating a remedy in this context. Independently, Summey is entitled to qualified immunity for two reasons. First, Plaintiff fails to allege that the warrants violate constitutional requirements. Second, it was not clearly established that the warrants were defective, and it was objectively reasonable for Summey to believe that the warrants complied with the First and Fourth Amendments.

Claim 4 (against the United States) should be dismissed for lack of jurisdiction for two reasons. First, Plaintiff did not exhaust administrative presentment requirements. Second, she does not plead that a private person would be liable to her for the conduct alleged. Both defects are jurisdictional.

Claim 6 (against the FBI) should be dismissed because Plaintiff cannot force the FBI to dispossess itself of copies of evidence obtained lawfully, and the FBI's retention of unlawfully obtained evidence does not violate the Fourth Amendment.

## BACKGROUND

In 2021, Plaintiff was arrested on charges of attempted assault of a police officer. ECF No. 12 ¶¶ 88-89. She alleges that she only "dropped her bike" in the path of the officer who was running past her during a housing rights protest, *id.* ¶ 42, but she pleaded guilty to obstructing a peace officer. *Id.* ¶ 119. The incident was captured on police bodycam footage. *Id.* ¶ 42. Daniel Summey,

a Task Force Officer for the FBI's Joint Terrorism Task Force and a Colorado Springs Police Department officer, investigated. *Id.* ¶¶ 57, 111-12.

The case against the federal defendants arises out of two search warrants Summey obtained as part of the investigation. The first ("Warrant 1") authorized a search of Plaintiff's residence. *See* **Exhibit 1**, Warrant 1 & affidavit (8/6/21).[1] The second warrant ("Warrant 2") authorized a search of Plaintiff's digital devices. *See* **Exhibit 2**, Warrant 2 & affidavit (8/20/21). Summey's affidavits identified Colo. Rev. Stat. § 18-2-101 (attempted second-degree assault) as the crime being investigated and recounted facts supporting a fair probability that Plaintiff's digital devices contained evidence that would be useful in prosecuting the attempted assault. Ex. 1 at 17; Ex. 2 at 18; *see also* ECF No. 12 ¶¶ 64-67, 75-76, 85, 103, 110 (describing Plaintiff's digital and social media activity and Summey's training and experience in similar cases). Notably, Summey confirmed with Plaintiff's supervisor that Plaintiff attended the protest and shared digital media of it with her. Ex. 2 at 19. Two different state-court judges, finding probable cause, issued the warrants. *Id.* at 1-2; Ex. 1 at 1; ECF No. 12 ¶ 118.

I.     <u>**MOTION TO DISMISS BY DEFENDANT SUMMEY (Claim 1)**</u>

In Claim 1, Plaintiff alleges that the warrants violated the Fourth Amendment's particularity and probable cause requirements and failed to limit the discretion of the officer executing the

---

[1]  Because the warrants and affidavits are referenced and quoted in the First Amended Complaint, are central to Plaintiff's claims, and their authenticity is not disputed, the Court may consider the documents, attached here with limited redactions, on a motion to dismiss without converting the motion to one for summary judgment. *See N. Arapaho Tribe v. Becerra*, 61 F.4th 810, 814 (10th Cir. 2023).  "Factual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true."  *Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013) (cleaned up).

search. ECF No. 12 ¶ 154. She also alleges that the First Amendment "may require more than ordinary Fourth Amendment compliance." *Id.* ¶ 150. Although she asserts this claim under 42 U.S.C. § 1983, Claim 1 is properly construed as a *Bivens* claim against Summey. *See Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) (Section 1983 "does not apply to federal officers acting under color of federal law") (citation omitted).

Plaintiff pleads facts suggesting that Summey was acting under color of federal law. Specifically, she alleges that Summey signed the affidavits as a "Task Force Officer." ECF No. 12 ¶¶ 111-12; Ex. 1 at 3, 17 (stating Summey is "currently assigned to the FBI Joint Terrorism Task Force" and signing the affidavit as a "Task Force Officer"); Ex. 2 at 5, 28 (same). Plaintiff also alleges that "the FBI had been spying on the Chinook Center and other activist groups since the summer of 2020." ECF No. 12 ¶ 25; *see also id.* ¶ 28. Plaintiff further alleges that her digital devices were taken to "an FBI-run forensic computer laboratory" to extract data pursuant to the warrants. *Id.* ¶¶ 127-28. These facts plausibly suggest that Summey obtained the warrants in his capacity as a federal Task Force Officer under color of federal law.[2]

Courts routinely interpret § 1983 claims against federal task force officers as *Bivens* claims. *See Colorado v. Nord*, 377 F. Supp. 2d 945, 949 (D. Colo. 2005) ("Courts have consistently treated

---

[2]  Plaintiff does not plausibly allege that Summey was acting color of state law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief."). The facts that Summey was employed by the Colorado Springs Police Department and obtained state warrants related to state charges are not inconsistent with the federal character of the Joint Terrorism Task Force or of deputized Task Force Officers. *See King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019), *rev'd on other grounds*, *Brownback v. King*, 141 S. Ct. 740 (2021) ("[T]he nature and character of a cooperative federal-state program is determined by the source and implementation of authority for the *program*, not for the particular work that the agency chooses, in the exercise of its authority, to perform on a given day.").

Supp.App.006

local law enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents."); *see also Gaspard v. DEA Task Force*, No. 15-cv-1802, 2016 WL 2586182, at *7 (C.D. Cal. Apr. 4, 2016)*, recommendation adopted*, 2016 WL 2349093 (C.D. Cal. May 4, 2016) (stating that the "weight of authority" "treat[s] local law enforcement agents deputized as part of a federal task force as federal agents," collecting cases).

### A.   The Court should decline to recognize a *Bivens* remedy.

To determine whether a *Bivens* remedy exists, a court first asks "whether the case presents 'a new *Bivens* context'–*i.e.*, is it 'meaningful[ly] different from the three cases in which the Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022). If so, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* Expanding *Bivens* is "impermissible in virtually all circumstances." *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022).

### 1.   This case arises in a new *Bivens* context.

The only Fourth Amendment case in which the Supreme Court implied a *Bivens* remedy was *Bivens* itself. *Bivens* involved agents of the Federal Bureau of Narcotics who, without a warrant, entered the plaintiff's apartment, "manacled" him in front of his wife and children, "threatened to arrest the entire family," searched the apartment "from stem to stern," and subjected him to interrogation and a "visual strip search." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). The plaintiff sued the agents for excessive force and making a warrantless arrest without probable cause. *Id.* at 389-90.

Plaintiff's claim here presents a new context because it is meaningfully different from that

**Supp.App.007**

alleging a warrantless arrest executed with excessive force. Claim 1 arises under a different constitutional provision. *Compare* U.S. Const., amend IV (guaranteeing "no Warrants shall issue, but upon probable cause") *with id.* (prohibiting "unreasonable searches and seizures"); *see Egbert*, 596 U.S. at 498 ("[A] new context arises when there is a new 'constitutional right at issue'"). The conduct alleged is meaningfully different, too. Plaintiff does not challenge the constitutionality of her arrest or assert that it was made with excessive force but whether Summey's affidavits established probable cause to search her digital devices. The fact that Summey *obtained* warrants raises distinct Fourth Amendment considerations, which are subject to distinct judicial guidance and which "pose a greater risk of intruding on the investigatory and prosecutorial functions of the executive branch." *Annappareddy v. Pascale*, 996 F.3d 120, 135-37 (4th Cir. 2021) (finding a new context where the search and seizure was conducted "*with* a warrant"); *see also Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017) (meaningful differences from prior cases include different "judicial guidance" to executing officers and different "risk[s] of disruptive intrusion by the Judiciary into" functions of the executive branch). This case also concerns a "new category of defendant[]," *Egbert*, 596 U.S. at 492—a local law enforcement officer assigned to an FBI task force vs. a federal narcotics agent—which raises unique issues of intergovernmental relations. For these reasons, the claim arises in a new context. Additionally, the First Amendment claim presents a new context, because the Supreme Court has never implied a First Amendment *Bivens* remedy. *Id.* at 498-49.

### 2.   Existing processes counsel against an implied remedy.

The "sole[]" purpose of *Bivens* is to deter unconstitutional acts. *Id.* at 498. An independent reason to dismiss the *Bivens* claim is that "Congress or the Executive" has already provided a mechanism to deter the misconduct alleged. *Id.* Congress created the Inspector General Act of 1978,

**Supp.App.008**

which provides a mechanism to raise allegations of misconduct by employees of the Department of Justice. 5 U.S.C. § 413(d). Congress also authorized the DOJ's Inspector General to investigate allegations of misconduct, refer allegations to the Office of Professional Responsibility, or refer them to the internal affairs office of the appropriate component of the DOJ. *Id.* § 413(b). This mechanism is an adequate remedial process to deter unconstitutional conduct. *Cf. Pettibone v. Russell*, 59 F.4th 449, 456-57 (9th Cir. 2023) (Inspector General investigations at the Department of Homeland Security and the potential for corrective action against malfeasant employees was an "adequate alternative to *Bivens*").

### 3. Special factors counsel hesitation in creating a *Bivens* remedy.

Congress is at least arguably better positioned to create a damages remedy in this context. If there is "*any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed,'" no *Bivens* remedy can lie. *Egbert*, 596 U.S. at 496. Implying a remedy against a member of a Joint Terrorism Task Force has the potential to raise national security concerns, independently foreclosing *Bivens* relief. *See id.* at 494 ("a *Bivens* cause of action may not lie where, as here, national security is at issue"). Creating a judicial remedy also could have consequences for the FBI's ability to recruit local officers to participate in joint task forces, hindering the effectiveness of those task forces and their missions. A damages remedy also could have a chilling effect on law enforcement, who, despite believing they had probable cause for a warrant, might forego valid investigative techniques to avoid any prospect of a lawsuit. Criminal defendants, meanwhile, could use *Bivens* claims to obtain discovery of documents that wouldn't otherwise be available to them in a criminal suit, as the rules of criminal discovery are more restrictive than the Federal Rules of Civil Procedure. Finally, the Court should

hesitate to create a *Bivens* remedy here because challenges by defendants to probable-cause determinations are so common that permitting a civil cause of action in this context could have a significant impact on litigation against law enforcement organizations. *See id.* at 500 ("If anything, that retaliation claims are common, and therefore more likely to impose 'a significant expansion of Government liability,' counsels against permitting *Bivens* relief.") (citation omitted). The Court should dismiss Claim 1.

**B.   Independently, Summey is entitled to qualified immunity.**

Qualified immunity shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is available to defendants facing either § 1983 or *Bivens* claims. *Johnson v. Fankell*, 520 U.S. 911, 914-15 (1997). Officials "will not be held personally liable as long as their actions are reasonable in light of current American law." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987). The analysis comprises two prongs: (1) whether the plaintiff has alleged facts which, when taken as true, show that "the defendant plausibly violated [her] constitutional rights," and (2) whether the law "clearly established" the conduct as violating the constitution "at the time of violation." *Hunt v. Montano*, 39 F.4th 1270, 1278 (10th Cir. 2022). When the defendant invokes qualified immunity, "the burden shifts to the plaintiff to establish both prongs of the defense." *Id.* at 1284.

**1.   Prong One: Plaintiff fails to state a plausible constitutional violation.**

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts "merely consistent with" liability, the claim "stops

**Supp.App.010**

short of the line between possibility and plausibility of entitlement to relief." *Id.*

### a.  Fourth Amendment standards.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. Probable cause exists "if the totality of the information" in the affidavit supporting a warrant "establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018). Whether probable cause exists is a "'flexible, common-sense standard,' and no single factor or factors is dispositive." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Probable cause "is not a high bar: It requires only the 'kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Warrants are sufficiently particular if they "affirmatively limit the search to evidence of specific ... crimes or specific types of material," but warrants "do not have to identify specific statutes for the crimes to which they are limited." *United States v. Palms*, 21 F.4th 689, 698-99 (10th Cir. 2021); *see also United States v. Brooks*, 427 F.3d 1246, 1252-53 (10th Cir. 2005) (computer search warrant was sufficiently particular when limited to "evidence of child pornography"). Where a warrant incorporates and attaches the officer's affidavit, the affidavit can be used to cure particularity defects of the warrant itself. *See United States v. Suggs*, 998 F.3d 1125, 1135 (10th Cir. 2021); *see also United States v. Leary*, 846 F.2d 592, 603 (10th Cir. 1988).

For digital searches, the Fourth Amendment does not require "a warrant to prospectively restrict the scope of a search by directory, filename or extension" or by "search methods—that process must remain dynamic." *United States v. Christie*, 717 F.3d 1156, 1166 (10th Cir. 2013);

Supp.App.011

*Palms*, 21 F.4th at 700 ("search warrants typically contain few—if any—restrictions on where *within a computer* or other electronic storage device the government is permitted to search"). The particularity requirement has never "been understood to demand of a warrant 'technical precision,' or 'elaborate detail,' but only 'practical' limitations affording 'reasonab[le] specificity.'" *Christie*, 717 F.3d at 1166 (citations omitted). Warrants to search computers may be limited "by content," such as files containing evidence related to the crime being investigated. *United States v. Burgess*, 576 F.3d 1078, 1092-93 (10th Cir. 2009). As the Tenth Circuit put it: "it is folly for a search warrant to attempt to structure the mechanics of the search and a warrant imposing such limits would unduly restrict legitimate search objectives."[3] *Id.* at 1094.

### b. Both warrants complied with the Fourth Amendment.

**Particularity.** The warrants were sufficiently particular. Warrant 1 authorized the seizure of "[d]igital media storage devices, to include phones, computers, tablets, thumb drives, and external hard drives found to be associated with Jacqueline Armendariz," along with other evidence of the attempted assault. Ex. 1 at 18. Warrant 1 was not a general warrant that allowed law enforcement to seize any property found within Plaintiff's home. Warrant 2 authorized the search of the specifically enumerated devices for two categories of information: (1) photos, videos, messages, emails, and location data "that are determined to be relevant to this investigation" for a limited date range before and after the incident; and (2) files with enumerated keywords that "would be relevant to the investigation." Ex. 2 at 29. This level of detail was unnecessary, as the warrant needed only to articulate a limiting principle—the crime being investigated—not the specific search protocol law

---

[3] To the extent Plaintiff's claim is based on a failure to contain a date-range limitation for keyword searches, ECF No. 12 ¶ 154(d), the claim should be rejected based on this case law.

**Supp.App.012**

enforcement would use. *See Burgess*, 576 F.3d at 1092-93; *Christie*, 717 F.3d at 1165-67. Here, the scope of the warrants was limited to certain types of data and only those "relevant to this investigation."

The affidavits supplied further particularity, because each was expressly incorporated in, and attached to, its respective warrant. *See* Ex. 1 at 1 ("Whereas Task Force Officer Daniel Summey . . . has made an Application and Affidavit, which is *attached and expressly incorporated into this Search Warrant . . . .*") (emphasis added); Ex. 2 at 1 (same). An affidavit can cure a warrant's lack of particularity if it is attached and expressly incorporated into the warrant. *See Suggs*, 998 F.3d at 1135; *Burgess*, 576 F.3d at 1091-92 (using the affidavit to interpret the terms of the warrant permitting a search of computer records).

The affidavits stated that Plaintiff was being investigated for a violation of Colo. Rev. Stat. § 18-2-101 ("Criminal Attempt - Second Degree Assault - Class 5 Felony (F5)") during the July 31, 2021, protest. Ex. 1 at 17; Ex. 2 at 18. The affidavits further stated that the matters described "would be material evidence in the subsequent prosecution of [Plaintiff] for attempting to assault Officer Spicuglia." Ex. 1 at 17; Ex. 2 at 28. The warrants, therefore, were limited in scope to evidence related to the crime of attempted assault.[4] Ex. 1 at 17-18; Ex. 2 at 28-29. Against this overarching limitation, the file types, date range, and keywords *further* restricted what law enforcement could examine from the devices. Combined, these limitations more than satisfied the Fourth Amendment's particularity requirement. *See, e.g.*, *Brooks* 427 F.3d at 1252.

**Probable cause.** The warrants' scope did not exceed the probable cause established in the

---

[4] These facts dispose of Plaintiff's claims that the warrant was defective for failing to limit the search to a specific crime or limit the discretion of the officers. *See* ECF No. 12 ¶ 154(c), (e).

affidavits. There was a fair probability that Plaintiff's digital devices contained evidence relevant to her prosecution.  The affidavits, at length, recounted facts to tie Plaintiff to the attempted assault. Ex. 1 at 4-14; Ex. 2 at 6-15. The affidavits also included a "selfie" by Plaintiff from July 3, 2021—just four weeks before the protest—while she was wearing the same bicycle gear she did on July 31, 2021, Ex. 1 at 11; Ex. 2 at 13; this supported the fair probability that Plaintiff carried her phone on the day of the protest, even if traveling by bicycle, and that there was a fair probability that Plaintiff would have taken photographs. The affidavits showed that Plaintiff was an active user of social media, maintaining multiple accounts and interacting with users regarding her role as an "organizer." Ex. 1 at 11 ("You are a good organizer Chica"); *see also id.* at 10, 12-16; Ex. 2 at 13-18. The affidavits showed that Plaintiff had digitally connected with the person Officer Spicuglia was pursuing when Plaintiff "dropped" her bicycle. Ex. 1 at 10; Ex. 2 at 12, 25. These facts supported a fair probability that Plaintiff would have messaged or called acquaintances regarding the incident, which would be relevant to her prosecution.

The affidavits also recounted Summey's training and experience, which instructed that protesters "frequently carry their phones with them to take photos of their activity and message others" regarding their activity. Ex. 1 at 17; Ex. 2 at 19. The affidavits noted other lessons from Summey's training and experience, including: that location-tracking functions of phones can show where a person is at a given time, Ex. 1 at 17; Ex. 2 at 19; that people regularly back up phones and transfer photos to computers, Ex. 1 at 17; Ex. 2 at 19; that people who commit crimes in furtherance ideological goals typically share this information with others through messaging applications, emails, or texts to take credit for their actions, Ex. 2 at 20; and that people often engage in personal communications on work devices even if contrary to company policy, *id.* The Tenth Circuit has

**Supp.App.014**

"long recognized that magistrate judges may 'rely on the opinion' of law enforcement officers 'as to where . . .' evidence 'may be kept.'" *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009); *see also Bowling v. Rector*, 584 F.3d 956, 970 (10th Cir. 2009) (officer's "experience in cattle theft cases leading him to believe there would be large numbers of documents . . . and computerized business records" supported probable cause).

Common sense and the "practical considerations of everyday life" also supported the "likelihood that certain evidence will be found at a particular place." *Biglow*, 562 F.3d at 1280. There was a fair probability that someone of Plaintiff's age, *see* Ex. 1 at 10 (showing Plaintiff to be 33 or 34 years old at the time of the protest), biking with a backpack, *id.* at 6-8, would carry a phone with her to a protest. Common sense and experience also suggested a fair probability that the phone would contain some files—location data, messages, photographs—that would prove that Plaintiff attended the protest, the planning for, or intent behind, her obstructionist conduct, or her contemporaneous reactions to the incident, any of which could be relevant to her prosecution.

The second affidavit recounted that Summey spoke directly with Plaintiff's supervisor, who confirmed that Plaintiff "attended the protest" and had "sent her digital media of the protest." Ex. 2 at 19. A reasonable person, based on this fact alone, could conclude that there was a fair probability that Plaintiff's devices possessed evidence that would be relevant to her prosecution. Such evidence could help establish that Plaintiff attended the protest that day and was, at the very least, the person involved in the incident with Officer Spicuglia. *See Christie*, 717 F.3d at 1167 n.2 (plaintiff's argument that the government lacked probable cause to think the computer contained evidence related to the charges did not "merit[] extended discussion," because "by the time of the second warrant the government had amassed a great deal of evidence suggesting . . . Ms. Christie's

**Supp.App.015**

computer would yield further valuable evidence.").

Probable cause does not require certainty that evidence will be found in a particular place. *Biglow*, 562 F.3d at 1280 ("[P]robable cause is a matter of 'probabilities and common sense conclusions, not certainties.'"). Affidavits need only support a fair probability, judged by a reasonable person, that evidence will be found in a place. Here, Plaintiff's (1) obstructionist conduct, (2) creation of digital content, (3) sharing of media from the protest, and (4) active social media use, (5) Summey's training, experience and opinions, and (6) common sense, and (7) practical considerations of everyday life supplied probable cause to seize and search Plaintiff's devices for evidence of a specific crime. There was a *fair probability* that the devices contained evidence that would place her on the scene or reveal the intent behind, or reaction to, her conduct.

### c.  The warrants did not offend the First Amendment.

There is no authority suggesting that the Fourth Amendment requirements are heightened when the police investigate an attempted assault that occurred at a protest, even if First Amendment interests are involved.[5] *See New York v. P.J. Video, Inc.*, 475 U.S. 868, 875 (1986) ("[A]n application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally."). Here, Summey obtained warrants to investigate second-degree attempted assault. ECF No. 12 ¶ 43; Ex. 1 at 17; Ex. 2 at 18. Plaintiff pleaded guilty to obstructing a peace

---

[5]  This case is not analogous to the Supreme Court's prior restraint cases, where the seizure of films, books, or papers, *based on their content*, raised special First Amendment concerns. *See Maryland v. Macon*, 472 U.S. 463, 468-69 (1985). Material that is seized for purposes other than the content of the expression is not treated differently than other goods under the Fourth Amendment. *See Stanford v. Texas*, 379 U.S. 476, 485 & n.16 (1965).

Supp.App.016

officer, ECF No. 12 ¶ 119, and her allegations that law enforcement sought the warrants because of her First Amendment-protected activities, rather than the identified crime, are conclusory and speculative. Plaintiff does not separately state a plausible First Amendment violation.

> ## 2. Prong Two: It was not clearly established that Summey's conduct violated the constitution.

Assuming, for the sake of argument, that Plaintiff has pleaded a constitutional violation, Claim 1 fails under Prong Two of the qualified immunity test, because the facts alleged, together with the warrants and affidavits, do not show a violation of clearly established law. "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The test is objective. *Id.* Existing law must be so clear as to have "placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This "demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted,'" which "requires a high 'degree of specificity.'" *Id.* Courts "must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.* at 63-64. Specificity is "especially important in the Fourth Amendment context," because probable cause "'turn[s] on the assessment of probabilities in particular factual contexts,' and cannot be 'reduced to a neat set of legal rules,'" and "officers will often find it difficult to know how the general standard of probable cause applies 'in the precise

Supp.App.017

situation encountered.'" *Id.* at 64. The Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *Id.* A "'body of relevant case law' is usually necessary to 'clearly establish the answer' with respect to probable cause." *Id.*

Whether qualified immunity protects an officer "generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). When a judge signs an unconstitutional warrant, the officer seeking or executing the warrant will only be held personally liable where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," such as where the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 547. The "threshold for establishing this exception is a high one, and it should be." *Id.*

**Clearly established.** For the reasons explained above, it was not clearly established, beyond debate, by the Supreme Court or Tenth Circuit that the warrants here violated the Fourth Amendment. The warrants attached and incorporated affidavits, which identified—by statute, words, and pictures—the crime being investigated and *further* limited the scope of the digital search to particular files that would be "relevant" to the investigation. Established law from the Tenth Circuit would have instructed a reasonable officer that: (1) the search protocols were not necessary to include in a warrant, so their inclusion could not have invalidated Warrant 2, and (2) affidavits attached to and incorporated in warrants could be used to interpret the terms of the warrants, *see, e.g.*, *Burgess*, 576 F.3d at 1091-93. Therefore, a reasonable officer could rely on case law that the affidavit and warrant, together, satisfied the Fourth Amendment particularity requirement.

Supp.App.018

Regarding probable cause, no case law from the Supreme Court or Tenth Circuit clearly established, beyond debate, that probable cause was lacking to seize and search Plaintiff's digital devices. Both affidavits tied Plaintiff to the incident and recounted facts regarding Plaintiff's social media use, including a recent example of a photograph she took while biking, as well as facts drawn from Summey's experience and training stating what kinds of evidence was likely to be located on Plaintiff's devices. Moreover, case law suggests that "common sense" or "practicalities of everyday life" can be used to support the fair probability that Plaintiff carried a cell phone with her to the protest and it contained evidence relevant to the investigation into the alleged assault. Warrant 2, which authorized the search of the digital devices, recited facts confirming that Plaintiff had attended the protest and had sent her supervisor digital media of the protest. It was not clearly established that these facts, in combination, failed to establish probable cause. *See United States v. Thomas*, 290 F. Supp. 3d 1162, 1173-75 (D. Colo. 2017) (probable cause existed to seize mobile phones, despite the defendant's claim that there was a "dearth of any meaningful discussion of cellular devices" in the warrant); *United States v. Gholston*, 993 F. Supp. 2d 704, 718-20 (E.D. Mich. 2014) (affidavit that described the offense under investigation, the identification of the defendant, and the officer's "training and experience" sufficed to establish probable cause to seize and search a cell phone).  For these reasons alone, Summey is entitled to qualified immunity.

**Objective reasonableness.** Another way of viewing the second prong is whether the judge who signed each warrant "so obviously erred that any reasonable officer would have recognized the error." *Messerschmidt*, 565 U.S. at 556. The "occasions on which this standard will be met" and where "it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his action" will be "rare." *Id.*

Supp.App.019

Here, several factors point toward the objective reasonableness of Summey's actions. First, two different judges approved the two warrants. ECF No. 12 ¶ 118; Ex. 1 at 1-2; Ex. 2 at 1. Judicial approval of a warrant "is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt*, 565 U.S. at 546; *United States v. Cotto*, 995 F.3d 786, 795 (10th Cir. 2021) ("The judge's decision that an affidavit submitted in support of a warrant established probable cause must be given great deference.").  The fact that multiple judges found that the affidavits, which relied on largely identical facts, *compare* Ex. 1 at 3-17 *with* Ex. 2 at 5-19, established probable cause strongly suggests that a reasonable officer could believe the warrants were constitutional.

Second, Summey's applications were reviewed by a second officer. ECF No. 12 ¶¶ 113, 115; *see also, e.g.*, Ex. 1 at 3 (initialing the affidavit); Ex. 2 at 5 (same). "[T]he fact that the officers sought and obtained approval of the warrant application from a superior" supports "the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause." *Messerschmidt*, 565 U.S. at 553.

Third, Summey executed the search warrant. Ex. 2 at 19 (recounting Summey's participation in the execution of Warrant 1). "[I]t is indicative of good faith when the officer who prepares an affidavit is the same one who executes a search." *Cotto*, 995 F.3d at 796.

Fourth, both affidavits tied Plaintiff to the attempted assault and detailed her recent digital and social media use and Summey's training and experience investigating similar cases. *See supra* § I.B.1.b. Based on these facts, a reasonable officer could have believed there was a fair probability that Plaintiff carried her cell phone to the protest and that evidence would be found on one or more of Plaintiff's digital devices that "would prove helpful in prosecuting" her for the attempted assault.

18

**Supp.App.020**

*Messerschmidt*, 565 U.S. at 551. Such evidence could help establish Plaintiff's identity as the attempted assailant or the planning for, intent behind, or reactions to, her conduct. *See, e.g.*, ECF No. 12 ¶ 42 (alleging that Plaintiff merely "dropped" her bike).

Fifth, it was objectively reasonable, based on common sense and practicalities of everyday life, to think that a media-savvy, "[p]rofessional truth teller" like Plaintiff, *see, e.g.*, ECF No. 12 ¶¶ 76, 108; Ex. 1 at 15 ("more than a decade of media and government career experience"), probably carried a phone with her to a protest and the phone probably would contain messages, photos, or data that would be relevant to her prosecution.

Sixth, with respect to Warrant 2, Summey confirmed that Plaintiff attended the protest and transmitted digital media from it. Ex. 2 at 19. Any reasonable officer would consider this fact strongly indicative of probable cause that Plaintiff's devices would contain material evidence.

The warrants were not "so obviously lacking in probable cause that the officers can be considered 'plainly incompetent' for concluding otherwise." *Messerschmidt*, 565 U.S. at 556. Because Plaintiff's allegations fail to meet the high bar for establishing that the warrants were so obviously defective, Summey is entitled to qualified immunity.

## II.     MOTION TO DISMISS BY THE UNITED STATES (Claim 4)[6]

The United States generally enjoys sovereign immunity from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Congress has waived the United States' sovereign immunity through the Federal

---

[6]  Pursuant to 28 U.S.C. § 2679(d)(1), "[u]pon certification by the Attorney General" that Summey was acting within the scope of his federal employment, the action against Summey "*shall be deemed* an action against the United States" (emphasis added), and "the United States Shall be substituted as the party defendant." The U.S. Attorney so certified. ECF No. 39-1. While Plaintiff intends to oppose the substitution of the United States, as of this filing, the action is "deemed" one "against the United States." 28 U.S.C. § 2679(d)(1).

Tort Claims Act ("FTCA") for the "wrongful act[s]" of its employees "if a private person, would be liable to the claimant" under the law of the state where the allegedly wrongful act occurred. *See* 28 U.S.C. § 1346(b)(1). It is the plaintiff's burden to establish subject matter jurisdiction. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

    **A.   The failure to exhaust administrative processes deprives this Court of jurisdiction.**

    To benefit from the FTCA's waiver of sovereign immunity, claimants must exhaust administrative processes with the appropriate federal agency before bringing suit in federal court. *See* 28 U.S.C. § 2675(a). Under Section 2675(a), no action may be filed against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." This presentment requirement is jurisdictional, must be strictly construed, and cannot be waived. *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991). To satisfy this requirement, a claimant must, among other things, provide (1) a written statement describing the injury to enable the agency to begin its own investigation and (2) a sum certain damages claim. *Id.*

    Plaintiff has not presented an administrative claim related to her allegations against Summey to the FBI. **Exhibit 3**, Decl. of William L. Harris, ¶ 7.[7] Accordingly, her claim against the United States must be dismissed for lack of subject matter jurisdiction. *Pipkin v. U.S. Postal Serv.*, 951 F.2d 272, 273 (10th Cir. 1991) (affirming dismissal of FTCA claim under Rule 12(b)(1) for failure to exhaust); 28 U.S.C. § 2675(a).

---

[7]  The Court may consider evidence in adjudicating a motion to dismiss for lack of jurisdiction. *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023).

Supp.App.022

### B.   A "private person" would not be liable for violating the state constitution.

A "plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." *Brownback v. King*, 141 S. Ct. 740, 749 (2021).

Claim 4 alleges a violation of Colo. Rev. Stat. § 13-21-131(1), which provides in relevant part that a "peace officer, as defined in section 24-31-901(3), who, under color of law, subjects . . . any other person to the deprivation of individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party . . . ." A "peace officer" means "any person employed by a political subdivision of the state . . . , a Colorado state patrol officer . . . , and any noncertified deputy sheriff . . . ." *Id.* § 24-31-901(3). In other words, these statutes create a cause of action against officers employed by the state, a city, or a county—not private persons. Congress has not waived sovereign immunity for claims that a peace officer violated a right that a plaintiff enjoys against the government. *See* 28 U.S.C. § 1346(b)(1). Because Plaintiff does not allege that a private person could be liable for the claim asserted, the Court lacks subject matter jurisdiction over Claim 4.

### III.   <u>MOTION TO DISMISS BY THE FBI (Claim 6)</u>

In Claim 6, Plaintiff seeks injunctive relief against the FBI "ordering the return or destruction of Ms. Armendariz's digital data." ECF No. 12 ¶ 216. The claim should be dismissed because: (1) it is not unlawful for the FBI to possess evidence obtained lawfully; and (2) even if the warrants were defective, the First and Fourth Amendments do not require the FBI to dispossess itself of the electronic copies of Plaintiff's files. It bears clarification that Plaintiff does not allege that the government continues to possess her physical property—phones, computers, or hard

Supp.App.023

drives—but rather digital copies of files obtained from those devices. *See* ECF No. 12 ¶ 215.

First, the constitution does not constrain the government's possession of lawfully obtained evidence. *See Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191, 200-01 (5th Cir. 2023) (plaintiff was not entitled to "expungement" of electronic data when he did not show a constitutional violation); *Conyers v. City of Chicago*, 10 F.4th 704, 710 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1669 (2022) (the district court properly rejected a claim that the Fourth Amendment governed whether the city had to release lawfully seized property to the plaintiff); *Case v. Eslinger*, 555 F.3d 1317, 1330-31 (11th Cir. 2009) (Fourth Amendment not violated by retention of legally seized property); *Matter of the Search of Twenty-Six Digital Devices*, No. 21-SW-233, 2022 WL 998896, at *12 n.5 (D.D.C. Mar. 14, 2022) (courts have "reasonably refused to enlist the Fourth Amendment to serve as the constitutional guardian of such concerns"). For the reasons set forth in Part I.B.1, the warrants did not violate the constitution, and therefore the FBI's collection of evidence was lawful. There is no constitutional basis for ordering the FBI to destroy lawfully obtained evidence.

Second, even if the warrants were somehow defective, the FBI's retention of electronic copies of evidence obtained in violation of the Fourth Amendment does not violate the constitution. For example, the Supreme Court has long held that the government may use illegally obtained evidence for certain purposes. *See Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362-64 (1998) ("the governments' use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution"); *United States v. Calandra*, 414 U.S. 338, 349-50 (1974) (exclusionary rule does not apply to grand jury proceedings); *United States v. Janis*, 428 U.S. 433, 454 (1976) (exclusionary rule did not bar introduction of unconstitutionally obtained evidence in a civil tax proceeding). The Tenth Circuit recently ruled that evidence obtained from a defective warrant could

Supp.App.024

be used under the inevitable discovery exception, if law enforcement would have obtained a valid warrant had the initial warrant been denied. *See United States v. Streett*, 83 F.4th 842, 849-52 (10th Cir. 2023). Necessarily, then, the Fourth Amendment does not require the government to dispossess itself of unlawfully obtained evidence, because the constitution tolerates the *use* of that evidence for various purposes.

Finally, the Fourth Amendment does not govern whether the FBI has a duty to destroy electronic copies obtained from Plaintiff's devices. *See Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 853, 856 (10th Cir. 1993) (analyzing an initial seizure under the Fourth Amendment but holding that the ultimate disposition of property had to comply with procedural due process); *Snider v. Lincoln Cnty. Bd. of Cnty. Comm'rs*, 313 F. App'x 85, 93 (10th Cir. 2008) (stating that a "seizure is a single act, and not a continuous fact," and analyzing the retention of property under procedural due process); *see also Conyers*, 10 F.4th at 710 (concluding that the government's retention of property "falls more naturally under the Due Process Clause of the Fourteenth Amendment, or perhaps the Takings Clause of the Fifth Amendment," and courts are "correct[ to] reject[] the plaintiffs' Fourth Amendment theory"); *Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017) ("where property is concerned, it would seem that the Fifth Amendment's express protections for property provide the appropriate framework," citing other U.S. Court of Appeals decisions). Claim 6 fails as a matter of law and should be dismissed.

## CONCLUSION

The federal defendants respectfully request that the Court dismiss Claims 1, 4, and 6.

**Supp.App.025**

Submitted on November 20, 2023.     COLE FINEGAN
United States Attorney

s/ Thomas A. Isler
**Thomas A. Isler**
Assistant United States Attorney
1801 California Street, Ste. 1600
Denver, Colorado 80202
Tel. (303) 454-0336
thomas.isler@usdoj.gov
*Counsel for the United States of America, the Federal Bureau of Investigation, and Daniel Summey*


### CERTIFICATE OF SERVICE

I certify that November 20, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all parties and counsel of record.

Mark Silverstein
Timothy R. Macdonald
Sara R. Neel
Theresa W. Benz
Jacqueline V. Roeder
Anna I. Kurtz
Laura B. Moraff
Kylie L. Ngu
*Attorneys for Plaintiffs*

Anne H. Turner
*Attorney for Defendant City of Colorado Springs and Defendants Steckler, Otero, and Ditzler*

            s/ Thomas A. Isler
            **Thomas A. Isler**
            Assistant United States Attorney

Supp.App.026

**EXHIBIT 1**

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:   270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **2002 Legacy Ridge View, Apartment ▮, City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency: Colorado Springs Police Department       Agency Number: 21-29044 | Division:**Criminal**       Ctrm: |

## SEARCH WARRANT

Whereas Task Force Officer Daniel Summey, 5156 has made an Application and Affidavit, which is attached and expressly incorporated into this Search Warrant in reference, to the Court for the issuance of a Search Warrant, and; Whereas the application is in proper form and probable cause is found for the issuance of a Search Warrant to search the person(s) and or premises specified in the application.

THEREFORE, the applicant, and any other peace officer into whose hands this Search Warrant shall come, is hereby ordered, with the necessary and proper assistance, to enter and search within the next fourteen (14) days the person(s), property, and/or premise(s), location and any appurtenances thereto, description of which is:

**2002 Legacy Ridge View, Apartment ▮, City of Colorado Springs, County of El Paso, State of Colorado; 2002 Legacy Ridge View, Apartment ▮, is a two story townhome in a row of townhomes. The exterior front is red brick on the first floor, and tan siding on the second floor.  The front door is green in color, with the numbers ▮, black in color, above the front door**

The following person(s), property or thing(s) will be searched for and, if found, seized:

### See Attachment B which is hereby incorporated in reference

as probable cause has been found to believe that it:
- ☐   Is stolen or embezzled, or
- ☐   Is designed or intended for use in committing a criminal offense, or
- ☒   Is or has been used as a means of committing a criminal offense, or
- ☐   Is illegal to possess, or
- ☒   Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or
- ☐   Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or
- ☐   Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or
- ☐   That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

Furthermore, a copy of this warrant is to be left with the person whose premises or person is searched along with a list of any and all items seized at the time of its execution. If said person cannot be located or identified, a copy of the search Warrant and the list of property seized shall be left at the place from which the property was taken.

Further, a return shall be promptly made to this Court upon the execution of this Search Warrant along with an inventory of any property taken. The property seized shall be held in some safe place until the Court shall further order.

Sworn and subscribed before me this day Friday, August 6, 2021 at ___2:05___ AM / PM

Magistrate / Judge: _____

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address: 270 South Tejon Street Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **2002 Legacy Ridge View, Apartment ▮, City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency: Colorado Springs Police Department       Agency Number: 21-29044 | Division:**Criminal**      Ctrm: |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

The undersigned, a peace officer as defined in 16-2.5.101, Colorado Revised Statutes 1973, as amended, being first duly sworn on oath moves the Court to issue a Warrant to search those person(s), property, and/or premises known as:

**2002 Legacy Ridge View, Apartment ▮, City of Colorado Springs, County of El Paso, State of Colorado; 2002 Legacy Ridge View, Apartment ▮, is a two story townhome in a row of townhomes. The exterior front is red brick on the first floor, and tan siding on the second floor. The front door is green in color, with the numbers ▮, black in color, above the front door**

The undersigned states that there exists probable cause to believe that the following person, property or thing(s) to be searched for, and if found, seized will be found on the aforementioned person(s) and or premises and are described as follows:

### See Attachment B which is hereby incorporated in reference

The grounds for the seizure of said person(s), property or thing(s) are that probable cause exists to believe that it:
☐  Is stolen or embezzled, or
☐  Is designed or intended for use as a means of committing a criminal offense, or
☒  Is or has been used as a means of committing a criminal offense, or
☐  Is illegal to possess, or
☒  Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or
☐  Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or
☐  Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or
☐  That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

The facts submitted in support of this application are set for in the accompanying attachment designated as **Attachment A** which is attached hereto and made a part hereof.

Applicant: _Daniel Summey 5156_

Daniel Summey 5156

Employed By:   Colorado Springs Police Department

Position:   Task Force Officer

Sworn and subscribed before me this day _Friday, August 6, 2021._

Magistrate / Judge: _____

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:   270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **2002 Legacy Ridge View, Apartment███ City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency Name: Colorado Springs Police Department         Agency Number: 21-29044 | Division:**Criminal**       Ctrm: |

## ATTACHMENT A

The following affidavit is made in the support of a request for the issuance of a search warrant for: **2002 Legacy Ridge View, Apartment ███, City of Colorado Springs, County of El Paso, State of Colorado; 2002 Legacy Ridge View, Apartment ███, is a two story townhome in a row of townhomes. The exterior front is red brick on the first floor, and tan siding on the second floor. The front door is green in color, with the numbers ███ black in color, above the front door**.

Your Affiant, Task Force Officer Daniel Summey, 5156, a Police Officer for the Colorado Springs Police Department and so employed for over 6 years and now currently assigned to the FBI Joint Terrorism Task Force, state under oath that I have personal knowledge of the following facts:

Your Affiant is a sworn peace officer with the Colorado Springs Police Department (CSPD), and has served as a Task Force Officer in the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF) since August of 2020, and served as a CSPD Intelligence Detective from 2018 to 2020. Your Affiant has served as a Bias-Motivated Crimes subject matter expert for CSPD since 2018 and has collected information regarding Bias-Motivated Crimes and Groups in the Colorado Springs metro area. Your Affiant has also provided in-person training and information to outside agencies in the Colorado Springs metro area regarding white supremacists and hate groups. Your Affiant has participated in investigations regarding illegal protest activity and has become familiar with people who are regularly involved in illegal protest activity, including members and associates of the Chinook Center.

On 7/31/2021, the City of Colorado Springs hosted a celebration for the 150th anniversary of the founding of the city. In the leadup to the event, the Chinook Center, a local umbrella organization that is the central hub for multiple political activist groups and their members, posted on social media that a march was planned regarding housing in Colorado Springs. Please see the following snip of social media discussing a march:

Supervisor Initials / IBM:  _RAD 2145_



Chinook Center
July 10 at 8:43 AM · 🌐

The Housing Crisis in this city can't be ignored any longer. We are going to March on July 31 and we'll also be distributing meals, personal items, and tents to our unhoused community members who bear the worst of the crisis daily. This affects us all! Greed got us this crisis - solidarity is the way we take the power back!
Keep your eye out as details emerge and save the date!

**HOUSING IS A HUMAN RIGHT**

COLORADO SPRINGS HOUSING 4 ALL COALITION          FB.ME/CSHOUSING4ALL

During the ensuing march, protesters immediately and intentionally walked in the roadway and obstructed traffic. Several protesters were arrested, to include Jonathan Christiansen DOB: ███ 1978 and Shaun Walls DOB: ███ 1980, both of whom are affiliated with the Chinook Center. Protesters involved in the march wore similar clothing, to include red shirts with the words "Housing is a Human Right". Several of the protesters carried red flags. Your Affiant would note that the red flag is significant in that it is a radical political symbol, and designates this march, which ultimately was declared unlawful, as revolutionary and radical in nature. The website Age of Revolution states – "Today the red flag has, predominantly, become a symbol of socialism and communism. Its European origins date back to the Middle Ages, when a red streamer flying from the mast of a warship signalled a willingness to fight to the death, with no surrender. But its radical political roots lie firmly in the Age of Revolution." Information can be found at https://ageofrevolution.org/200-object/red-flag/.

On 8/4/2021, Your Affiant was tasked with assisting Gold Hill property detectives with identifying a female that attempted to strike a uniformed Colorado Springs Police Department Officer, Anthony Spicuglia 4925, with a bicycle as he ran to assist other police officers who were attempting to take Shaun Walls into custody. Walls was actively resisting officers who were attempting to take him into custody. Your Affiant observed Officer Thane Gilmore's 1697 bodycam, which offered a good view of the attempted assault on Officer Spicuglia by the unidentified female.

Your Affiant observed Officer Spicuglia enter the recording from the left side of the screen at a sprint, heading towards officers who were attempting to take Shaun Walls into custody. A female was riding up the street on a bicycle in the path Officer Spicuglia was taking to get to Walls. As Officer Spicuglia approached the female, she got off the bicycle and threw it at Officer Spicuglia with the clear intent to strike him with it, as he was sprinting at and by her. Officer Spicuglia was very nearly struck by the bicycle and had to slow his sprint towards other officers and jump to avoid the bicycle as it hit the ground in front of him. Had the bicycle made contact with

Officer Spicuglia as he was running by at a sprint, it almost certainly would have caused bodily injury to him, possibly even serious bodily injury, as he was sprinting on a paved roadway while wearing bulky, heavy police gear. The bodycam video clearly showed the female showed intent to strike Officer Spicuglia with the bicycle as he sprinted by, as there was no logical reason for her to exit the bicycle and throw it at an officer as he was sprinting at and by her. There were no other protesters around the female, and therefore no one she could have been attempting to throw or roll the bicycle to.

Your Affiant understands that sometimes one or two angles may not tell the whole story, so your Affiant located footage from a CSPD Unmanned Aerial Surveillance (UAS) drone. The UAS captured a good view of the attempted assault from above the crowd. Your Affiant noted that the unidentified female was far away from all other protesters and had no logical reason to exit the bicycle and throw it directly at Officer Spicuglia as he sprinted past. Your Affiant again noted Officer Spicuglia had to slow his sprint towards officers in need of assistance taking an actively resisting subject into custody, and jump, to avoid the bicycle the female attempted to strike him with.

Your Affiant snipped several images of the female from Officer Gilmore's bodycam. Your Affiant also snipped a photo of the bicycle from Officer Spicuglia's bodycam and a photo of the incident taken by the UAS. Please see the following photos with relevant information about each photo:





The above photos are taken from Officer Gilmore's bodycam, and captures the moment the suspect attempted to assault Officer Spicuglia as he was sprinting by to assist Officers with taking Walls into custody.

Attachment A
Page 4 of 15



The photo above, taken from Officer Gilmore's bodycam footage, shows the female directly after she attempted to assault Officer Spicuglia. Please note that she has a unique cat tattoo on her right hip/thigh area. The cat appears to be black in color with uncolored eyes. Also note the handlebars on the bicycle are straight with white on the grips.

Attachment A
Page 5 of 15



The above photo was taken from Officer Gilmore's bodycam. Please note the gray Nike shoes with white soles, and the purple colored bicycle used by the suspect to attempt to assault Officer Spicuglia. Please also note the helmet, which is light blue in color at the top, and gets darker towards the bottom of the helmet.



The above photo is taken from Officer Gilmore's bodycam.  Please note again the unique cat tattoo with uncolored eyes, and the light blue helmet that gets darker towards the bottom of the helmet.



The above photo was taken from Officer Spicuglia's bodycam and shows the bicycle just as it was thrown down in front of him while he was running towards the crowd to assist officers with taking Shaun Walls' into custody. Please note the bicycle is purple in color and has handlebars with white grips on them. There is a green sticker on the front of the bicycle just below where the handlebars connect to the bicycle.



The above photo was taken from CSPD UAS footage as the attempted assault on Officer Spicuglia occurred. Please note the black police SUV in the bottom right of the image. The female with light colored helmet, standing by the downed bicycle, with Officer Spicuglia directly beside the suspect and the bicycle, is the suspect in this case. Please note, there is no one she could have been attempting to pass the bicycle to in the area.

Your Affiant began to look into open source social media to determine if the female is an associate of Jonathan Christiansen or Shaun Walls, as she was participating in a protest that was advertised by the Chinook Center and Shaun Walls. Your Affiant discovered Shaun Walls is associated with a person on Facebook who uses the name J.R. Armendariz (Facebook ID: 10103081958348051). Your Affiant checked local law enforcement databases and discovered CSPD has had contact with Jacqueline Rose Armendariz DOB: ▮1987 SSN: ▮9489 in the past. Your Affiant checked the driver's license photo of Jacqueline Rose Armendariz, and discovered the driver's license photo matches the female in the photos on J.R. Armendariz's Facebook profile, which means this is likely a Facebook profile owned by Jacqueline Rose Armendariz.



Please see above snip from Facebook of Shaun Walls promoting the protest.

Your Affiant located the following photo on Armendariz's open Facebook profile, dated July 3rd, 2021. Please note the helmet that is light blue in color and gets darker towards the bottom. This helmet appears to be the same helmet worn by the suspect that attempted to assault Officer Spicuglia.



On Armendariz's Facebook page, Your Affiant located a photo from RISE Southeast showing Armendariz standing in front of a camera dated July 19th, 2021. Your Affiant noted Armendariz is on multiple photos associated to RISE Southeast. The photo below shows Armendariz wearing gray Nike shoes with a white sole that appear to be the same shoes worn by the suspect that attempted to assault Officer Spicuglia. Your Affiant would also note that tattoos are visible on Armendariz's hip in the same location the suspect has a tattoo.



The following photo is also from RISE Southeast, and is located on Armendariz's Facebook profile. Armendariz appears to be again wearing the same shoes and helmet as the female that attempted to assault Officer Spicuglia. Please note the bicycle Armendariz is holding is purple in color with straight handlebars that are white on the grips. The bicycle also has a green sticker just below where the handlebars connect to the bicycle. The bicycle appears to be the same bicycle the female attempted to assault Officer Spicuglia with.



Attachment A
Page 11 of 15

Your Affiant located a twitter handle for Armendariz. Pease see the following photo from @JRArmendarizTwitter, which also appears to be owned by Armendariz. Please note the same cat tattoo with uncolored eyes on her right hip/thigh area. This tattoo matches the tattoo location and shape of the tattoo on the suspect that attempted to assault Officer Spicuglia:



Case No. 1:23-cv-01951-CNS-MDB   Document 49-1   filed 11/20/23   USDC Colorado   pg 14 of 18
Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 40

Attachment A
Page 12 of 15

The female in the bodycam snips and Jacqueline Armendariz appear to be the same person due to multiple similarities.

First, the female that attempted to assault Officer Spicuglia has a tattoo of a cat head with unfilled eyes on her right hip. Multiple bodycam snips and photos from social media show it appears to be the same tattoo located on the same spot on the body as Jacqueline Armendariz.

Second, Armendariz can be seen on a bicycle in the photo from RISE Southeast. The bicycle is purple with straight white colored handlebars. The bicycle also has a green sticker located just below the area where the handlebars connect to the bicycle. The bicycle used in the attempted assault on Officer Spicuglia appears to be the same bicycle.

Third, the female that attempted to assault Officer Spicuglia has on gray Nike shoes with white soles. Armendariz can be seen wearing what appears to be the same shoes on her open source social media.

Fourth, the helmet worn by the suspect matches the helmet worn by Armendariz in multiple photos on her social media.

Your Affiant also discovered a professional Twitter profile for Armendariz, in which she appears to appeal for social justice causes. Please see photo of Armendariz's Twitter profile:



In her profile, Armendariz references "yt supremacy". Your Affiant was unfamiliar with the term "yt", and using dictionary.com found the following definition for "yt folx":

"The *yt* in *yt folx* appears to stem from the slang term *whitey*. *Whitey*, evidenced since at least the 1830s, has been used by black Americans to disparage white people, especially implying oppression and racial discrimination. By at the early 2000s online, *whitey* was spelled phonetically at *yt*." The information can be found at https://www.dictionary.com/e/slang/yt-folx/.

Attachment A
Page 13 of 15

It appears Armendariz uses the term "yt" in an attempt to disparage white people, showing her disdain for white people. Please note that the officer she attempted to assault was a white male.

Your Affiant located a LinkedIn account for Armendariz, which shows she is active politically in Colorado Springs and Pueblo. Please see the following photos of the LinkedIn page:



**Jacqueline Armendariz**

Regional Representative at U.S. Senate

Greater Colorado Springs Area · 322 connections

**Join to Connect**

 U.S. Senate

 **New Mexico State University**

## About

Bilingual public servant and communications professional powered by a passion for accountability, integrity and building community. Diverse spectrum of skills and knowledge gained through more than a decade of media and government career experience, including as an award-winning journalist for metro dailies with circulations of up to 88,880 and publishing work cited by outlets such as The Rachel Maddow Show and The Texas Tribune. Experience creating strategic plans and partnerships in the community, addressing concerns and questions from the public and delivering effective, engaging presentations to a wide array of audiences and stakeholders.

Case No. 1:23-cv-01951-CNS-MDB   Document 49-1   filed 11/20/23   USDC Colorado   pg 16
of 18
Appellate Case: 24-1201      Document: 48-1      Date Filed: 12/02/2024      Page: 42

Attachment A
Page 14 of 15

## Experience



**U.S. Senate**
2 years 10 months

**Regional Representative**
Jul 2020 - Present · 1 year 2 months
Pueblo, Colorado, United States

**Military & Veterans Constituent Advocate**
Nov 2018 - Jul 2020 · 1 year 9 months
Colorado Springs, Colorado Area



**Legislative Aide**
City of Colorado Springs
Dec 2017 - Nov 2018 · 1 year
City Hall Council Office

**Independent Contractor**
Various
Dec 2016 - Oct 2017 · 11 months
Colorado Springs, Colorado Area

Contractor/Associate with:
Walker Schooler District Management
Colorado Springs Independent
MiNDFUL
New Age Medical
Nike Factory Store

Your Affiant further discovered Armendariz is a Regional Representative for US Senator Michael Bennet. Armendariz is listed as a Regional Representative for Bennet on legistorm.com, which appears to be a website that tracks congressional staffers and has other information on the US Government. Armendariz's information can be found at: https://www.legistorm.com/person/Jacqueline_R_Armendariz/313120.html.

Your Affiant would note Armendariz appears to be very active politically, and the protest that turned unlawful on 7/31/2021 was politically motivated.

Your Affiant located a podcast, wherein Jacqueline Armendariz from the RISE movement discussed the need for affordable housing in the southeast part of town. The podcast was dated 7/28/2021. During the interview with Armendariz, she stated she lives at the intersection of Circle and Monterey and discussed an apartment complex being gutted near her. That podcast can be found at: http://studio809radio.com/the-renewal-of-southeast-colorado-springs-with-jacqueline-armendariz-from-rise-and-catherine-duarte-from-the-city-of-colorado-springs/.

Attachment A
Page 15 of 15

At this time, Your Affiant believes Armendariz is in violation of the following Colorado Revised Statutes:

18-2-101 Criminal Attempt - Second Degree Assault – Class 5 Felony (F5)

Your Affiant is familiar with illegal protest activity and people who protest as part of a group. Due to Your Affiant's training and experience, Your Affiant knows people who engage in illegal protest activity frequently carry their phones with them to take photos of their activity and message others who are also participating in illegal protest activity. Your Affiant also knows that phones regularly track the location of their user and can show where a person is at a given date and time. Your Affiant is also aware that people regularly attach their phones to their computers, and use their computers to back up their phones, or transfer photos from their phones to save space on their phones. Your Affiant knows that people store digital data on numerous devices, to include tablets, thumb drives, and external hard drives.

Your Affiant had a check of local utilities conducted and discovered Armendariz has an active utilities at 2002 Legacy Ridge View, apartment ▮ located in the city of Colorado Springs, county of El Paso, State of Colorado. Your Affiant also had Armendariz's driver's license (issued on 5/6/2017) and vehicle registration (Updated in June 2021) checked, and found 2002 Legacy Ridge View, apartment ▮ listed there as well. This corroborates the information Armendariz provided on the podcast dated 7/28/2021, as the intersection of South Circle Drive and Monterey Road is approximately 300 feet from Armendariz's apartment building.

Your Affiant is requesting permission to search 2002 Legacy Ridge View, apartment ▮ and to seize the blue helmet seen being worn by the suspect, the red shirt reading "Housing is a Human Right", grey Nike shoes with white soles, the purple bicycle with green sticker located just below where the handlebars attach, and all digital media storage devices, to include phones, computers, tablets, thumb drives, external hard drives, or any other item that holds digital media. Your Affiant also requests permission to photo the tattoo on Armendariz's right hip/thigh.

The above mentioned items would be material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia

Your Affiant is a Task Force Officer with the FBI and regularly works joint investigations with CSPD and the FBI. As such, Your Affiant requests permission for the FBI to be allowed to participate in the search.

Therefore, based on the above described facts and circumstances, Your Affiant respectfully moves the Court for issuance of a search warrant for search of those person(s), property and/or premises known as: **2002 Legacy Ridge View, Apartment ▮ City of Colorado Springs, County of El Paso, State of Colorado; 2002 Legacy Ridge View, Apartment ▮, is a two story townhome in a row of townhomes. The exterior front is red brick on the first floor, and tan siding on the second floor. The front door is green in color, with the numbers ▮, black in color, above the front door.**

Applicant: _Daniel Summey_ 5156

Daniel Summey 5156

Employed By:   Colorado Springs Police Department

Position:   Task Force Officer

This affidavit was sworn and subscribed before me this day Friday, August 6, 2021.

Magistrate / Judge: _____

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address: 270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **2002 Legacy Ridge View, Apartment█████ City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency Name: Colorado Springs Police Department          Agency Number: 21-29044 | Division:**Criminal**          Ctrm: |

## ATTACHMENT B

The following person(s), property and/or premise(s) will be searched for and, if found, seized:

- Blue helmet seen being worn by the suspect in attachment A.
- Red Shirt with "Housing is a Human Right" written on it, seen being worn by the suspect in attachment A
- Grey Nike shoes with white soles, seen being worn by the suspect in attachment A
- Purple bicycle with green sticker just below where the handlebars attach, used by the suspect as a weapon and seen in attachment A
- Digital media storage devices, to include phones, computers, tablets, thumb drives, and external hard drives found to be associated with Jacqueline Armendariz
- Photo of the cat tattoo with unfilled eyes located on Jacqueline Armendariz's right hip/thigh
- Indicia of ownership or occupancy to include but not limited to telephone bills, utility bills, letters of: **2002 Legacy Ridge View, Apartment███, located in the City of Colorado Springs, County of El Paso, State of Colorado**

### NO OTHER ITEMS ARE SOUGHT FOR SEIZURE

Supervisor Initials / IBM: _____

**EXHIBIT 2**

**RECEIVED**

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | | **AUG 3 0 2021** |
|---|---|---|
| Court Address:    270 South Tejon Street | | |
|                          Colorado Springs, Colorado 80903 | | |
| RE: Search Warrant of | | **CLERK'S OFFICE**<br>▲COURT USE ONLY▲ |
| **Black Seagate External Hard Drive Serial: NA87E7RW**<br>**Silver HP Laptop with unknown Serial**<br>**HP Elite 735G6 Computer Serial: 5CG00226VH**<br>**Motorla XT1687 cell phone with unknown serial**<br>**Apple iPhone A1660 with unknown serial**<br>**Samsung 9M-N97OU1 Serial: 35919710038363**<br>**Currently located at the Colorado Springs Police Department Police Operations Center,**<br>**located at 705 S Nevada Ave**<br>**; Located within: City of Colorado Springs, County of El Paso, State of Colorado** | | Case/File Number:<br><br>**21-2351** |
| Agency: Colorado Springs Police Department | Agency Number: 21-29044 | Division:**Criminal**    Ctrm: |
| **SEARCH WARRANT** | | |

Whereas Task Force Officer Daniel Summey, 5156 has made an Application and Affidavit, which is attached and expressly incorporated into this Search Warrant in reference, to the Court for the issuance of a Search Warrant, and; Whereas the application is in proper form and probable cause is found for the issuance of a Search Warrant to search the person(s) and or premises specified in the application.

THEREFORE, the applicant, and any other peace officer into whose hands this Search Warrant shall come, is hereby ordered, with the necessary and proper assistance, to enter and search within the next fourteen (14) days the person(s), property, and/or premise(s), location and any appurtenances thereto, description of which is:

**Black Seagate External Hard Drive Serial: NA87E7RW**

**Silver HP Laptop with unknown Serial**

**HP Elite 735G6 Computer Serial: 5CG00226VH**

**Motorla XT1687 cell phone with unknown serial**

**Apple iPhone A1660 with unknown serial**

**Samsung 9M-N97OU1 Serial: 359197100383638**

**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**

**; Located within: City of Colorado Springs, County of El Paso, State of Colorado**

The following person(s), property or thing(s) will be searched for and, if found, seized:

**See Attachment B which is hereby incorporated in reference**

as probable cause has been found to believe that it:

☐    Is stolen or embezzled, or

☐    Is designed or intended for use in committing a criminal offense, or

☐    Is or has been used as a means of committing a criminal offense, or

☐    Is illegal to possess, or

☒    Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or

☐    Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or

☐    Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or

☐    That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

Furthermore, a copy of this warrant is to be left with the person whose premises or person is searched along with a list of any and all items seized at the time of its execution. If said person cannot be located or identified, a copy of the search Warrant and the list of property seized shall be left at the place from which the property was taken.

Further, a return shall be promptly made to this Court upon the execution of this Search Warrant along with an inventory of any property taken. The property seized shall be held in some safe place until the Court shall further order.

Sworn and subscribed before me this day <u>Friday, August 20, 2021</u> at __*4:28*__ AM / PM

Magistrate / Judge: _____

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:    270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of<br><br>**Black Seagate External Hard Drive Serial: NA87E7RW**<br>**Silver HP Laptop with unknown Serial**<br>**HP Elite 735G6 Computer Serial: 5CG00226VH**<br>**Motorla XT1687 cell phone with unknown serial**<br>**Apple iPhone A1660 with unknown serial**<br>**Samsung 9M-N97OU1 Serial: 35919710383638**<br>**Currently located at the Colorado Springs Police Department Police Operations Center,**<br>**located at 705 S Nevada Ave**<br>**; Located within: City of Colorado Springs, County of El Paso, State of Colorado** | ▲COURT USE ONLY▲<br><br>Case/File Number: |
| Agency: Colorado Springs Police Department             Agency Number: 21-29044 | Division:**Criminal**      Ctrm: |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

The undersigned, a peace officer as defined in 16-2.5.101, Colorado Revised Statutes 1973, as amended, being first duly sworn on oath moves the Court to issue a Warrant to search those person(s), property, and/or premises known as:

**Black Seagate External Hard Drive Serial: NA87E7RW**

**Silver HP Laptop with unknown Serial**

**HP Elite 735G6 Computer Serial: 5CG00226VH**

**Motorla XT1687 cell phone with unknown serial**

**Apple iPhone A1660 with unknown serial**

**Samsung 9M-N97OU1 Serial: 359197100383638**

**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**

**; Located within: City of Colorado Springs, County of El Paso, State of Colorado**

The undersigned states that there exists probable cause to believe that the following person, property or thing(s) to be searched for, and if found, seized will be found on the aforementioned person(s) and or premises and are described as follows:

### See Attachment B which is hereby incorporated in reference

The grounds for the seizure of said person(s), property or thing(s) are that probable cause exists to believe that it:

☐    Is stolen or embezzled, or

☐    Is designed or intended for use as a means of committing a criminal offense, or

☐    Is or has been used as a means of committing a criminal offense, or

☐    Is illegal to possess, or

☒    Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or

☐    Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or

☐    Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or

☐    That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

The facts submitted in support of this application are set for in the accompanying attachment designated as **Attachment A** which is attached hereto and made a part hereof.

Attachment B

Applicant: _Daniel Summey_ 5156

Daniel Summey 5156

Employed By: Colorado Springs Police Department

Position: Task Force Officer

Sworn and subscribed before me this day <u>Friday, August 20, 2021</u>.

Magistrate / Judge: _____

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | ▲COURT USE ONLY▲ |
|---|---|
| Court Address: 270 South Tejon Street Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | |
| **Black Seagate External Hard Drive Serial: NA87E7RW** | Case/File Number: |
| **Silver HP Laptop with unknown Serial** | |
| **HP Elite 735G6 Computer Serial: 5CG00226VH** | |
| **Motorla XT1687 cell phone with unknown serial** | |
| **Apple iPhone A1660 with unknown serial** | |
| **Samsung 9M-N97OU1 Serial: 359197100383638** | |
| **Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave** | |
| **; Located within: City of Colorado Springs, County of El Paso, State of Colorado** | |
| Agency Name: Colorado Springs Police Department Agency Number: 21-29044 | Division:**Criminal** Ctrm: |
| **ATTACHMENT A** | |

The following affidavit is made in the support of a request for the issuance of a search warrant for: **Black Seagate External Hard Drive Serial: NA87E7RW**

**Silver HP Laptop with unknown Serial**

**HP Elite 735G6 Computer Serial: 5CG00226VH**

**Motorla XT1687 cell phone with unknown serial**

**Apple iPhone A1660 with unknown serial**

**Samsung 9M-N97OU1 Serial: 359197100383638**

**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**

**; Located within: City of Colorado Springs, County of El Paso, State of Colorado**.

Your Affiant, Task Force Officer Daniel Summey, 5156, a Police Officer for the Colorado Springs Police Department and so employed for over 6 years and now currently assigned to the FBI Joint Terrorism Task Force, state under oath that I have personal knowledge of the following facts:

Your Affiant is a sworn peace officer with the Colorado Springs Police Department (CSPD), and has served as a Task Force Officer in the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF) since August of 2020, and served as a CSPD Intelligence Detective from 2018 to 2020. Your Affiant has served as a Bias-Motivated Crimes subject matter expert for CSPD since 2018 and has collected information regarding Bias-Motivated Crimes and Groups in the Colorado Springs metro area. Your Affiant has also provided in-person training and information to outside agencies in the Colorado Springs metro area regarding white supremacists and hate groups. Your Affiant has participated in investigations regarding illegal protest activity and has become familiar with people who are regularly involved in illegal protest activity, including members and associates of the Chinook Center.

On 7/31/2021, the City of Colorado Springs hosted a celebration for the 150th anniversary of the founding of the city. In the leadup to the event, the Chinook Center, a local umbrella organization that is the central hub for multiple political activist groups and their members, posted on social media that a march was planned regarding housing in Colorado Springs. Please see the following snip on social media by the Chinook Center:

Supervisor Initials / IBM:

Attachment A
Page 2 of 24



**Chinook Center**
July 10 at 8:43 AM ⬤

The Housing Crisis in this city can't be ignored any longer. We are going to March on July 31 and we'll also be distributing meals, personal items, and tents to our unhoused community members who bear the worst of the crisis daily. This affects us all! Greed got us this crisis - solidarity is the way we take the power back!
Keep your eye out as details emerge and save the date!



During the ensuing march, protesters immediately and intentionally walked in the roadway and obstructed traffic. Several protesters were arrested, to include Jonathan Christiansen DOB: [redacted] 1978 and Shaun Walls DOB: [redacted] 1980, both of whom are affiliated with the Chinook Center. Protesters involved in the march wore similar clothing, to include red shirts with the words "Housing is a Human Right". Several of the protesters carried red flags. Your Affiant would note that the red flag is significant in that it is a radical political symbol, and designates this march, which ultimately was declared unlawful, as revolutionary and radical in nature. The website Age of Revolution states – "Today the red flag has, predominantly, become a symbol of socialism and communism. Its European origins date back to the Middle Ages, when a red streamer flying from the mast of a warship signalled a willingness to fight to the death, with no surrender. But its radical political roots lie firmly in the Age of Revolution." Information can be found at https://ageofrevolution.org/200-object/red-flag/.

On 8/4/2021, Your Affiant was tasked with assisting Gold Hill property detectives with identifying a female that attempted to strike a uniformed Colorado Springs Police Department Officer, Anthony Spicuglia 4925, with a bicycle as he ran to assist other police officers who were attempting to take Shaun Walls into custody. Walls was actively resisting officers who were attempting to take him into custody. Your Affiant observed Officer Thane Gilmore's 1697 bodycam, which offered a good view of the attempted assault on Officer Spicuglia by the unidentified female.

Your Affiant observed Officer Spicuglia enter the recording from the left side of the screen at a sprint, heading towards officers who were attempting to take Shaun Walls into custody. A female was riding up the street on a bicycle in the path Officer Spicuglia was taking to get to Walls. As Officer Spicuglia approached the female, she got off the bicycle and threw it at Officer Spicuglia with the clear intent to strike him with it, as he was sprinting at and by her. Officer Spicuglia was very nearly struck by the bicycle and had to slow his sprint towards other officers and jump to avoid the bicycle as it hit the ground in front of him. Had the bicycle made contact with Officer Spicuglia as he was running by at a sprint, it almost certainly would have caused bodily injury to him, possibly even serious bodily injury, as he was sprinting on a paved roadway while wearing bulky, heavy police gear. The bodycam video clearly showed the female showed intent to strike Officer Spicuglia with the bicycle as he sprinted by, as there was no logical reason for her to exit the bicycle and throw it at an officer as he was

**Supp.App.050**

Attachment A
Page 3 of 24

sprinting at and by her. There were no other protesters around the female, and therefore no one she could have been attempting to throw or roll the bicycle to.

Your Affiant understands that sometimes one or two angles may not tell the whole story, so your Affiant located footage from a CSPD Unmanned Aerial Surveillance (UAS) drone. The UAS captured a good view of the attempted assault from above the crowd. Your Affiant noted that the unidentified female was far away from all other protesters and had no logical reason to exit the bicycle and throw it directly at Officer Spicuglia as he sprinted past. Your Affiant again noted Officer Spicuglia had to slow his sprint towards officers in need of assistance taking an actively resisting subject into custody, and jump, to avoid the bicycle the female attempted to strike him with.

Your Affiant snipped several images of the female from Officer Gilmore's bodycam. Your Affiant also snipped a photo of the bicycle from Officer Spicuglia's bodycam and a photo of the incident taken by the UAS. Please see the following photos with relevant information about each photo:





The above photos are taken from Officer Gilmore's bodycam, and captures the moment the suspect attempted to assault Officer Spicuglia as he was sprinting by to assist Officers with taking Walls into custody.

Attachment A
Page 4 of 24



The photo above, taken from Officer Gilmore's bodycam footage, shows the female directly after she attempted to assault Officer Spicuglia. Please note that she has a unique cat tattoo on her right hip/thigh area. The cat appears to be black in color with uncolored eyes. Also note the handlebars on the bicycle are straight with white on the grips.

Supp.App.052

Attachment A
Page 5 of 24



The above photo was taken from Officer Gilmore's bodycam. Please note the gray Nike shoes with white soles, and the purple colored bicycle used by the suspect to attempt to assault Officer Spicuglia. Please also note the helmet, which is light blue in color at the top, and gets darker towards the bottom of the helmet.

Attachment A
Page 6 of 24



The above photo is taken from Officer Gilmore's bodycam. Please note again the unique cat tattoo with uncolored eyes, and the light blue helmet that gets darker towards the bottom of the helmet.



The above photo was taken from Officer Spicuglia's bodycam and shows the bicycle just as it was thrown down in front of him while he was running towards the crowd to assist officers with taking Shaun Walls' into custody. Please note the bicycle is purple in color and has handlebars with white grips on them. There is a green sticker on the front of the bicycle just below where the handlebars connect to the bicycle.

Attachment A
Page 8 of 24



The above photo was taken from CSPD UAS footage as the attempted assault on Officer Spicuglia occurred. Please note the black police SUV in the bottom right of the image. The female with light colored helmet, standing by the downed bicycle, with Officer Spicuglia directly beside the suspect and the bicycle, is the suspect in this case. Please note, there is no one she could have been attempting to pass the bicycle to in the area.

Your Affiant began to look into open source social media to determine if the female is an associate of Jonathan Christiansen or Shaun Walls, as she was participating in a protest that was advertised by the Chinook Center and Shaun Walls. Your Affiant discovered Shaun Walls is associated with a person on Facebook who uses the name J.R. Armendariz (Facebook ID: 10103081958348051). Your Affiant checked local law enforcement databases and discovered CSPD has had contact with Jacqueline Rose Armendariz DOB: ████1987 SSN: ████9489 in the past. Your Affiant checked the driver's license photo of Jacqueline Rose Armendariz, and discovered the driver's license photo matches the female in the photos on J.R. Armendariz's Facebook profile, which means this is likely a Facebook profile owned by Jacqueline Rose Armendariz.



Please see above snip from Facebook of Shaun Walls promoting the protest.

Attachment A
Page 9 of 24

Your Affiant located the following photo on Armendariz's open Facebook profile, dated July 3rd, 2021. Please note the helmet that is light blue in color and gets darker towards the bottom. This helmet appears to be the same helmet worn by the suspect that attempted to assault Officer Spicuglia.



On Armendariz's Facebook page, Your Affiant located a photo from RISE Southeast showing Armendariz standing in front of a camera dated July 19th, 2021. Your Affiant noted Armendariz is on multiple photos associated to RISE Southeast. The photo below shows Armendariz wearing gray Nike shoes with a white sole that appear to be the same shoes worn by the suspect that attempted to assault Officer Spicuglia. Your Affiant would also note that tattoos are visible on Armendariz's hip in the same location the suspect has a tattoo.



The following photo is also from RISE Southeast, and is located on Armendariz's Facebook profile. Armendariz appears to be again wearing the same shoes and helmet as the female that attempted to assault Officer Spicuglia. Please note the bicycle Armendariz is holding is purple in color with straight handlebars that are white on the

grips. The bicycle also has a green sticker just below where the handlebars connect to the bicycle. The bicycle appears to be the same bicycle the female attempted to assault Officer Spicuglia with.



Your Affiant located a twitter handle for Armendariz. Pease see the following photo from @JRArmendarizTwitter, which also appears to be owned by Armendariz. Please note the same cat tattoo with uncolored eyes on her right hip/thigh area. This tattoo matches the tattoo location and shape of the tattoo on the suspect that attempted to assault Officer Spicuglia:

Supp.App.058

Attachment A
Page 11 of 24



The female in the bodycam snips and Jacqueline Armendariz appear to be the same person due to multiple similarities.

First, the female that attempted to assault Officer Spicuglia has a tattoo of a cat head with unfilled eyes on her right hip.  Multiple bodycam snips and photos from social media show it appears to be the same tattoo located on the same spot on the body as Jacqueline Armendariz.

Second, Armendariz can be seen on a bicycle in the photo from RISE Southeast.  The bicycle is purple with straight white colored handlebars.  The bicycle also has a green sticker located just below the area where the handlebars connect to the bicycle. The bicycle used in the attempted assault on Officer Spicuglia appears to be the same bicycle.

Third, the female that attempted to assault Officer Spicuglia has on gray Nike shoes with white soles.  Armendariz can be seen wearing what appears to be the same shoes on her open source social media.

Fourth, the helmet worn by the suspect matches the helmet worn by Armendariz in multiple photos on her social media.

Supp.App.059

Attachment A
Page 12 of 24

Your Affiant also discovered a professional Twitter profile for Armendariz, in which she appears to appeal for social justice causes. Please see photo of Armendariz's Twitter profile:



In her profile, Armendariz references "yt supremacy". Your Affiant was unfamiliar with the term "yt", and using dictionary.com found the following definition for "yt folx":

"The *yt* in *yt folx* appears to stem from the slang term *whitey. Whitey*, evidenced since at least the 1830s, has been used by black Americans to disparage white people, especially implying oppression and racial discrimination. By at the early 2000s online, *whitey* was spelled phonetically at *yt*." The information can be found at https://www.dictionary.com/e/slang/yt-folx/.

It appears Armendariz uses the term "yt" in an attempt to disparage white people, showing her disdain for white people. Please note that the officer she attempted to assault was a white male.

Your Affiant located a LinkedIn account for Armendariz, which shows she is active politically in Colorado Springs and Pueblo. Please see the following photos of the LinkedIn page:

Attachment A
Page 13 of 24



LIFE'S MOST PERSISTENT
AND URGENT QUESTION:

# WHAT ARE YOU DOING FOR OTHERS?

...

## Jacqueline Armendariz

Regional Representative at U.S. Senate

Greater Colorado Springs Area · 322 connections

**Join to Connect**

 U.S. Senate

New Mexico State University

## About

Bilingual public servant and communications professional powered by a passion for accountability, integrity and building community. Diverse spectrum of skills and knowledge gained through more than a decade of media and government career experience, including as an award-winning journalist for metro dailies with circulations of up to 88,880 and publishing work cited by outlets such as The Rachel Maddow Show and The Texas Tribune. Experience creating strategic plans and partnerships in the community, addressing concerns and questions from the public and delivering effective, engaging presentations to a wide array of audiences and stakeholders.

Attachment A
Page 14 of 24

## Experience



**U.S. Senate**
2 years 10 months

**Regional Representative**
Jul 2020 – Present · 1 year 2 months
Pueblo, Colorado, United States

**Military & Veterans Constituent Advocate**
Nov 2018 - Jul 2020 · 1 year 9 months
Colorado Springs, Colorado Area

**Legislative Aide**
City of Colorado Springs
Dec 2017 - Nov 2018 · 1 year
City Hall Council Office



**Independent Contractor**
Various
Dec 2016 - Oct 2017  11 months
Colorado Springs  Colorado Area
Contractor/Associate with:
Walker Schooler District Management
Colorado Springs Independent
MiNDFUL
New Age Medical
Nike Factory Store

Your Affiant further discovered Armendariz is a Regional Representative for US Senator Michael Bennet.
Armendariz is listed as a Regional Representative for Bennet on legistorm.com, which appears to be a website that
tracks congressional staffers and has other information on the US Government. Armendariz's information can be
found at: https://www.legistorm.com/person/Jacqueline_R_Armendariz/313120.html.

Your Affiant would note Armendariz appears to be very active politically, and the protest that turned unlawful on
7/31/2021 was politically motivated.

Your Affiant located a podcast, wherein Jacqueline Armendariz from the RISE movement discussed the need for
affordable housing in the southeast part of town. The podcast was dated 7/28/2021. During the interview with
Armendariz, she stated she lives at the intersection of Circle and Monterey and discussed an apartment complex
being gutted near her. That podcast can be found at: http://studio809radio.com/the-renewal-of-southeast-colorado-
springs-with-jacqueline-armendariz-from-rise-and-catherine-duarte-from-the-city-of-colorado-springs/.

At this time, Your Affiant believes Armendariz is in violation of the following Colorado Revised Statutes:

18-2-101 Criminal Attempt - Second Degree Assault – Class 5 Felony (F5)

Attachment A
Page 15 of 24

Your Affiant is familiar with illegal protest activity and people who protest as part of a group. Due to Your Affiant's training and experience, Your Affiant knows people who engage in illegal protest activity frequently carry their phones with them to take photos of their activity and message others who are also participating in illegal protest activity. Your Affiant also knows that phones regularly track the location of their user and can show where a person is at a given date and time. Your Affiant is also aware that people regularly attach their phones to their computers, and use their computers to back up their phones, or transfer photos from their phones to save space on their phones. Your Affiant knows that people store digital data on numerous devices, to include tablets, thumb drives, and external hard drives. On 8/19/2021, Armendariz contacted Your Affiant by phone, and requested I contact her employer's office and speak with her supervisor. On 8/19/2021, I contacted Amy Friedman by phone at ███████ Friedman confirmed Armendariz attended the protest in her personal capacity, and said Armendariz sent her digital media of the protest. Your Affiant requested the videos from Friedman, who stated Senator Bennet's Office and lawyers would look into it.

Your Affiant had a check of local utilities conducted and discovered Armendariz has an active utilities account at 2002 Legacy Ridge View, apartment ██, located in the city of Colorado Springs, county of El Paso, State of Colorado. Your Affiant also had Armendariz's driver's license (issued on 5/6/2017) and vehicle registration (Updated in June 2021) checked, and found 2002 Legacy Ridge View, apartment ██ listed there as well. This corroborates the information Armendariz provided on the podcast dated 7/28/2021, as the intersection of South Circle Drive and Monterey Road is approximately 300 feet from Armendariz's apartment building.

On 8/6/2021, Your Affiant authored an arrest warrant for Armendariz for Criminal Attempt – Second Degree Assault, and a search warrant for her residence, 2002 Legacy Ridge View, apartment ██. Your Affiant met with the Honorable Judge Miles at the El Paso County Courthouse on 8/6/2021, where Judge Miles granted the search and arrest warrant.

On 8/18/2021, at approximately 0750 hours, Armendariz was taken into custody outside of her residence. A search of her residence was completed, and the blue helmet, red shirt with "Housing is a Human Right", gray Nike shoes with white soles, a black Seagate External Hard Drive serial number NA87E7RW, a silver HP laptop with unknown serial number, an HP Elite 735G6 serial number 5CG00226VH, a Motorola XT1687, an Apple iPhone A1660 with unknown serial number, and a blue Samsung Galaxy cell phone serial number 359197100383638, and indicia of occupancy were seized. Your Affiant would note there are stickers on the HP Elite 735G6 denoting it is a work computer, and is property of US Senator Michael Bennet's Office, and is US Senate Property. Your Affiant is aware that this is a work computer given to Armendariz, as Your Affiant spoke with a staff member of Senator Bennet's Office over the phone. The work computer was found in Armendariz's possession during a search of her residence. In Your Affiant's training and experience, people often engage in personal communications with their work devices even though it is oftentimes not allowed by company policy.

Your Affiant saw a bicycle in the back of Armendariz's vehicle, visible from outside the vehicle through the windows, that was purple in color with a green sticker below where the handlebars attach to the vehicle. The bicycle clearly matched the bicycle that was used in the attempted assault on Officer Spicuglia. Your Affiant had the vehicle secured and towed to the CSPD Impound Lot.

On 8/18/2021, Your Affiant authored a search warrant to search Armendariz's vehicle, a 2014 Blue Nissan Rogue VIN: ███████4726 with Colorado license plate ███431 and seize the bicycle, along with indicia of ownership of the vehicle. On 8/18/2021, Your Affiant met with the Honorable Judge Rotolo at the El Paso County Courthouse, where Judge Rotolo reviewed and granted the search warrant.

On 8/18/2021, at approximately 1120 hours, Your Affiant arrived at the CSPD Impound Lot, where the vehicle was located. Your Affiant searched the vehicle, and seized the bicycle, found to be a purple Diamondback Topanga bicycle with serial number I4H09771. Your Affiant observed the bicycle had damage to the outside of the left handlebar. The damage appeared to be scratch marks consistent with being thrown down hard on the ground. Your Affiant would note that it appears on bodycam that the bicycle used in the attempted assault on Officer Spicuglia struck the ground hard on the left outside of the handlebars.

Attachment A
Page 16 of 24

Your Affiant is familiar with digital technology, and is aware that people regularly attach their phones to their computers, and use their computers to back up their phones, or transfer photos from their phones to save space on their phones. Your Affiant knows that people store digital data on numerous devices, to include tablets, thumb drives, and external hard drives. In Your Affiant's training and experience, people who commit illegal activity in furtherance of the ideology or goals of anarchist or anti-government groups share this information with others though messaging applications, emails, or texts in order to take credit for their actions and gain standing or notoriety in such groups. In Your Affiant's training and experience, people who engage in illegal activity in furtherance of the ideology or goals of anarchist or anti-government groups take videos or photos of themselves or others engaged in illegal activity, or engaged in group activities leading up to the illegal activity. Your Affiant is aware the cell phones regularly track location information of the user and can oftentimes place a person at a location if given a date and time.

Your Affiant is aware that Chinook Center is an anarchist or anti-government organization as mentioned in the previous paragraph, and a leader of the Chinook Center, namely Shaun Walls, has called for violence against police officers and their families in the past, and has discussed revolution and uprisings against the government. Please see social media snips from Shaun Walls calling for violence against police officers and their families, revolution against the government, and riots:



**Shaun Walls**
14 hrs

Riots work (.)

Rioting is more effective than following the process and always has been

The process isn't set up to bring about changing anything. You have to break the process

 39                                          21 Comments

Attachment A
Page 17 of 24

 **Shaun Walls**
Yesterday at 6:19 AM 🌐

A lot of us never did shit to them.. They're so used to ppl being scared of them I bet they'd be beside themselves if their houses started getting shot up randomly

# The police have NEVER pepper sprayed the Ku Klux Klan, and never shot rubber bullets at them. Someone explain. I'll wait.

 35                    6 Comments  11 Shares

Attachment A
Page 18 of 24



**Shaun Walls**
3 hrs

This is what will make them think twice since losing their job is off the table.



THEBLAZE.COM
**More than 36 street gangs in Chicago reportedly vow to shoot on sight any cop who has a weapon drawn in public**

Attachment A
Page 19 of 24



**Shaun Walls**
17 hrs

Good cops believe they are the actual Law itself this is why they treat ppl however they want. And he has other good cops to back him up not tell him to back up.
But they don't think about you pulling up to their house the next day.. bet CSPD better think twice because they terrorize ppl where they live everyday.. Life has taught me over and over It's no fun when the rabbit got the gun.

Watch the oohhhhh "be careful" comments lol keep that shit to yourself.. I know exactly what I said and so do they



2,919 Views

**Jay Moody**
17 hrs

!!!SPREAD THE WORD!! Ladies and Gents! Now you see why we do what we do! So lets stop talking about blacks killing blacks! Look at this mess 😔 😔 😔 Wayment the fact that the cops dont care about being recorded is crazy 👻 👻 👻 sickness ARREST THE COPS!!!! Spread the word!!!! ALL THE COPS!!!!

Attachment A
Page 20 of 24

 **Shaun Walls**
52 mins

Who's next



Trash Syndicate
12 hrs ·                                      👍 Like Page

Wisconsin Department of Corrections Building  Kanosha WI

ht CJ TV

---

 **Shaun Walls**
23 hrs ·

Here's why you cant tell me voting changes shit.. Especially when you're telling me a cop being the VP is the right answer.

I'm telling y'all there won't be not a damn thing changing until this shit gets burnt or blown tf up.
Cops aren't going to suddenly change and switch up how it's being played until every one of them needs to hurry home to protect their families when they do this shit.

Kill three of their wives or kids anywhere in the nation and watch the shit stop. Magically.
Tired of tap dancing around what's a threat and what's not these mfs is killing us for free and then still going to Walmart in the same city got to be fuckin kidding me.

In a war the logistics lines are evaluated and destroyed. The only thing feeding that system is the people that still go to te cops. Might as well stop trying to "fix" the system and trick it into reversing its self , takes its fuel away

Supp.App.068

Attachment A
Page 21 of 24

 **Shaun Walls**
21 hrs

···

I just realized the fear these police put in y'all got you thinking I'm scared too. When's the last time you looked me in the face and talked to me?

You're trippin like a mf bro. I left my fear somewhere and forgot where it's at already ..got me fucked up.

The revolution has come, off the pigs, time to pick up the guns..
We repeated that shit and meant every last word of it. Come see

https://youtu be/Fe4RVOw3Cdk



👍 Like          💬 Comment          ↪ Share

👍😆 15

Your Affiant would note that Walls actively resisted arrest, and it appears Armendariz attempted to assault a uniformed police officer at protest march that was sponsored by Chinook Center that turned unlawful. Your Affiant would note there appears to be a close relationship that exists between Walls and Armendariz, wherein they are friends on social media, Armendariz attended an event that Walls promoted on social media, and she attempted to assault an officer who was attempting to take Walls into custody. Your Affiant is aware that along with Shaun Walls, the previously mentioned Jonathan Christiansen and his wife Samantha Christiansen DOB: ███ 1978, are leaders of the Chinook Center, and opened the Chinook Center. This is made evident by a social media post from Shaun Walls on the next page:

Attachment  A
Page 22 of 24



Your Affiant would note that the above post, wherein Walls is with "Jon Crustyansen" and "Sam Roberts Chrischeeansen and references opening the Chinook Center, shows the connection between Walls and Jon and Sam Christiansen, and that they were the ones that opened the Chinook Center. Jon Crustyansen (FBID: 1075987819) and Sam Roberts Chrischeeansen (FBID: 677499237) are accounts that, due to the numerous photos of both Jon and Sam Christiansen on both pages, appear to be owned by Jon and Sam Christiansen.

Your Affiant is aware that the Chinook Center, and Chinook Center member groups, have promoted other protests that turned violent in the past, namely the Pulpit Rock protest where numerous activist groups and their members unlawfully protested outside of CSPD Officer Van't Land's residence on the anniversary of Van't Land shooting and killing De'Von Bailey. During that protest, numerous protesters showed up armed, and several were arrested after pointing their weapons at people who were driving through the neighborhood, attempting to get to their respective homes.

Your Affiant is aware that Armendariz appeared in an episode of Just COS, which is hosted by Jon Christiansen and Shaun Walls, that was posted to YouTube on August 16, 2020, seen at https://www.youtube.com/watch?v=E8n_-dcRsac

The Episode is titled Episode Lucky 13, and it contains discussion from Jon Christiansen and Shaun Walls about the Pulpit Rock Protest. Christiansen initially states that MOVE (Note that Chinook Center lists MOVE as a member organization on their website) and Empowerment Solidarity Network were the organizers, but later numerous context clues provided by Walls and Christiansen show that they also helped plan the protest. Note that

Attachment A
Page 23 of 24

at the 5:16 mark of the video, Walls states, "We were very well organized", and went on to state, "We got our message across." At the 5:35 mark, Jon Christiansen states, "We had decided it was ok for people to bring long guns, um, because we knew that there were some threats out there." This statement shows that Jon Christiansen played a role in okaying protesters bringing firearms to the protest, and therefore had a hand in the planning of the protest. Those firearms, which by his own words were okayed by Christiansen, were later used to menace citizens driving through the neighborhood, and several arrests were made. This shows a pattern of protest activity that has turned illegal associated with the Chinook Center and Chinook Center member organizations.

At the 8:13 mark, Armendariz introduces herself to the audience, providing her name as Jacqueline Armendariz. Armendariz appearing on Just COS shows her connection to the activist community, and her closeness with Christiansen and Walls.

Your Affiant is seeking permission to search the digital devices recovered from Armendariz's person and residence, , a black Seagate External Hard Drive serial number NA87E7RW, a silver HP laptop with unknown serial number, an HP Elite 735G6 serial number 5CG00226VH, a Motorola XT1687, an Apple iPhone A1660 with unknown serial number, and a blue Samsung Galaxy cell phone serial number 359197100383638, to seize any photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation. This time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer.

Your Affiant is aware that Shaun Walls began posting about "Housing is a Human Right" on 6/5/2021 and has provided a snip of that post below. Your Affiant believes this is likely the time that planning for the unlawful protest began.



**Shaun Walls**
June 5 · 🌐                                                    ...

As you get yourself together this morning for this beautiful weather
don't forget that you live in a city where human beings are forced to
sleep in fields under tents with their kids.. a city where you most
definitely will have to step over or around a human being sleeping on
the concrete sidewalk in the middle of the day. And don't forget
today's the 5th.. late fees start today -that's the punishment capitalists
apply when you don't have enough of their money on time. Have a
great day guys 😊
#HousingForAll #NOW

https://www.facebook.com/Colorado-Springs-Housing-4-All-
Coalition-109577171298115/



**Colorado Springs Housing 4 All
Coalition**                                              👍 Like

👍❤️😮 22

Attachment A
Page 24 of 24

Your Affiant is also requesting permission to perform a key word search of the devices for the following words:

Police, officer, cop, pig, bike, bicycle, attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Shaun, Walls, as these terms would be relevant to the investigation regardless of the time period in which they occurred.

The above mentioned items would be material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia.

Your Affiant is a Task Force Officer with the FBI and regularly works joint investigations with CSPD and the FBI. As such, Your Affiant requests permission for the FBI to be allowed to participate in the search.

Therefore, based on the above described facts and circumstances, Your Affiant respectfully moves the Court for issuance of a search warrant for search of those person(s), property and/or premises known as: **Black Seagate External Hard Drive Serial: NA87E7RW**

**Silver HP Laptop with unknown Serial**

**HP Elite 735G6 Computer Serial: 5CG00226VH**

**Motorla XT1687 cell phone with unknown serial**

**Apple iPhone A1660 with unknown serial**

**Samsung 9M-N97OU1 Serial: 359197100383638**

**Currently located at the Colorado Springs Police Department Police Operations Center, located at 705 S Nevada Ave**

**; Located within: City of Colorado Springs, County of El Paso, State of Colorado.**

Applicant: _Daniel Summy 5156_

Daniel Summey 5156

Employed By:   Colorado Springs Police Department

Position:   Task Force Officer

This affidavit was sworn and subscribed before me this day Friday, August 20, 2021.

Magistrate / Judge: _____

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address:    270 South Tejon Street<br>                       Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **Black Seagate External Hard Drive Serial: NA87E7RW**<br>**Silver HP Laptop with unknown Serial**<br>**HP Elite 735G6 Computer Serial: 5CG00226VH**<br>**Motorla XT1687 cell phone with unknown serial**<br>**Apple iPhone A1660 with unknown serial**<br>**Samsung 9M-N97OU1 Serial: 359197100383638**<br>**Currently located at the Colorado Springs Police Department Police Operations Center,**<br>**located at 705 S Nevada Ave**<br>**; Located within: City of Colorado Springs, County of El Paso, State of Colorado** | Case/File Number: |
| Agency Name: Colorado Springs Police Department     Agency Number: 21-29044 | Division:**Criminal**     Ctrm: |
| **ATTACHMENT B** | |

The following person(s), property and/or premise(s) will be searched for and, if found, seized:

- Photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through  8/7/2021 that are determined to be relevant to this investigation.  This time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer.
- key word search of the devices for the following words:
  Police, officer, cop, pig, bike, bicycle, attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Crustyansen, Chrischeeansen,  Shaun, Walls, as these terms would be relevant to the investigation regardless of the time period in which they occurred.

NO OTHER ITEMS ARE SOUGHT FOR SEIZURE

Supervisor Initials / IBM: _____

<u>**EXHIBIT 3**</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01951-CNS-MDB

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

  Plaintiffs,

v.

CITY OF COLORADO SPRINGS,
DANIEL SUMMEY, a detective with the Colorado Springs Police Department,
in his individual capacity,
B.K. STECKLER, a detective with the Colorado Springs Police Department,
in his individual capacity,
JASON S. OTERO, a sergeant with the Colorado Springs Police Department,
in his individual capacity,
ROY A. DITZLER, a police officer with the Colorado Springs Police Department,
in his individual capacity, and
FEDERAL BUREAU OF INVESTIGATION.

  Defendants.

---

### <u>DECLARATION OF WILLIAM L. HARRIS</u>

In accordance with Title 28, United States Code Section 1746, I, William L. Harris, do declare and state as follows:

1.  I am the Unit Chief of the Discovery Unit II (DU) of the Federal Bureau of Investigation (FBI), Office of the General Counsel (OGC), at FBI Headquarters, Washington, D.C.  I have served in this capacity since March, 2023.  I have been employed with the FBI since September, 1991.

2.  The statements contained in this declaration are based upon my personal knowledge, my review and consideration of documents available to me in my official capacity, and on information obtained from other FBI employees.

3.  DU provides litigation support to the other units in OGC, as well as numerous other entities.  DU is responsible for locating, reviewing, and processing for release, any and all

responsive materials which pertain to litigation and administrative matters in which the Bureau is directly or indirectly involved.  As Unit Chief of DU II, I am responsible for overseeing the Paralegal Specialists who locate, review, process, and produce documents related to a variety of document production requests.

4.      I have access to the records contained in the FBI's Central Records System (CRS).  I am also personally familiar with the FBI's records maintenance and retrieval system.

5.      All records contained in the CRS are identifiable through the FBI's practice of indexing records to a particular subject matter or individual.  Once indexed, a record pertaining to a particular subject matter or individual is retrievable through a search of the general indices to the CRS.  In short, the CRS is the FBI's official system of records for all investigative, administrative, and official business of the agency.

6.      The CRS enables the FBI to maintain information it has acquired while fulfilling its mandated law enforcement responsibilities.  The records maintained here consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  Searching the CRS is the means by which the FBI can determine what retrievable information, if any, the agency may have in its files on a particular subject matter or individual.

7.      As the Unit Chief, I oversaw the Paralegal Specialists, who performed a diligent search of the general indices to the CRS as of November 17, 2023.  The Paralegal Specialists performed a search of the CRS using Plaintiff's full name included in the caption of the Complaint in this matter.  The search did not locate any administrative claim presented to the FBI by or on behalf of Jacqueline Armendariz.

Supp.App.075

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of November, 2023

*William L. Harris*
William L. Harris
Unit Chief, Discovery Unit II
Office of the General Counsel
Federal Bureau of Investigation
Washington, D.C.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No:  23-cv-01951-CNS-MDB


JACQUELINE ARMENDARIZ and CHINOOK CENTER,

Plaintiffs,

v.

CITY OF COLORADO SPRINGS;
DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual capacity;
B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual capacity;
JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual capacity;
ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his individual capacity; and
FEDERAL BUREAU OF INVESTIGATION,

Defendants.

---

**DITZLER'S MOTION TO DISMISS AND**
**JOINDER IN SUMMEY'S/UNITED STATES' MOTION TO DISMISS**

---

Defendant Roy A. Ditzler ("Detective Ditzler") moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims asserted against him in Plaintiffs' First Amended Complaint (Doc. 12). Detective Ditzler also joins in Daniel Summey's/United States' Motion to Dismiss (Doc. 49).

**Certification of Conferral Pursuant to Civ. Practice Standard 7.1B(b):**  Undersigned counsel certifies that she conferred with Plaintiffs' counsel, Sara Neel, concerning this motion. Plaintiffs oppose the motion.

## Introduction

In this case, Plaintiffs complain of search warrants that neutral judges concluded were amply supported by probable cause and sufficiently particular and, thus, constitutional. Armendariz's claims against Detective Ditzler should be dismissed with prejudice for the reasons stated herein as well as for reasons in Daniel Summey's Motion to Dismiss (Doc. 49 at 8-19).

## Argument

### I.      Qualified Immunity on Section 1983 Claims

#### A.      Fourth Amendment Search and Seizure

In Claim 1 of the Amended Complaint, Armendariz asserts that Detective Ditzler violated her Fourth Amendment rights by reviewing and approving search warrants for her "devices and digital data" that "any reasonably well-trained officer" allegedly would have known failed to comply with the Fourth Amendment.[1] (Doc. 12 ¶¶ 160-161) Detective Ditzler is entitled to qualified immunity on Armendariz's Fourth Amendment claim because the warrants were valid and because it was objectively reasonable for Detective Ditzler to rely on the judges' issuance of the warrants.[2]

---

[1] A number of times in the Amended Complaint Plaintiffs allege that Officer Steckler reviewed and approved Officer Summey's search warrant affidavit for Armendariz's digital devices. (*See, e.g.,* Doc. 12 at 23, 25, ¶¶ 113-115) Defendants believe such references to be an error and interpret Plaintiffs' allegations as if they assert that Detective Ditzler reviewed and approved Officer Summey's search warrant affidavit as alleged elsewhere in the Amended Complaint. (*See, e.g., id.* ¶¶ 160, 162-163, 200) Indeed, the search warrant affidavit itself contains "RAD 2145" (presumably for Roy A. Ditzler) in the footer next to "Supervisor Initials / IBM." (Doc. 49-2 at 5) "Factual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true." *Farrell-Cooper Mining Co. v. U.S. Dep't of Interior*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013) (cleaned up).

[2] Officers first were authorized to seize Armendariz's digital devices pursuant to a search warrant for her residence. (*See* Doc. 49-1 at 18) A separate search warrant authorized them to search those devices. (Doc. 49-2)

Supp.App.078

## 1. Search Warrant Validity

A search warrant is valid if it meets three requirements: it must (1) have been "issued by a neutral, disinterested" judicial officer; (2) be based on " 'probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense' "; and (3) "particularly describe the things to be seized, as well as the place to be searched." *Eckert v. Dougherty*, 658 F. App'x 401, 406 (10th Cir. 2016).

As to the first requirement, the warrants were issued by El Paso County, Colorado, judges. (*See* Docs. 49-1, 49-2)[3] Armendariz does not allege that the judges were not neutral and disinterested. Thus, the first requirement is satisfied.

As to the second requirement, Armendariz alleges that the search warrants "exceeded the scope of probable cause established in the affidavit" because they "failed to limit the search to evidence of a specific crime" and "affirmatively rejected a date-range limitation." (Doc. 12 ¶ 154) The Tenth Circuit described the legal standard for evaluating a search warrant as follows:

> Where a warrant is obtained, a reviewing court determines the sufficiency of the warrant by examining the affidavit supporting it. The court determines the sufficiency of the affidavit "by looking at the totality of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding that probable cause existed." Probable cause exists when "there is a fair probability that the contraband or evidence of a crime will be found in a particular place." The "affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched." Instead, the magistrate judge may draw reasonable inferences from the information in the affidavit supporting the warrant.

---

[3] Although Armendariz did not attach the Digital Device Warrant to the Amended Complaint, it is central to her claims and, therefore, may be considered by the Court without converting this Motion to a motion for summary judgment. *See Walker v. Park Cnty. Sheriff's Off.*, No. 21-1119, 2022 WL 538121, at *4 n.6 (10th Cir. Feb. 23, 2022); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Supp.App.079

*United States v. Shelton*, 817 F. App'x 629, 633–34 (10th Cir. 2020) (internal citations omitted).

In this case, Officer Summey's affidavit demonstrated that there was a fair probability that evidence of a crime would be found in the data to be seized from Armendariz's digital devices. First, the affidavit itself was twenty-four pages long, with photos and screenshots and narratives of the basis for suspecting Armendariz of attempted assault on a police officer. (Doc. 49-2) Contrary to Armendariz's allegations, the warrant identified the crime for which the evidence was sought: "a violent act against a police officer"—namely, Colo. Rev. Stat. § "18-2-101 Criminal Attempt – Second Degree Assault – Class 5 Felony." (*Id.* at 18, 29)

Officer Summey testified to his experience that people like Armendariz share information concerning the commission of such crimes "with others through messaging applications, emails, or texts in order to take credit for their actions and gain standing or notoriety in such groups." (*Id.* at 20) Accordingly, the Digital Device Warrant sought photos, videos, messages, emails, and location data from her digital devices from June 5, 2021 through August 7, 2021 "that are determined to be relevant to this investigation. This time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer." (*Id.* at 29) Armendariz takes issue with Summey's "training or experience" (Doc. 12 ¶ 105), but the Tenth Circuit recognizes such training and experience as valid bases for upholding search warrants for digital devices. *See United States v. Burgess*, 576 F.3d 1078, 1091–92 (10th Cir. 2009) (search warrant affidavit which stated that "Based upon training and experience," the affiant "knows that persons involved in trafficking or the use of narcotics often keep photographs of coconspirators or photographs of illegal narcotics in their vehicle" was not overbroad and demonstrated probable cause to search computers and hard drives).

Supp.App.080

In addition, although the Tenth Circuit has "declined to require a search protocol for computer searches," here, the Digital Device Warrant went above and beyond by specifying search terms to be run on Armendariz's digital devices. (*Id.*) *United States v. Russian*, 848 F.3d 1239, 1245 n.1 (10th Cir. 2017). The terms were designed to uncover evidence of the intention to commit and taking credit for committing acts of violence against police officers. (Doc. 49-2 at 20-29) From these facts, Detective Ditzler—and the judges—reasonably could believe that evidence of Armendariz's intent to commit and commission of the crime of attempted assault on a police officer existed in her digital devices. The judge's finding that probable cause did exist is entitled to "great deference." *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009).

Finally, as to the third requirement, the search warrants and incorporated Affidavits were sufficiently particular. A warrant that " 'enables the searcher to reasonably ascertain and identify the things authorized to be seized' " satisfies the particularity requirement. *United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014) (citation omitted). Furthermore, " 'a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit.' " *Id.* (citation omitted). Search warrants for electronic devices must "affirmatively limit the search to evidence of specific ... crimes or specific types of material." *Palms*, 21 F.4th at 698-99.

Here, the search warrant was sufficiently particular because it limited the search of Armendariz's digital devices to specific types of material—"photos, videos, messages … emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation" into Armendariz's commission of attempted assault on a police officer. (Doc. 49-2 at 28-29) It further specified key word search terms that "would be relevant to the investigation regardless of the time period in which they occurred." (*Id.* at 29) The warrant was

5

Supp.App.081

"as specific as the circumstances and the nature of the activity under investigation permit[ted]" and, thus, was valid. *Pulliam*, 748 F.3d at 972.

Because the allegations of the Amended Complaint fail to establish a violation of the Fourth Amendment, Detective Ditzler is entitled to qualified immunity on Armendariz's Fourth Amendment claim.

### 2.   Objective Reasonableness and No Clearly Established Law

Detective Ditzler also is entitled to qualified immunity on Armendariz's Fourth Amendment claim against him because Armendariz fails to allege that Detective Ditzler's reliance on the warrant was objectively unreasonable. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). As explained by the Supreme Court, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Id.* (citation omitted) Few exceptions to this rule exist, and the "threshold" for establishing them "is a high one, and it should be. [That is because] '[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination' because '[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.' " *Id.* at 547. *See also United States v. Augustine*, 742 F.3d 1258, 1262 (10th Cir. 2014) (listing the exceptions to the presumption of objective reasonableness of an officer's reliance on a court-issued search warrant). Here, Armendariz has not alleged that any of the exceptions to the rule exist. (Doc. 12, ¶¶ 95-119) Thus, Detective Ditzler is entitled to qualified immunity on Armendariz's claim under 42 U.S.C. § 1983 that he violated her Fourth Amendment rights.

**Supp.App.082**

In addition, Armendariz will be unable to meet her burden to show that her <u>clearly established</u> Fourth Amendment rights were violated under these circumstances. *See, e.g., United States v. Palms*, 21 F.4th 689, 699–700 (10th Cir. 2021); *United States v. Sadlowski*, 948 F.3d 1200, 1204–05 (10th Cir. 2020); *United States v. Pulliam*, 748 F.3d 967, 971–72 (10th Cir. 2014); *United States v. Christie*, 717 F.3d 1156, 1165–66 (10th Cir. 2013); *United States v. Christie*, 717 F.3d 1156, 1165–66 (10th Cir. 2013).

### B.   First Amendment Retaliation

#### 1.   No constitutional violation

Armendariz baldly alleges that the "search and seizure of Ms. Armendariz's devices and digital data was … retaliatory," in violation of the First Amendment. (Doc. 12 ¶ 151) To state a First Amendment retaliation claim, Armendariz must allege: (1) that she "was engaged in constitutionally protected activity"; (2) defendants' "actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). In addition, "a plaintiff claiming that a search warrant was executed in retaliation for a protected activity is required to show a lack of probable cause as an element of that claim." *Chavez v. City of Albuquerque*, No. 13cv00557 WJ/SMV, 2014 WL 12796875, at *3 (D.N.M. Apr. 14, 2014), *citing Hartman v. Moore*, 547 U.S. 265-66 (2006).

Here, Armendariz wholly fails to allege <u>facts</u> that, if true, plausibly show that her exercise of constitutionally protected conduct substantially motivated Detective Ditzler to review and approve the search warrant affidavit for Armendariz's digital devices. Indeed, Armendariz does not even allege in conclusory fashion that Detective Ditzler was substantially motivated by

**Supp.App.083**

Armendariz's expressive activity; she alleges that his only involvement was to review and approve Summey's search warrant affidavit. (Doc. 12 ¶ 160)

In addition, as discussed herein, the search warrant was sought to investigate Armendariz's attempted assault on a police officer that already had occurred. By the time the search warrant for Armendariz's digital devices was sought, the criminal prosecution of Armendariz already had been instituted. (Doc. 12 ¶¶ 6, 43-44, 87) The search warrant wasn't sought to retaliate against Armendariz but rather to collect evidence probative of the attempted assault charge already pending. (Doc. 49-2 at 28) Armendariz fails to allege any facts that support the notion that Armendariz's protected speech activities substantially motivated Detective Ditzler to approve the warrant.

Furthermore, as discussed in Part I.A.1, Armendariz fails to allege that the search warrant was unsupported by probable cause. In sum, Armendariz fails to state a claim for a violation of her First Amendment rights.

### 2. No clearly established law

Detective Ditzler also is entitled to qualified immunity on Armendariz's First Amendment retaliation claim because it was not clearly established in August 2021 that merely reviewing and approving a search warrant affidavit could give rise to a First Amendment retaliation claim or that the search warrant for Armendariz's digital devices violated clearly established law. Armendariz will be unable to meet her burden to show that her <u>clearly established</u> First Amendment rights were violated under these circumstances.

Again, Detective Ditzler specifically joins in the arguments made by Summey in his Motion to Dismiss Armendariz's Fourth and First Amendment claims, which are equally

**Supp.App.084**

applicable to him, and demonstrate that he neither violated Armendariz's constitutional rights nor violated clearly established law. (*See* Doc. 49 at 8-19)

## II.      Colorado Constitution Claims

In Claim 4 of the Amended Complaint, Armendariz asserts unlawful search and protected speech violation claims against Officer Ditzler under the Colorado Constitution. For the same reasons that Armendariz fails to state federal constitutional violation claims against Officer Ditzler, she fails to allege the violation of her rights under the Colorado Constitution. (*See supra* Parts I.A.1 and I.B.1)

**Conclusion**

All of Plaintiffs' claims against Officer Ditzler should be dismissed.

Respectfully submitted this 20th day of November, 2023.

OFFICE OF THE CITY ATTORNEY OF THE
CITY OF COLORADO SPRINGS, COLORADO
Wynetta P. Massey, City Attorney


*/s/ Anne H. Turner*
Anne H. Turner, Assistant City Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Telephone:  (719) 385-5909
Facsimile:  (719) 385-5535
anne.turner@coloradosprings.gov

Attorneys for Defendants City of Colorado Springs,
B.K. Steckler, Jason S. Otero and Roy A. Ditzler

Supp.App.085

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 20th day of November, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

jackie.roeder@dgslaw.com
theresa.benz@dgslaw.com
elise.reecer@dgslaw.com
tmacdonald@aclu-co.org
sneel@aclu-co.org
akurtz@aclu-co.org
msilverstein@aclu-co.org

Attorneys for Plaintiffs

thomas.isler@usdoj.gov

Attorney for Defendants Federal Bureau of Investigation and Daniel Summey

*/s/Amy McKimmey*
Amy McKimmey
Legal Secretary

Supp.App.086

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No:  23-cv-01951-CNS-MDB

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

Plaintiffs,

v.

CITY OF COLORADO SPRINGS;
DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual capacity;
B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual capacity;
JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual capacity;
ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his individual capacity; and
FEDERAL BUREAU OF INVESTIGATION,

Defendants.

---

## STECKLER'S AND OTERO'S MOTION TO DISMISS

---

Defendants B.K. Steckler and Jason S. Otero (collectively, the "Officers") move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims asserted against them in Plaintiffs' First Amended Complaint (Doc. 12).

**Certification of Conferral Pursuant to Civ. Practice Standard 7.1B(b):**  Undersigned counsel certifies that she conferred with Plaintiffs' counsel, Sara Neel, concerning this motion. Plaintiffs oppose the motion.

## Introduction

In this case, Plaintiffs complain of search warrants that neutral judges concluded were amply supported by probable cause and sufficiently particular and, thus, constitutional. Plaintiffs' claims against the Officers should be dismissed with prejudice.

## Argument

## I.    Qualified Immunity on Section 1983 Claims

### A.    Fourth Amendment Search and Seizure

In Claim 2 of the Amended Complaint, Chinook asserts that the Officers violated its Fourth Amendment rights by seeking a search warrant that "any reasonably well-trained officer" allegedly would have known "failed to comply with the Fourth Amendment." (Doc. 12 ¶¶ 174-179) More specifically, Chinook challenges the warrant for "All Facebook Messenger chats tied" to the Chinook Facebook page which, it alleges, "were private, confidential, and not available to the public." (*Id.* ¶¶ 45-46) The Officers are entitled to qualified immunity on Chinook's Fourth Amendment claim because the Facebook Warrant was valid and because it was objectively reasonable for the Officers to rely on the judge's issuance of the Facebook Warrant.

### 1.    Search Warrant Validity

A search warrant is valid if it meets three requirements: it must (1) have been "issued by a neutral, disinterested" judicial officer; (2) be based on " 'probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense' "; and (3) "particularly describe the things to be seized, as well as the place to be searched." *Eckert v. Dougherty*, 658 F. App'x 401, 406 (10th Cir. 2016).

**Supp.App.088**

As to the first requirement, the Facebook Warrant was issued by El Paso County, Colorado, Judge Dennis McGuire. (*See* Doc. 51-1, Facebook Warrant)[1] Chinook does not allege that Judge McGuire was not a neutral and disinterested judge. Thus, the first requirement is satisfied.

As to the second requirement, Chinook alleges that the "affidavit in support of the warrant was wholly lacking in probable cause" because it "identified no particular crime or … person under investigation," and it "did not specify what was 'illegal'" about the housing march. (Doc. 12 ¶¶ 50, 52 174) The Tenth Circuit described the legal standard for evaluating a search warrant as follows:

> Where a warrant is obtained, a reviewing court determines the sufficiency of the warrant by examining the affidavit supporting it. The court determines the sufficiency of the affidavit "by looking at the totality of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding that probable cause existed." Probable cause exists when "there is a fair probability that the contraband or evidence of a crime will be found in a particular place." The "affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched." Instead, the magistrate judge may draw reasonable inferences from the information in the affidavit supporting the warrant.

*United States v. Shelton*, 817 F. App'x 629, 633–34 (10th Cir. 2020) (internal citations omitted).

In this case, Officer Steckler's affidavit demonstrated probable cause to believe that the Messenger chats on Chinook's Facebook page between July 27 and August 2, 2021 would contain evidence in the apprehension and/or subsequent criminal prosecutions arising out of the July 31, 2021 housing march. First, Chinook organized the July 31, 2021 housing march through its

---

[1] Although Chinook did not attach the Facebook Warrant to the Amended Complaint, it is central to its claims and, therefore, may be considered by the Court without converting this Motion to a motion for summary judgment. *See Walker v. Park Cnty. Sheriff's Off.*, No. 21-1119, 2022 WL 538121, at *4 n.6 (10th Cir. Feb. 23, 2022); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Facebook page. (Doc. 12, ¶ 48; Doc. 51-1, Facebook Warrant at 4 (a Facebook profile under the
name of the Chinook Center was located in which the July 31, 2021 "March for Housing" was
organized under the events tab)) Moreover, although warrants "do not have to identify specific
statutes for the crimes to which they are limited," the search warrant affidavit identified
"Obstructing Passage or Assembly" as a crime for which the evidence was sought. *United States
v. Palms*, 21 F.4th 689, 698-99 (10th Cir. 2021). (Doc. 51-1 at 3) Contrary to Chinook's allegations
(Doc. 12, ¶ 52), the affidavit also provided the factual basis for deeming the housing march illegal
and for charging participants in it with obstructing passage:

> On 07/31/21 … [a]t approximately 1137 hours, … a group of
> approximately 60 protestors [were] illegally marching northbound
> up South Tejon Street, blocking vehicle traffic in the process….
> Lieutenant Chacon gave numerous verbal warnings to the group to
> inform them it was illegal to march in the roadway and they needed
> to immediately exit the roadway to the sidewalk or face arrest. The
> announcements were made with a bullhorn megaphone and could be
> heard clearly. The protestors continued to block both northbound
> and southbound lanes of South Nevada Avenue….

(Doc. 51-1, Facebook Warrant at 3) Third, Officer Steckler testified to his experience that "people
involved in illegal demonstrations use social media to organize planned events." (*Id.* at 4) Chinook
takes issue with Officer Stecker's "training or experience" (Doc. 12 ¶ 105), but the Tenth Circuit
recognizes such training and experience as valid bases for upholding search warrants for such
computer data. *See United States v. Burgess*, 576 F.3d 1078, 1091–92 (10th Cir. 2009) (search
warrant affidavit which stated that "Based upon training and experience," the affiant "knows that
persons involved in trafficking or the use of narcotics often keep photographs of coconspirators or
photographs of illegal narcotics in their vehicle" was not overbroad and demonstrated probable
cause to search computers and hard drives). From these facts, the Officers—and the judge—
reasonably could believe that evidence of participants' intent to commit and commission of the

**Supp.App.090**

crime of obstructing passage existed in Chinook's Facebook Messenger chats. (*See* Colo. Rev. Stat. 18-9-107(1)(b); Doc. 51-2, Colorado Springs City Code § 9.2.104) The judge's finding that probable cause did exist is entitled to "great deference." *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009).

In fact, criminal prosecutions of individuals who disobeyed the repeated orders to move out of the street and onto the sidewalk ensued. (*See* Docs. 51-3 (S. Walls), 51-4 (J. Christiansen))[2] The Facebook Messenger chats also were sought to aid in the apprehension of other participants in the illegal march (of approximately 60 persons). *Eckert*, 658 F. App'x at 406 (a warrant may lawfully seek information that will aid in a particular apprehension). Had participants posted to the Chinook Facebook Messenger chats about their intent to commit or their commission of such obstruction crimes, then such evidence would be probative of their guilt in their criminal prosecutions.

The criminal investigation into the January 6, 2021 riot at the Capitol Building in Washington, D.C. demonstrates the evidentiary value of Facebook Messenger chats. The criminal complaint in *United States v. Kelly*, No. 1:21-mj-00128 (D. D.C.) (submitted as Doc. 51-5) details Facebook Messenger chats from the days before, the day of, and the days immediately after the riot that were obtained pursuant to a warrant. (Doc. 51-5 ¶¶ 14, 19-25) They evidenced the criminal defendant's intention to go to Washington, D.C. on January 6, 2021, to "disrupt, prevent and otherwise interfere with [the] Joint Session of Congress," and that he did so. (*Id.*) The Facebook

---

[2] The court may take judicial notice of the exhibits without converting this into a motion for summary judgment because they are court records from related cases. *See Hutchinson v. Hagn*, 402 Fed. App'x 391, 394-95 (10th Cir. 2010) ("[A] court may take judicial notice of its own records as well as those of other courts, particularly in closely-related cases.") (unpublished).

Supp.App.091

Messenger chats sought by warrant in this case could have accomplished the same in the prosecutions of the march leaders and participants.

Finally, as to the third requirement, the search warrant and incorporated Affidavit were sufficiently particular. A warrant that " 'enables the searcher to reasonably ascertain and identify the things authorized to be seized' " satisfies the particularity requirement. *United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014) (citation omitted). Furthermore, " 'a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit.' " *Id.* (citation omitted). Search warrants for electronic devices must "affirmatively limit the search to evidence of specific ... crimes or specific types of material." *Palms*, 21 F.4th at 698-99; *see also United States v. Allen*, No. 16-10141-01-EFM, 2018 WL 1726349, at \*6 n. 25 (D. Kan. Apr. 10, 2018) (denying a motion to suppress for lack of particularity in a warrant seeking broad categories of Facebook account information because "it did not authorize on its face a search for every record associated with the Facebook accounts."); *United States v. Liburd*, No. 17-CR-296 (PKC), 2018 WL 2709199 at \*2 (E.D.N.Y. June 5, 2018) (Facebook search warrant was not overbroad because it was " 'limited by reference to an exemplary list of items to be seized' ... related to the existence of ... [the] robbery conspiracy" (citation omitted)); *United States v. Lowry*, No. 1:15–cr–043, 2015 WL 4399627 at \*3 (S.D. Ohio July 17, 2015) (Search warrant for "all communications between any user or recipient and the substance of those communications" was not overbroad where criminal defendant used Facebook Messenger to exchange nude photographs with minors.).

Here, the search warrant was sufficiently particular because it limited the search of Chinook's Facebook page to a specific type of material—"Facebook Messenger chats." (Doc. 51-1 at 5) Moreover, it limited the search to the one-week period surrounding the July 31, 2021 march,

Supp.App.092

when evidence of the leaders' and participants' intent and commission of the obstruction crimes most likely was to be found. (*Id.*; Doc. 12 ¶ 54) Chinook complains that the warrant "failed to limit sufficiently the scope of the search; and … failed to limit the search to evidence of a specific crime." (Doc. 12 ¶ 175) But it could not limit the search to particular individuals' chats, because not all of the approximately 60 participants in the illegal march who might have confessed their intention to obstruct or their commission of obstruction had been identified. And the warrant effectively limited the search to chats concerning the illegal march by limiting it to the few days before and the few days after the march. The warrant was "as specific as the circumstances and the nature of the activity under investigation permit[ted]" and, thus, was valid. *Pulliam*, 748 F.3d at 972.

Contrary to Plaintiffs' allegation in the Amended Complaint, the Constitution does not protect organizations (like Chinook) that initiate demonstrations in which the protesters engage in criminal conduct from the search of their records for evidence of instigation or commission of crime. (Doc. 12 ¶ 142) *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), on which Plaintiffs rely, says nothing about the protection of organizers of First Amendment activities from search warrants such as the Facebook Warrant.

Because the allegations of the Amended Complaint fail to establish a violation of the Fourth Amendment, the Officers are entitled to qualified immunity on Chinook's Fourth Amendment claim.

### 2.   Objective Reasonableness and No Clearly Established Law

The Officers also are entitled to qualified immunity on Chinook's Fourth Amendment claim against them because Chinook fails to allege that the Officers' reliance on the warrant was objectively unreasonable. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). As explained

**Supp.App.093**

by the Supreme Court, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Id.* Few exceptions to this rule exist, and the "threshold" for establishing them "is a high one, and it should be. [That is because] '[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination' because '[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.'" *Id.* at 547. *See also United States v. Augustine*, 742 F.3d 1258, 1262 (10th Cir. 2014) (listing the exceptions to the presumption of objective reasonableness of an officer's reliance on a court-issued search warrant). Here, Chinook has not alleged that any of the exceptions to the rule exist. (Doc. 12, ¶¶ 45-55) Thus, the Officers are entitled to qualified immunity on Chinook's claim under 42 U.S.C. § 1983 that they violated Chinook's Fourth Amendment rights.

In addition, Chinook will be unable to meet its burden to show that her <u>clearly established</u> Fourth Amendment rights were violated under these circumstances. *See, e.g., United States v. Palms*, 21 F.4th 689, 699–700 (10th Cir. 2021); *United States v. Sadlowski*, 948 F.3d 1200, 1204–05 (10th Cir. 2020); *United States v. Pulliam*, 748 F.3d 967, 971–72 (10th Cir. 2014); *United States v. Christie*, 717 F.3d 1156, 1165–66 (10th Cir. 2013); *United States v. Christie*, 717 F.3d 1156, 1165–66 (10th Cir. 2013).

## B.   First Amendment Retaliation

### 1.   No constitutional violation

Chinook alleges that the "search and seizure of [its] private Facebook messages was … retaliatory," in violation of the First Amendment. (Doc. 12 ¶ 173, ) To state a First Amendment retaliation claim, Chinook must allege: (1) that it "was engaged in constitutionally protected

**Supp.App.094**

activity"; (2) defendants' "actions caused [it] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). In addition, "a plaintiff claiming that a search warrant was executed in retaliation for a protected activity is required to show a lack of probable cause as an element of that claim." *Chavez v. City of Albuquerque*, No. 13cv00557 WJ/SMV, 2014 WL 12796875, at *3 (D.N.M. Apr. 14, 2014), *citing Hartman v. Moore*, 547 U.S. 265-66 (2006).

Here, Chinook wholly fails to allege <u>facts</u> that, if true, plausibly show that Chinook's exercise of constitutionally protected conduct substantially motivated Officer Steckler to draft and Sgt. Otero to review and approve the search warrant affidavit for Chinook's Facebook Messenger chats. For starters, the warrant itself shows that it was not even Officer Steckler's or Sgt. Otero's idea to seek the warrant. Officer Steckler averred that on August 2, 2021, he was assigned to "research a tip regarding a Facebook post that was posted after arrest[s] were made for Obstructing Passage or Assembly, and Resisting, Interference with a Public Official … on 07/31/21." (Doc. 51-1 at 3) Sgt. Otero merely reviewed and approved Ofc. Steckler's search warrant affidavit. (Doc. 12 ¶ 55) Furthermore, as discussed herein, the Officers sought the search warrant to investigate Chinook's organization of an illegal protest that already had occurred—one where Chinook's leaders and participants obstructed city streets and then resisted arrest. By the time the Officers sought the search warrant, some of the criminal prosecutions for which the evidence was sought already had been instituted. (Doc. 12 ¶ 45; Docs. 51-3 at 9 (Walls), 51-4 at 7 (Christiansen) (summonses issued July 31, 2021); Doc. 51-1 (warrant sought Aug. 3, 2021)) The search warrants weren't sought to retaliate against Chinook but rather to collect evidence probative of the

Supp.App.095

obstruction and resistance charges already pending and possible obstruction charges to come. (Doc. 51-1 at 3-4) Chinook fails to allege any facts to support the notion that Chinook's protected speech activities substantially motivated the Officers to seek the warrant and, thus, fails to state a claim for a violation of Chinook's First Amendment rights.

### 2.  No clearly established law

The Officers also are entitled to qualified immunity on Chinook's First Amendment retaliation claim because it was not clearly established in August 2021 that Chinook had a protected right against the search and seizure of Facebook Messenger chats surrounding the date of an illegal march that it organized through its Facebook page. Scant caselaw exists concerning search warrants for Facebook pages. *See Allen*, 2018 WL 1726349, at *6 n.25; *Liburd*, 2018 WL 2709199 at *2; *Lowry*, 2015 WL 4399627 at *3. There does not appear to be any from the Supreme Court, Tenth Circuit, or the consensus of other Circuit Courts. Chinook will be unable to meet its burden to show that its <u>clearly established</u> First Amendment rights were violated under these circumstances.

## II.   Stored Communications Act

In Claim 3 of the Amended Complaint, Chinook asserts that the Officers violated provisions of the Stored Communications Act, 18 U.S.C. 2701 *et seq.* ("SCA"). (Doc. 12 at 45-46) The SCA "bars unauthorized access to stored electronic communications." *Davis v. Gracey*, 111 F.3d 1472, 1482 (10th Cir. 1997). The government may compel a provider of electronic communication services (such as Facebook) to disclose the contents of communications that it possesses and stores with "a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures …) by a court of competent jurisdiction." 18 U.S.C. § 2703(a), (b)(1)(A). "The SCA does not require

**Supp.App.096**

perfection from the officials who implement it." *John K. Maciver Inst. for Pub. Policy, Inc. v. Schmitz*, 885 F.3d 1004, 1010 (7th Cir. 2018). "Instead, it provides that 'good faith reliance on a court warrant or order … is a complete defense to any civil or criminal action brought under this chapter or any other law.'" *Id.*, quoting 18 U.S.C. § 2707(e)(1). Furthermore, "qualified immunity is available to SCA defendants." *Id.* at 1015. Where the search warrant is valid or the officers' reliance on it is "objectively reasonable," the officers are entitled to dismissal of an SCA claim asserted against them. *Davis*, 111 F.3d at 1484 (where a valid warrant authorized seizure of computer equipment, officers were entitled to "the statutory good faith defense as a matter of law"); *John K. Maciver Inst.*, 885 F.3d at 1014 (officers were entitled to "the good-faith defense [to plaintiff's SCA claim] at the motion-to-dismiss stage" where they had "sought warrants from state circuit judges" for plaintiff's electronic records when investigating suspected illegal campaign coordination). Furthermore, to be liable under the SCA, "a person must know he or she is accessing … subscriber records or stored communications … without an appropriate form of legal process." § 9:26. Knowing or intentional state of mind required under Stored Communications Act, 1 Data Sec. & Privacy Law § 9:26 (2023-2024), citing *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 797-98 (6th Cir. 2015) (finding that the plain language and legislative history of the SCA supported the interpretation that a "knowing or intentional state of mind" was required for liability under the SCA).

Here, Chinook fails to state a SCA claim against the Officers because it concedes that the Officers obtained a warrant for the Facebook Messenger chats pursuant to Colorado state court warrant procedures. (Doc. 12 ¶¶ 55-56) Thus, Chinook fails to allege a violation of the SCA. *See* 18 U.S.C. § 2703(a), (b)(1)(A) (the government can require the disclosure of the contents of an electronic communication with a warrant).

Next, as discussed above, even if the warrant was invalid, the Officers "proceed[ed] in good faith" and "behaved in an objectively reasonable manner." *John K. Maciver Inst.*, 885 F.3d at 1014. *See also Davis*, 111 F.3d at 1484. Thus, they are entitled to the statutory good faith defense to Chinook's SCA claim.

Finally, Chinook fails to allege—with facts and not mere conclusions—that the Officers knew or intended to access Chinook's Facebook Messenger chats without a valid warrant. Chinook alleges only that the Officers "acted with a knowing and intentional state of mind," which is insufficient. (Doc. 12 ¶ 193)  Chinook's SCA claim against the Officers should be dismissed.

## III.    Colorado Constitution Claims

In claim 5 of the Amended Complaint, Chinook asserts unlawful search and protected speech violation claims against the Officers under the Colorado Constitution. For the same reasons that Chinook fails to state federal constitutional violation claims, it fails to allege the violation of its rights under the Colorado Constitution. (*See supra* Parts I.A.1 and I.B.1)

## <u>Conclusion</u>

All of Plaintiffs' claims against Officers Stekler and Otero should be dismissed with prejudice.

Respectfully submitted this 20th day of November, 2023.

OFFICE OF THE CITY ATTORNEY OF THE
CITY OF COLORADO SPRINGS, COLORADO
Wynetta P. Massey, City Attorney


*/s/ Anne H. Turner*
Anne H. Turner, Assistant City Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Telephone:  (719) 385-5909
Facsimile:  (719) 385-5535
anne.turner@coloradosprings.gov

Supp.App.098

Attorneys for Defendants City of Colorado Springs,
B.K. Steckler, Jason S. Otero and
Roy A. Ditzler

**<u>CERTIFICATE OF SERVICE (CM/ECF)</u>**

I hereby certify that on the 20th day of November, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

jackie.roeder@dgslaw.com
theresa.benz@dgslaw.com
elise.reecer@dgslaw.com
tmacdonald@aclu-co.org
sneel@aclu-co.org
akurtz@aclu-co.org
msilverstein@aclu-co.org

Attorneys for Plaintiffs

thomas.isler@usdoj.gov

Attorney for Defendants Federal Bureau of
Investigation and Daniel Summey

*/s/Amy McKimmey*
Amy McKimmey
Legal Secretary

**Supp.App.099**

| | |
|---|---|
| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | **RECEIVED** |
| Court Address:    270 South Tejon Street<br>                         Colorado Springs, Colorado 80903 | AUG **0 3** 2021 |
| RE: Search Warrant of | ▲COURT USE ONLY▲<br>CLERK'S OFFICE |
| **Facebook, Inc**<br>**1601 Willow Road, Menlo Park, CA 94025** | Case/File Number: |
| **Target Identifier: https://www.facebook.com/chinookcenter** | 21- 2156 |
| Agency: Colorado Springs Police Department          Agency Number: 21-28345 | Division:**Criminal**     Ctrm: |

## SEARCH WARRANT

Whereas Detective B. K. Steckler, 2771 has made an Application and Affidavit, which is attached and expressly incorporated into this Search Warrant in reference, to the Court for the issuance of a Search Warrant, and; Whereas the application is in proper form and probable cause is found for the issuance of a Search Warrant to search the person(s) and or premises specified in the application.

THEREFORE, the applicant, and any other peace officer into whose hands this Search Warrant shall come, is hereby ordered, with the necessary and proper assistance, to enter and search within the next fourteen (14) days the person(s), property, and/or premise(s), location and any appurtenances thereto, description of which is:

**Facebook, Inc, 1601 Willow Road, Menlo Park, CA 94025, Target Identifier: https://www.facebook.com/chinookcenter**

The following person(s), property or thing(s) will be searched for and, if found, seized:

**See Attachment B which is hereby incorporated in reference**

As probable cause has been found to believe that it:

☐    Is stolen or embezzled, or

☐    Is designed or intended for use in committing a criminal offense, or

☐    Is or has been used as a means of committing a criminal offense, or

☐    Is illegal to possess, or

☐    Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or

☐    Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or

☐    Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or

☐    That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

Furthermore, a copy of this warrant is to be left with the person whose premises or person is searched along with a list of any and all items seized at the time of its execution. If said person cannot be located or identified, a copy of the search Warrant and the list of property seized shall be left at the place from which the property was taken.

Further, a return shall be promptly made to this Court upon the execution of this Search Warrant along with an inventory of any property taken. The property seized shall be held in some safe place until the Court shall further order.                                                          AUG **0 3** 2021

Sworn and subscribed before me this day _____ at _____1700_____ A̶M̶ (PM)

M̶a̶g̶i̶s̶t̶r̶a̶t̶e̶ / Judge: _____

**Supp.App.100**

| | |
|---|---|
| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO<br><br>Court Address:  270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of<br><br>**Facebook, Inc**<br>**1601 Willow Road, Menlo Park, CA 94025**<br><br>**Target Identifier: https://www.facebook.com/chinookcenter** | **▲COURT USE ONLY▲**<br><br>Case/File Number: |
| Agency: Colorado Springs Police Department         Agency Number: 21-28345 | Division:**Criminal**     Ctrm: |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

The undersigned, a peace officer as defined in 16-2.5.101, Colorado Revised Statutes 1973, as amended, being first duly sworn on oath moves the Court to issue a Warrant to search those person(s), property, and/or premises known as:

**Facebook, Inc, 1601 Willow Road, Menlo Park, CA 94025, Target Identifier:**
**https://www.facebook.com/chinookcenter**

The undersigned states that there exists probable cause to believe that the following person, property or thing(s) to be searched for, and if found, seized will be found on the aforementioned person(s) and or premises and are described as follows:

**See Attachment B which is hereby incorporated in reference**

The grounds for the seizure of said person(s), property or thing(s) are that probable cause exists to believe that it:

☐ Is stolen or embezzled, or

☐ Is designed or intended for use as a means of committing a criminal offense, or

☐ Is or has been used as a means of committing a criminal offense, or

☐ Is illegal to possess, or

☒ Would be material evidence in a subsequent criminal prosecution, or required, authorized or permitted by a statute of the State of Colorado, or

☐ Is a person, property or thing the seizure of which is expressly required, authorized or permitted by a statute of the State of Colorado, or

☐ Is kept, stored, transported, sold, dispensed, or possessed in violation of a statute of the State of Colorado under circumstances involving a serious threat to the public safety, or order, or to the public health, or

☐ That would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest order is outstanding.

The facts submitted in support of this application are set for in the accompanying attachment designated as **Attachment A** which is attached hereto and made a part hereof.

Applicant: _B.M.S #2771_____

B. K. Steckler 2771

Employed By:   Colorado Springs Police Department

Position:  Detective

Sworn and subscribed before me this day _____  AUG 03 2021_____.

~~Magistrate~~ / Judge: _____

Appellate Case: 2021SA101   Document: 48-4   Date Filed: 12/02/2024   Page: 5

Date Filed 11/02/2021 Page102 of 3     Suppl. page 2021-0209     Appellate 2021-0209 Consent:

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address: 270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of<br><br>**Facebook, Inc**<br>**1601 Willow Road, Menlo Park, CA 94025**<br><br>**Target Identifier: https://www.facebook.com/chinookcenter** | ▲COURT USE ONLY▲<br><br>Case/File Number: |
| Agency Name: Colorado Springs Police Department   Agency Number: 21-28345 | Division:**Criminal**   Ctrm: |

## ATTACHMENT A

The following affidavit is made in the support of a request for the issuance of a search warrant for: **Facebook, Inc, 1601 Willow Road, Menlo Park, CA 94025, Target Identifier: https://www.facebook.com/chinookcenter**.

Your Affiant, Detective B. K. Steckler, 2771D, who has been employed for the past seventeen years as a sworn police officer for the Colorado Springs Police Department. Your affiant's current assignment is working as an investigator within the Colorado Springs Police Department's Gold Hill Investigations Unit.

On 08/02/21, your affiant was contacted by Lieutenant M. Chacon, 2300, who asked if your affiant would research a tip regarding a Facebook post that was posted after arrest were made for Obstructing Passage or Assembly, and Resisting, Interference with a Public Official on South Tejon Street just south of East Fountain Boulevard on 07/31/21 at approximately 1137 hours. Your affiant is aware South Tejon Street just south of East Fountain Boulevard is located in the City of Colorado Springs, County of El Paso, and State of Colorado.

On 07/31/21 in the morning hours, Colorado Springs Police Officers were working in the Colorado Springs Downtown area for the "COS 150: Downtown Celebration." The event included a parade route through the downtown commercial district of Colorado Springs and included a festival following the parade.

At approximately 1137 hours, officers were summoned by Lieutenant Chacon to the area of South Tejon Street, just south of East Fountain Boulevard in response to a group of approximately 60 protestors illegally marching northbound up South Tejon Street, blocking vehicle traffic in the process. Officers arrived and formed a line in the road to block the path of the protestors. The protestors turned eastbound on East Mill Street in an apparent attempt to move around the police line. Officers repositioned their police line to block the protestors from moving northbound up South Nevada Avenue. The group was led by a black male with a bald head and wearing a red shirt with camouflage shorts. The male was carrying a wooden stick that was approximately four feet in length, that he utilized as a walking stick. Lieutenant Chacon gave numerous verbal warnings to the group to inform them it was illegal to march in the roadway and they needed to immediately exit the roadway to the sidewalk or face arrest. The announcements were made with a bullhorn megaphone and could be heard clearly. The protestors continued to block both northbound and southbound lanes of South Nevada Avenue. The male with the bald head and wearing the red shirt and camouflage shorts extended his middle finger toward the police line. Lieutenant Chacon ordered the arrest of the male who was later identified as Mr. Shaun Eugen Walls DOB ███████ Prior to the arrest of Mr. Walls, the protestors turned back toward South Tejon Street by walking through the Nevada Auto Sales car lot located between South Nevada Avenue and South Tejon Street.

Officers attempted to arrest Mr. Walls in the area of South Tejon Street and East Fountain Boulevard on the east sidewalk. Mr. Walls was actively resisting the officers attempts to control him by remaining on his feet and attempting to pull away from officers. Officers were eventually able to affect the arrest of Mr. Walls.

On 08/02/21, an anonymous tip was received regarding a Facebook post from 07/31/21 under the name of Shaun Walls. The post was from 07/31/21 at 10:39 P.M. and stated, "Now it's fun... it was work before.. I could whoop all them pigs and they felt it too. I laid down so we could keep fighting with purpose. You can watch or

Supervisor Initials / IBM: _signature_

help idgaf.  I'm going to #Fuck12."  The profile for the post was
https://www.facebook.com/profile.php?id=100008489040279.

Your affiant completed a search warrant for the Facebook profile under the name of Shaun Walls and it was presented to the Honorable Judge D. Peacock.  Judge Peacock signed the warrant, and it was served to Facebook, Inc on 08/02/21.

On 08/03/21, your affiant became aware of two more Facebook profiles that had bearing on this case.  The first profile was provided by the same anonymous who stated a profile under the name of Nicholas Crutcher had a Facebook account that had pictures and videos from the protest and included some photographs of Mr. Walls being taken into custody by Colorado Springs Police officers.  The profile was https://facebook.com/sir.n.crutcher.

On 08/03/21 at approximately 1015 hours, Detective J. Granillo, 3876, contacted me and stated a second profile was under the name of the Chinook Center was located in which the protest was organized under the events tab.  The profile for the Chinook Center was https:www.facebook.com/chinookcenter.  I went to the site and was able to see details regarding a "March for Housing" set for 07/31/21 and stating the rally point was Dorchester Park, located at 1130 South Nevada Avenue.

Your affiant believes the information gained from the two Facebook profiles will be material evidence in this case.  It is your affiant's experience people involved in illegal demonstrations use social media to organize planned events.  It is your affiant's belief the demonstration was organized prior to 07/31/21.

Your Affiant has checked and verified that the service for the target identified as https://www.facebook.com/chinookcenter is provided by Facebook, Inc .  Your Affiant has received training in conducting investigations involving social networking and cellular communications service providers such as Facebook, Inc. Your Affiant has personal knowledge that Facebook, Inc will accept service of Search Warrants issued from other states and will comply with orders of the Court to provide records as requested pursuant to provisions of the United States Electronics Communications Privacy Act, 18 U.S.C. § 2703.

Your affiant would respectfully request that pursuant to the Stored Communications Act, Title 18 USC 2703(c), specific and articulable facts have been shown to reasonably believe the target https://www.facebook.com/chinookcenter, service provider, Facebook, Inc, for which records are being sought is of relevant interest in the offense shown.Therefore, based on the above described facts and circumstances, Your Affiant respectfully moves the Court for issuance of a search warrant for search of those person(s), property and/or premises known as: **Facebook, Inc, 1601 Willow Road, Menlo Park, CA 94025, Target Identifier: https://www.facebook.com/chinookcenter**.

Applicant:  _____

B. K. Steckler 2771

Employed By:   Colorado Springs Police Department

Position:   Detective

This affidavit was sworn and subscribed before me this day _____ AUG 03 2021 _____.

Magistrate / Judge:  _____

Appellate Case: 24-1206   Document: 48-4   Date Filed: 12/02/2024   Page: 103

| (DISTRICT) (COUNTY) COURT, EL PASO COUNTY COLORADO | |
|---|---|
| Court Address: 270 South Tejon Street<br>Colorado Springs, Colorado 80903 | |
| RE: Search Warrant of | ▲COURT USE ONLY▲ |
| **Facebook, Inc**<br>**1601 Willow Road, Menlo Park, CA 94025** | Case/File Number: |
| **Target Identifier: https://www.facebook.com/chinookcenter** | |
| Agency Name: Colorado Springs Police Department   Agency Number: 21-28345 | Division:**Criminal**   Ctrm: |

## ATTACHMENT B

The following person(s), property and/or premise(s) will be searched for and, if found, seized:

All subscriber information tied to Facebook profile: https:www.facebook.com/chinookcenter to include names, phone numbers, and addresses.

All Facebook posts for profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.

All Facebook Messenger chats tied to Facebook profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.

All Facebook Events for profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.

Pursuant to 18 U.S.C. § 2705(b) this Court Orders that:   Facebook, Inc

The target user account(s) identified above; subscriber: ☐ MAY be notified

☒ MAY NOT be notified

Magistrate / Judge:

NO OTHER ITEMS ARE SOUGHT FOR SEIZURE

Supervisor Initials / IBM: _____

Date Filed: 12/02/2024   Page: 104   Document: 48-1   Appellate Case: 24-1201

11/16/23, 9:32 AM
export.amlegal.com/api/export-requests/28f85e21-1a74-4c03-92a4-3d8de795f207/download/

## 9.2.104: OBSTRUCTING PASSAGE OR ASSEMBLY:

A.   It shall be unlawful for any person to intentionally obstruct any street, sidewalk, parking lane or median so as to interfere with another's immediate, free and uninterrupted use and passage.

B.   It shall be unlawful for any person to intentionally obstruct any entry, doorway or other area of ingress or egress to any public or private premises so as to interfere with the immediate, free and uninterrupted use of property facing or fronting on any public street, sidewalk or any other public place whether the obstruction arises from the person's acts alone or from those acts and the acts of others.

C.   It shall be unlawful for any person to lie down or sleep upon any street, sidewalk, parking lane, median or in any entry, doorway or other area of ingress or egress to any public or private premises, whether on the ground or upon benches, stools, chairs or other seats or surfaces, within the downtown area, so as to interfere with the immediate, free and uninterrupted use of any public street, public sidewalk, entryway or area of ingress or egress to public or private property or any other public place.

1.   This prohibition shall not apply to any person lying down due to a medical emergency.

2.   It shall be a defense that the person was on private property and was authorized, licensed, invited or otherwise privileged to do so. The existence of a letter filed with the Colorado Springs Police Department by the private property owner or lawful possessor authorizing the Police Department to enforce violations of City Code on the owner's or possessor's property shall constitute prima facie evidence that the person was acting without authorization, license, invitation or other privilege.

3.   "Downtown area" shall be defined as the area bordering on or included within the area bordered on the north by St. Vrain Street, on the south by Rio Grande, on the east by Wahsatch and on the west by Interstate Highway 25.

D.   It is unlawful for any person, by the person's conduct in, on or near the premises, property or facilities of the City; or any public place, any public or private institutions, offices or buildings or any school, congregation or assembly meeting for religious worship; or any other lawful meeting or assembly to intentionally, knowingly or recklessly:

1.   Obstruct an elevator, aisle, stairway or hallway to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles or conveyances, whether the obstruction arises from the person's acts alone or from these acts and the acts of others; or

2.   Disobey a reasonable request or order to move issued by a person known to be a peace officer, a firefighter, or a person with authority to control the use of the premises, to prevent obstruction of a highway, passageway or of the premises or facilities, or to maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot or other hazard.

3.   Substantially to disrupt, obstruct or interfere with any lawful meeting, procession or gathering in or on the premises by intentional physical action, verbal utterance or any

Date Filed: 12/02/2024   Page: 105   Document 48-1   Appellate Case: 24-1201

11/16/23, 9:32 AM
export.amlegal.com/api/export-requests/28f85e21-1a74-4c03-92a4-3d8de795f207/download/

other means.

    4.  Deny any public servant, official, employee, invitee or student:

    a.  Lawful freedom of movement on the premises;

    b.  Lawful use of the property, premises or facilities;

    c.  The right of lawful ingress and egress to the property.

    5.  Impede any public servant, official, employee, invitee or student in the lawful performance of the person's duties or activities through the use of restraint, coercion, or intimidation or when force and violence are present or threatened.

    6.  Fail or refuse to leave premises, property or facilities or the immediate vicinity upon being reasonably requested to do so by a peace officer, Chief Administrative Officer, or designee, dean of an educational institution, or other individual or public servant with authority to control the use of the premises if the person is committing, threatens to commit, or incites others to commit, any act which would obstruct, disrupt, restrict or impede the lawful missions, processes, procedures or functions in or on the premises, property or facilities.

    E.  For the purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous. Evidence that a pedestrian or vehicle has to alter substantially the direction of travel in order to accommodate a person located in the pedestrian's or vehicle's way shall be prima facie evidence of obstruction.

    F.  Nothing in this section shall be construed to prevent lawful assembly and peaceful and orderly petition for the redress of grievances or acting in accord with a license or permit. (Ord. 4517; 1968 Code §8-12; Ord. 01-42; Ord. 02-214)

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 106

Date Filed: 12/02/2024   Page: 107

Document: 48-1

Appellate Case: 24-1201

I, Sarah B. Johnson, City Clerk of the City of Colorado Springs, Colorado, do hereby certify that the attached is a true and complete copy of Section 9.2.104 of the Colorado Springs City Code, the original of which is held on record in the Office of the City Clerk of Colorado Springs, Colorado.

Dated in Colorado Springs, Colorado, November 16, 2023.

Sarah B. Johnson, City Clerk

**Colorado Springs Municipal Court**

**WALLS, SHAUN EUGENE**                                                    **DOB:** ▮▮▮▮▮▮

**Case Number:** 21M22263                 **Sealed:** YES        **Prosecution Case Created:** YES
                                                                                        **Probation Case Created:** YES

| Original Charge(s) | Finding | Finding Date |
|---|---|---|
| Summons Number: **3144661** | | |
| 9.3.101A - Resist, Assaulting an Officer Prohibited | Dismissed | 06/23/2023 |
| 9.1.107 - Conspiracy | Dismissed | 09/07/2022 |
|    Amended: 9.2.104 - Obstructing Passage and Assembly | | |
| 9.2.104 - Obstructing Passage and Assembly | Dismissed | 09/07/2022 |

**Issuing Officer:** Anthony  Spicuglia

### COURT CASE FACE SHEET

| Date | ROA Action Text |
|---|---|
| Aug 12, 2021 | Case scheduled for Arraignment on Aug 24, 2021 1:30:00 PM for Division 2 |
| Aug 12, 2021 | Court Case Created, Case Number 21M22263 |
| Aug 20, 2021 | Court File Created |
| Aug 24, 2021 | 9.2.104 Obstructing Passage and Assembly |
| | Additional - Defendant requests continuance to retain his own attorney. Please set this case out 30 days. |
| | 9.3.101A Resist, Assaulting an Officer Prohibited |
| | 9.1.107 Conspiracy |
| | Additional - Regarding count 3, The City intends to pursue this charge under the theory of Complicity, cited in City Code Section 9.1.109. |
| | Case Related Disposition: |
| | Continuance - Schedule For: Arraignment,  Continued By: Defendant |
| | Mtn/Pet - Motions/Petitions: Amend Summons and Complaint/Pending [ CA MTN: Amend count 3 to 9.2.104 Obstructing Passage or Assembly. Description: Defendant intentionally obstructed a street, sidewalk, parking lane or median so as to interfere with another's immediate,  free and uninterrupted use and passage. - Pending ] |
| | Queue: SchSitting Judge: Gresham, Spencer A (8/24/21, PM, Div: 2)Recording Device: 20210824_124015 |
| Aug 24, 2021 | Case Scheduled for Arraignment on Sep 30, 2021 1:30:00 PM for Division 2 |
| Sep 10, 2021 | Retained Attorney: BARKER, JEFFREY J |
| Sep 10, 2021 | Entry of Appearance |
| Sep 10, 2021 | Removed Arraignment Scheduled for Sep 30, 2021 1:30:00 PM, Division 2, Reason: Replacement |
| Sep 10, 2021 | Case Scheduled for Pre-Trial on Oct 7, 2021 2:30:00 PM for Division 3 |
| Sep 15, 2021 | Peoples' Motion to Redact Body Worn Camera Video to be Released in Discovery |
| Sep 15, 2021 | Case Scheduled for Motion on Oct 7, 2021 9:00:00 AM for Division 3 |
| Sep 15, 2021 | Motion/Petition filed on Sep 15, 2021. Motion/Petition Type: Miscellaneous, Motion/Petition Part: Peoples' Motion to Redact Body Worn Camera Video to be Released in Discovery . |
| Sep 29, 2021 | Removed Motion Scheduled for Oct 7, 2021 9:00:00 AM, Division 3, Reason: Replacement |
| Sep 29, 2021 | Case Scheduled for Motion on Oct 7, 2021 2:30:00 PM for Division |

Municipal Court
City of Colorado Springs, CO
Certified to be a full, true and correct copy of the
original in my custody.

Wendi Lichtenegger
Clerk of Court

By: _(signature)_

Deputy Clerk

## Colorado Springs Municipal Court

**WALLS, SHAUN EUGENE**                                          DOB: ▓▓▓▓▓▓▓▓

Oct 07, 2021   9.2.104 Obstructing Passage and Assembly
               Additional - Defendant is not present with atty. Set on 11/10/21 PM5.
               9.3.101A Resist, Assaulting an Officer Prohibited
               9.1.107 Conspiracy
               Case Related Disposition:
               Continuance - Schedule For: Motion
               Atty/Int - Atty present
               Mtn/Pet - Motions/Petitions: Amend Summons and Complaint/Pending [ CA MTN:
               Amend count 3 to 9.2.104 Obstructing Passage or Assembly. Description:
               Defendant intentionally obstructed a street, sidewalk, parking lane or median
               so as to interfere with another's immediate, free and uninterrupted use and
               passage. - Pending ] & Miscellaneous/Pending [ Peoples' Motion to Redact Body
               Worn Camera Video to be Released in Discovery - Pending ]
               Queue: SchSitting Judge: HOFFECKER, KRISTEN L (10/7/21, PM, Div: 3)Recording
               Device: 20211007_125602

Oct 07, 2021   Case Scheduled for Motion on Nov 10, 2021 1:30:00 PM for Division 5

## Colorado Springs Municipal Court

**WALLS, SHAUN EUGENE**                                                      DOB: ██████████

Nov 10, 2021    9.2.104 Obstructing Passage and Assembly
                Additional -
                9.3.101A Resist, Assaulting an Officer Prohibited
                9.1.107 ConspiracyCase Related Disposition:
                Continuance - Schedule For: Motion
                Atty/Int - Atty present
                Mtn/Pet - Motions/Petitions: Amend Summons and Complaint/Granted [ CA MTN:
                Amend count 3 to 9.2.104 Obstructing Passage or Assembly. Desc: Def
                intentionally obstructed a street, sidewalk, parking lane or median so as to
                interfere with another's immediate, free and uninterrupted use and passage. -
                Granted ] & Miscellaneous/Denied [ CA MTN to Redact BWC to be Released in Disc.
                - Denied ] & Discovery/Granted in Part/Denied in Part [ Defs MTN's - Granted in
                Part/Denied in Part ] & Discovery/Granted [ Defs MTN to receive the City's
                witness list as well as their addresses except for LEO's to be provided within
                21 days of trial. - Granted ] & Discovery/Denied [ Defs MTN to have criminal
                records provided on the City's lay witnesses. - Denied ] & Discovery/Pending [
                Defs MTN to have internal affairs records of any officer the City intends to
                call. - Pending ] & Discovery/Denied [ Defs MTN to have the order in which the
                City plans to call their witnesses. - Denied ] & Discovery/Granted [ Defs MTN
                to have all original notes of all LEO's and experts made in connection with
                this case, whether or not those are designated "police,arrest,crime, or offense
                reports." The City is to provide a "Do not destroy" letter to LEO's involved.
                - Granted ] & Discovery/Denied [ Defs MTN to have all original notes of any
                State agency, made in connection with this case, which is not work product,
                including but not limited to notes which substantially relate to any witness
                statement. - Denied ] & Discovery/Granted [ Defs MTN to have all radio
                dispatch tapes of law enforcement made in connection with this case. - Granted
                ] & Discovery/Granted [ Defs MTN to have all oral, recorded and written
                statements of the Defendants. Oral statements of the Defendant are requested to
                be provided verbatim, including but not limited to any recorded messages. -
                Granted ] & Discovery/Withdrawn [ Defs MTN to have the substance of all oral
                statements made to the State agent by endorsed witness or any anticipated
                rebuttal witness and their records other than Police Witnesses in preparation
                during and after the protest in litigation. - Withdrawn ] & Discovery/Withdrawn
                [ Defs MTN to have all oral conversations, verbatim, between all State
                witnesses, which relate to this case, to the Defendant. - Withdrawn ] &
                Discovery/Withdrawn [ Defs MTN to have the names and addresses of all persons
                acting on behalf of the State as witness liaisons, secretaries, or otherwise
                who have had contact with any witnesses in this case and the substance of any
                conversations or other communications about this case between the witnesses and
                the liaisons, specifically the victim impact statements. - Withdrawn ] &
                Discovery/Not Addressed [ Defs MTN to have any undercover officer or agent of
                CSPD that was embedded in the protest. - Not Addressed ] & Discovery/Not
                Addressed [ Defs MTN to have all information concerning a special
                investigations unit working with the police involving any of the protesters. -
                Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any correspondence
                or "training" the City Prosecutors and CSPD have had concerning BLM protests or
                affiliated left wing groups involved in protests. - Not Addressed ] &
                Discovery/Not Addressed [ Def MTN to have any material or info which tends to
                negate the guilt of the accused or tends to reduce the punishment without any
                judgment by the State as to its credibility, admissibility or ultimate value
                since the value of possible exculpatory info can only be assessed by the def. -
                Not Addressed ]
                Sitting Judge: RAMIREZ, MATTHEW D (11/10/21, PM, Div: 5)Recording Device:
                20211110_124338

Supp.App.110

**Colorado Springs Municipal Court**

**WALLS, SHAUN EUGENE**                                                    DOB: ▓▓▓▓▓▓▓▓

| | |
|---|---|
| Nov 10, 2021 | The Defs objects to the City's Motion to redact BWC and the City's Motion to amend count 3. Judge orders all Defs MTNs heard on the Shulkin case be included in codefendants cases. Set on 11/17/21 PM1 on Ramirez' docket. Set w/ Christiansen, Shulkin, and Archuleta. |
| Nov 12, 2021 | Case Scheduled for Motion on Nov 17, 2021 1:30:00 PM for Division 1 |
| Nov 15, 2021 | Notice of Submission of Disk for Court In Camera Review |
| Nov 17, 2021 | 9.2.104 Obstructing Passage and Assembly |

Additional - CA Withrow is present for the City. Judge orders that a portion of the BWC will enter in as evidence in this matter. Anything before 1:24:25 will be redacted. Anything after 1:24:25 will enter. The City is to provide this portion of the BWC to the defendant and their counsel by 11/24/2021. The City does not object and will notify the court if that deadline cannot be met. The City moves to have the BWC placed in the court file sealed for appellate purposes. Set PTC after 11/24/21.

9.3.101A Resist, Assaulting an Officer Prohibited

9.1.107 ConspiracyCase Related Disposition:

Continuance - Schedule For: Pre-Trial

Atty/Int - Atty present

Mtn/Pet - Motions/Petitions: Discovery/Pending [ Defs MTN to have internal affairs records of any officer the City intends to call. - Pending ] & Discovery/Not Addressed [ Defs MTN to have any undercover officer or agent of CSPD that was embedded in the protest. - Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have all information concerning a special investigations unit working with the police involving any of the protesters. - Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any correspondence or "training" the City Prosecutors and CSPD have had concerning BLM protests or affiliated left wing groups involved in protests. - Not Addressed ] & Discovery/Not Addressed [ Def MTN to have any material or info which tends to negate the guilt of the accused or tends to reduce the punishment without any judgment by the State as to its credibility, admissibility or ultimate value since the value of possible exculpatory info can only be assessed by the def. - Not Addressed ]

Sitting Judge: RAMIREZ, MATTHEW D (11/17/21, PM, Div: 1)Recording Device: 20211117_125513

| | |
|---|---|
| Nov 17, 2021 | Case Scheduled for Pre-Trial on Dec 13, 2021 2:30:00 PM for Division 3 |
| Dec 13, 2021 | 9.2.104 Obstructing Passage and Assembly |

9.3.101A Resist, Assaulting an Officer Prohibited

9.1.107 Conspiracy

Case Related Disposition:

Atty/Int - Atty not present

Warr - BW Amount: $250.00,  BW Type: FTA,  SOX Granted To: 12/16/21 8:00 AM Queue: WarrSitting Judge: Gresham, Spencer A (12/13/21, PM, Div: 3)Recording Device: 20211213_124809

| | |
|---|---|
| Dec 13, 2021 | Case Scheduled for Pre-Trial on Feb 3, 2022 1:30:00 PM for Division 3 |

Page: 111 · Date Filed: 12/02/2024 · Document: 48-1 · Appellate Case: 24-1201

Supp.App.111

## Colorado Springs Municipal Court

<u>WALLS, SHAUN EUGENE</u>                                                    DOB: ███████████

| | |
|---|---|
| Feb 03, 2022 | 9.2.104 Obstructing Passage and AssemblyDispo - Plea: NG |
| | Additional - The defendant does not appear with the attorney. CA Arfmann present and informs the court that there was a motion tendered on August 24, 2021 to reflect count #3 to 9.2.104 but it was not entered in JIS.The atty informed of the $25 jury deposit within 21 days. Attorney Barker states the motion (Defs MTN to have internal affairs records of any officer the City intends to call) is not his motion but rather the co-defendant's motion. |
| | 9.3.101A Resist, Assaulting an Officer ProhibitedDispo - Plea: NG |
| | 9.2.104 Obstructing Passage and AssemblyDispo - Amd Code: 9.2.104, Amd Title: Obstructing Passage and Assembly, Plea: NG |
| | Additional - The defendant does not appear with the attorney. |
| | Case Related Disposition: |
| | Continuance - Schedule For: Trial to Jury, Officer(s): 4925, 3876, Officers Needed , Trial Type: Jury Trial |
| | Mtn/Pet - Motions/Petitions: Discovery/Pending [ Defs MTN to have internal affairs records of any officer the City intends to call. - Pending ] & Discovery/Not Addressed [ Defs MTN to have any undercover officer or agent of CSPD that was embedded in the protest. - Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have all information concerning a special investigations unit working with the police involving any of the protesters. - Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any correspondence or "training" the City Prosecutors and CSPD have had concerning BLM protests or affiliated left wing groups involved in protests. - Not Addressed ] & Discovery/Not Addressed [ Def MTN to have any material or info which tends to negate the guilt of the accused or tends to reduce the punishment without any judgment by the State as to its credibility, admissibility or ultimate value since the value of possible exculpatory info can only be assessed by the def. - Not Addressed ] |
| | Queue: SchSitting Judge: Price, Michele S. (2/3/22, PM, Div: 3)Recording Device: 2022 |
| Feb 03, 2022 | Case Scheduled for Trial to Court on Mar 17, 2022 9:00:00 AM for Division 3 |
| Feb 09, 2022 | Payment:Total Amount Paid: $25.00, Receipt: 220209-05-0024Applied $25.00 to Jury Deposit, Balance: $0.00 |
| Feb 09, 2022 | Jury deposit record created, posted amount $25.00. |
| Feb 09, 2022 | Removed Trial to Court Scheduled for Mar 17, 2022 9:00:00 AM, Division 3, Reason: Replacement |
| Feb 09, 2022 | Case Scheduled for Trial to Jury on Apr 22, 2022 8:15:00 AM for Division 4 |
| Feb 09, 2022 | Removed Trial to Court Scheduled for Mar 17, 2022 9:00:00 AM, Division 3, Reason: Replacement |
| Feb 09, 2022 | Case Scheduled for Jury Orders Hearing on Apr 20, 2022 2:30:00 PM for Division 3 |
| Mar 29, 2022 | Removed Trial to Jury Scheduled for Apr 22, 2022 8:15:00 AM, Division 4, Reason: Replacement |
| Mar 29, 2022 | Case Scheduled for Trial to Jury on Jun 24, 2022 8:30:00 AM for Division 4 -- Speedy Trial Waived. |
| Mar 29, 2022 | Removed Jury Orders Hearing Scheduled for Apr 20, 2022 2:30:00 PM, Division 3, Reason: Replacement |
| Mar 29, 2022 | Case Scheduled for Jury Orders Hearing on Jun 22, 2022 2:30:00 PM for Division 3 -- Speedy Trial Waived. |
| Apr 01, 2022 | Motion for Continuance Received, City Attorney Consents |
| Jun 14, 2022 | Removed Trial to Jury Scheduled for Jun 24, 2022 8:30:00 AM, Division 4, Reason: Replacement |
| Jun 14, 2022 | Case Scheduled for Trial to Jury on Sep 9, 2022 8:15:00 AM for Division 4 |
| Jun 14, 2022 | Removed Jury Orders Hearing Scheduled for Jun 22, 2022 2:30:00 PM, Division 3, Reason: Replacement |

## Colorado Springs Municipal Court

**WALLS, SHAUN EUGENE**                                                    DOB: ██████████

| | |
|---|---|
| Jun 14, 2022 | Case Scheduled for Jury Orders Hearing on Sep 7, 2022 2:30:00 PM for Division 3 |
| Sep 07, 2022 | 9.2.104 Obstructing Passage and AssemblyDispo - Finding: DM |
| | 9.3.101A Resist, Assaulting an Officer ProhibitedDispo - Plea: G,  Finding: DS, SC: 0.0,  ITS: 0.0,  DS Term: 6M,  DS Date: 03/03/23,  CC: $150.00 |
| | Court Orders - Conditions: NCV,  Informal ,  Prob Term: 6M,  Public Service Hrs: 20 |
| | Additional -  The defendant appears with the attorney. |
| | 9.2.104 Obstructing Passage and AssemblyDispo - Finding: DM |
| | Case Related Disposition: |
| | Atty/Int - Atty present |
| | Closing - Jury Deposit: Apply |
| | Queue: Pmts, ProbSitting Judge: BERNS, JASON (9/7/22, PM, Div: 3)Recording Device: 20220907_125304 |
| Sep 07, 2022 | Removed Trial to Jury Scheduled for Sep 9, 2022 8:15:00 AM, Division 4 |
| Sep 07, 2022 | Case scheduled for Deferred Sentence on Mar 3, 2023 9:00:00 AM for Division 1 |
| Sep 07, 2022 | Jury deposit released, amount $25.00. |
| Sep 07, 2022 | Probation Case Created |
| Sep 07, 2022 | Probation Officer changed to Garcia, Ronnie R. |
| Sep 07, 2022 | Disposition Entry:Charge 9.2.104: |
| | Fine/CC:Fine: $0.00 |
| Sep 07, 2022 | Disposition Entry:Volunteer Medical Insurance: Assessed: $5.00; |
| Sep 07, 2022 | Custom order of allocation specified. |
| Sep 07, 2022 | Jury deposit applied, amount $25.00. |
| Sep 07, 2022 | Payment:JD Apply: $25.00, Receipt: 220907-99-0126Applied $5.00 to Volunteer Medical Insurance, Balance: $0.00Applied $20.00 to Court Cost, Balance: $130.00 |
| Sep 07, 2022 | Disposition Entry:Charge 9.3.101A: |
| | Fine/CC:Court Cost: $150.00 |
| Sep 07, 2022 | Disposition Entry:Volunteer Medical Insurance: $5.00 |
| Feb 17, 2023 | Motion to Revoke Deferred Sentence E-Filed |
| Feb 17, 2023 | Motion/Petition filed on Feb 17, 2023. Motion/Petition Type: Revoke Deferred Sentence, Motion/Petition Part: Failed to complete 20 hours of public service., Motion/Petition Part: Failed to pay court costs in the amount of $130.00. |

Page: 113

Date Filed: 12/02/2024

Document: 48-1

Appellate Case: 24-1201

Supp.App.113

Page: 114

Date Filed: 12/02/2024

Document: 48-1

Appellate Case: 24-1201

## Colorado Springs Municipal Court

**WALLS, SHAUN EUGENE**                                                    DOB: ▮▮▮▮▮▮▮▮

| | |
|---|---|
| Mar 03, 2023 | 9.2.104 Obstructing Passage and Assembly |
| | 9.3.101A Resist, Assaulting an Officer Prohibited |
| | Additional - Judge grants 90 days to pay in full to come into compliance. |
| | Please set this on a Friday AM1 docket. |
| | 9.2.104 Obstructing Passage and Assembly |
| | Case Related Disposition: |
| | Continuance - Schedule For: Deferred Sentence, Continued By: Defendant, |
| | Speedy Trial Waiver |
| | Atty/Int - Atty not present |
| | Mtn/Pet - Motions/Petitions: Discovery/Pending [ Defs MTN to have internal |
| | affairs records of any officer the City intends to call. - Pending ] & |
| | Discovery/Not Addressed [ Defs MTN to have any undercover officer or agent of |
| | CSPD that was embedded in the protest. - Not Addressed ] & Discovery/Not |
| | Addressed [ Defs MTN to have all information concerning a special |
| | investigations unit working with the police involving any of the protesters. - |
| | Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any correspondence |
| | or "training" the City Prosecutors and CSPD have had concerning BLM protests or |
| | affiliated left wing groups involved in protests. - Not Addressed ] & |
| | Discovery/Not Addressed [ Def MTN to have any material or info which tends to |
| | negate the guilt of the accused or tends to reduce the punishment without any |
| | judgment by the State as to its credibility, admissibility or ultimate value |
| | since the value of possible exculpatory info can only be assessed by the def. - |
| | Not Addressed ] & Revoke Deferred Sentence/Pending [ Failed to complete 20 |
| | hours of public service - Denied, Failed to pay court costs in the amount of |
| | $130.00 - Pending ] |
| | Queue: Prob, SchSitting Judge: COLT, EDWARD (3/3/23, AM, Div: 1)Recording |
| | Device: 20230303_082652 |
| Mar 03, 2023 | Case Scheduled for Deferred Sentence on Jun 9, 2023 9:00:00 AM for Division 1 |
| | -- Speedy Trial Waived. |
| Jun 09, 2023 | 9.2.104 Obstructing Passage and Assembly |
| | 9.3.101A Resist, Assaulting an Officer Prohibited |
| | 9.2.104 Obstructing Passage and Assembly |
| | Case Related Disposition: |
| | Mtn/Pet - Motions/Petitions: Discovery/Pending [ Defs MTN to have internal |
| | affairs records of any officer the City intends to call. - Pending ] & |
| | Discovery/Not Addressed [ Defs MTN to have any undercover officer or agent of |
| | CSPD that was embedded in the protest. - Not Addressed ] & Discovery/Not |
| | Addressed [ Defs MTN to have all information concerning a special |
| | investigations unit working with the police involving any of the protesters. - |
| | Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any correspondence |
| | or "training" the City Prosecutors and CSPD have had concerning BLM protests or |
| | affiliated left wing groups involved in protests. - Not Addressed ] & |
| | Discovery/Not Addressed [ Def MTN to have any material or info which tends to |
| | negate the guilt of the accused or tends to reduce the punishment without any |
| | judgment by the State as to its credibility, admissibility or ultimate value |
| | since the value of possible exculpatory info can only be assessed by the def. - |
| | Not Addressed ] & Revoke Deferred Sentence/Pending [ Failed to complete 20 |
| | hours of public service - Denied, Failed to pay court costs in the amount of |
| | $130.00 - Pending ] |
| | Warr - BW Amount: $200.00, BW Type: FTA |
| | Queue: Prob, WarrSitting Judge: Kane, HayDen William (6/9/23, AM, Div: |
| | 1)Recording Device: 20230609.084525 |
| Jun 12, 2023 | FTA Warrant Number W23005073 Issued, $200.00 Bail, Non-Payable |
| Jun 12, 2023 | Probation Status changed to Warrant |
| Jun 12, 2023 | Disposition Entry:Warrant Cost: Assessed: $40.00; |
| Jun 20, 2023 | Probation Status changed to Open |

**Colorado Springs Municipal Court**

Page: 115

Date Filed: 12/02/2024

Document: 48-1

Appellate Case: 24-1201

**WALLS, SHAUN EUGENE**                                          DOB: ▮▮▮▮▮▮▮

| | |
|---|---|
| Jun 20, 2023 | $200.00 FTA Warrant Number W23005073 Served at 224 E Kiowa St Status: Bail |
| Jun 20, 2023 | Case Scheduled for Motion to Revoke Deferred Sentence  on Jun 23, 2023 9:00:00 AM for Division 1 |
| Jun 23, 2023 | 9.2.104 Obstructing Passage and AssemblyDispo - CC: $20.00 |
| | 9.3.101A Resist, Assaulting an Officer ProhibitedDispo - Plea: GW,  Finding: DM,  CC: $0.00,  WC: $0.00 |
| | Additional -  Def in substantial compliance. Def having economic hardship. Outstanding fees waived. |
| | 9.2.104 Obstructing Passage and Assembly |
| | Case Related Disposition: |
| | Atty/Int - Atty not present |
| | Queue: Pmts, ProbSitting Judge: HOFFECKER, KRISTEN L (6/23/23, AM, Div: 1)Recording Device: 20230623.085839 |
| Jun 23, 2023 | Order to Seal Arrest and Criminal Records signed and executed. |
| Jun 23, 2023 | Probation Status changed to Completed |
| Jul 21, 2023 | Record Sealed |

Supp.App.115

3144661-0

**UNIFORM SUMMONS AND COMPLAINT / PENALTY ASSESSMENT** _1_ of _2_

(X) Colorado Springs Police Dept.   ( ) Other
( ) Municipal Court  ( ) El Paso County Court  ( ) El Paso County Juvenile Court Room W250 (See Below)
FOR OFFICIAL USE ONLY ( ) Municipal Court Re-Service
( ) Traffic (X) Non Traffic  ( ) Minor Operator  ( ) Commercial Operator  ( ) Juvenile (Parent must appear)

| Accident/Case Number | |
|---|---|
| ( ) Fingerprinted?  ( ) Photographed? | (Y/N) |
| 21-28345 | |
| MNI | Booking Number |

DRUGS / ALCOHOL / GANGS / HATE CRIMES / FIREARMS
AGGRESSIVE DRIVING / NTU INTERSECTIONS

**THE PEOPLE OF THE STATE OF COLORADO, CITY OF COLORADO SPRINGS vs:**

| SHO/DI | Interpreter Needed? |
|---|---|
| Y   (N) | Y   (N) |

| First Name | Middle Name | Last Name | | DOB | | Age |
|---|---|---|---|---|---|---|
| Shawn | Eugene | Walls | | ▓▓▓ | | ▓▓ |

| Address | | | Gang | Registered Sex Offender |
|---|---|---|---|---|
| | | | Y  (N) | Y  (N) |

| Home Phone | Probation/Parole Officer Name | N | Gang Set |
|---|---|---|---|

| Employer / School | Address | City | State | Work Phone |
|---|---|---|---|---|
| Unemployed | | | | |

| Drivers License Number | Presented? Y  N | State | Race | Sex | Hgt | Wgt | Hair | Eyes | Skin Tone | SSN |
|---|---|---|---|---|---|---|---|---|---|---|
| | | CO | B | M | 604 | 245 | BLK | Brn | | |

| Aliases | Scars/Marks/Tattoos | Place of Birth |
|---|---|---|
| | | CO |

| Vehicle License Number | State | Lic Year | Veh Year | Make | Model | Type or Body Style | Veh Color | Driver ( )  Passenger ( ) | Aggressive Driving Y  N |
|---|---|---|---|---|---|---|---|---|---|

| V.I.N. (last 4) | Evidence (Y) N | MNI Photos (Y) N | Weapon Used Y (N) | Weapon Description / Trailer Description |
|---|---|---|---|---|

**YOU ARE HEREBY DIRECTED TO APPEAR AS INDICATED**
( ) El Paso Combined Court —First Appearance Center (phone number on back)
270 S. Tejon Street, Room W119, Colorado Springs, Colorado on the ___
(X) Colorado Springs Municipal Court (phone numbers on back)
224 E. Kiowa St., Colorado Springs, Colorado on the

| 24 DAY OF Aug , 2021 at | 1:30 A.M./P.M. |
|---|---|
| (date)   (month)   (year) | |

_Failure to pay fine penalty or appear in court may result in a bench warrant for your arrest or your driver's license being revoked_

**SEE BACK FOR INSTRUCTIONS**   If this date falls on a day when the court is closed, including weekends and holidays, you are to appear on the next business day.
TO ANSWER CHARGES OF VIOLATIONS OF: ( ) 1973 CRS as amended  ( ) Colorado Children's Code  ( ) The code of the City of Colorado Springs, 2001, as amended.

| Charge No. 1 | Section 9.2.104 | Title Obstructing Passage or Assembly | Com. Code | Fine/Penalty $ | Surcharge $ | Prints |
|---|---|---|---|---|---|---|
| Description △ Intentionally obstructed the street | | | | COURT | | (Y) N |
| | | | | | | FELONY ( ) MISD (X) |

| Charge No. 2 | Section 9.3.101 | Title Resisting, Interference w/ Public Official | Com. Code | Fine/Penalty $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description △ Intentionally resisted a peace officer | | | | COURT | | |
| | | | | | | FELONY ( ) MISD (X) |

| Victims Brochure ( ) | Companion Summons Numbers | | TOTAL TO BE PAID BY MAIL $ | TOTAL POINTS |
|---|---|---|---|---|
| | | | | 0 |

| APPROXIMATE LOCATION OF VIOLATION: Located in Colorado Springs, El Paso County, Colorado | Violation Mo Day Yr | Approx. Time of Violation |
|---|---|---|
| Fountain / Tejon | 7/31/21 | 1200 |

| CUSTODY / SERVICE / LOCATION  955  W. Moreno | Service Mo Day Yr | Approx. Time |
|---|---|---|
| | 7/31/21 | 1400 |

(X) NON PAYABLE SUMMONS ( ) TRAFFIC (X) CRIMINAL     ( ) PAYABLE SUMMONS OR PENALTY ASSESSMENT   ( ) TRAFFIC INFRACTION  ( ) TRAFFIC OFFENSE  ( ) CRIMINAL

WITHOUT ADMITTING GUILT, I HEREBY PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED AND I ACKNOWLEDGE RECEIPT OF THIS SUMMONS AND COMPLAINT.

UPON PAYMENT WITHIN 20 DAYS, I WAIVE ALL RIGHTS LISTED ON THE REVERSE, I ACKNOWLEDGE GUILT OF ALL CHARGES CONTAINED HEREON AND UNDERSTAND THAT THE POINTS INDICATED ABOVE WILL BE ASSESSED AGAINST MY DRIVERS LICENSE (OR, FOR A CRIMINAL CHARGE, REPORTED TO MY CRIMINAL RECORDS). IF I DO NOT MAKE PAYMENT WITHIN 20 DAYS, I AM NOT ADMITTING GUILT AND HEREBY PROMISE TO APPEAR AS INDICATED ABOVE.

| DEFENDANT ✗ | DEFENDANT | PARENT |
|---|---|---|
| | | (IF DEFENDANT UNDER THE AGE OF 18) |

**( ) JUVENILE COMPLAINT AND REFERRAL**
YOU ARE REQUIRED TO APPEAR IN ROOM #W250 OF THE EL PASO COUNTY COURT 270 S. Tejon Street ON THE _____ DAY OF _____ 20___ AT 9:00 A.M.
With my signature below, I also acknowledge I read the special rights and requirements for minors (found on the reverse side of this document.)

| CHILD'S SIGNATURE | | PARENT'S SIGNATURE | |
|---|---|---|---|
| | DATE/TIME | | DATE/TIME |

| Parents Notified? ___ Date: | Time: | AM/PM Officer | NO.: |
|---|---|---|---|
| Mother's Name / Address | | Home Phone | Work Phone |
| Father's Name / Address | | Home Phone | Work Phone |
| Guardian's Name / Address | | Home Phone | Work Phone |

| Interviewed Y  N | PRINT Name of Parent / Guardian present during interview |
|---|---|

( ) Defendant Held in Custody     ( ) EL PASO COUNTY CRIMINAL JUSTICE CENTER   ( ) SPRING CREEK JUVENILE DETENTION CENTER

(X) Defendant released on Promise to Appear

The Undersigned have probable cause to believe that the defendant committed the offense(s) against the peace and dignity of the people of the State of Colorado, City of Colorado Springs and certify that this Summons and Complaint was signed and served upon the defendant at the location and on the date referenced above.

| OFFICER ✗ | Spiccola NO. 4925 | OFFICER | Print Last Name | Badge Number |
|---|---|---|---|---|
| Officer Signature | Print Last Name  Badge Number | Officer Signature | | NO. |

| COMPLAINING WITNESS | SERVED BY ✗ | Camillo NO. 387 |
|---|---|---|
| | Officer Signature | Print Last Name  Badge Number |

**ORIGINAL COURT COPY**

09/10

3144661

UNIFORM SUMMONS AND COMPLAINT / PENALTY ASSESSMENT
ADDITIONAL CHARGES COMPANION SHEET

(X) Colorado Springs Police Dept. ( ) Other
(X) Municipal Court ( ) El Paso County Court ( ) El Paso County Juvenile Court
( ) Municipal Court Re- Service
( ) Traffic (X) Non- Traffic ( ) Minor Operator ( ) Commercial Operator ( ) Juvenile

**Primary Summons Number**
3144661~0   (2 of 2)

**Case/ Accident Number**
21-28345

**Subject Information**

| First Name | Middle Name | Last Name | DOB |
|---|---|---|---|
| Shaun | Eugene | Walls | |

| Charge No. 3 | Section 9.1.207 | Title Conspiracy | Com Code | Fine $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description △ promoted / Facilitated above violations | | | | | | FELONY ( ) MISD (X) |

| Charge No. 4 | Section | Title | Com Code | Fine $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description | | | | | | FELONY ( ) MISD ( ) |

| Charge No. 5 | Section | Title | Com Code | Fine $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description | | | | | | FELONY ( ) MISD ( ) |

| Charge No. 6 | Section | Title | Com Code | Fine $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description | | | | | | FELONY ( ) MISD ( ) |

| Charge No. 7 | Section | Title | Com Code | Fine $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description | | | | | | FELONY ( ) MISD ( ) |

| Charge No. 8 | Section | Title | Com Code | Fine $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description | | | | | | FELONY ( ) MISD ( ) |

| Charge No. 9 | Section | Title | Com Code | Fine $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description | | | | | | FELONY ( ) MISD ( ) |

| Charge No. 10 | Section | Title | Com Code | Fine $ | Surcharge $ | Points |
|---|---|---|---|---|---|---|
| Description | | | | | | FELONY ( ) MISD ( ) |

WITHOUT ADMITTING GUILT, I HEREBY PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED AND I ACKNOWLEDGE RECEIPT OF THIS SUMMONS AND COMPLAINT

DEFENDANT

**DEFENDANT:** This is a list of charges against you and is a supplemental page to your summons. For your Court appearance information please see page one of the original summons.

**OFFICER:** This page must accompany your original summons.

The Undersigned have probable cause to believe that the defendant committed the offense(s) against the peace and dignity of the people of the State of Colorado, City of Colorado Springs and certify that this Summons and Complaint was signed and served upon the defendant at the location and date referenced on page one.

OFFICER _____ / Spicuglia NO. 4925   OFFICER _____ / _____ NO. _____
                  Print Last Name   Badge #                        Print Last Name   Badge#

COMPLAINING WITNESS _____   SERVED BY _____ / Gomilla NO. 3824
                                        Officer Signature   Print Last Name   Badge#

**ORIGINAL COURT COPY**

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 117

BACKSIDE OF PAGE 1 of SUMMONS     **PROBABLE CAUSE AFFIDAVIT**     (Use for all Bookings)

Protest in City of Colorado Springs, El Paso County, CO at ___Fountain Blvd. and Tejon St.__ SUMMONS 3144661-0

DATE/DAY: __7/31/21  Saturday_____     TIME:_____1200_____

LAWFUL ORDER ISSUED/UNLAWFUL ASSEMBLY DECLARED: _____1149_____ hrs_, by_ Lt. Chacon_____

LRAD ANNOUNCEMENT: __yes / no__     Heard by arresting officer: __yes / no__          CROWD/SUBJECT ACTIONS: Your affiant J. Granillo/3876 received this information from other arresting officers.  Your affiant did not observe any of the following actions.  Announcements were made to get out of the street while Marching north on Tejon St. but the group continued marching in the street.  More announcements were made to stay out of the street and stay on the sidewalk.  As the group was east on Mill St. to N. Nevada continuing to march in the street. A male appearing to be Mr. Walls was at the front of the group appearing to be the leader.

Parties that refused to comply with lawful order and remain in the area were engaged as follows: Parties in the crowd continued to disobey orders and refused to vacate the street. Orders were given to arrest individuals in the crowd for being instigators, however, the defendant refused to vacate the street.

DESCRIBE SPECIFIC CIRCUMSTANCES to substantiate arrest and identification: ___Officer Spicgulia observed Officers Alamo, and Radke, attempting to take Mr. Walls into custody.  Mr. Walls began pushing away from officers using his hands.  Mr. Walls was told he was under arrest and he began resisting. He tensed up his upper body, Officer Spicgulia. had to physically grab hands right arm place into handcuffs. Mr. Walls was placed into the back of a marked police cruiser and refused medical attention.  Mr. Walls was transported to the Gold Hill Substation where he was served and released on a summons to appear. Mr. Walls is believed to have posted an event to Facebook that promoted this gathering. Approximately over 30 people to participated. Mr. Walls was contacted by Officers prior who advise him on rules of gathering and to not disrupt the festival.

DEF **NAME/DOB**: ___**Shaun Walls / DOB:** ▓▓▓▓▓▓▓___ was arrested by Officer/Deputy Spicuglia / 4925 at above date/time.  He was transported to the Gold Hill Substation by _City Marshall  Macinturff_

Sargent Lewis took photos of Def. Injuries observed / complained of by Def as follows:

The defendant refused to allow officers to observe his injuries and could not be documented.

UNDER PENALTY OF PERJURY, I AFFIRM THAT ALL THE INFORMATION CONTAININED UPON THIS DOCUMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

AFFIANT:_____     Print Name:_____

Address**: CSPD**_____

On this date, The Affiant signed this Affidavit and swore to its truth

_____     _____
Notary Public                                                                        My Commission Expires

Date:_____

Comes now _____, Who, upon being sworn upon his/her oath deposes and says: That the information contained in this Summons and Complaint Number _____ is true and correct to the best of his/her knowledge and belief and that he/she did sign and deliver a copy to the defendant_____ on the _____ day of _____ year _____ Signed _____

Appellate Case: 24-1201     Document: 48-1     Date Filed: 12/02/2024     Page: 118

Appellate Case: 24-1201     Document: 48-1     Date Filed: 12/02/2024     Page: 119

BACKSIDE OF PAGE 1 of SUMMONS     **PROBABLE CAUSE AFFIDAVIT**     (Use for all Bookings)

Protest in City of Colorado Springs, El Paso County, CO at  Fountain Blvd. and Tejon St. SUMMONS 3144661-0

Sworn and subscribed before me this _____ day of _____ year _____ Judge or Court Clerk_____

| VICTIM #1 NAME (LAST, FIRST MI) | DOB | RACE | SEX | ADDRESS | HM PHONE | WK PHONE |
|---|---|---|---|---|---|---|
| VICTIM #2 NAME (LAST, FIRST MI) | DOB | RACE | SEX | ADDRESS | HM PHONE | WK PHONE |

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 120

COLORADO SPRINGS MUNICIPAL COURT
P.O. Box 2169
Colorado Springs, CO 80901-2169

**PEOPLE OF THE STATE OF COLORADO, <u>ex rel.</u>**
**THE CITY OF COLORADO SPRINGS**
**Plaintiff,**


**v.**

**SHAUN WALLS**


**Defendant.**

▲  COURT USE ONLY  ▲

Attorney for City of Colorado Springs:
WYNETTA MASSEY, CITY ATTORNEY
Shantel Withrow, Prosecuting Attorney
P.O. Box 1575, Mail Code 1540
224 East Kiowa Street, Suite 410
Colorado Springs, CO 80901
Telephone:  (719) 385-5925
Fax number: (719) 385-6438
Atty. Reg. #18912
Atty. Reg. #46227

Case Number: 21M22263

Division:

**CITY'S MOTION TO AMEND CHARGES**

COMES NOW the City of Colorado Springs ("City"), by and through the Office of the City Attorney, and submits the following Motion to Amend Charges.

1.  Colorado Municipal Court Rule of Procedure 204(b)(6) states that "The court may permit a complaint or summons to be amended as to form or substance at any time prior to trial…"

2.  On July 31, 2021 Shaun Walls was served with a summons and complaint for the following three charges:
    - Count One: Obstructing Passage and Assembly, a violation of City Code 9.2.104
    - Count Two: Resisting, Interference with a Public Official, a violation of City Code 9.3.101(A).
    - Count Three: Conspiracy, a violation of City Code 9.1.207.

3.  Mr. Shaun Walls is set for Arraignment on these charges on August 24, 2021.

4.  The City hereby requests permission to file written motions pursuant to Colorado Municipal Court Rule of Procedure 212(b) to maintain clarity in the request contained herein.

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 121

5. The City moves to amend the summons and complaint to state the following:

- Count 1: Section 9.2.104 Obstructing Passage or Assembly. Description: Defendant intentionally obstructed a street, sidewalk, parking lane or median so as to interfere with another's immediate, free and uninterrupted use and passage.
  - No change in charge, amended description.

- Count 2: Section 9.3.101(A) Resisting, Interference with Public Official. Description: Defendant intentionally, knowingly, or recklessly, resisted a peace officer and uniformed member of the Police Department, while in the discharge or apparent discharge of their duty.
  - No change in charge, amended description.

- Count 3: Section 9.2.104 Obstructing Passage or Assembly. Description: Defendant intentionally obstructed a street, sidewalk, parking lane or median so as to interfere with another's immediate, free and uninterrupted use and passage.
  - The City intends to pursue this charge under the theory of Complicity, cited in City Code Section 9.1.109.

6. The date, time, and location of the summons will not be amended, and will remain on 7/31/21, at approximately 1200 hours, at the approximate location of E Fountain Blvd and S Tejon St.

WHEREFORE, it is respectfully requested that this Court grant the motion to amend charges as detailed above.

Dated this 24th day of August, 2021.

WYNETTA MASSEY
CITY ATTORNEY
Reg. No. 18912

By: _____

Shantel Withrow, Prosecuting Attorney
Reg. No. 46227

2

**Supp.App.121**

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

Case number: 21M22263
Summons number: 3144661

Original Charge:        9.2.104      Obstructing Passage and Assembly

Scheduled for: Arraignment                  Reason:

I promise to appear:

| Thursday 09/30/21, 01:30 PM |
| Division: 2,  Room number: 210 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may
be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        ___8/24/21 SW___    _____
Defendant or Attorney                  Date                Telephone Number

_____        _____
Street Address                         City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the
above named Defendant. I further understand that I must appear even in the absence of the above
named Defendant and that if I do not appear, a summons may be issued charging me with contempt
of court and I may be subject to arrest.

_____        _____    _____
Parent/Legal Guardian                  Date                   Telephone Number

_____        _____
Print Name                             Street Address

_____        _____
Relationship                           City, State, Zip Code

Page: 123     Date Filed: 12/02/2024     Document: 48-1     Appellate Case: 24-1201

| Municipal Court, City of Colorado Springs, Colorado<br>Court address:        224 E. Kiowa Street<br>                          Colorado Springs, CO  80903<br>Phone Number:        (719) 385-5922 | FILED IN<br>COLORADO SPRINGS<br>MUNICIPAL COURT<br>EL PASO COUNTY, COLORADO<br><br>2021 SEP 10  P 1: 07<br>CG |
|---|---|
| PEOPLE OF THE CITY OF COLORADO SPRINGS,<br>Plaintiff,<br>vs.<br>SHAUN WALLS<br>Defendant, | σ      COURT USE ONLY      σ |
| Attorney or Party without Attorney (Name and Address):<br>Barker & Tolini, P.C.<br>720 S. Tejon<br>Colorado Springs, CO  80903<br>Phone Number: (719)227-0230<br>FAX Number:    (719)227-0964    Atty. Reg. #: 25954 | Case Number: 21M22263<br><br>Division:  3   Courtroom |

**ENTRY OF APPEARANCE**

COMES NOW Barker & Tolini, P.C., and hereby enters its appearance on behalf of the above named Defendant.

DATED this 9th day of September, 2021.

Jeff Barker # 25954

**CERTIFICATE OF MAILING**

**I hereby certify that on this 9th day of September, 2021, a true and correct copy of the foregoing ENTRY OF APPEARANCE was served on the following party by placing same in the United States mail, postage prepaid, first class, addressed to:**

Office of the City Attorney
224 E. Kiowa
Colorado Springs, Colorado  80903

Municipal Court
224. E Kiowa
Colorado Springs, CO 80903

Kendra Paradeis

## Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

█████████████████

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
720 S. Tejon
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:        9.2.104        Obstructing Passage and Assembly

Scheduled for: Pre-Trial                                Reason:

promise to appear:

| Thursday 10/07/21, 02:30 PM |
| Division: 3,  Room number: 215 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_Set on Phone w/ Atty's office_          _9/10/21_                        _____
Defendant or Attorney                Date                          Telephone Number

_____        _____
Street Address                      City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____        _____        _____
Parent/Legal Guardian                Date                          Telephone Number

_____        _____
Print Name                          Street Address

_____        _____
Relationship                        City, State, Zip Code

**Pre-Trial Routing Sheet**
**Prosecution Division**

Defendant Name: _Shaun Walls_    Case Number: _21A122263_    Date: _7OCT21_

Amendments: ❑ The City moves to amend the summons and complaint: _____
_____
_____

❑ Other: _____

| ❑ **City Attorney requests the Court advise the Defendant of** his/her rights to counsel and the right and attendant risks of processing pro se. | ❑ **Defendant requests a Court Appointed Attorney** |
|---|---|

| ☑ **CONTINUE FOR TRIAL** | ❑ **CASE INELIGIBLE FOR JURY TRIAL** |
|---|---|

☑ **CONTINUE FOR PRE-TRIAL**    ☑ SET _11/16/21_ DIV. _S_ AM/PM    ❑ SET OUT ____ DAYS

| ☑ Continue Pre-Trial at request of Defendant. **Defendant must waive speedy trial (Clock resets to 91 days).** ☑ Speedy Trial Clock is tolled until next appearance. | ❑ To take _____ Class ❑ For referral to Neighborhood Justice Center ❑ To contact Navigator - Outreach |
|---|---|

❑ **Defendant fails to appear. The City requests a bench warrant**

05/21/2019

Date Filed: 11/04/2024   Page 129    Document: 48-1    Appellate Case: 24-1201

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 126

| COLORADO SPRINGS MUNICIPAL COURT<br>P.O. Box 2169<br>Colorado Springs, CO 80901-2169 | FILED IN<br>COLORADO SPRINGS<br>MUNICIPAL COURT<br>EL PASO COUNTY, COLORADO<br><br>2021 SEP 15  P 12: 27 |
|---|---|
| **PEOPLE OF THE STATE OF COLORADO, <u>ex rel.</u> THE CITY OF COLORADO SPRINGS**<br>v.<br>**DEFENDANT: WALLS, SHAUN EUGENE** | ◻ **COURT USE ONLY** ◻ |
| Attorney for City of Colorado Springs:<br>WYNETTA MASSEY, CITY ATTORNEY<br>Sara Arfmann, Prosecuting Attorney<br>P.O. Box 1575, Mail Code 1540<br>224 East Kiowa Street, Suite 410<br>Colorado Springs, CO 80901<br>Telephone:  (719) 385-5925<br>Fax number: (719) 385-6438<br>Atty. Reg. #18912<br>Atty. Reg. #47162 | Case Number:  21M22263 |
| **PEOPLES' MOTION TO REDACT BODY WORN CAMERA VIDEO TO BE RELEASED IN DISCOVERY** | |

COMES NOW the People of the State of Colorado <u>ex. rel</u>. The City of Colorado Springs by and through the Office of the City Attorney and hereby requests that this Court provide leave for the People to file this Motion and that it will grant the People's Motion to Redact Body Worn Camera Video to be Released in Discovery. As grounds, the People state:

1.  In the instant case, the Defendant is charged with Resisting, Interference with Public Official, §9.3.101 of the City of Colorado Springs Code,  Obstructing Passage and Assembly, §9.2.104, and Conspiracy, §9.1.107, related to an incident that occurred on July 31, 2021.

    a.  The People incorporate by reference the Summons and Compliant created by Officer Granillo submitted to the Court by Colorado Springs Police Department (CSPD) as a basic recitation of the facts in this case. Of particular importance as it relates to the People's request in this motion, the Defendant interfered and obstructed police activity. CSPD officers cited the Defendant as a result of his actions.

    b.  One of the officers on scene was Officer Scott Alamo. Officer Alamo's duty uniform was equipped with a standard body worn camera (BWC). Officer Alamo

Page 1

**Supp.App.126**

Appellate Case: 24-1201     Document: 48-1     Date Filed: 12/02/2024     Page: 127

was actively recording this incident.

c.   Officer Alamo's BWC video is currently in "locked" status and has not been released to the defense in discovery. The People, undersigned counsel specifically, do not have access to this video either. The information provided to undersigned counsel by CSPD through their BWC employee and assigned attorney, Frederick Stein, is as follows:

- Officer Alamo's BWC video of this incident is 1:40:39 in duration.
- Approximately 90 minutes of this video is a recording of administrative and tactical discussions, and personal conversations Officer Alamo had with other officers prior to the charged conduct. The portion of the BWC video that contains Officer Alamo's actual engagement in the protest begins at the 1:24:25 mark through the end of the video.
- CSPD and the City are requesting that the portion of the BWC video that contains these administrative, tactical and personal conversations be redacted by CSPD prior to release to the People and the defense.
- CSPD will retain the unredacted BWC video throughout the case and it shall not be altered or destroyed.
- CSPD, through Mr. Stein, will provide a copy of the unredacted BWC video to the Court, if ordered to do so, for the purpose of an in-camera review by the Court.

2.   The People assert that release of Officer Alamo's entire BWC video in discovery is not required by Colorado Municipal Court Rule 216 or Colorado Rules of Criminal Procedure Rule 16 based on the understanding there are portions that are neither evidentiarily inculpatory nor exculpatory in nature. The discussions related only to administrative, tactical, and personal conversations do not tend to prove or disprove the Defendant's guilt or innocence related to the crime charged.

3.   The People assert that release of the portion of Officer Alamo's BWC video that contains his administrative, tactical, and personal conversations would be unduly harmful to overall police operations. Without knowing specifically what was discussed, undersigned counsel is only in a position to make an educated speculation that those discussions related to various arrest decisions, risk factors, tactical movements of officers, etc. All of these discussions, if released, would disclose police operation tactics that if known by others, could make CSPD's tactics less effective and could potentially put officers' lives in danger.

4.   If the Court is disinclined to grant the People's primary request (to require CSPD to release only a redacted copy of Officer Alamo's BWC video to the prosecution and defense), the People alternatively ask the Court to conduct an in-camera review of both the unredacted and redacted copies of Officer Alamo's BWC video, and determine which version should be released to the defense in discovery. Rule 16(III)(e) and (f) permits the Court to review *in camera* otherwise discoverable evidence to determine whether it must be turned over in discovery. This rule permits the prosecution to excise irrelevant and nondiscoverable

Page: 128

Date Filed: 12/02/2024

Document: 48-1

Appellate Case: 24-1201

information from discoverable information before providing it in discovery.

WHEREFORE, the People would respectfully request that the Court require CSPD to redact Officer Alamo's BWC video to remove any and all administrative, tactical, and personal conversations prior to 1:24:25, and order that only the redacted video be released to prosecution and the defense in discovery.

Respectfully submitted this 14th day of September 2021.

**WYNETTA MASSEY**
City Attorney
Reg. No. 18912

By: _____
Sara Ajtmann, 47162

**Supp.App.128**

Page: 129          Date Filed: 12/02/2024          Document: 48-1          Appellate Case: 24-1201

CERTIFICATE OF MAILING

I do hereby certify that I have, this __14th__ day of __September__, 2021, mailed a true and correct copy of the foregoing People's Motion to Redact Body Worn Camera Video to be Released in Discovery, postage prepaid and placed in the U. S. Mail, addressed to:

Jeffrey Barker
720 S Tejon St.
Colorado Springs, CO 80903

_____
Tiffany Newton
Legal Assistant

Page 4

*3*

**Colorado Springs Municipal Court**

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
720 S. Tejon
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:        9.2.104        Obstructing Passage and Assembly

Scheduled for: Motion                           Reason:

promise to appear:

> Wednesday 11/10/21, 01:30 PM
> Division: 5,  Room number: 320

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        *10-7-21*        _____
Defendant or Attorney             Date                Telephone Number

_____                    _____
Street Address                    City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____        _____        _____
Parent/Legal Guardian             Date                Telephone Number

_____                    _____
Print Name                        Street Address

_____                    _____
Relationship                      City, State, Zip Code

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

████████████████████

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
720 S. Tejon
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:        9.2.104        Obstructing Passage and Assembly

Scheduled for: Pre-Trial                    Reason:

I promise to appear:

| Monday 12/13/21, 02:30 PM |
| Division: 3,  Room number: 215 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____          _____          _____
Defendant or Attorney                     Date                     Telephone Number

_____                          _____
Street Address                                           City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____          _____          _____
Parent/Legal Guardian                     Date                     Telephone Number

_____                          _____
Print Name                                               Street Address

_____                          _____
Relationship                                             City, State, Zip Code

Appellate Case: 24-1201     Document: 48-1     Date Filed: 12/02/2024     Page: 132

| | |
|---|---|
| **MUNICIPAL COURT, CITY OF COLORADO SPRINGS, EL PASO COUNTY, STATE OF COLORADO**<br>224 East Kiowa Street<br>Colorado Springs, CO  80903<br>Phone Number:  (719) 385-5922 | |
| **PEOPLE OF THE STATE OF COLORADO** _ex rel_.<br>**THE CITY OF COLORADO SPRINGS,**<br>**Plaintiff,**<br><br>**v.**<br><br>**SHAUN WALLS,**<br>**Defendant.** | **COURT USE ONLY**<br><br>Case Number:  21M22263 |
| _Attorneys for Colorado Springs Police Department:_<br>OFFICE OF THE CITY ATTORNEY<br>Wynetta P. Massey, City Attorney (Atty. Reg. #18912)<br>Frederick P. Stein, Senior Attorney (Atty. Reg. #34481)<br>P.O. Box 1575, Mail Code 510<br>30 South Nevada Avenue, Suite 501<br>Colorado Springs, CO  80901<br>Telephone:  (719) 385-5909<br>Fax number: (719) 385-5535<br>frederick.stein@coloradosprings.gov | |

**NOTICE OF SUBMISSION OF DISK FOR COURT _IN CAMERA_ REVIEW**

COMES NOW the Colorado Springs Police Department ("CSPD"), by and through the Office of the City Attorney, hereby notifies the Court and Defendant Shaun Walls that on this date, CSPD submitted a disk containing the BWC footage of Officer Scott Alamo for the Court _in camera_ review pursuant to Order entered on November 10, 2021.

Dated this 15th day of November, 2021.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY,
CITY OF COLORADO SPRINGS, COLORADO
Wynetta P. Massey, City Attorney
Reg. No. 18912

By:  _Frederick Stein_____
Frederick Stein, Senior Attorney, Reg. No. 34481
Colorado Springs City Attorney's Office
P. O. Box 1575, 30 South Nevada Avenue
Colorado Springs, Colorado 80901
Telephone: (719) 385-5909
Facsimile: (719) 385-5535

*Attorney for Colorado Springs Police Department*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2021, I served a copy of the foregoing **NOTICE OF SUBMISSION OF DISK FOR COURT *IN CAMERA* REVIEW** via email to the following:

Shantel Withrow
Prosecutor
Office of the City Attorney for the City
  of Colorado Springs
Prosecution Division
224 East Kiowa Street, Suite 410
Colorado Springs, CO 80903
E-mail: Shantel.Withrow@coloradosprings.gov
*Attorney for Plaintiff*

Jeffrey Barker
Barker & Tolini, P.C.
720 S. Tejon Street
Colorado Springs, CO 80903
E-mail: barker0230@yahoo.com
*Attorney for Defendant*

By:  _Elisa Spencer_____
Elisa Spencer, Paralegal

**Pre-Trial Routing Sheet**
**Prosecution Division**

Defendant Name: _Walls, Shaun_____     Case Number: _21M22263_   Date: _12/13/21_

Amendments: ☐The City moves to amend the summons and complaint: _____

☐Other: _____

| ☐ **City Attorney requests the Court advise the Defendant of his/her rights to counsel and the right and attendant risks of processing pro se.** | ☐ **Defendant requests a Court Appointed Attorney** |
|---|---|
| ☑ **CONTINUE FOR TRIAL**      ☐**CASE INELIGIBLE FOR JURY TRIAL** | |
| ☐ **CONTINUE FOR PRE-TRIAL**   ☐ **SET** _____ **DIV.** ___ **AM/PM**   ☐ **SET OUT** ___ **DAYS** | |
| ☐ Continue Pre-Trial at request of Defendant. **Defendant must waive speedy trial (Clock resets to 91 days).**<br>☐ Speedy Trial Clock is tolled until next appearance. | ☐ To take _____ Class<br>☐ For referral to Neighborhood Justice Center<br>☐ To contact Navigator - Outreach |
| ☑ **Defendant fails to appear.  The City requests a bench warrant** | |

05/21/2019

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169                                          (719) 385-5928
Colorado Springs, CO 80901-2169                       (719) 385-6190 (Fax)

WALLS, SHAUN EUGENE                                    Case number: 21M22263
                                                       Summons number: 3144661

Atty: BARKER, JEFFREY J
720 S. Tejon
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:          9.2.104        Obstructing Passage and Assembly

Scheduled for: Pre-Trial                        Reason:

I promise to appear:

| |
|---|
| Thursday 02/03/22, 01:30 PM<br>Division: 3,  Room number: 215 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____          DEC.13,21 EB          _____
Defendant or Attorney             Date                  Telephone Number

_____                                _____
Street Address                           City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____          _____          _____
Parent/Legal Guardian            Date                              Telephone Number

_____                                _____
Print Name                               Street Address

_____                                _____
Relationship                             City, State, Zip Code

**Pre-Trial Routing Sheet**
**Prosecution Division**

Defendant Name: _Shaun Walls_     Case Number: _21M22265_ Date: _2/3/22_

Amendments: ☐ The City moves to amend the summons and complaint: _____

☐ **Other:** _____

| ☐ **City Attorney requests the Court advise the Defendant of his/her rights to counsel and the right and attendant risks of processing pro se.** | ☐ **Defendant requests a Court Appointed Attorney** |
|---|---|

☑ **CONTINUE FOR TRIAL**          ☐ **CASE INELIGIBLE FOR JURY TRIAL**

☐ **CONTINUE FOR PRE-TRIAL**      ☐ **SET** _____ **DIV.** ___ **AM/PM**     ☐ **SET OUT** _____ **DAYS**

| ☐ Continue Pre-Trial at request of Defendant. **Defendant must waive speedy trial (Clock resets to 91 days).** <br> ☐ Speedy Trial Clock is tolled until next appearance. | ☐ To take _____ Class <br> ☐ For referral to Neighborhood Justice Center <br> ☐ To contact Navigator - Outreach |
|---|---|

☐ **Defendant fails to appear. The City requests a bench warrant**

05/21/2019

Date Filed: 1/30/2024   Document: 48-1   Appellate Case: 24-1201

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169                                    (719) 385-5928
Colorado Springs, CO 80901-2169                  (719) 385-6190 (Fax)

WALLS, SHAUN EUGENE                               Case number: 21M22263
                                                  Summons number: 3144661

Atty: BARKER, JEFFREY J
720 S. Tejon
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:        9.2.104      Obstructing Passage and Assembly

Scheduled for: Trial to Court                     Reason:

promise to appear:

| Thursday 03/17/22, 09:00 AM |
| Division: 3,  Room number: 220 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____      2/3/22 _____      _____
Defendant or Attorney          Date               Telephone Number

_____                         _____
Street Address                 City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____      _____      _____
Parent/Legal Guardian          Date               Telephone Number

_____                         _____
Print Name                     Street Address

_____                         _____
Relationship                   City, State, Zip Code

## Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
720 S. Tejon
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:        9.2.104        Obstructing Passage and Assembly

Scheduled for: Jury Orders Hearing                Reason:

I promise to appear:

> Wednesday 04/20/22, 02:30 PM
> Division: 3,  Room number: 215

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed and  my jury trial will be vacated.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____                    _____           _____
Defendant or Attorney                         Date                    Telephone Number

_____                                              _____
Street Address                                                        City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____                    _____           _____
Parent/Legal Guardian                         Date                    Telephone Number

_____                                              _____
Print Name                                                            Street Address

_____                                              _____
Relationship                                                          City, State, Zip Code

Page: 138    Date Filed: 12/02/2024    Document: 48-1    Appellate Case: 24-1201

Appellate Case: 24-1201    Document: 48-1    Date Filed: 12/02/2024    Page: 139

| Municipal Court, City of Colorado Springs, El Paso County, State of Colorado<br>Court Address: 224 East Kiowa Street<br>Colorado Springs, CO 80901<br>Phone Number:  (719)385-5922 | FILED IN<br>COLORADO SPRINGS<br>MUNICIPAL COURT<br>EL PASO COUNTY, COLORADO<br><br>2022 APR -1 P 2: 28 |
|---|---|
| **Plaintiff:**<br><br>**PEOPLE OF THE STATE OF COLORADO** ex rel. **THE CITY OF COLORADO SPRINGS**<br>**vs.**<br>**Defendant:** Shawn Walls | |
| | ▲ COURT USE ONLY ▲ |
| Attorney for Defendant:<br>Jeff J. Barker, Esq., #25954<br>Barker & Tolini, P.C.<br>115. E. Costilla St., C/S CO 80903 | Case#: 21M22263<br>Summons#: |
| **MOTION FOR CONTINUANCE** | |

■ Continue at request of Defendant.  **Defendant must waive speedy trial (Clock resets to 91 days) and the Speedy Trial Clock is tolled until next appearance.**

The Defendant requests the above case be continued for the following reasons:
Undersigned counsel is unavailable for Pre-trial Readiness date of April 20, 2022 and Jury Trial date of April 22, 2022 due to a scheduling conflict with a homicide trial in El Paso County District Court.

_____    3-16-22
**Defendant / Attorney**                    **Date**

The City: ☐OBJECTS    ■DOES NOT OBJECT to the continuance
☐(comments)

_____    3/17/22
**Prosecuting Attorney**                    **Date**

**CITY REQUESTED CONTINUANCE**

☐Defendant consents to the City's request for a continuance.  The speedy trial clock continues unless noted above.

_____    _____
**Defendant / Attorney**                    **Date**

☐(comments)

_____    _____
**Prosecuting Attorney**                    **Date**

_____    4/1/22
**Deputy Clerk**                              **Date**

Rev. 2020_05_22

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

████████████████████

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
720 S. Tejon
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:        9.2.104        Obstructing Passage and Assembly

Scheduled for: Trial to Jury                    Reason:

DEMAND FOR JURY TRIAL

In this case I demand a Trial by a jury of (three) to (six) persons.

A jury fee of $25.00, as required by C.R.S. 13-10-114 1973 as amended.

____*TJB*____ (initial waiver) I have the right to a trial within ninety-one  days of the date I
entered my plea of not guilty.  By requesting a continuance, I am waiving my right  to be tried
within the ninety-one-day period.

I promise to appear:

| Friday 06/24/22, 08:30 AM |
| Division: 4,   Room number: 310 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may
be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____          3-29-22              CAT    _____
Defendant or Attorney                 Date                          Telephone Number

_____                           _____
Street Address                                    City, State and Zip Code

If the parent or legal guardian, understand that, by Order of the Court, I must appear with the
above  named Defendant. I further understand that I must appear even in the absence of the above
named Defendant  and that if I do not appear, a summons may be issued charging me with contempt
of court and I may be  subject to arrest.

_____          _____     _____
Parent/Legal Guardian                 Date                          Telephone Number

_____                           _____
Print Name                                        Street Address

_____                           _____
Relationship                                      City, State, Zip Code



**OFFICE OF THE CITY ATTORNEY**
**Prosecution Division**

Page: 141    Date Filed: 12/02/2024    Document: 48-1    Appellate Case: 24-1201

April 4, 2022

Jeff Barker
720 S. Tejon St.
Colorado Springs, CO 80903

Re:   *City of Colorado Springs v. WALLS, SHAUN EUGENE*
      *Case No. 21M22263*

Dear Mr. Barker,

The above referenced case is scheduled for Trial to Jury on 06/24/22 at 08:30 AM in Division 4 of Municipal Court. This letter is to inform you that the City will, on 06/22/22, ask the Court to continue the Trial to Jury as our witness is unavailable on the jury trial date.

You are **REQUIRED** to do one of the following:

1.   Appear at the scheduled Jury Orders Hearing on 06/22/22 and object to the continuance.

**OR**

2.   Request a continuance though coloradosprings.gov or come to Municipal Court **PRIOR** to 06/22/22 to reschedule the case for a time after 06/24/22.

Please note you must choose one of these two options. If you fail to appear at the trial and **DO NOT** re-schedule prior to 06/24/22 a bench warrant will be issued. If you have any questions, please contact me at (719) 385-5925.

Sincerely,

FOR THE CITY ATTORNEY

Tiffany Newton, Legal Secretary to
Shantel Withrow, Prosecuting Attorney

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
115 E. Costilla St.
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:          9.2.104      Obstructing Passage and Assembly

Scheduled for: Jury Orders Hearing                    Reason:

promise to appear:

| Wednesday 09/07/22, 02:30 PM |
| Division: 3,  Room number: 215 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed and <u>my jury trial will be vacated</u>.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        6/14/22 EB        _____
Defendant or Attorney           Date               Telephone Number

_____                            _____
Street Address                                  City, State and Zip Code


I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.


_____        _____        _____
Parent/Legal Guardian           Date               Telephone Number

_____                            _____
Print Name                                      Street Address

_____                            _____
Relationship                                    City, State, Zip Code

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
115 E. Costilla St.
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:          9.2.104      Obstructing Passage and Assembly

Scheduled for: Trial to Jury                    Reason:

DEMAND FOR JURY TRIAL

In this case I demand a Trial by a jury of (three) to (six) persons.
A jury fee of $25.00, as required by C.R.S. 13-10-114 1973 as amended.

I promise to appear:

| Friday 09/09/22, 08:15 AM |
| Division: 4,  Room number: 310 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____      6/14/22 EB      _____
Defendant or Attorney           Date              Telephone Number

_____      _____
Street Address               City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____      _____      _____
Parent/Legal Guardian          Date              Telephone Number

_____      _____
Print Name                   Street Address

_____      _____
Relationship                 City, State, Zip Code

Page: 143
Date Filed: 12/02/2024
Document: 48-1
Appellate Case: 24-1201

Page: 144

Date Filed: 12/02/2024

Document: 48-1

Appellate Case: 24-1201

| | |
|---|---|
| Municipal Court of Colorado Springs<br>El Paso County, State of Colorado<br>Court Address:   224 East Kiowa Street<br>                            Colorado Springs, CO 80901<br>Phone Number:   (719) 385-5922 | |
| **Plaintiff:**<br><br>PEOPLE OF THE STATE OF COLORADO ex. rel. THE CITY OF COLORADO SPRINGS<br><br>vs.<br><br>**Defendant:** SHAUN EUGENE WALLS | FILED IN<br>COLORADO SPRINGS<br>MUNICIPAL COURT<br>EL PASO COUNTY, COLORADO<br>2023 FEB 17 P 12: 41<br><br>▲ COURT USE ONLY ▲ |
| Attorney for Plaintiff:<br>WYNETTA MASSEY, CITY ATTORNEY<br>Shantel Withrow, Prosecution<br>P.O. Box 1575, Mail Code 1540<br>224 East Kiowa Street, Suite 410<br>Colorado Springs, CO 80901<br>Telephone: (719) 385-5925<br>Fax number: (719) 385-6438<br>Atty Reg #: 18912<br>Atty Reg #: 46227 | Case Number: **21M22263**<br>Summons No. **3144661**<br>Div: **1** |
| **MOTION TO REVOKE DEFERRED SENTENCE** | |

COMES NOW the People of the State of Colorado ex. rel. The City of Colorado Springs by and through the Office of the City Attorney, and submit the following Motion to Revoke Deferred Sentence, and as grounds therefore state as follows:

Upon review of the aforementioned case in which a deferred sentence was granted and upon review of the related report from the Probation Department, it appears that the conditions of the deferment have not been met in the following particulars:

Defendant has failed to complete 20 hours of public service and pay court costs in the amount of $130.00.

Pursuant to the terms of the deferred sentence Defendant was ordered to appear before the Municipal Court at 224 E. Kiowa St., Colorado Springs, Colorado on 03/03/23, in Division 1 at 09:00 AM.

WHEREFORE, for the foregoing reason, the undersigned respectfully requests that this Court enter an ORDER Revoking Defendant's Deferred Sentence in this matter. Should the above name Defendant fail to appear at the time and date referenced above, the People request the Court find probable cause that the Defendant has violated the conditions of the deferred sentence and that the arrest of the Defendant is reasonably necessary, and accordingly issue a warrant for the Defendant's arrest.

Respectfully submitted Feb 17, 2023.

WYNETTA MASSEY
City Attorney
Reg. No. 18912

By:        /s/ Shantel Withrow

MUNICIPAL COURT, CITY OF COLORADO SPRINGS, STATE OF COLORADO

Summons & Complaint No. _____     Case No. _____ 21M22263

Motion for Deferred Sentencing     ☐ Jail is waived / ☒ Jail is not waived if the deferred sentence is revoked

THE PEOPLE OF THE STATE OF COLORADO ex rel. the CITY OF COLORADO SPRINGS,     Plaintiff,

vs.     Shara Walls.

_____     Defendant

The Defendant moves the Court for an Order granting deferred sentencing, and in support thereof states the following:

1. The Defendant understands the charges contained in the Summons and Complaint and understands that the maximum possible sentence as to each count is, **unless jail is waived above**: 189 days in jail, a fine not to exceed $2,500.00 and / or probation.

2. The Defendant has been fully advised of, understands, and waives the following rights: The right to remain silent; the right to trial by jury; The right to confront his/her accusers; The right to insist that the prosecution's proof at trial establish his/her guilt beyond a reasonable doubt; The right to present witnesses in his/her behalf through the use of the subpoena power of this Court; The right to testify at trial; The right to a speedy and public trial; The right to appeal to a higher court; The right to be represented by a lawyer, and if unable to afford a lawyer, the right to ask the Court to appoint a lawyer at no expense to you.

3. ☐ Defendant voluntarily and knowingly enters a plea of guilty to the charge(s) in the Summons and Complaint.
☒ Defendant voluntarily and knowingly enters a plea of guilty to § 9.3.101A Resisting Arrest Count #2
☒ All other charges are dismissed.     ☐ The disposition of other charges are addressed in an attached document.
The plea to said charge(s) is pursuant to the agreements and conditions contained in this Motion for Deferred Sentence and with the understanding that this plea of guilty will be withdrawn and the case dismissed on their successful completion.

4. The Defendant subjects himself/herself to the following conditions for a _____ 6 _____ month period:

☐   Violate no similar laws: _____.
☐   Violate no traffic laws in which points are assessed or involving driving under suspension, revocation or denial.
☒   No criminal violations, no traffic violations 8 points or more, no driving under suspension, revocation or denial.
☒   Fulfill _20_ hours of public service as scheduled by the Probation Department.
☐   Payment of restitution as determined by Probation, either today or in compliance with a payment schedule set up by Probation Department.
☐   Attend and successfully complete a Traffic ____ / Petty Theft / Teen Court / ACIP / _____ program as scheduled by the Probation Department (or Teen Court, if applicable); and provide proof of compliance within ten (10) days of completion. The Probation Department is in Room 230.
☒   Pay $ _150_ Court costs today or in compliance with a payment schedule set up by the Probation Department. Any other costs are open to the court.

☐   _____

The Defendant acknowledges that should Defendant be found to be ineligible or rejected from any program required in this sentencing agreement, the Defendant will report to the Probation Department within 7 days of notification.

Page: 145   Date Filed: 12/02/2024   Document: 48-1   Appellate Case: 24-1201

Case No. _____21M22263_____

5.  The Defendant and, if a juvenile, the Defendant's undersigned parent or guardian, understand and agree that his/her appearance is required on ___MARCH 3RD___, 20 23, in Division 1, at 9:00 o'clock A.M.   On such date, if the Defendant has complied with the conditions set forth in this Motion for Deferred Sentencing, the City shall appear before the Court and consent to the withdrawal of Defendant's plea of guilty and shall request the dismissal of the charges) contained in the Summons and Complaint.  In the alternative, if the Defendant has failed to comply with any condition contained herein, the Deferred Sentence may be revoked and the Defendant sentenced pursuant to the plea(s) of guilty, to the charge (s) in the Summons and Complaint.  DEFENDANT FURTHER UNDERSTANDS THAT HIS/HER FAILURE TO APPEAR ON THIS  DATE MAY RESULT IN THE ISSUANCE OF A BENCH WARRANT FOR HIS/ HER ARREST UNLESS HE/ SHE RECEIVES A LETTER FROM THE CITY ATTORNEY'S OFFICE WHICH RELEASES THE DEFENDANT  FROM APPEARANCE.

6.  Defendant agrees and consents that, should it appear that there is a pending matter which would constitute a violation of this Deferred Sentence, the City may, with the consent of the Court, continue final action on this Deferred Sentence pending final resolution of such matter.

7.  Defendant agrees this motion incorporates all provisions and agreements between the parties hereto and that no other representations by the City or by others have induced Defendant's guilty plea.

8.  Defendant affirms that the below address is true and accurate.  The Defendant understands and agrees that the Defendant shall notify the Court, in writing or by telephone, of any change of address within 24 hours of said change at: P.O. Box 2169, Mail Code 1530, Colorado Springs CO, 80901 or FAX: (719)385-6190, Phone: (719)385-5922.

_____
Signature of Defendant's Attorney/Parent/Guardian

_____
Printed Name of Defendant's Attorney/Parent/ Guardian

_____
Signature of Defendant

_____
Defendant's Street  Address

███████████████████████████████

City, State and Zip Code

CONSENT

The City, by and through its counsel, has read the foregoing provisions and agreements and hereby consents to matters therein contained.

_____
Prosecuting Attorney

ORDER

The Court having reviewed the foregoing Motion for Deferred Sentencing, hereby ORDERS  a Deferred Sentence be granted,  upon the terms and conditions set forth in the Motion , for a period of _____ month(s), until the date and time set forth in Paragraph 5 of this agreement when the Defendant shall appear before the Court  for review.

Done this_____ day of _____, 20 _____.

BY THE COURT:

_____
JUDGE

Page: 146    Date Filed: 12/02/2024    Document: 48-1    Appellate Case: 24-1201

HM1

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
115 E. Costilla St.
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:       9.2.104      Obstructing Passage and Assembly

Scheduled for: Deferred Sentence        Reason:

_____ (initial waiver) I have the right to a trial within ninety-one  days of the date I entered my plea of not guilty.  By requesting a continuance, I am waiving my right  to be tried within the ninety-one-day period.

I promise to appear:

> Friday 06/09/23, 09:00 AM
> Division: 1,  Room number: 110

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        3/3/23 SW        _____
Defendant or Attorney                 Date                   Telephone Number

_____        _____
Street Address                         City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____        _____        _____
Parent/Legal Guardian                 Date                   Telephone Number

_____        _____
Print Name                           Street Address

_____        _____
Relationship                         City, State, Zip Code

# COLORADO SPRINGS MUNICIPAL COURT

No.   MC 550945

Colorado Springs, Colo., _____ 20 _____

Received of _____

_____ Dollars

For _____

_____

☐ CASH
☐ CHECK _____
☐ CREDIT CARD _____

By _____

FILE

Date Filed: 12/02/2024   Document: 48-1   Appellate Case: 24-1201   Page: 148

Appellate Case: 24-1201    Document: 48-1    Date Filed: 12/02/2024    Page: 149

| | |
|---|---|
| **MUNICIPAL COURT, CITY OF COLORADO SPRINGS, EL PASO COUNTY, STATE OF COLORADO**<br>224 East Kiowa Street<br>Colorado Springs, CO 80903<br>Phone Number: (719) 385-5922 | |
| **PEOPLE OF THE STATE OF COLORADO** <u>ex rel</u>.<br>**THE CITY OF COLORADO SPRINGS,**<br>**Plaintiff,**<br><br>**v.**<br><br>**SHAUN WALLS,**<br>**Defendant.** | **COURT USE ONLY**<br><br>Case Number: 21M22263 |
| *Attorneys for Colorado Springs Police Department:*<br>OFFICE OF THE CITY ATTORNEY<br>Wynetta P. Massey, City Attorney (Atty. Reg. #18912)<br>Frederick P. Stein, Senior Attorney (Atty. Reg. #34481)<br>P.O. Box 1575, Mail Code 510<br>30 South Nevada Avenue, Suite 501<br>Colorado Springs, CO 80901<br>Telephone: (719) 385-5909<br>Fax number: (719) 385-5535<br>frederick.stein@coloradosprings.gov | |
| **NOTICE OF SUBMISSION OF DISK FOR COURT *IN CAMERA* REVIEW** | |

COMES NOW the Colorado Springs Police Department ("CSPD"), by and through the Office of the City Attorney, hereby notifies the Court and Defendant Shaun Walls that on this date, CSPD submitted a disk containing the BWC footage of Officer Scott Alamo for the Court *in camera* review pursuant to Order entered on November 10, 2021.

Dated this 15th day of November, 2021.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY,
CITY OF COLORADO SPRINGS, COLORADO
Wynetta P. Massey, City Attorney
Reg. No. 18912

By: _Frederick Stein_ _____

Frederick Stein, Senior Attorney, Reg. No. 34481
Colorado Springs City Attorney's Office
P. O. Box 1575, 30 South Nevada Avenue
Colorado Springs, Colorado 80901
Telephone: (719) 385-5909
Facsimile: (719) 385-5535

*Attorney for Colorado Springs Police Department*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2021, I served a copy of the foregoing **NOTICE OF SUBMISSION OF DISK FOR COURT *IN CAMERA* REVIEW** via email to the following:

Shantel Withrow
Prosecutor
Office of the City Attorney for the City
  of Colorado Springs
Prosecution Division
224 East Kiowa Street, Suite 410
Colorado Springs, CO 80903
E-mail: Shantel.Withrow@coloradosprings.gov
*Attorney for Plaintiff*

Jeffrey Barker
Barker & Tolini, P.C.
720 S. Tejon Street
Colorado Springs, CO 80903
E-mail: barker0230@yahoo.com
*Attorney for Defendant*

By: _Elisa Spencer_ _____
Elisa Spencer, Paralegal

2

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 150

# SEALED

# Court in camera review

People v. Walls; Case No. 21M22263

TO:   JUDGE KANE
ATTN: JUDGE RAMIREZ

Page: 151   Date Filed: 12/02/2024   Document: 48-1   Appellate Case: 24-1201

## Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5922
(719) 385-6202 Fax

WALLS, SHAUN EUGENE

███████████████████████

Case number: 21M22263
Summons Number: 3144661
Warrant number: W23005073

Original Charge: 9.2.104        Obstructing Passage and Assembly

Original Charge: 9.3.101A       Resist, Assaulting an Officer
                                Prohibited

Original Charge: 9.1.107        Conspiracy

---

BENCH WARRANT

---

THE PEOPLE OF THE CITY OF COLORADO SPRINGS, Plaintiff

vs.

SHAUN EUGENE WALLS, Defendant

GREETINGS:

WHEREAS Anthony  Spicuglia has made complaint against the defendant
and summons has been issued commanding the defendant to appear in this
court, and

WHEREAS said defendant has failed to appear on Friday, Jun 09 2023.

YOU ARE THEREFORE COMMANDED to arrest the above named person and bring
him before a judge in Colorado Springs Municipal Court, 224 E. Kiowa
Street, Colorado Springs, CO , to be dealt with according to law. It
is further ordered that the defendant be released from incarceration
on a personal recognizance bond with no other conditions if the
defendant does not appear before the municipal court for a hearing
within two calendar days, excluding Sundays and federal holidays.

DATED Monday, Jun 12 2023

Kane, HayDen William
Judge of the Municipal Court

City of Colorado Springs, County of El Paso, State of Colorado

---

Type: FTA

Total Bail: $200.00                          Total payable: $0.00

Release Option: Non-Payable

I certify that I have duly executed this warrant by serving it this
Tuesday, Jun 20 2023. The warrant is now cancelled.

Supp.App.152

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

WALLS, SHAUN EUGENE

Case number: 21M22263
Summons number: 3144661

Atty: BARKER, JEFFREY J
115 E. Costilla St.
Colorado Springs, CO, 80903
(719) 227-0230

Original Charge:         9.2.104      Obstructing Passage and Assembly

Scheduled for: Motion to Revoke            Reason: Deferred Sentence

promise to appear:

| Friday 06/23/23, 09:00 AM |
| Division: 1,  Room number: 110 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____      X 20 JUN 23_____      _____
Defendant or Attorney                Date                    Telephone Number

_____                             _____
Street Address                                               City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____      _____      _____
Parent/Legal Guardian                Date                    Telephone Number

_____                             _____
Print Name                                                   Street Address

_____                             _____
Relationship                                                 City, State, Zip Code

Page: 154   Date Filed: 12/02/2024   Document: 48-1   Appellate Case: 24-1201

Municipal Court, City of Colorado Springs, El Paso County, State of Colorado
Court Address:   224 East Kiowa Street
                 Colorado Springs, CO 80901

**Plaintiff:**   City of Colorado Springs
**vs.**
**Defendant:**   SHAUN WALLS

Attorney or Party Without Attorney (name and address):

Address:
         JEFFREY BARKER
         115 E. Costilla St.
         Colorado Springs, CO 80903

Telephone:   (719) 227-0230
Fax number:

n   **COURT USE ONLY**   n

Case Number:   **21M22263**

### ORDER TO SEAL ARREST AND CRIMINAL RECORDS OTHER THAN CONVICTIONS

In compliance with 27-72-705 (1)(a) CRS, the Court finds that this case meets one of the following conditions:  The case against the defendant has been completely dismissed, the defendant has been acquitted of all counts in the case, the defendant completed a diversion agreement pursuant to section 18-1.3-101 or the defendant completes a deferred judgement and sentence pursuant to section 18.1-3.102 and all counts have been dismissed.

Defendant's Name:   SHAUN WALLS                                      Date of Birth:   ▮▮▮▮▮
Current Mailing Address:   ▮▮▮▮▮▮▮
City:   Colorado Springs                      State:   CO      Zip Code:   ▮▮▮▮

**THEREFORE, THE COURT ORDERS the CRIMINAL RECORDS information specifically relating and contained in:**

Court case number:      21M22263             Law enforcement summons number:      3144661

**SHALL BE SEALED** immediately, except for basic identifying information, and that upon inquiry in the matter, the person in interest and criminal justice agencies to which this order is directed may properly reply that no such records exist with respect to such person.

The Court directs the above order to the Clerk of Court to seal the criminal case(s) listed above.

**The Court shall mail a copy of this Order by paper or electronically to:**
· SHAUN WALLS ▮▮▮▮▮
· Attorney:   JEFFREY BARKER 115 E. Costilla St.  Colorado Springs, CO 80903
· Sheriff's Department - ShrSealingOrders@ElPasoCo.Com
· Colorado Springs Police Department - Seal.Orders@ColoradoSprings.Gov
· Colorado Bureau of Investigation - 690 Kipling St. Suite 4000, Denver, CO 80215
· Colorado Springs Probation Department - Preception@ColoradoSprings.Gov
· Colorado Springs City Attorney - Prosecution.Attorney@ColoradoSprings.Gov
· Other _____
· Other _____
· Other _____

The court shall provide a copy of the court order to the Colorado Bureau of Investigation, and the defendant shall pay to the bureau **any costs** related to the sealing of his or her criminal justice records in the custody of the bureau.

Date:   6/23/23                    Municipal Court Judge: _____

**Defendant:** SHAUN WALLS

**Case Number:** 21M22263

I certify that on _____6·23·23_____, I mailed, faxed, e-mailed, or hand-delivered a copy of this **ORDER TO SEAL ARREST AND CRIMINAL RECORDS** to the following:

- SHAUN WALLS ███████████
- Attorney:   JEFFREY BARKER 115 E. Costilla St.  Colorado Springs, CO 80903
- Sheriff's Department - ShrSealingOrders@ElPasoCo.Com
- Colorado Springs Police Department - Seal.Orders@ColoradoSprings.Gov
- Colorado Bureau of Investigation - 690 Kipling St. Suite 4000, Denver, CO 80215
- Colorado Springs Probation Department - Preception@ColoradoSprings.Gov
- Colorado Springs City Attorney - Prosecution.Attorney@ColoradoSprings.Gov
- Other   _____
- Other   _____
- Other   _____

Municipal Court Clerk: _____

Page: 155    Date Filed: 12/02/2024    Document: 48-1    Appellate Case: 24-1201

## Colorado Springs Municipal Court

**CHRISTIANSEN, JONATHAN AARON**

**DOB:** ▮▮▮▮▮▮▮▮

**Case Number:** 21M22558          Sealed: YES

Prosecution Case Created: YES
Probation Case Created: YES

Original Charge(s)
Summons Number: 3144788

| | Finding | Finding Date |
|---|---|---|
| 9.3.101 - Resisting, Interference with Public Official | Dismissed | 01/06/2023 |
| 9.2.104 - Obstructing Passage and Assembly | Dismissed | 07/06/2022 |

**Issuing Officer:** Kyle  Vanderlinden

### COURT CASE FACE SHEET

| Date | ROA Action Text |
|---|---|
| Aug 14, 2021 | Case scheduled for Arraignment on Aug 24, 2021 1:30:00 PM for Division 2 |
| Aug 14, 2021 | Court Case Created, Case Number 21M22558 |
| Aug 20, 2021 | Court File Created |
| Aug 24, 2021 | ***** ALERT ***** 2 Cases |
| | 9.2.104 Obstructing Passage and Assembly |
| | Additional - Defendant continues AR to try and retain his own attorney. Set with 20M06648 on an AR docket. |
| | 9.3.101 Resisting, Interference with Public Official |
| | Case Related Disposition: |
| | Continuance - Schedule For: Arraignment, Continued By: Defendant |
| | Queue: SchSitting Judge: Gresham, Spencer A (8/24/21, PM, Div: 2)Recording Device: 20210824_124015 |
| Aug 24, 2021 | Case Scheduled for Arraignment on Sep 16, 2021 1:30:00 PM for Division 2 |
| Sep 15, 2021 | Peoples' Motion to Redact Body Worn Camera Video to be Released in Discovery |
| Sep 15, 2021 | Case Scheduled for Motion on Sep 16, 2021 1:30:00 PM for Division 2 |
| Sep 15, 2021 | Motion/Petition filed on Sep 15, 2021. Motion/Petition Type: Miscellaneous, Motion/Petition Part: Peoples' Motion to Redact Body Worn Camera Video to be Released in Discovery . |
| Sep 16, 2021 | ***** ALERT ***** 2 Cases |
| | 9.2.104 Obstructing Passage and Assembly |
| | Additional - Please set this AR/PT with Atty Cook's calendar on a PT docket as he is entering his appearance today. Please also set the MTN on this case for the same date and time as the AR/PT. |
| | 9.3.101 Resisting, Interference with Public Official |
| | Case Related Disposition: |
| | Continuance - Schedule For: Arraignment, Continued By: Defendant |
| | Queue: SchSitting Judge: HOFFECKER, KRISTEN L (9/16/21, PM, Div: 2)Recording Device: 20210916_123952 |
| Sep 16, 2021 | Case Scheduled for Pre-Trial AR  on Oct 14, 2021 2:00:00 PM for Division 3 |
| Sep 16, 2021 | Case Scheduled for Pre-Trial AR  on Oct 21, 2021 1:30:00 PM for Division 3 |
| Sep 16, 2021 | Removed Pre-Trial Scheduled for Oct 14, 2021 2:00:00 PM, Division 3, Reason: Date not needed |
| Sep 16, 2021 | Case Scheduled for Motion on Oct 21, 2021 1:30:00 PM for Division 3 |
| Sep 27, 2021 | Retained Attorney: COOK, WILL |
| Sep 29, 2021 | Entry of Appearance |

Municipal Court
City of Colorado Springs, CO
Certified to be a full, true and correct copy of the original in my custody.

Wendi Lichtenegger
Clerk of Court

By: _____
Deputy Clerk

Page 1 of 6

Page:156

Date Filed: 12/02/2024

Document: 48-1

Appellate Case: 24-1201

**Colorado Springs Municipal Court**

**CHRISTIANSEN, JONATHAN AARON**                                        DOB: ▮▮▮▮▮▮▮▮

Oct 21, 2021   ***** ALERT *****  2 cases
               9.2.104 Obstructing Passage and Assembly
               Additional -  Set on 10/27/21 PM 5 docket
               9.3.101 Resisting, Interference with Public Official
               Case Related Disposition:
               Continuance - Schedule For: Motion
               Atty/Int - Atty not present
               Queue: SchSitting Judge: Price, Michele S. (10/21/21, PM, Div: 3)Recording
               Device: 20211021.130650

Oct 21, 2021  Case Scheduled for Motion on Oct 27, 2021 1:30:00 PM for Division 5

Oct 27, 2021   ***** ALERT *****  2 cases
               9.2.104 Obstructing Passage and Assembly
               Additional -  Def will sign for November 10, 2021 at 1:30pm in Div 5.  Atty not
               present.  Atty Kay and Atty Barker texted with Atty Cook who authorized this
               scheduling.
               9.3.101 Resisting, Interference with Public Official
               Case Related Disposition:
               Continuance - Schedule For: Motion
               Atty/Int - Atty not present
               Mtn/Pet - Motions/Petitions: Miscellaneous/Pending [ Peoples' Motion to Redact
               Body Worn Camera Video to be Released in Discovery  - Pending ]
               Queue: SchSitting Judge: Dirscherl, Joseph D. (10/27/21, PM, Div: 5)Recording
               Device: 20211027_130447

Oct 27, 2021  Case Scheduled for Motion on Nov 10, 2021 1:30:00 PM for Division 5

Page: 157    Date Filed: 12/02/2024    Document: 48-1    Appellate Case: 24-1201

Supp.App.157

## Colorado Springs Municipal Court

**CHRISTIANSEN, JONATHAN AARON**                                    DOB: ▮▮▮▮▮▮▮

Nov 10, 2021   ***** ALERT *****   2 cases
              9.2.104 Obstructing Passage and Assembly
              Additional -  The Defense objects to the City's Motion to redact BWC. Judge
              orders all Defense motions heard on the Shulkin matter be included in
              codefendants cases as well. Set on 11/17/21 PM1 on Ramirez' docket. Set w/
              Archuleta, Shulkin, and Walls.
              9.3.101 Resisting, Interference with Public OfficialCase Related Disposition:
              Continuance - Schedule For: Motion
              Atty/Int - Atty present
              Mtn/Pet - Motions/Petitions: Miscellaneous/Denied [ Peoples' Motion to Redact
              Body Worn Camera Video to be Released in Discovery  - Denied ] &
              Discovery/Granted in Part/Denied in Part [ Defs MTN's - Granted in Part/Denied
              in Part ] & Discovery/Granted [ Defs MTN to receive the City's witness list as
              well as their addresses except for LEO's to be provided within 21 days of
              trial. - Granted ] & Discovery/Denied [ Defs MTN to have criminal records
              provided on the City's lay witnesses.  - Denied ] & Discovery/Pending [ Defs
              MTN to have internal affairs records of any officer the City intends to call. -
              Pending ] & Discovery/Denied [ Defs MTN to have the order in which the City
              plans to call their witnesses.  - Denied ] & Discovery/Granted [ Defs MTN to
              have all original notes, whether handwritten or machine written, of all LEO's
              and experts made in connection with this case, whether or not those are
              designated "police,arrest,crime, or offense reports." The City is to provide a
              "Do not destroy" letter to LEO's involved.  - Granted ] & Discovery/Denied [
              Defs MTN to have all original notes, whether handwritten or machine written, of
              any State agency (e.g. prosecutor, investigator, etc.), made in connection with
              this case, which is not work product, including but not limited to notes which
              substantially relate to any witness statement. - Denied ] & Discovery/Granted [
              Defs MTN to have all radio dispatch tapes of law enforcement made in connection
              with this case. - Granted ] & Discovery/Granted [ Defs MTN to have all oral,
              recorded and written statements of the Defendants. Oral statements of the
              Defendant are requested to be provided verbatim, including but not limited to
              any recorded messages. - Granted ] & Discovery/Withdrawn [ Defs MTN to have the
              substance of any and all oral statements made to the State agent by endorsed
              witness or any anticipated rebuttal witness and their records other than Police
              Witnesses in preparation during and after the protest in litigation. -
              Withdrawn ] & Discovery/Withdrawn [ Defs MTN to have all oral conversations,
              verbatim, between any and all State witnesses, which relate to this case, to
              the Defendant. - Withdrawn ] & Discovery/Withdrawn [ Defs MTN to have the names
              and addresses of all persons acting on behalf of the State as witness liaisons,
              secretaries, or otherwise who have had contact with any witnesses in this case
              and the substance of any conversations or other communications about this case
              between the witnesses and the liaisons, specifically the victim impact
              statements. - Withdrawn ] & Discovery/Not Addressed [ Defs MTN to have any
              undercover officer or agent of CSPD that was embedded in the protest.  - Not
              Addressed ] & Discovery/Not Addressed [ Defs MTN to have any and all
              information concerning a special investigations unit working with the police
              involving any of the protesters.  - Not Addressed ] & Discovery/Not Addressed [
              Defs MTN to have any correspondence or "training" the City Prosecutors and CSPD
              have had concerning BLM protests or affiliated left wing groups involved in
              protests. - Not Addressed ]
              Sitting Judge: RAMIREZ, MATTHEW D (11/10/21, PM, Div: 5)Recording Device:
              20211110_124338
Nov 10, 2021  Case Scheduled for Motion on Nov 17, 2021 1:30:00 PM for Division 1
Nov 15, 2021  Notice of Submission of Disk for Court In Camera Review

**Colorado Springs Municipal Court**

<u>CHRISTIANSEN, JONATHAN AARON</u>                                        DOB: ▮▮▮▮▮

Nov 17, 2021   ***** ALERT *****   2 cases
                9.2.104 Obstructing Passage and Assembly
                Additional – Atty Heim and Barker present for Atty Cook. CA Withrow is present
                for the City. Judge orders that a portion of the BWC will enter in as evidence
                in this matter. Anything before 1:24:25 will be redacted. Anything after
                1:24:25 will enter. The City is to provide this portion of the BWC to the
                defendant and their counsel by 11/24/2021. The City does not object and will
                notify the court if that deadline cannot be met. The City moves to have the BWC
                placed in the court file sealed for appellate purposes. Set PTC after 11/24/21.
                9.3.101 Resisting, Interference with Public OfficialCase Related Disposition:
                Continuance – Schedule For: Pre-Trial
                Atty/Int – Atty not present
                Mtn/Pet – Motions: Discovery/Pending [ Defs MTN to have internal
                affairs records of any officer the City intends to call. – Pending ] &
                Discovery/Not Addressed [ Defs MTN to have any undercover officer or agent of
                CSPD that was embedded in the protest. – Not Addressed ] & Discovery/Not
                Addressed [ Defs MTN to have any and all information concerning a special
                investigations unit working with the police involving any of the protesters. –
                Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any correspondence
                or "training" the City Prosecutors and CSPD have had concerning BLM protests or
                affiliated left wing groups involved in protests. – Not Addressed ]
                Sitting Judge: RAMIREZ, MATTHEW D (11/17/21, PM, Div: 1)Recording Device:
                20211117_125513
Nov 17, 2021   Case Scheduled for Pre-Trial on Dec 13, 2021 2:30:00 PM for Division 3
Dec 10, 2021   Case Scheduled for Pre-Trial on Jan 20, 2022 2:30:00 PM for Division 3
Dec 10, 2021   Removed Pre-Trial Scheduled for Dec 13, 2021 2:30:00 PM, Division 3, Reason:
                Replacement
Jan 20, 2022   ***** ALERT *****   2 Cases
                9.2.104 Obstructing Passage and Assembly
                Additional – Attorney Damon Cassens here on behalf of Attorney Earl Cook.
                Defendant present with Attorney Damon Cassens.
                9.3.101 Resisting, Interference with Public Official
                Case Related Disposition:
                Continuance – Schedule For: Pre-Trial,  Continued By: Defendant
                Atty/Int – Atty present
                Queue: SchSitting Judge: HOFFECKER, KRISTEN L (1/20/22, PM, Div: 3)Recording
                Device: 20220120_130045
Jan 20, 2022   Case Scheduled for Pre-Trial on Feb 17, 2022 9:00:00 AM for Division 4
Feb 17, 2022   ***** ALERT *****   2 Cases
                9.2.104 Obstructing Passage and AssemblyDispo – Plea: NG
                Additional – Def/Atty advised that the JD must be posted of waived within 21
                days of today's date and JT/JOH cannot/will not be scheduled unless the JD is
                posted or waived. Please also set JOH.
                9.3.101 Resisting, Interference with Public OfficialDispo – Plea: NG
                Additional – Def/Atty advised that the JD must be posted of waived within 21
                days of today's date and JT/JOH cannot/will not be scheduled unless the JD is
                posted or waived. Please also set JOH.
                Case Related Disposition:
                Continuance – Schedule For: Trial to Jury,  Trial Type: Jury Trial
                Atty/Int – Atty present
                Queue: SchSitting Judge: Briggle, Robert D. (2/17/22, AM, Div: 4)Recording
                Device: 021722_080104
Feb 17, 2022   Case Scheduled for Trial to Jury on Apr 22, 2022 8:15:00 AM for Division 4
Feb 17, 2022   Case Scheduled for Jury Orders Hearing on Apr 20, 2022 2:30:00 PM for Division
                3

Page: 159   Date Filed: 12/02/2024   Document: 48-1   Appellate Case: 24-1201

**Colorado Springs Municipal Court**

**CHRISTIANSEN, JONATHAN AARON**                                    DOB: ▓▓▓▓▓▓▓▓

| | |
|---|---|
| Feb 17, 2022 | Payment:Total Amount Paid: $25.00, Receipt: 220217-04-0005Applied $25.00 to Jury Deposit, Balance: $0.00 |
| Feb 17, 2022 | Jury deposit record created, posted amount $25.00. |
| Apr 20, 2022 | ***** ALERT *****  2 Cases |

9.2.104 Obstructing Passage and Assembly
Additional - Def not present with Atty Cook. CA Davis is present for The City. Atty Cook has no objection to The City's MTN to Continue. Atty Cook will waive Speedy Trial in order to set further out. PLease also set JOH.
9.3.101 Resisting, Interference with Public Official
Additional -  Def not present with Atty Cook. CA Davis is present for The City. Atty Cook has no objection to The City's MTN to Continue. Atty Cook will waive Speedy Trial in order to set further out. PLease also set JOH.
Case Related Disposition:
Continuance - Schedule For: Trial to Jury,  Continued By: Prosecution,  Speedy Trial Waiver ,  Days Left: 91
Atty/Int - Atty present
Mtn/Pet - Motions/Petitions: Discovery/Pending [ Defs MTN to have internal affairs records of any officer the City intends to call. - Pending ] & Discovery/Not Addressed [ Defs MTN to have any undercover officer or agent of CSPD that was embedded in the protest.  - Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any and all information concerning a special investigations unit working with the police involving any of the protesters.  - Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any correspondence or "training" the City Prosecutors and CSPD have had concerning BLM protests or affiliated left wing groups involved in protests. - Not Addressed ] & Continue/Granted [ The City moves to continue due to a witness being unavailable - Granted ]
Queue: SchSitting Judge: Carter, Carol (4/20/22, PM, Div: 3)Recording Device: 042022_130220

| | |
|---|---|
| Apr 20, 2022 | Removed Trial to Jury Scheduled for Apr 22, 2022 8:15:00 AM, Division 4 |
| Apr 20, 2022 | Case Scheduled for Trial to Jury on Jul 8, 2022 8:15:00 AM for Division 4 -- Speedy Trial Waived. |
| Apr 20, 2022 | Case Scheduled for Jury Orders Hearing on Jul 6, 2022 2:30:00 PM for Division 3 |
| Jul 06, 2022 | ***** ALERT *****  2 cases |

9.2.104 Obstructing Passage and AssemblyDispo - Finding: DM
Additional - Attorney Houston present for Attorney Cook.
9.3.101 Resisting, Interference with Public OfficialDispo - Plea: G,  Finding: DS,  CC: $150.00,  SC: $0.00,  ITS: $0.00,  DS Term: 6M,  DS Date: 01/06/23
Court Orders - Prob Term: 6M,  Conditions: NCV,  Informal ,  Special Instructions: Defendant to keep the court informed of address.
Additional -  The defendant appears with the attorney.
Case Related Disposition:
Atty/Int - Atty present ,  Atty withdrawn
Closing - Jury Deposit: Apply
Queue: Pmts, ProbSitting Judge: Dirscherl, Joseph D. (7/6/22, PM, Div: 3)Recording Device: 20220706_125721

| | |
|---|---|
| Jul 06, 2022 | Removed Trial to Jury Scheduled for Jul 8, 2022 8:15:00 AM, Division 4 |
| Jul 06, 2022 | Case scheduled for Deferred Sentence on Jan 6, 2023 9:00:00 AM for Division 1 |
| Jul 06, 2022 | Jury deposit released, amount $25.00. |
| Jul 06, 2022 | Withdrawn Attorney: COOK, WILL |
| Jul 06, 2022 | Motion/Petition filed on Jul 6, 2022. Motion/Petition Type: Attorney Withdrawal Result: Granted |
| Jul 06, 2022 | Jury deposit applied, amount $25.00. |
| Jul 06, 2022 | Payment:JD Apply: $25.00, Receipt: 220706-04-0019Applied $25.00 to Court Cost, Balance: $125.00 |

Page 5 of 6

## Colorado Springs Municipal Court

**CHRISTIANSEN, JONATHAN AARON**                                                    DOB: ▓▓▓▓▓▓▓

| | |
|---|---|
| Jul 06, 2022 | Disposition Entry:Charge 9.3.101: Fine/CC:Court Cost: $150.00 |
| Jul 06, 2022 | Payment:Total Amount Paid: $125.00, Receipt: 220706-04-0020Applied $125.00 to Court Cost, Balance: $0.00 |
| Jul 06, 2022 | Disposition Entry:Charge 9.3.101: Fine/CC:Court Cost: $150.00 |
| Dec 21, 2022 | Motion to Withdraw Guilty Plea and Dismiss E-Filed |
| Dec 21, 2022 | Motion/Petition filed on Dec 21, 2022. Motion/Petition Type: Motion to Withdraw Guilty Plea and Dismiss Case, Motion/Petition Part: Withdraw Guilty Plea and Dismiss Case. |
| Jan 06, 2023 | Motion for Discovery Not Addressed |
| Jan 06, 2023 | 9.2.104 Obstructing Passage and Assembly 9.3.101 Resisting, Interference with Public OfficialDispo - Plea: GW,  Finding: DM,  DS Date: nullCase Related Disposition: Mtn/Pet - Motions/Petitions: Discovery/Not Addressed [ Defs MTN to have internal affairs records of any officer the City intends to call. - Pending ] & Discovery/Not Addressed [ Defs MTN to have any undercover officer or agent of CSPD that was embedded in the protest.  - Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any and all information concerning a special investigations unit working with the police involving any of the protesters.  - Not Addressed ] & Discovery/Not Addressed [ Defs MTN to have any correspondence or "training" the City Prosecutors and CSPD have had concerning BLM protests or affiliated left wing groups involved in protests. - Not Addressed ] & Motion to Withdraw Guilty Plea and Dismiss Case/Granted [ Withdraw Guilty Plea and Dismiss Case - Granted ] Sitting Judge: RAMIREZ, MATTHEW D (1/6/23, AM, Div: 1)Recording Device: 20230106_083216 |
| Jan 06, 2023 | Disposition Entry:Charge 9.2.104: Fine/CC:Fine: $0.00 |
| Jan 06, 2023 | Disposition Entry:Case Status Open changed to Closed |
| Jan 06, 2023 | Order to Seal Arrest and Criminal Records signed and executed. |
| Jan 11, 2023 | Probation Case Created |
| Jan 25, 2023 | Probation Status changed to Closed |
| Jan 25, 2023 | Probation Officer changed to Britton, Amy |
| Feb 06, 2023 | Record Sealed |

**Supp.App.161**

3144788-1

**UNIFORM SUMMONS AND COMPLAINT / PENALTY ASSESSMENT** ___ of ___

( ) Colorado Springs Police Dept.    ( ) Other ____    ( ) Fingerprinted?    ( ) Photographed?

( ) Municipal Court ( ) El Paso County Court ( ) El Paso County Juvenile Court Room W250 (See Below)

FOR OFFICIAL USE ONLY ( ) Municipal Court Re-Service

( ) Traffic ( ) Non Traffic ( ) Minor Operator ( ) Commercial Operator ( ) Juvenile (Parent must appear)

Accident/Case Number: 21-28345

MNI ____ Booking Number ____

DRUGS / ALCOHOL / GANGS / HATE CRIMES / FIREARMS
AGGRESSIVE DRIVING / NTU INTERSECTIONS

**THE PEOPLE OF THE STATE OF COLORADO, CITY OF COLORADO SPRINGS vs:**

SHO/DI  Y (N)    Interpreter Needed? Y (N)

First Name: JONATHAN    Middle Name: AARON    Last Name: CHRISTIANSEN

Address: ____

Home Phone: ____    Probation/Parole Officer Name: ____

Gang (N)    Registered Sex Offender (N)

Gang Set: N/A

Employer / School: UCCS    Address: 1420 AUSTIN BLUFFS PKWY    City: COS    State: CO    Work Phone: ____

Drivers License Number: ____    Presented? (Y) N    State: CO    Race: W    Sex: M    Hgt: 6-00    Wgt: 170    Hair: BRO    Eyes: BRO    Skin Tone: LIGHT    SS: ____

Aliases: N/A    Scars/Marks/Tattoos: BREAD AND ROSES LEFT FOREARM    Place of Birth: OGDEN, UT.

Vehicle License Number: ____    State: ____    Lic Year: ____    Veh Year: ____    Make: ____    Model: ____    Type or Body Style: ____    Veh Color: ____    Driver (-)    Aggressive Passenger (-) Driving Y N

V.I.N. (last 4): ____    Evidence: X    MNI Photos: Y (N)    Weapon Used: Y (N)    Weapon Description / Trailer Description: ____

**YOU ARE HEREBY DIRECTED TO APPEAR AS INDICATED**

( ) El Paso Combined Court — First Appearance Center (phone number on back)
270 S. Tejon Street, Room W119, Colorado Springs, Colorado on the ____

( ) Colorado Springs Municipal Court (phone numbers on back)
224 E. Kiowa St., Colorado Springs, Colorado on the ____    24 DAY OF AUGUST, 2021 at 1:30 A.M./P.M.
(date)    (month)    (year)

*Failure to pay fine penalty or appear in court may result in a bench warrant for your arrest and/or your driver's license being revoked.*

**SEE BACK FOR INSTRUCTIONS** If this date falls on a day when the court is closed, including weekends and holidays, you are to appear on the next business day.

TO ANSWER CHARGES OF VIOLATIONS OF: ( ) 1973 CRS as amended ( ) Colorado Children's Code (X) The code of the City of Colorado Springs, 2001, as amended.

Charge No. 1    Section: 9.2.104    Title: OBSTRUCTING PASSAGE/ASSEMBLY    Com. Code ____    Fine Penalty $ ____    Surcharge ____    Points ____    FELONY ( ) MISD (X)

Description: DEF STANDING IN ROADWAY OBSTRUCTING PASSAGE

Charge No. 2    Section: 9-3.101    Title: RESISTING, INTERFERENCE w/PUBLIC OFFICIAL    Com. Code ____    Fine/Penalty $ ____    Surcharge ____    Points ____    FELONY ( ) MISD (X)

Description: OFFICERS ATTEMPTING ARREST OF ANOTHER/ DEF GRABBED OFFICER

Victims/Brochure ( )    Companion Summon Numbers: N/A

TOTAL TO BE PAID BY MAIL $ ____    TOTAL POINTS

COURT    COURT

APPROXIMATE LOCATION OF VIOLATION: Located in Colorado Springs, El Paso County, Colorado
700 VICTOR ST.    Violation Mo Day Yr: 8/1/2021    Approx. Time of Violation: 12:00 HRS

CUSTODY / SERVICE / LOCATION: 9:00 S TEJON / 955 W MORENO AVE 80904    Service Mo Day Yr: 8/1/2021    Approx. Time: 1330 HRS

(X) NON PAYABLE SUMMONS ( ) TRAFFIC (X) CRIMINAL    ( ) PAYABLE SUMMONS OR PENALTY ASSESSMENT ( ) TRAFFIC INFRACTION ( ) TRAFFIC OFFENSE ( ) CRIMINAL

WITHOUT ADMITTING GUILT, I HEREBY PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED AND I ACKNOWLEDGE RECEIPT OF THIS SUMMONS AND COMPLAINT.

DEFENDANT: ____

UPON PAYMENT WITHIN 20 DAYS, I WAIVE ALL RIGHTS LISTED ON THE REVERSE, I ACKNOWLEDGE GUILT OF ALL CHARGES CONTAINED HEREON AND UNDERSTAND THAT THE POINTS INDICATED ABOVE WILL BE ASSESSED AGAINST MY DRIVERS LICENSE (OR, FOR A CRIMINAL CHARGE, REPORTED TO MY CRIMINAL RECORDS). IF I DO NOT MAKE PAYMENT WITHIN 20 DAYS, I AM NOT ADMITTING GUILT AND HEREBY PROMISE TO APPEAR AS INDICATED ABOVE

DEFENDANT: ____    PARENT: ____    (IF DEFENDANT UNDER THE AGE OF 18)

**( ) JUVENILE COMPLAINT AND REFERRAL**

YOU ARE REQUIRED TO APPEAR IN ROOM #W250 OF THE EL PASO COUNTY COURT 270 S. Tejon Street ON THE ____ DAY OF ____ 20 ____ AT 9:00 A.M.

With my signature below, I also acknowledge I read the special rights and responsibilities for minors (found on the reverse side of this document.)

CHILD'S SIGNATURE ____ DATE/TIME ____    PARENT'S SIGNATURE ____ DATE/TIME ____

Parents Notified? ____ Date: ____    Time: ____    AM/PM Officer ____    NO. ____

Mother's Name / Address ____    Home Phone ____    Work Phone ____

Father's Name / Address ____    Home Phone ____    Work Phone ____

Guardian's Name / Address ____    Home Phone ____    Work Phone ____

Interviewed Y N    PRINT Name of Parent / Guardian present during interview ____

( ) Defendant Held in Custody    ( ) EL PASO COUNTY CRIMINAL JUSTICE CENTER    ( ) SPRING CREEK JUVENILE DETENTION CENTER

(X) Defendant released on Promise to Appear

The Undersigned have probable cause to believe that the defendant committed the offense(s) against the peace and dignity of the people of the State of Colorado, City of Colorado Springs and certify that this Summons and Complaint was signed and served upon the defendant at the location and on the date referenced above.

OFFICER K. VANDERCLUDEN, ____    Print Last Name ____    NO. 3527    OFFICER ____    Print Last Name ____ NO. ____

Officer Signature ____    Badge Number: 3527    Officer Signature ____    Badge Number ____

COMPLAINING WITNESS ____    SERVED BY ____ ISON, Officer Signature    Print Last Name: ISON    NO. 5729

**ORIGINAL COURT COPY**

09/10

3144788

Supp.App.162

## SERVE AND RELEASE AFFIDAVIT
*(Municipal Court* and *County Court)*

_____ Charges of_____

Page: 163

Date Filed: 12/02/2024

Document 48-1

Appellate Case: 24-1201

**WEATHER** ( ) Clear ( ) Cloudy ( ) Rain ( ) Snow ( ) Fog ( ) Dawn ( ) Dusk
**ATTITUDE** ( ) Excellent ( ) Good ( ) Fair ( ) Poor
**DAMAGE** ( ) Slight ( ) Moderate ( ) Heavy ( ) Injury
**TRAFFIC** ( ) Vehicle ( ) PED ( ) Bicycle ( ) Oncoming ( ) Same ( ) Cross
**SURFACE CONDITIONS** ( ) Dry ( ) Wet ( ) Snowpacked ( ) Icy ( ) Sanded
**DIRECTION OF TRAVEL** ( ) North ( ) South ( ) East ( ) West
**INTERSECTION** ( ) Crosswalk ( ) Stop Bar
**RADAR** Gun Number_____ Fork Numbers _____/_____ ( ) Posted ( ) Non-Posted
( ) School Zone **POLICE VEH** _____( ) Speedometer Check Date_____

Commercial Truck Information:
GVWR_____ (truck) +
_____ (trailer) =
_____ Total Weight

**OFFICERS WHO SHOULD BE NOTIFIED BY PROSECUTOR FOR TRIAL:**
Officer_____ Ser #_____
Officer_____ Ser #_____

| Victim's Name  Last, first MI | DOB | Race | Sex | Address (and email) | Hm Phone | Wk Phone |
|---|---|---|---|---|---|---|
| Victim's Name Last, first MI | DOB | Race | Sex | Address (and email) | Hm Phone | Wk Phone |
| Business Name (If Victim) | | | | Business Address (and email) | | Business Phone |
| Witness Name Last, first MI | DOB | Race | Sex | Address (and email) | Hm Phone | Wk Phone |
| Witness Name Last, first MI | DOB | Race | Sex | Address (and email) | Hm Phone | Wk Phone |

PROSECUTION COPY

Supp.App.163

② 

**Colorado Springs Municipal Court**

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

Original Charge:     9.2.104     Obstructing Passage and Assembly

Scheduled for: Arraignment                    Reason:

I promise to appear:

| Thursday 09/16/21, 01:30 PM |
| Division: 2,  Room number: 210 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____     _____     _____
Defendant or Attorney             Date                Telephone Number

_____                          _____
Street Address                                   City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____     _____     _____
Parent/Legal Guardian             Date                Telephone Number

_____     _____
Print Name                        Street Address

_____     _____
Relationship                      City, State, Zip Code

**Colorado Springs Municipal Court**

224 East Kiowa Street
P.O. Box 2169                                        (719) 385-5928
Colorado Springs, CO 80901-2169                      (719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON                         Case number: 21M22558
                                                     Summons number: 3144788

████████████████████

Original Charge:        9.2.104        Obstructing Passage and Assembly

Scheduled for: Pre-Trial                        Reason: AR

I promise to appear:

| |
|---|
| Thursday 10/21/21, 01:30 PM |
| Division: 3,  Room number: 215 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        _____        _____
Defendant or Attorney                   Date                      Telephone Number

_____        _____
Street Address                          City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____        _____        _____
Parent/Legal Guardian                   Date                      Telephone Number

_____        _____
Print Name                              Street Address

_____        _____
Relationship                            City, State, Zip Code

## Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

Original Charge:        9.2.104        Obstructing Passage and Assembly

Scheduled for: Motion                    Reason:

I promise to appear:

| |
|---|
| Thursday 10/21/21, 01:30 PM<br>Division: 3,  Room number: 220 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        _____        _____
Defendant or Attorney                  Date                   Telephone Number

_____                              _____
Street Address                                City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____        _____        _____
Parent/Legal Guardian                  Date                   Telephone Number

_____                              _____
Print Name                                    Street Address

_____                              _____
Relationship                                  City, State, Zip Code

Date Filed:12/04/2024 · Page: 166 · Document: 48-1 · Appellate Case: 24-1201

**Colorado Springs Municipal Court**

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:        9.2.104        Obstructing Passage and Assembly

Scheduled for: Motion                          Reason:

promise to appear:

| Wednesday 10/27/21, 01:30 PM |
| Division: 5,  Room number: 320 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        10.21.21        _____
Defendant or Attorney          Date                    Telephone Number

_____                         _____
Street Address                                  City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant and that if I do not appear, a summons may be issued charging me with contempt of court and I may be subject to arrest.

_____        _____        _____
Parent/Legal Guardian          Date                    Telephone Number

_____                         _____
Print Name                                      Street Address

_____                         _____
Relationship                                    City, State, Zip Code

Appellate Case: 24-1201   Document: 21   Date Filed: 12/02/2024   Page: 167

Page: 168

Date Filed: 12/02/2024

Document: 48-1

Appellate Case: 24-1201

**IN THE MUNICIPAL COURT**
**FOR THE CITY OF COLORADO SPRINGS**

FILED IN
COLORADO SPRINGS
MUNICIPAL COURT
EL PASO COUNTY. COLORADO

2021 SEP 29 P 3: 24
CG

| | |
|---|---|
| **Plaintiff:** City of Colorado Springs<br>**v.**<br>**Defendant:** Jonathan Christiansen | |
| Attorney for Defendant:<br><br>Earl W. Cook, Jr. Esq.<br>624 S. Cascade Avenue<br>Colorado Springs, CO 80903<br>Phone: 719-477-1285<br>Fax: 1-719-520-3536<br>E-mail: willcooklawoffice@gmail.com<br>Atty. Reg. # 31357 | ▲ COURT USE ONLY ▲<br><br>Case Number: **21M22558**<br><br>Div.:     Ctrm: |
| **ENTRY OF APPEARANCE** | |

COMES NOW, Earl W. Cook, Jr., and hereby enters his appearance on behalf of Defendant Jonathan Christiansen.

DATED: September 27, 2021

Respectfully Submitted,

*/s/ Earl W. Cook, Jr.*

Earl W. Cook, Jr.
Counsel for Defendant
624 S. Cascade Avenue
Colorado Springs, CO 80903
Tel: 719-477-1285
Fax: 1-719-520-3536

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 169

## CERTIFICATE OF MAILING

I hereby certify that a true and correct copy of this **Entry of Appearance** was sent via Electronic Mail to the following parties:

City Attorney's Office
Colorado Springs Municipal Court
224 E. Kiowa Street
Colorado Springs, CO 80903

*Via Email: prosecution.attorney@coloradosprings.gov*

Colorado Springs Municipal Court
224 E. Kiowa Street
Colorado Springs, CO 80903

*Via Email: municipalcourtviolations@coloradosprings.gov*

DATED: September 27, 2021

*/s/ Tom Cook*
_____

Colorado Springs Municipal Court

224 East Kiowa Street                                    (719) 385-5928
P.O. Box 2169
Colorado Springs, CO 80901-2169                         (719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON                            Case number: 21M22558
                                                        Summons number: 3144788

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:          9.2.104        Obstructing Passage and Assembly

Scheduled for: Motion                           Reason:

promise to appear:

| Wednesday 11/10/21, 01:30 PM |
| Division: 5,   Room number: 320 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may
be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        _____        _____
Defendant or Attorney                  Date                 Telephone Number

_____                            _____
Street Address                                 City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the
above  named Defendant. I further understand that I must appear even in the absence of the above
named Defendant  and that if I do not appear, a summons may be issued charging me with contempt
of court and I may be  subject to arrest.

_____        _____        _____
Parent/Legal Guardian                  Date                 Telephone Number

_____                            _____
Print Name                                     Street Address

_____                            _____
Relationship                                   City, State, Zip Code

Appellate Case: 24-1201   Document: 48   Date Filed: 12/02/2024   Page: 170

5

## Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:          9.2.104       Obstructing Passage and Assembly

Scheduled for: Motion                          Reason:

I promise to appear:

| Wednesday 11/17/21, 01:30 PM<br>Division: 1,  Room number: 110 |
|---|

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____     11·10·21     _____
Defendant or Attorney               Date          Telephone Number

_____                    _____
Street Address                                     City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____     _____     _____
Parent/Legal Guardian               Date               Telephone Number

_____                         _____
Print Name                                              Street Address

_____                         _____
Relationship                                            City, State, Zip Code

Appellant Case: 22CA1451   Document: 1461   Date Filed: 12/02/2024   Page: 171

Appellate Case: 24-1201    Document: 48-1    Date Filed: 12/02/2024    Page: 172

| | |
|---|---|
| **MUNICIPAL COURT, CITY OF COLORADO SPRINGS, EL PASO COUNTY, STATE OF COLORADO**<br>224 East Kiowa Street<br>Colorado Springs, CO  80903<br>Phone Number:  (719) 385-5922 | 2021 NOV 15  A 9 05 |
| **PEOPLE OF THE STATE OF COLORADO** _ex rel_.<br>**THE CITY OF COLORADO SPRINGS,**<br>**Plaintiff,**<br><br>**v.**<br><br>**JONATHAN CHRISTIANSEN,**<br>**Defendant.** | **COURT USE ONLY**<br><br>Case Number:  21M22558 |
| _Attorneys for Colorado Springs Police Department:_<br>OFFICE OF THE CITY ATTORNEY<br>Wynetta P. Massey, City Attorney (Atty. Reg. #18912)<br>Frederick P. Stein, Senior Attorney (Atty. Reg. #34481)<br>P.O. Box 1575, Mail Code 510<br>30 South Nevada Avenue, Suite 501<br>Colorado Springs, CO  80901<br>Telephone:   (719) 385-5909<br>Fax number: (719) 385-5535<br>frederick.stein@coloradosprings.gov | |

### NOTICE OF SUBMISSION OF DISK FOR COURT _IN CAMERA_ REVIEW

COMES NOW the Colorado Springs Police Department ("CSPD"), by and through the Office of the City Attorney, hereby notifies the Court and Defendant Jonathan Christiansen that on this date, CSPD submitted a disk containing the BWC footage of Officer Scott Alamo for the Court _in camera_ review pursuant to Order entered on November 10, 2021.

Dated this 15th day of November, 2021.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY,
CITY OF COLORADO SPRINGS, COLORADO
Wynetta P. Massey, City Attorney
Reg. No. 18912

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 173

By:  _____

Frederick Stein, Senior Attorney, Reg. No. 34481
Colorado Springs City Attorney's Office
P. O. Box 1575, 30 South Nevada Avenue
Colorado Springs, Colorado 80901
Telephone:  (719) 385-5909
Facsimile:  (719) 385-5535

*Attorney for Colorado Springs Police Department*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2021, I served a copy of the foregoing **NOTICE OF SUBMISSION OF DISK FOR COURT *IN CAMERA* REVIEW** via email to the following:

Shantel Withrow
Prosecutor
Office of the City Attorney for the City
 of Colorado Springs
Prosecution Division
224 East Kiowa Street, Suite 410
Colorado Springs, CO 80903
E-mail:  Shantel.Withrow@coloradosprings.gov
*Attorney for Plaintiff*

Will Cook
The Law Office of Will Cook
624 S. Cascade Avenue
Colorado Springs, CO  80903
E-mail:  willcooklawoffice@gmail.com
*Attorney for Defendant*

By:  _____

Elisa Spencer, Paralegal

2

Appellate Case: 24-1201    Document: 48-1    Date Filed: 12/02/2024    Page: 174

| | |
|---|---|
| **MUNICIPAL COURT, CITY OF COLORADO SPRINGS, EL PASO COUNTY, STATE OF COLORADO**<br>224 East Kiowa Street<br>Colorado Springs, CO  80903<br>Phone Number:  (719) 385-5922 | 2021 NOV 15  A 9: 06 |
| **PEOPLE OF THE STATE OF COLORADO** <u>ex rel</u>.<br>**THE CITY OF COLORADO SPRINGS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JONATHAN CHRISTIANSEN,**<br>**Defendant.** | **COURT USE ONLY**<br><br>Case Number:  21M22558 |
| *Attorneys for Colorado Springs Police Department:*<br>OFFICE OF THE CITY ATTORNEY<br>Wynetta P. Massey, City Attorney (Atty. Reg. #18912)<br>Frederick P. Stein, Senior Attorney (Atty. Reg. #34481)<br>P.O. Box 1575, Mail Code 510<br>30 South Nevada Avenue, Suite 501<br>Colorado Springs, CO  80901<br>Telephone:  (719) 385-5909<br>Fax number: (719) 385-5535<br>frederick.stein@coloradosprings.gov | |

## NOTICE OF SUBMISSION OF DISK FOR COURT *IN CAMERA* REVIEW

COMES NOW the Colorado Springs Police Department ("CSPD"), by and through the Office of the City Attorney, hereby notifies the Court and Defendant Jonathan Christiansen that on this date, CSPD submitted a disk containing the BWC footage of Officer Scott Alamo for the Court *in camera* review pursuant to Order entered on November 10, 2021.

Dated this 15ᵗʰ day of November, 2021.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY,
CITY OF COLORADO SPRINGS, COLORADO
Wynetta P. Massey, City Attorney
Reg. No. 18912

By: _____

Frederick Stein, Senior Attorney, Reg. No. 34481
Colorado Springs City Attorney's Office
P. O. Box 1575, 30 South Nevada Avenue
Colorado Springs, Colorado 80901
Telephone: (719) 385-5909
Facsimile: (719) 385-5535

*Attorney for Colorado Springs Police Department*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2021, I served a copy of the foregoing **NOTICE OF SUBMISSION OF DISK FOR COURT *IN CAMERA* REVIEW** via email to the following:

Shantel Withrow
Prosecutor
Office of the City Attorney for the City
  of Colorado Springs
Prosecution Division
224 East Kiowa Street, Suite 410
Colorado Springs, CO 80903
E-mail: Shantel.Withrow@coloradosprings.gov
*Attorney for Plaintiff*

Will Cook
The Law Office of Will Cook
624 S. Cascade Avenue
Colorado Springs, CO 80903
E-mail: willcooklawoffice@gmail.com
*Attorney for Defendant*

By: _____
Elisa Spencer, Paralegal

2

Appellate Case: 24-1201    Document: 48-1    Date Filed: 12/02/2024    Page: 175

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 176

| | |
|---|---|
| COLORADO SPRINGS MUNICIPAL COURT<br>P.O. Box 2169<br>Colorado Springs, CO 80901-2169 | FILED IN<br>COLORADO SPRINGS<br>MUNICIPAL COURT<br>EL PASO COUNTY, COLORADO<br><br>2021 SEP 15 P 12: 27 |
| **PEOPLE OF THE STATE OF COLORADO, <u>ex rel.</u><br>THE CITY OF COLORADO SPRINGS**<br>**v.**<br>**DEFENDANT: CHRISTIANSEN, JONATHAN<br>AARON** | ☐ **COURT USE ONLY** ☐ |
| Attorney for City of Colorado Springs:<br>WYNETTA MASSEY, CITY ATTORNEY<br>Sara Arfmann, Prosecuting Attorney<br>P.O. Box 1575, Mail Code 1540<br>224 East Kiowa Street, Suite 410<br>Colorado Springs, CO 80901<br>Telephone: (719) 385-5925<br>Fax number: (719) 385-6438<br>Atty. Reg. #18912<br>Atty. Reg. #47162 | Case Number: 21M22558 |

**PEOPLES' MOTION TO REDACT BODY WORN CAMERA VIDEO TO BE RELEASED IN DISCOVERY**

COMES NOW the People of the State of Colorado <u>ex. rel.</u> The City of Colorado Springs by and through the Office of the City Attorney and hereby requests that this Court provide leave for the People to file this Motion and that it will grant the People's Motion to Redact Body Worn Camera Video to be Released in Discovery. As grounds, the People state:

1. In the instant case, the Defendant is charged with Resisting, Interference with Public Official, §9.3.101 of the City of Colorado Springs Code, and Obstructing Passage and Assembly, §9.2.104, related to an incident that occurred on July 31, 2021.

    a. The People incorporate by reference the Summons and Compliant created by Officer Vanderlinden submitted to the Court by Colorado Springs Police Department (CSPD) as a basic recitation of the facts in this case. Of particular importance as it relates to the People's request in this motion, the Defendant interfered and obstructed police activity. CSPD officers cited the Defendant as a result of his actions.

    b. One of the officers on scene was Officer Scott Alamo. Officer Alamo's duty uniform was equipped with a standard body worn camera (BWC). Officer Alamo

Page 1

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 177

was actively recording this incident.

c.  Officer Alamo's BWC video is currently in "locked" status and has not been released to the defense in discovery. The People, undersigned counsel specifically, do not have access to this video either. The information provided to undersigned counsel by CSPD through their BWC employee and assigned attorney, Frederick Stein, is as follows:

- Officer Alamo's BWC video of this incident is 1:40:39 in duration.
- Approximately 90 minutes of this video is a recording of administrative and tactical discussions, and personal conversations Officer Alamo had with other officers prior to the charged conduct. The portion of the BWC video that contains Officer Alamo's actual engagement in the protest begins at the 1:24:25 mark through the end of the video.
- CSPD and the City are requesting that the portion of the BWC video that contains these administrative, tactical and personal conversations be redacted by CSPD prior to release to the People and the defense.
- CSPD will retain the unredacted BWC video throughout the case and it shall not be altered or destroyed.
- CSPD, through Mr. Stein, will provide a copy of the unredacted BWC video to the Court, if ordered to do so, for the purpose of an in-camera review by the Court.

2.  The People assert that release of Officer Alamo's entire BWC video in discovery is not required by Colorado Municipal Court Rule 216 or Colorado Rules of Criminal Procedure Rule 16 based on the understanding there are portions that are neither evidentiarily inculpatory nor exculpatory in nature. The discussions related only to administrative, tactical, and personal conversations do not tend to prove or disprove the Defendant's guilt or innocence related to the crime charged.

3.  The People assert that release of the portion of Officer Alamo's BWC video that contains his administrative, tactical, and personal conversations would be unduly harmful to overall police operations. Without knowing specifically what was discussed, undersigned counsel is only in a position to make an educated speculation that those discussions related to various arrest decisions, risk factors, tactical movements of officers, etc. All of these discussions, if released, would disclose police operation tactics that if known by others, could make CSPD's tactics less effective and could potentially put officers' lives in danger.

4.  If the Court is disinclined to grant the People's primary request (to require CSPD to release only a redacted copy of Officer Alamo's BWC video to the prosecution and defense), the People alternatively ask the Court to conduct an in-camera review of both the unredacted and redacted copies of Officer Alamo's BWC video, and determine which version should be released to the defense in discovery. Rule 16(III)(e) and (f) permits the Court to review *in camera* otherwise discoverable evidence to determine whether it must be turned over in discovery. This rule permits the prosecution to excise irrelevant and nondiscoverable

Appellate Case: 24-1201     Document: 48-1     Date Filed: 12/02/2024     Page: 178

information from discoverable information before providing it in discovery.

WHEREFORE, the People would respectfully request that the Court require CSPD to redact Officer Alamo's BWC video to remove any and all administrative, tactical, and personal conversations prior to 1:24:25, and order that only the redacted video be released to prosecution and the defense in discovery.

Respectfully submitted this 14th day of September 2021.

> **WYNETTA MASSEY**
> City Attorney
> Reg. No. 18012
>
> By: _____
>
> Sara Arfmann, 47162

CERTIFICATE OF MAILING

I do hereby certify that I have, this ___14th___ day of ___September___, 2021, mailed a true and correct copy of the foregoing People's Motion to Redact Body Worn Camera Video to be Released in Discovery, postage prepaid and placed in the U. S. Mail, addressed to:

Jonathan Christiansen
329 W Monument St.
Colorado Springs, CO 80905

Tiffany Newton
Legal Assistant

Page 4

# SEALED

# Court in camera review

People v. Christiansen; Case No. 21M22558

TO:   JUDGE KANE
ATTN: JUDGE RAMIREZ

Appellate Case: 24-1201     Document: 48-1     Date Filed: 12/02/2024     Page: 180

## Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:          9.2.104          Obstructing Passage and Assembly

Scheduled for: Pre-Trial                         Reason:

I promise to appear:

> Monday 12/13/21, 02:30 PM
> Division: 3,  Room number: 215

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____          _____          _____
Defendant or Attorney                    Date                    Telephone Number

_____                              _____
Street Address                                  City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____          _____          _____
Parent/Legal Guardian                    Date                    Telephone Number

_____                              _____
Print Name                                      Street Address

_____                              _____
Relationship                                    City, State, Zip Code

**Colorado Springs Municipal Court**

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:          9.2.104     Obstructing Passage and Assembly

Scheduled for: Pre-Trial                    Reason:

promise to appear:

| Thursday 01/20/22, 02:30 PM |
| Division: 3,  Room number: 215 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____          Dec. 10, 2021          _____
Defendant or Attorney                Date                          Telephone Number

_____                     _____
Street Address                               City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant and that if I do not appear, a summons may be issued charging me with contempt of court and I may be subject to arrest.

_____          _____          _____
Parent/Legal Guardian                Date                          Telephone Number

_____                     _____
Print Name                                   Street Address

_____                     _____
Relationship                                 City, State, Zip Code

**Colorado Springs Municipal Court**

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

▋

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:          9.2.104        Obstructing Passage and Assembly

Scheduled for: Pre-Trial                          Reason:

I promise to appear:

| Thursday 02/17/22, 09:00 AM |
| Division: 4,  Room number: 315 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

X _____     ___1/20/22 8▋___     _____
Defendant or Attorney              Date                 Telephone Number

_____                           _____
Street Address                        City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____     _____     _____
Parent/Legal Guardian              Date                 Telephone Number

_____                           _____
Print Name                            Street Address

_____                           _____
Relationship                          City, State, Zip Code

**Pre-Trial Routing Sheet**
**Prosecution Division**

Defendant Name: _Christiansen, Jonathan_   Case Number: _21M22558_   Date: _2/17/22_

Amendments: ☐ The City moves to amend the summons and complaint: _____

☐ Other: _____

| ☐ City Attorney requests the Court advise the Defendant of his/her rights to counsel and the right and attendant risks of processing pro se. | ☐ Defendant requests a Court Appointed Attorney |
|---|---|

☒ CONTINUE FOR TRIAL        ☐ CASE INELIGIBLE FOR JURY TRIAL

☐ CONTINUE FOR PRE-TRIAL    ☐ SET _____ DIV. AM/PM    ☐ SET OUT _____ DAYS

| ☐ Continue Pre-Trial at request of Defendant. **Defendant must waive speedy trial (Clock resets to 91 days).** <br> ☐ Speedy Trial Clock is tolled until next appearance. | ☐ To take _____ Class <br> ☐ For referral to Neighborhood Justice Center <br> ☐ To contact Navigator - Outreach |
|---|---|

☐ Defendant fails to appear. The City requests a bench warrant

4-20-22

4-22 2021   05/21/2019

Date Filed: 03/04/2024   Document: 48-1   Appellate Case: 24-1201

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:          9.2.104        Obstructing Passage and Assembly

Scheduled for: Jury Orders Hearing                    Reason:

I promise to appear:

| Wednesday 04/20/22, 02:30 PM |
| Division: 3, Room number: 215 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may
be assessed and  my jury trial will be vacated.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____          2.17.22          _____
Defendant or Attorney            Date              Telephone Number

_____                           _____
Street Address                                    City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the
above  named Defendant. I further understand that I must appear even in the absence of the above
named Defendant  and that if I do not appear, a summons may be issued charging me with contempt
of court and I may be  subject to arrest.

_____          _____          _____
Parent/Legal Guardian            Date              Telephone Number

_____                           _____
Print Name                                        Street Address

_____                           _____
Relationship                                      City, State, Zip Code

Appellate Case: 21M22558   Document: 48-1   Date Filed: 7/02/2024   Page: 185

**Colorado Springs Municipal Court**

224 East Kiowa Street                                    (719) 385-5928
P.O. Box 2169
Colorado Springs, CO 80901-2169                         (719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON                            Case number: 21M22558
████████████████████████████                           Summons number: 3144788

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:          9.2.104          Obstructing Passage and Assembly

Scheduled for: Trial to Jury                        Reason:

DEMAND FOR JURY TRIAL

In this case I demand a Trial by a jury of (three) to (six) persons.
A jury fee of $25.00, as required by C.R.S. 13-10-114 1973 as amended.

I promise to appear:

| Friday 04/22/22, 08:15 AM |
| Division: 4,  Room number: 310 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may
be assessed.

If under the age of 18, I must be accompanied by parent or legal guardian.

_____        2·17·22        _____
Defendant or Attorney                   Date                  Telephone Number

_____                        _____
Street Address                                          City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the
above named Defendant. I further understand that I must appear even in the absence of the above
named Defendant  and that if I do not appear, a summons may be issued charging me with contempt
of court and I may be  subject to arrest.

_____        _____        _____
Parent/Legal Guardian                   Date                  Telephone Number

_____                        _____
Print Name                                              Street Address

_____                        _____
Relationship                                            City, State, Zip Code

COLORADO SPRINGS MUNICIPAL COURT            No.   MC 551057

*Colorado Springs, Colo.,* _____ February 17 20 23 _____

*Received of* _____

_____ *Dollars*

*For* _____

☐ CASH
☐ CHECK
☐ CREDIT CARD          *By* _____

$ _____

FILE

Date Filed: 12/02/2024    Document: 48-1    Appellate Case: 24-1201

**Supp.App.187**

## Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169
Colorado Springs, CO 80901-2169

(719) 385-5928

(719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON

Case number: 21M22558
Summons number: 3144788

█████████████████████

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:          9.2.104       Obstructing Passage and Assembly

Scheduled for: Jury Orders Hearing                Reason:

I promise to appear:

| |
|---|
| Wednesday 07/06/22, 02:30 PM |
| Division: 3,  Room number: 215 |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessedand  my jury trial will be vacated.

If under the age of 18, I must be accompanied by parent or legal guardian.

_#31357_

_____        _____        _____
Defendant or Attorney                Date                        Telephone Number

_____                       _____
Street Address                        City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above  named Defendant. I further understand that I must appear even in the absence of the above named Defendant  and that if I do not appear, a summons may be issued charging me with contempt of court and I may be  subject to arrest.

_____        _____        _____
Parent/Legal Guardian                Date                        Telephone Number

_____                       _____
Print Name                             Street Address

_____                       _____
Relationship                           City, State, Zip Code

Colorado Springs Municipal Court

224 East Kiowa Street
P.O. Box 2169                                         (719) 385-5928
Colorado Springs, CO 80901-2169
                                                     (719) 385-6190 (Fax)

CHRISTIANSEN, JONATHAN AARON                         Case number: 21M22558
                                                     Summons number: 3144788

Atty: COOK, WILL
3 S Tejon St
Colorado Springs, CO, 80903
(719) 477-1285

Original Charge:        9.2.104          Obstructing Passage and Assembly

Scheduled for: Trial to Jury                  Reason:

DEMAND FOR JURY TRIAL

In this case I demand a Trial by a jury of (three) to (six) persons.
A jury fee of $25.00, as required by C.R.S. 13-10-114 1973 as amended.

_____ (initial waiver) I have the right to a trial within ninety-one days of the date I entered my plea of not guilty. By requesting a continuance, I am waiving my right to be tried within the ninety-one-day period.

I promise to appear:

|                                                                      |
| -------------------------------------------------------------------- |
| Friday 07/08/22, 08:15 AM                                            |
| Division: 4, Room number: 310                                        |

I understand if I do not appear, a warrant may be issued for my arrest and additional costs may be assessed.
If under the age of 18, I must be accompanied by parent or legal guardian.

_____  #31357  7/20/22  _____
Defendant or Attorney          Date                Telephone Number

_____              _____
Street Address                         City, State and Zip Code

I, the parent or legal guardian, understand that, by Order of the Court, I must appear with the above named Defendant. I further understand that I must appear even in the absence of the above named Defendant and that if I do not appear, a summons may be issued charging me with contempt of court and I may be subject to arrest.

_____              _____  _____
Parent/Legal Guardian                  Date                      Telephone Number

_____              _____
Print Name                             Street Address

_____              _____
Relationship                           City, State, Zip Code

MUNICIPAL COURT, CITY OF COLORADO SPRINGS, STATE OF COLORADO

Summons & Complaint No. _____   Case No. _____ 21 M 22558

Motion for Deferred Sentencing   ☐ Jail is waived / ☒ Jail is not waived if the deferred sentence is revoked

THE PEOPLE OF THE STATE OF COLORADO ex rel. the CITY OF COLORADO SPRINGS,   Plaintiff,

vs. _____ Jonathan Christinsen _____

_____ Defendant

The Defendant moves the Court for an Order granting deferred sentencing, and in support thereof states the following:

1. The Defendant understands the charges contained in the Summons and Complaint and understands that the maximum possible sentence as to each count is, **unless jail is waived above**: 189 days in jail, a fine not to exceed $2,500.00 and / or probation.

2. The Defendant has been fully advised of, understands, and waives the following rights: The right to remain silent; the right to trial by jury; The right to confront his/her accusers; The right to insist that the prosecution's proof at trial establish his/her guilt beyond a reasonable doubt; The right to present witnesses in his/her behalf through the use of the subpoena power of this Court; The right to testify at trial; The right to a speedy and public trial; The right to appeal to a higher court; The right to be represented by a lawyer, and if unable to afford a lawyer, the right to ask the Court to appoint a lawyer at no expense to you.

3. ☐ Defendant voluntarily and knowingly enters a plea of guilty to the charge(s) in the Summons and Complaint.
☒ Defendant voluntarily and knowingly enters a plea of guilty to § 9.3.101  Resisting  or  Interference   Ct#2
☒ All other charges are dismissed.   ☐ The disposition of other charges are addressed in an attached document.
The plea to said charge(s) is pursuant to the agreements and conditions contained in this Motion for Deferred Sentence and with the understanding that this plea of guilty will be withdrawn and the case dismissed on their successful completion.

4. The Defendant subjects himself/herself to the following conditions for a _____ 6 _____ month period:

☐   Violate no similar laws: _____.
☐   Violate no traffic laws in which points are assessed or involving driving under suspension, revocation or denial.
☒   No criminal violations, no traffic violations 8 points or more, no driving under suspension, revocation or denial.
☐   Fulfill _____ hours of public service as scheduled by the Probation Department.
☐   Payment of restitution as determined by Probation, either today or in compliance with a payment schedule set up by Probation Department.
☐   Attend and successfully complete a Traffic _____/ Petty Theft / Teen Court / ACIP / _____ program as scheduled by the Probation Department (or Teen Court, if applicable); and provide proof of compliance within ten (10) days of completion. The Probation Department is in Room 230.
☒   Pay $ 150  Court costs today or in compliance with a payment schedule set up by the Probation Department. Any other costs are open to the court.

☐   _____

The Defendant acknowledges that should Defendant be found to be ineligible or rejected from any program required in this sentencing agreement, the Defendant will report to the Probation Department within 7 days of notification.

Case No. _21 M22558_

5. The Defendant and, if a juvenile, the Defendant's undersigned parent or guardian, understand and agree that his/her appearance is required on ___January 6th___, 20_23_, in Division 1, at 9:00 o'clock A.M.   On such date, if the Defendant has complied with the conditions set forth in this Motion for Deferred Sentencing, the City shall appear before the Court and consent to the withdrawal of Defendant's plea of guilty and shall request the dismissal of the charges) contained in the Summons and Complaint. In the alternative, if the Defendant has failed to comply with any condition contained herein, the Deferred Sentence may be revoked and the Defendant sentenced pursuant to the plea(s) of guilty, to the charge (s) in the Summons and Complaint. DEFENDANT FURTHER UNDERSTANDS THAT HIS/HER FAILURE TO APPEAR ON THIS DATE MAY RESULT IN THE ISSUANCE OF A BENCH WARRANT FOR HIS/ HER ARREST UNLESS HE/ SHE RECEIVES A LETTER FROM THE CITY ATTORNEY'S OFFICE WHICH RELEASES THE DEFENDANT FROM APPEARANCE.

6. Defendant agrees and consents that, should it appear that there is a pending matter which would constitute a violation of this Deferred Sentence, the City may, with the consent of the Court, continue final action on this Deferred Sentence pending final resolution of such matter.

7. Defendant agrees this motion incorporates all provisions and agreements between the parties hereto and that no other representations by the City or by others have induced Defendant's guilty plea.

8. Defendant affirms that the below address is true and accurate. The Defendant understands and agrees that the Defendant shall notify the Court, in writing or by telephone, of any change of address within 24 hours of said change at: P.O. Box 2169, Mail Code 1530, Colorado Springs CO, 80901 or FAX: (719)385-6190, Phone: (719)385-5922.

_____
Signature of Defendant's Attorney/Parent/Guardian

_____
Signature of Defendant

__Earl  Cook__ # 31357
Printed Name of Defendant's Attorney/Parent/ Guardian

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Defendant's Street Address

_C/S  Co_
City, State and Zip Code

CONSENT

The City, by and through its counsel, has read the foregoing provisions and agreements and hereby consents to matters therein contained.

_____
Prosecuting Attorney

ORDER

The Court having reviewed the foregoing Motion for Deferred Sentencing, hereby ORDERS a Deferred Sentence be granted, upon the terms and conditions set forth in the Motion , for a period of ___6___ month(s), until the date and time set forth in Paragraph 5 of this agreement when the Defendant shall appear before the Court for review.

Done this _6th_ day of __July__, 20 _22_.

BY THE COURT:

_____
JUDGE

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 191

**Supp.App.191**

Municipal Court, City of Colorado Springs, El Paso County, State of Colorado

Court Address:    224 East Kiowa Street
                  Colorado Springs, CO 80901

Phone Number: (719) 385-5922

| | |
|---|---|
| **Plaintiff:** | City of Colorado Springs |
| **vs.** | |
| **Defendant:** | JONATHAN CHRISTIANSEN |

Attorney or Party Without Attorney (name and address):

JONATHAN CHRISTIANSEN

Address: █████

Telephone: █████

Fax number:

▫    **COURT USE ONLY**    ▫

Case Number:    **21M22558**

## ORDER TO SEAL ARREST AND CRIMINAL RECORDS

The Court having read and/or received the Petition to Seal Arrest and Criminal Records and examined the record finds that the harm to privacy of the subject of the record to be sealed or dangers of unwarranted adverse consequences to that person outweigh the public interest in retaining the record.

Defendant's Name:    JONATHAN CHRISTIANSEN                    Date of Birth: █████

Current Mailing Address: █████

City:  Colorado Springs                    State:  CO        Zip Code: █████

**THEREFORE, THE COURT ORDERS the CRIMINAL RECORDS information specifically relating and contained in:**

Court case number:    21M22558                    Law enforcement summons number:    3144788

**SHALL BE SEALED** immediately, except for basic identifying information, and that upon inquiry in the matter, the person in interest and criminal justice agencies to which this order is directed may properly reply that no such records exist with respect to such person.

The Court directs the above order to the Clerk of Court to seal the criminal case(s) listed above.

- JONATHAN CHRISTIANSEN █████
- Attorney:
- Sheriff's Department 27 E VERMIJO AVE. COLORADO SPRINGS, CO 80903
- Colorado Springs Police Department 705 S NEVADA AVE. COLORADO SPRINGS, CO 80903
- Colorado Bureau of Investigation 690 KIPLING ST STE #3000 DENVER, CO 80215-5825
- Colorado Springs Probation Department 224 E. Kiowa St. Suite 230 COLORADO SPRINGS, CO 80903
- Colorado Springs City Attorney Prosecution  224 E. Kiowa St Suite 410, COLORADO SPRINGS, CO 80903
- Other _____
- Other _____

**Petitioner shall provide to the court a list of any other agency custodians who may have custody of any records subject to this order.**

The court shall provide a copy of the court order to the Colorado Bureau of Investigation, and the defendant shall pay to the bureau **any costs** related to the sealing of his or her criminal justice records in the custody of the bureau.

**The defendant shall provide to the court, within <u>seven days</u> of the motion if made orally or in conjunction with the motion if filed in writing, a list of all agency custodians and their mailing addresses, who may have custody of any records subject to this order.**

Date: ___1/6/2023___                    Municipal Court Judge: _____

Page: 192

Date Filed: 12/02/2024

Document 48-1

Appellate Case: 24-1201

| Defendant: | JONATHAN CHRISTIANSEN | | Case Number: | 21M22558 |
|---|---|---|---|---|

I certify that on ⟨January 06, 2023⟩ I mailed, faxed, e-filed, or hand-delivered a copy of this **ORDER TO SEAL ARREST AND CRIMINAL RECORDS** to the following:

- JONATHAN CHRISTIANSEN ███████████████
- Attorney:
- Sheriff's Department 27 E VERMIJO AVE. COLORADO SPRINGS, CO 80903
- Colorado Springs Police Department 705 S NEVADA AVE. COLORADO SPRINGS, CO 80903
- Colorado Bureau of Investigation 690 KIPLING ST STE #3000 DENVER, CO 80215-5825
- Colorado Springs Probation Department 224 E. Kiowa St. Suite 230 COLORADO SPRINGS, CO 80903
- Colorado Springs City Attorney Prosecution 224 E. Kiowa St Suite 410, COLORADO SPRINGS, CO 80903
- Other _____
- Other _____
- Other _____

Municipal Court Clerk:  _Sammy Luen_ _____

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of Columbia

| | |
|---|---|
| United States of America<br>v.<br>CHRISTOPHER M. KELLY<br>▇▇▇▇▇<br><br>_____<br>_Defendant(s)_ | )  Case: 1:21-mj-00128<br>)  Assigned to: Judge Zia M. Faruqui<br>)  Assign Date: 1/20/2021<br>)  Description: COMPLAINT W/ARREST WARRANT<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 6, 2021 _____ in the county of _____ in the

_____ District of _____ Columbia _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 1512(c)(2) | Obstruction of an Official Proceeding |
| 18 U.S.C. §2 | Aiding and Abetting |
| 18 U.S.C. § 1752(a)(1) and (2) | Unlawful Entry to Restricted Building or Grounds |
| 40 U.S.C. §§ 5104(e)(2)(D) and (G) | Violent Entry and Disorderly Conduct |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
_Complainant's signature_

**Michael Andretta, Special Agent**
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**Telephone** _____ (specify reliable electronic means).

Date: _____ 01/20/2021 _____

2021.01.20
13:57:11 -05'00'
_Judge's signature_

City and state: _____ Washington, DC _____

**Zia M. Faruqui, U.S. Magistrate Judge**
_Printed name and title_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| | Case: 1:21-mj-00128 |
| | Assigned to: Judge Zia M. Faruqui |
| **UNITED STATES OF AMERICA** : | Assign Date: 1/20/2021 |
| : | Description: COMPLAINT W/ARREST WARRANT |
| : | |
| : | **18 U.S.C. § 1512(c)(2)** |
| : | **(Obstruction of Congressional Proceeding)** |
| : | |
| **v.** : | **18 U.S.C. §2** |
| : | **(Aiding and Abetting)** |
| **CHRISTOPHER M. KELLY** : | |
| : | **18 U.S.C. §§ 1752(a)(1), 1752(a)(2); 1752(b)** |
| **Defendant.** : | **(Unlawful Entry)** |
| : | |
| : | **40 U.S.C. §§ 5104(e)(2), 5104(e)(2)(D) and (G)** |
| : | **(Violent Entry or Disorderly Conduct)** |
| : | |
| : | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND ARREST WARRANT

I, Michael J. Andretta being first duly sworn, hereby depose and state as follows:

## PURPOSE OF AFFIDAVIT

1.     This Affidavit is submitted in support of a Criminal Complaint charging Christopher M. Kelly ("KELLY") with violations of 18 U.S.C. §1512(c)(2) (Obstruction of a Congressional Proceeding); §§ 1752(a)(1), (a)(2) and (b)(1)(A) (Unlawful Entry), 40 U.S.C. § 5104(e)(2)(D) and 5104(e)(2)(G) (Violent Entry or Disorderly Conduct) and 18 U.S.C. § 2(a), as identified below.

2.     I respectfully submit that this Affidavit establishes probable cause to believe that KELLY, as a principal and an aider and abettor, violated:

   a. 18 U.S.C. §1512(c)(2) by corruptly interfering with, obstructing, and attempting to do the same, of an official proceeding, that is the Joint Session of Congress to count the electors for the Electoral College;

    b.   18 U.S.C. § 1752(a)(1) and (2) by (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

    c.   40 U.S.C. § 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct at any place in the Capitol Grounds or in any of the Capitol Buildings with the intent to disrupt the orderly conduct of official business, and parade, demonstrate, or picket in any of the Capitol Buildings.

## **BACKGROUND OF AFFIANT**

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"). As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request an arrest warrant. I have served as a Special Agent with the FBI since in or about 2009.  I am currently assigned to the FBI's Joint Terrorism Task

Case No. 1:23-cv-01951-CNS-MDB   Document 51-5   filed 11/20/23   USDC Colorado   pg 4 of 16

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 197
Case 1:21-mj-00128-ZMF   Document 1-1   Filed 01/20/21   Page 3 of 15

Force. I have participated in investigations involving domestic terrorism, and the execution of search warrants for electronic accounts, including social media accounts.

2.    The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from state and federal law enforcement officers, and information provided by cooperating codefendants. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of reports, documents, and other physical evidence obtained during the course of this investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  The dates listed in this Affidavit should be read as "on or about" dates.

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

### A.  Assault on the U.S. Capitol on January 6, 2021

1.    The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2.    On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3.    On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3,

2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.      At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.      At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President

Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 pm after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

8.      During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

9.      Based on my participation in this investigation, including my conversations with a confidential source ("CS-1"),[1] review of records obtained by law enforcement, and conversations with other law enforcement officers about the same, I have learned, in substance and in part, information about KELLY's involvement with the events on January 6, 2021.

**B.      KELLY's Involvement**

10.     On or about January 9, 2021, CS-1 identified a Facebook account as being utilized by "Chris Kelly."  CS-1 provided to the FBI screenshots containing content posted to and sent and

---

[1] Since in or about 2019, CS-1 has provided information to FBI in exchange for monetary compensation. CS-1 has no criminal record and the information provided by CS-1 has been proven to be reliable in the past.

Case No. 1:23-cv-01951-CNS-MDB    Document 51-5    filed 11/20/23    USDC Colorado    pg 7 of 16

Appellate Case: 24-1201    Document: 48-1    Date Filed: 12/02/2024    Page: 200
Case 1:21-mj-00128-ZMF    Document 1-1    Filed 01/20/21    Page 6 of 15

received by this account.  The materials provided by CS-1 included a screenshot of the account's profile picture.  Based on my review of records obtained by law enforcement from the New York Department of Motor Vehicles (the "New York DMV"), as well as my training and experience, the photograph on the account's profile picture appears to be the same individual as in the New York DMV photograph on file for "Christopher M Kelly," who is believed to reside in the vicinity of New City, New York.[2]

11.     CS-1 provided law enforcement with a screenshot of a message posted to this Facebook account, dated on or about December 28, 2020, which read, "'When good men do nothing, evil triumphs. Evil, sin and sinful men must be opposed. God commands those who are good, not just to avoid evil but actively oppose it.' Where will you be on 1/6?"  Based on my training, experience, and participation in this investigation, including my review of publicly available data, I understand "Where will you be on 1/6?" to be a reference to the joint session of Congress referenced above.

12.     CS-1 also provided law enforcement with a screenshot of a Facebook Messenger group chat dated January 6, 2021.  In the chat, at or about the time of the breach of the Capitol, "Chris," wrote, "We're in!"  A subsequent message, sent by another Facebook user," reads, "@Chris Kelly stay safe [heart emoji]."  Directly beneath that message is an image, sent by

---

[2] On January 10, 2021, based on my review of records obtained by law enforcement from the New York Department of Motor Vehicles (the "New York DMV"), I initially believed that the individual pictured in the Subject Account's profile picture was the same individual as in the New York DMV photograph on file for "Christopher E Kelly," who is believed to reside in the vicinity of Congers, New York.  Upon further investigation, and after reviewing the DMV photograph for Christopher M Kelly of New City, NY, I now believe that the individual pictured in the Subject Account's profile picture is more consistent with that of Christopher M Kelly.

"Chris," which, based on my training, experience and participation in this investigation, appears to show an image of rioters inside the Capitol building (Figure One):



Figure One

13.     Figure One includes, in the foreground of the image, two men: on the left, one holding what appears to be a "Trump" flag; on the right, a second man wearing what appears to be

Case No. 1:23-cv-01951-CNS-MDB   Document 51-5   filed 11/20/23   USDC Colorado   pg 9 of 16

Appellate Case: 24-1201   Document: 48-1   Date Filed: 12/02/2024   Page: 202
Case 1:21-mj-00128-ZMF   Document 1-1   Filed 01/20/21   Page 8 of 15

a red "Trump" hat, which, based on publicly available information, I believe refers to "Make America Great Again," a slogan used by President Trump's campaign. Taken together, based on my training, experience, and participation in the investigation, along with the information set forth above, I believe the messages and image above reflect that Chris Kelly was using this account to inform associates that he had breached the Capitol building and was inside.

14. Based on the information above, Magistrate Judge Zia F. Faruqui of the United States District Court for the District of Columbia issued a search warrant, case number 21-sc-64, for the account "Chris Kelly" (hereinafter "Kelly Facebook Account"). The Kelly Facebook Account contains information about the user of the account, and indicates the holder as a date of birth of that matches that of KELLY, and a home city of New City, New York, which is also consistent with KELLY. The account also provided KELLY's phone number of ***-***-1057, which Verizon records confirm belongs to KELLY. Facebook also provided a Google email account that is consistent with the known email account belonging to KELLY. Investigation of public records and New York Department of Motor Vehicles databases provide the same telephone number, location and date of birth for Christopher M Kelly of New City, New York. Your affiant therefore believes the Kelly Facebook Account is that belonging to KELLY.

15. A review of IP log history from the Kelly Facebook Account shows IP addresses which document locations consistent with travel from New City, New York to Silver Spring, Maryland on January 6, 2021, and back to the New York area in the days after.

16. According to a review of the direct messages in the Facebook account, a user asked KELLY if he was going to Washington, D.C. on January 2, 2021, and KELLY responded, "Yea 2 nights headed down the 5th staying til the 7th. I know of a few buses leaving from around here for the day." In the same conversation, which continued January 3, 2021 KELLY provided his cell

telephone number, ***-***-1057, and ham radio frequency so the user could contact him in Washington, D.C.  Again in the same conversation on January 6, 2021 at 2:22 pm Eastern Standard Time ("EST"), KELLY provided the same photo above in Figure One.  The user then responds to KELLY, asking, "Are you inside?!" and," Want me to share? I won't tag you unless you want me to."  KELLY responded, "**Sure spread the word, Taking this back by force now, no more bs**" (emphasis added).  On the following day KELLY added, "One guy im with got his front teeth knocked out but thats about it."

17.     The Kelly Facebook Account also shows that on January 4, 2021 another Facebook user (User 2) asked KELLY, "How are things there?? Gonna be crazy on the 6th eh?"  KELLY responded, "Yea Im leaving tomorrow in the afternoon to gey there early." He added, "Yea driving its only 250miles."  User 2 stated, "Enjoy the occasion, hope it all goes to plan.  Stay safe, Antifa will be out in force."  KELLY responded with, "No worries, **I'll be with ex NYPD and some proud boys. This will be the most historic event of my life** (emphasis added)."  Your affiant is aware that Proud Boys is a nationalist organization with multiple US chapters and potential activity in other Western countries. The group describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other First Amendment-protected events, where they sometimes engage in violence against individuals whom they perceive as threats to their values. The group has an initiation process for new members, who often wear yellow and black polo shirts or other apparel adorned with the Proud Boys logo to events.

18.     The Kelly Facebook Account also shows on January 2, 2021 KELLY messaged another user and stated, "Me and [NAME][3] plus a couple of others are headed down the 5th and

---

[3] A first name is used by KELLY, but redacted by your affiant.

Case No. 1:23-cv-01951-CNS-MDB  Document 51-5  filed 11/20/23  USDC Colorado  pg 11 of 16

Appellate Case: 24-1093  Document: 48-1  Date Filed: 01/24/2024  Page: 204
Case 1:21-mj-00128-ZMF  Document 1-1  Filed 01/20/21  Page 10 of 15

staying 2 nights. Ill be frequency 462.662 on a ham radio if cell service goes down." Public records databases also revealed Christopher M Kelly has a brother ("S1") of New City, New York with the same first name used in the above statement.  New York City Police Department records confirm S1 is a retired police officer.  Based on this statement, and the statement above about traveling with "ex NYPD and some proud boys" your affiant believes that this comment indicated that KELLY planned to travel to Washington, D.C. with S1.

19.    Included in the Kelly Facebook Account were also the Facebook messenger chats provided by the CS-1, which were made and received by the owner of the account during the period of on or around January 6, 2021.  The chat referenced above, with the comment, "We're In!" and the subsequent photograph, Figure One, of what appears to be the interior of the U.S. Capitol building, can be found within the search warrant results.

20.    The Kelly Facebook Account also shows messenger chats on December 29, 2020, to a group chat with several participants, in which KELLY stated, "Headed to DC the 5th, enough of the keyboard warrior bs. Anyone else going?"  Later, on January 6, 2021 at 2:21pm EST Chris Kelly posted to the group, "We're in!"  At 2:22 pm EST Chris Kelly posted the photograph in Figure One.  A chat participant asked, "You're there, @Chris Kelly? What's really going on?"  At 2:25pm EST, KELLY responded, "MAGA is here full on. Capitol building is breached."  At 2:30pm EST KELLY added, "Tear gas, police, **stopped the hearing, they are all headed to the basement**," and, "**Fuck these snakes. Out of OUR HOUSE!**" (emphasis added) ." Your affiant is aware that on January 6, 2021, at approximately that same time, protesters had gained violent entrance to the U.S. Capitol and the Congressional hearing had been forced into recess.

21.     The Kelly Facebook Account shows that KELLY messaged the following
photograph (Figure Two) multiple times to multiple recipients on January 6, 2021 and the days
following:



Figure Two

Figure Two contains at its center a peson with an American flag that your affiant believes is
consistent with the known photograph of KELLY.  In one of the chats with another user on on
January 9, 2021, KELLY posted the photograph and stated, "That's me," and, "My brother took
it."

22.     The Kelly Facebook Account records also show that on January 6, 2021 at 2:30 pm
EST, KELLY messaged the photograph in Figure One along with the message, "Inside Capitol."
On January 6, 2021 at 2:36 pm EST KELLY, in a message thread to another Facebook user ("User
3") states, "We're inside! **Hearing stopped, sending everyone to the basement** (emphasis
added)." User 3 responded. "Be careful you don't get arrested for trespassing." KELLY responded

to User 2 with the FIGURE ONE photograph. The Kelly Facebook Account records show that on January 7, 2021, the day after the events at the Capitol building, User 2 asked KELLY, "You ok mate??? Wtf has gone on?" KELLY responded, "Absolutely thanks man," and later that day added, "Antifa Infiltration on the front line."

23. The Kelly Facebook Account also shows that on January 5, 2021 KELLY had a Facebook messenger conversation with another Facebook user (User 4). KELLY messaged, "Headed to DC tomorrow. You going?" User 4 responded, "Unfortunately no. Wife and daughter just arrived after nearly a year from Brazil. Not the first DC experience I want to give them. Stay alert down there, and if someone gets in your face, a knife hand chop to the neck DROPS a motherfucker faster than a punch in the face. Can be the jugular or windpipe. And those douche-bag helmets dont protect the commies' necks." KELLY responded, "Awesome thanks for the advice. Yea my head will be on a swivel for sure." Later, on January 6, 2021 at 12:37pm EST User 4 asked, "What's the buzz on the ground there? This has me worried." KELLY responded at 2:22pm EST, "Capitol Building," and sent the user the Figure One photograph

24. The Kelly Facebook Account also shows that on December 29, 2020, KELLY messaged another friend, "Yea Im fed up of the BS - Im going to DC on the 5th staying two nights. Not worried about Antifa pricks, im going with a couple of old school Patriots." In the same conversation at 4:38pm EST on January 6, 2021 KELLY sent the following photograph (Figure Three):



Figure Three

Figure Three contains at its center a peson with an American flag that your affiant believes is consistent with the known photograph of KELLY.  On the following day, January 7, 2021 KELLY added, "My brother was a cop explained it as a robbery. You arrest the criminal after they commit the crime not before."  Again your affiant believes Chris Kelly is referencing his brother, S1.

25.     Your affiant submits that there is probable cause to believe that KELLY as aware of the planned Joint Session of Congress; that he traveled to Washington, D.C. with the intent to disrupt, prevent and otherwise interfere with that Joint Session of Congress; that he was aware that other persons in his protest were using force and violence to gain entry to the U.S. Capitol against law enforcement personnel; that he entered and remained in and on the U.S. Capitol Grounds and Building with the same intent to obstruct and impede the same Congressional proceeding and law enforcement protecting the U.S. Capitol by force; and that he succeed in interfering with and obstructing that Join Session of Congress.  KELLY's intent was evidenced by his pre-protest behavior and his statements while he was unlawfully entering and occupying the U.S. Capitol Building, including:

- "Sure spread the word, Taking this back by force now, no more bs"

- "Tear gas, police, stopped the hearing, they are all headed to the basement," and

- "Fuck these snakes. Out of OUR HOUSE!"

## CONCLUSION

26.     Based on the foregoing, your affiant believes there is probably cause to believe that on or about January 6, 2021, Christopher Kelly (KELLY), as a principal and an aider and abettor, violated several criminal statutes.

27.     First, your affiant submits that there is probable cause to believe violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted

building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions.

28.    Second, your affiant submits there is also probable cause to believe that KELLY violated 40 U.S.C. § 5104(e)(2), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

29.    Finally, your affiant submits there is probable cause to believe that KELLY violated 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

_____

Michael J Andretta
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this __20__ day of January 2021.

2021.01.20
13:59:08 -05'00'

_____

ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No:  23-cv-01951-CNS-MDB

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

Plaintiffs,

v.

CITY OF COLORADO SPRINGS;
DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual capacity;
B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual capacity;
JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual capacity;
ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his individual capacity; and
FEDERAL BUREAU OF INVESTIGATION,

Defendants.

---

## CITY OF COLORADO SPRINGS' MOTION TO DISMISS

---

Defendant City of Colorado Springs ("City") moves to dismiss all of Plaintiffs' claims against it pursuant to Fed. R. Civ. P. 12(b)(6).

**Certification of Conferral Pursuant to Civ. Practice Standard 7.1B(b):**  Undersigned counsel certifies that she conferred with Plaintiffs' counsel, Sara Neel, concerning this motion. Plaintiffs oppose the motion.

1

## Introduction

In this case, Plaintiffs complain of search warrants that neutral judges concluded were amply supported by probable cause and sufficiently particular and, thus, constitutional. Plaintiffs' claims against the City should be dismissed with prejudice.

## Argument

### I.    Section 1983 Claims

In Claims 1 and 2 of the Amended Complaint, Plaintiffs assert their Fourth Amendment unlawful search and First Amendment retaliation claims against the City under 42 U.S.C. § 1983. (Doc. 12 at 39-44) In addition to showing that a municipal employee committed an underlying constitutional violation, to state a Section 1983 claim against a municipality, a plaintiff must show the existence of an official policy or custom; a direct causal link between the policy or custom and the injury alleged; and "at least for claims of inadequate hiring, training, or other supervisory practices," deliberate indifference on the part of the municipality. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2020).

#### A.    Municipal Unlawful Search

##### 1.  No Unlawful Search By An Employee

Plaintiffs' failure to allege a plausible Fourth Amendment unlawful search claim by the Officers (*see* Doc. 50 at 3-6 and Doc. 51 at 2-7), also dooms their Fourth Amendment unlawful search claim against the City. For this reason alone, the Fourth Amendment claims against the City must be dismissed. *See Ellis ex rel. Est. of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009); *Hernandez v. Correct Care Sols., LLC*, No. 18-CV-02522-DDD-GPG, 2019 WL 4200929, at *3 (D. Colo. Sept. 5, 2019).

**Supp.App.211**

### 2.   No Customs of Unlawful Search Warrant Applications

Plaintiffs allege that the City has a "custom, policy, and practice" of seeking "broad-reaching warrants to search digital devices and social media accounts" of participants, associates of participants, and organizers of protests during which participants engage in criminal conduct. (Doc. 12 ¶ 131)

Plaintiffs fail to allege facts plausibly demonstrating the existence of such customs. "A 'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). "In order to establish a custom, the actions of the municipal employees must be 'continuing, persistent and widespread.'" *Id.* (citation omitted). Indeed, Plaintiffs must show that "similarly situated individuals were mistreated by the municipality in a similar way." *Carney*, 534 F.3d at 1274.

For starters, Plaintiffs' allegations concerning a warrant for "a zippered notebook" (Doc. 12 ¶¶ 145-146) fails to demonstrate a custom of seeking "broad-reaching warrants to search digital devices and social media accounts" because a "zippered notebook" is neither a digital device nor a social media account. The allegations concerning the notebook thus are inapposite to Plaintiffs' Fourth Amendment claim against the City.

### a.   Digital Device Search Warrants

Plaintiffs utterly fail to allege that the City has a custom of seeking overbroad warrants to search the digital devices of protest participants. They generally allege that after the August 3, 2020 protest in front of a CSPD officer's home, the City "arrested two persons for alleged 'riot' and 'menacing'" and then "obtained warrants … to search cell phones and other digital devices." (Doc. 12 ¶ 139) But Plaintiffs fail to allege whose digital devices the City sought to search, the

**Supp.App.212**

type of material sought from those devices, the date range of the materials sought, or any search terms supplied for the search, etc. Absent such factual allegations, Plaintiffs fail to allege that the purported warrants were overbroad in any way.

Plaintiffs' allegations concerning a warrant for a cell phone belonging to E.B.—the alleged partner of an armed protester at the August 3, 2020 demonstration—are inapposite. (Doc. 12 ¶¶ 140-141) Here, neither Plaintiff is a "partner" of a protest participant; they admittedly were themselves a participant (Ms. Armendariz) in and organizer (Chinook) of the July 31, 2021 housing march. (Doc. 12 ¶ 3) Thus, because E.B. was not "similarly situated" to Plaintiffs, the allegations concerning the search warrant for E.B.'s cell phone fail to demonstrate the existence of an unconstitutional custom. *Carney*, 534 F.3d at 1274. Even if the search warrant for E.B.'s phone does count, it is just one other instance of seeking a search warrant for a digital device, which is insufficient to demonstrate the existence of a "'continuing, persistent and widespread'" custom. *See Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1071 (D. Colo. 2021); *Waller*, 932 F.3d at 1290. In sum, Plaintiffs fail to allege the existence of a City custom of seeking search warrants for digital devices.

### b.  Social Media Account Search Warrants

Plaintiffs also fail to allege that the City has a custom of seeking overbroad warrants to search the social media accounts of protest organizers. Plaintiffs generally allege that City police officers "obtained warrants … to search private information on social media accounts." (Doc. 12 ¶ 139) But, again, Plaintiffs fail to allege whose social media accounts the City sought to search, the type of material sought from those accounts, the date range of the materials sought, or any search terms supplied for the search, etc. Absent such factual allegations, Plaintiffs fail to allege that the purported warrants were overbroad in any way.

4

Plaintiffs allege that the City obtained a warrant for Armendariz's Facebook account, "including Ms. Armendariz's private listing of Facebook friends and their Facebook IDs." (Doc. 12 ¶ 147) But Armendariz is not "similarly situated" to Chinook. *Carney*, 534 F.3d at 1274. Chinook challenges the warrant for its Facebook Messenger chats based on its contention that organizing (through Facebook) a protest in which the 60 marchers engaged in illegal conduct fails to supply sufficient probable cause to search its Facebook Messenger chats for the week surrounding the march. (Doc. 12 ¶ 48) Armendariz, by contrast, is not a protest organizer; the probable cause for the warrant for Armendariz's Facebook account would be different. Thus, the warrant for Armendariz's Facebook account is not evidence of a custom of seeking overbroad warrants to search the social media accounts of organizers of protests in which the participants engage in illegal conduct.

Plaintiffs also allege that the City sought and obtained a warrant for the Empowerment Solidarity Network's ("ESN") "Facebook records," because ESN was "an organizer of the August 3 demonstration" in which the participants engaged in illegal conduct. (Doc. 12 ¶¶ 136-139, 142-144) The Facebook messages would help with "better understanding the event planning process, specifically to determine if the armed subjects were directed to use intimidation and force towards uninvolved citizens travelling through the area, and to help identify the unknown actors." (*Id.* ¶ 144) This one other instance of allegedly seeking an overbroad warrant for an illegal protest organizer's Facebook account records is "insufficient to show a practice so permanent and well settled that it constitutes a custom or usage with the force of law." *Sexton*, 530 F. Supp.3d at 1071. *See also Waller*, 932 F.3d at 1290 ("[D]escribing only one similar incident of excessive force prior to his own injuries—fall[s] far short of plausibly alleging a 'widespread practice' of excessive force, much less a practice 'so permanent and well settled as to constitute a custom or usage with

Supp.App.214

the force of law.'"). In sum, Plaintiffs fail to allege the existence of a "'continuing, persistent and widespread'" custom of seeking "broad-reaching warrants to search digital devices and social media accounts" of participants and organizers of protests during which participants engage in criminal conduct. *Carney*, 534 F.3d at 1274 (citation omitted).

### 3. No Causation

Plaintiffs must also allege "'a direct causal link between the municipal action and the deprivation of federal rights.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted). This means that "'the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Id.* (citation omitted). On a municipal liability claim, "'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.'" *Id.* (citation omitted).

In this case, Plaintiffs allege municipal causation only in a conclusory fashion. (*See* Doc. 12 ¶ 165) No facts are alleged that plausibly suggest a direct causal link between any action of the City and any constitutional violation. *See Weitzman v. City & Cty. of Denver*, No. 17-cv-02703-KLM, 2019 WL 1438072, at *15 (D. Colo. Mar. 31, 2019) (allegation that municipality's "policies, customs, or practices in failing to properly train and supervise their employees were the moving forces and proximate cause of the violation of [plaintiff's] constitutional rights" failed to satisfy causation element of municipal liability claim). Nor does Plaintiff "explain how the incident described in the … complaint could have been avoided with different or better training or supervision." *Rehberg v. City of Pueblo*, No. 10-CV-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012). Plaintiffs fail to allege facts plausibly showing that a City custom caused the violation of their constitutional rights.

**Supp.App.215**

### B.    Municipal First Amendment Retaliation

#### 1.    No First Amendment Retaliation By An Employee

Plaintiff's failure to allege a plausible First Amendment retaliation claim by the Officers (*see* Doc. 50 at 7-8, Doc. 51 at 8-10), also dooms their First Amendment retaliation claim against the City. For this reason alone, the First Amendment claim against the City must be dismissed. *See Ellis*, 589 F.3d at 1104; *Hernandez*, 2019 WL 4200929, at *3.

#### 2.    No Policy or Custom

Plaintiffs allege that the City has a custom of retaliating against political activists by seeking search warrants lacking probable cause. (Doc. 12 ¶¶ 2, 7) But to state a First Amendment retaliation claim, the "adverse action" (here, seeking the search warrants) must have been "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

According to Plaintiffs' own allegations, however, each of the search warrants sought information relating to individuals who already had engaged in criminal conduct. Plaintiffs admit that the August 3, 2020 demonstration at a CSPD officer's home involved 100 participants "marching in the street" and "standing in the street," which is a violation of Colorado state law and City Code (Doc. 12 ¶ 137) (*See* Colo. Rev. Stat. 18-9-107(1)(b); Doc. 51-2, Colorado Springs City Code § 9.2.104) Armed individuals blocked passage of non-participating citizens. (Doc. 12 ¶ 137) Understandably, CSPD "asserted that the protest had become a 'riot' pursuant to C.R.S. § 18-9-101" and sought warrants that would enable them to identify and prosecute the offenders. (*Id.* ¶ 138)

Each of the search warrants served this purpose. E.B. was the partner of a protest participant who "blocked vehicles, while armed with a gun." (*Id.* ¶ 140) ESN organized the demonstration at

**Supp.App.216**

which the participants obstructed passage and intimidated members of the public with weapons. (*Id.* ¶¶ 143-144) The "zippered notebook" containing " 'organizational information' and 'rosters, contact information, and personal identification' of members of two groups" was found at an arrestee's home and would help "identify suspects 'who have yet to be identified and charged from the riot that occurred in Colorado Springs, CO on 08/03/2020.' " (*Id.* ¶¶ 145-146) Armendariz's Facebook friends likewise would help the City identify the individuals who at the August 3, 2020 demonstration marched and stood in the street and intimidated the public with weapons. (*Id.* ¶ 147) The desire to identify and prosecute individuals who engaged in criminal conduct during the August 3, 2020 and July 31, 2021 protests substantially motivated City police officers to seek the warrants, not the mere exercise of First Amendment rights.

Furthermore, it must be remembered that neutral judges independently assessed all the search warrants—not only those at issue in this case but also those on which Plaintiffs rely to show a City custom of seeking overbroad warrants—for probable cause and particularity and concluded that they met both constitutional requirements. (Doc. 12 ¶¶ 55-56. 118, 139, 140, 143, 146, 147) The judges' findings are entitled to "great deference." *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). Indeed, if Plaintiffs' contention that all of the referenced warrants are unconstitutionally overbroad and invalid, not only are the officers who drafted them " 'plainly incompetent,' " but their supervisors and the judges who issued them "were as well." *Messerschmidt v. Millender*, 565 U.S. 535, 554 (2012).

### 3. No Causation

As with Armendariz's claim against the City (*see supra* Part I.A.3), Chinook alleges municipal causation only in a conclusory fashion. (*See* Doc. 12 ¶ 182)

## II.     Stored Communications Act Claim

In Claim 3 of the Amended Complaint, Chinook asserts that the City violated provisions of the Stored Communications Act, 18 U.S.C. 2701 *et seq.* ("SCA"). (Doc. 12 at 45-46) The SCA "bars unauthorized access to stored electronic communications." *Davis v. Gracey*, 111 F.3d 1472, 1482 (10th Cir. 1997). The government may compel a provider of electronic communication services (such as Facebook) to disclose the contents of communications that it possesses and stores with "a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures …) by a court of competent jurisdiction." 18 U.S.C. § 2703(a), (b)(1)(A). In fact, "good faith reliance on a court warrant … is a complete defense to any civil or criminal action brought under this chapter or any other law." 18 U.S.C. § 2707(e)(1). Furthermore, to be liable under the SCA, "a person must know he or she is accessing … subscriber records or stored communications … without an appropriate form of legal process." § 9:26. Knowing or intentional state of mind required under Stored Communications Act, 1 Data Sec. & Privacy Law § 9:26 (2023-2024), citing *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 797-98 (6th Cir. 2015) (finding that the plain language and legislative history of the SCA supported the interpretation that a "knowing or intentional state of mind" was required for liability under the SCA).

Here, Chinook alleges that the City accessed Chinook's Facebook Messenger chats with a warrant issued pursuant to Colorado state court warrant procedures. (Doc. 12 ¶¶ 45-56) Thus, Plaintiffs fail to allege a violation of the SCA. *See* 18 U.S.C. § 2703(a), (b)(1)(A) (the government can require the disclosure of the contents of an electronic communication with a warrant).

In addition, the City did so in good faith reliance on the warrant. The Affidavit in support of the warrant identified Chinook as the organizer of the housing march, the conduct of the

**Supp.App.218**

approximately 60 march participants that was illegal (namely, marching in the street despite repeated orders to move to the sidewalk), and the crime of "Obstructing Passage or Assembly" that the 60 march participants committed. (Doc. 51-1 at 3) Not only did the individual Officers (Steckler and Otero) believe it to be sufficient under the Fourth Amendment, so did the judge. Thus, the City is entitled to the good faith reliance defense to liability under the SCA. 18 U.S.C. § 2707(e)(1).

Finally, Chinook alleges only that Officers Steckler and Otero "acted with a knowing and intentional state of mind." (Doc. 12 ¶ 193) But the state of mind of two police officers hardly demonstrates the state of mind of the City. Chinook fails to allege that, for example, a final decisionmaker for the City knew or intended to access Chinook's Facebook Messenger chats without a valid warrant. For all of these reasons, Chinook fails to state a claim against the City for a violation of the SCA.

<u>**Conclusion**</u>

Plaintiffs' claims against the City of Colorado Springs should be dismissed with prejudice. Respectfully submitted this 20th day of November, 2023.

OFFICE OF THE CITY ATTORNEY OF THE
CITY OF COLORADO SPRINGS, COLORADO
Wynetta P. Massey, City Attorney


*/s/ Anne H. Turner*
Anne H. Turner, Assistant City Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Telephone:  (719) 385-5909
Facsimile:  (719) 385-5535
anne.turner@coloradosprings.gov

Attorneys for Defendants City of Colorado Springs,
B.K. Steckler, Jason S. Otero and
Roy A. Ditzler

10

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on the 20th day of November, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

jackie.roeder@dgslaw.com
theresa.benz@dgslaw.com
elise.reecer@dgslaw.com
kylie.ngu@dgslaw.com
tmacdonald@aclu-co.org
sneel@aclu-co.org
akurtz@aclu-co.org
msilverstein@aclu-co.org
lmoraff@aclu-co.org

Attorneys for Plaintiffs

thomas.isler@usdoj.gov

Attorney for Defendants Federal Bureau of Investigation and Daniel Summey

*/s/Amy McKimmey*
Amy McKimmey
Legal Secretary

11

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF COLORADO**

Civil Action No. 1:23-cv-01951-CNS-MDB

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

Plaintiffs,

v.

CITY OF COLORADO SPRINGS;
DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual
capacity;
B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual
capacity;
JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual
capacity;
ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his
individual capacity; and
FEDERAL BUREAU OF INVESTIGATION;

Defendants.

---

**PLAINTIFFS' RESPONSE TO STECKLER AND OTERO'S MOTION TO DISMISS**

---

**Table of Contents**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 2

ARGUMENT **....................................................................................................................** 2

I.      The Officers are Not Entitled to Qualified Immunity on Claim 2. ..................................... 2

A.      The Warrant Failed to Comply with the Fourth Amendment. ........................................... 3

1.      The Facebook Warrant Was Insufficiently Particular. ....................................................... 3

2.      The Facebook Warrant Was Wholly Unsupported by Probable Cause. ............................ 7

3.      The Warrant's Targeting of Protected Speech and Association Make
        Its Constitutional Invalidity Even More Apparent. .......................................................... 11

B.      The Facebook Warrant Violated Chinook's and its Members' Clearly
        Established Rights. ......................................................................................................... 12

II.     Plaintiffs' Claim 3 Properly Alleges a Violation of the Stored Communications Act. ... 13

III.    Plaintiffs' Claim 5 Properly Alleges a Violation of the Colorado Constitution. ............. 14

CONCLUSION .................................................................................................................... 14

**Supp.App.222**

Plaintiffs Jacqueline Armendariz and Chinook Center submit this Response to Defendants B.K. Steckler and Jason S. Otero's Motion to Dismiss, ECF No. 51 ("Motion" or "MTD"), and state the following in opposition:

## INTRODUCTION

The claims at issue in the Motion arise from an overbroad and unconstitutional seizure of posts, messages, and membership data related to a local advocacy group's First Amendment-protected speech and associational activity. After spying on the Chinook Center for about a year, the Colorado Springs Police Department ("CSPD") used a planned July 31, 2021 housing march as an opportunity to arrest Chinook Center leaders and other activists. (First Amended Complaint, Doc. 12 ("FAC"), ¶¶ 2-9, 23-43.) Following the march, CSPD Officers Steckler and Otero (the "Officers") obtained a search warrant—one of several that are the subject of this lawsuit—to search the Chinook Center's Facebook data and seize "all subscriber information," "all Facebook posts," "all Facebook Messenger chats" and "all Facebook Events" from a weeklong period, regardless of the subject matter. (Ex. 1 to MTD, Doc. 51-1 at 1 (the "Facebook Warrant"); FAC ¶¶ 45-46, 1711-183.) The warrant failed to articulate any reason to suspect the search would yield evidence of wrongdoing, let alone to justify its broad scope. Its sole asserted basis was that the Chinook Center posted information about the planned political march in advance, which is core speech protected by the First Amendment. (*Id.*)

The Officers now seek to avoid liability for the unlawful intrusion, asking this Court to dismiss all claims against them (Claims 2, 3, and 5 of FAC). The Officers' arguments are unavailing. First, their assertion of qualified immunity should be rejected because the Facebook Warrant violated the Fourth Amendment's clearly established particularity and probable cause requirements, which must be applied with "scrupulous exactitude" given the First Amendment-

1

protected speech at issue. *Stanford v. State of Tex.*, 379 U.S. 476, 485 (1965). Additionally, the Complaint adequately pleads fact-dependent claims for violations of the Stored Communications Act ("SCA") and the Colorado Constitution under Colorado's Enhance Law Enforcement Integrity Act, to which qualified immunity is no defense. *See* C.R.S. § 13-21-131(2)(b); *see also People v. Seymour*, 536 P.3d 1260, 1268 (Colo. 2023) (recognizing that state constitutional warrant protections must be applied with "scrupulous exactitude" when a search implicates freedom of expression). The Colorado Supreme Court recently recognized the "fact-dependent" nature of the inquiry when courts "examine what is reasonable under the search-and-seizure provisions of the federal and state constitutions." *Seymour*, 536 P.3d at 1268. For at least these reasons, the Court should deny the Officers' motion to dismiss in its entirety.

## LEGAL STANDARD

In considering the motions to dismiss, the Court must accept all well-pled factual allegations as true and construe them in the light most favorable to the Plaintiffs. *Straub v. Burlington N. Santa Fe Ry.*, 909 F.3d 1280, 1287 (10th Cir. 2018). When a plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he meets the pleading standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "In the context of qualified immunity, [the court] may not dismiss a complaint for failure to state a claim unless it appears beyond doubt that plaintiffs cannot prove a set of facts that would entitle them to relief." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 858 (10th Cir. 2016).

## ARGUMENT

**I.     The Officers are Not Entitled to Qualified Immunity on Claim 2.**

A defendant who asserts qualified immunity is liable under § 1983 where "(1) the defendant's actions violated a constitutional or statutory right, and (2) the rights alleged to be

**Supp.App.224**

violated were clearly established at the time of the conduct at issue." *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). Both are true here.

**A.      The Warrant Failed to Comply with the Fourth Amendment.**

The Fourth Amendment requires that warrants be both supported by probable cause and that they "particularly describ[e] the place to be searched, and the persons or things to be seized." U. S. Const. amend. IV. These foundational requirements apply with extra rigor when the warrant implicates First-Amendment protected expressive activity, as it does here. The Facebook Warrant does not come close to satisfying these constitutional minimums.

**1.   The Facebook Warrant Was Insufficiently Particular.**

The constitution requires particularity to ensure that an authorized search is "carefully tailored to its justifications" rather than taking on the character of the "wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). To comply with the particularity requirement, a warrant must "ensure[] that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss*, 774 F.2d at 404.

Here, the Facebook Warrant authorizes the seizure of vast amounts of information associated with the Chinook Center's Facebook page. Yet neither the warrant nor the affidavit specifies the crime for which the evidence is sought. Steckler checked a box stating that there is probable cause to believe the data seized "would be material evidence in a subsequent criminal prosecution," but the warrant does not specify what the prosecution would be *for*. (Facebook Warrant at 1.) Likewise, the affidavit contains the bald assertion that "information gained from the two Facebook profiles will be material evidence in this case." (*Id.* at 3.) But it contains no explanation of what "this case" involves. The failure to specify a crime renders the warrant

**Supp.App.225**

insufficiently particular. *See Cassady v. Goering,* 567 F.3d 628, 635 (10th Cir. 2009) (warrant that fails to confine the scope of the search to any particular crime is invalid); *United States v. Ulbricht*, 858 F.3d 71, 99 (2d. Cir. 2017) (warrant must identify the specific offense for which the police have established probable cause in order to meet particularity requirement).

Defendants cite a footnote from *United States v. Allen* in which the District of Kansas rejected an argument that a warrant was insufficiently particular, stating "the warrant was still limited to search for evidence relating to a specific crime, and it did not authorize on its face a search for every record associated with the Facebook accounts." No. 16-10141-01-EFM, 2018 WL 1726349, at *6 n. 5 (D. Kan. Apr. 10, 2018). But here the seizure of all of Chinook's Facebook Messenger chats was not so limited. Additionally, the affidavit in *Allen* supported a "nexus between the crime under investigation and [three individual] Defendants' Facebook usage." *Id.* at *5. Here, there is no possible "nexus" because there is no identified crime.

To the extent the Officers suggest the affidavit sufficiently limited the search of the warrant's scope to what it falsely describes as an "illegal" march and an "illegal" demonstration, that argument is unavailing. First, the affidavit makes no effort to describe what makes an entire march or demonstration "illegal," nor could it. Plaintiffs were engaged in core First Amendment and Colorado constitution-protected speech, association, and petitioning activities. The fact that the affidavit tries to tarnish their First Amendment-protected activity as broadly "illegal" demonstrates not only that the officers did not comply with the "scrupulous exactitude" required, *see Stanford v. State of Tex.*, 379 U.S. 476, 485 (1965), but that they in fact targeted core speech and expressive activities. Second, to the extent the officers now claim they were focused on alleged jaywalking offenses, the FAC alleges that while some marchers walked in the street

4

**Supp.App.226**

where there were no sidewalks (and traffic was already blocked by police vehicles), the marchers complied with officer requests to get out of the street. (FAC, ¶39.)

Third, while the affidavit inaccurately describes the housing march as "illegal" and makes reference to "people involved in illegal demonstrations," it never specifies any particular wrongdoing as a limiting parameter for the search for evidence. Indeed, a search for evidence of anything that may be "illegal" is the antithesis of a search for evidence of a specific crime.

The Officers, however, now assert that the warrant sought evidence related to the specific offense of "Obstructing Passage or Assembly." (MTD at 4.) But here is the extent of the affidavit's discussion of that alleged offense:

> On 08/02/21, your affiant was contacted by Lieutenant M. Chacon, 2300, who asked if your affiant would research a tip regarding a Facebook post that was posted after arrest were made for Obstructing Passage or Assembly, and Resisting, Interference with a Public Official on South Tejon Street just south of East Fountain Boulevard on 07/31/21 at approximately 1137 hours.

(Motion Ex. 1 at Affidavit.) The Officers' reliance on this reference is puzzling. First, a warrant does not satisfy particularity just because a word-search of the document turns up mention of a crime somewhere. The point is that the warrant must specify that it authorizes the search and seizure only of evidence *related to* that crime. The statement that "arrest were made" for an offense does not suffice if neither the warrant nor the affidavit limits the scope of the search to evidence of that alleged offense. While the Officers now assert that the warrant was sought to investigate Chinook's Facebook data for the purported traffic offense, the warrant application never said so.

In fact, the very mention of "Obstructing Passage or Assembly" is followed immediately by the name of another crime—"Resisting, Interference with a Public Official," which not even the Officers suggest was the investigative subject of the warrant application. Indeed, nothing in

**Supp.App.227**

the affidavit connects the purported "Obstructing" offense to the requested search authority any more than it does the "Resisting" crime. The asserted relevance of each is identical (and non-existent). They are named only in reference to the timing of a Facebook post that Steckler had previously been tasked with investigating but that was expressly *not* the subject of the warrant at issue here, as Steckler had already obtained a separate warrant to investigate that post. (*Id.* at 4.) In other words, as to this warrant application, those named crimes are nothing but background.

Moreover, the Officers' post-hoc assertions of which "specific crime" the search was limited to are inconsistent with the affidavit. The affidavit's reference to an arrest for "Obstructing Passage or Assembly, and Resisting, Interference with a Public Official" can only be a reference to the arrest of Shaun Walls described in the affidavit's following paragraphs, because that is the *only* arrest described in the affidavit. But the Officers do not assert that the warrant was sought to investigate Walls; their Motion asserts that the warrant was requested to apprehend the other "approximately 60 participants in the illegal march who might have confessed their intention to obstruct or their commission of obstruction." (MTD at 7.) In any event, whatever the Officers' current position, what matters is that the affidavit failed to specify *any* particular wrongdoing as the subject of the search authority it requested. To adopt the Defendants' interpretation, this Court "would have to rewrite the warrant to include what it lacks: a reference to the targeted crime(s)." *United States v. Suggs*, 998 F.3d 1125, 1134 (10th Cir. 2021).

The absence of particularity in the Facebook Warrant is especially egregious because of the material it sought. Courts have long held that warrants authorizing a search for documents, as opposed to distinctive physical objects, require stricter compliance with the particularity requirement, "because of the potential they carry for a very serious intrusion into personal

**Supp.App.228**

privacy." *United States v. Leary*, 846 F.2d 592, 603 n.18 (10th Cir. 1988) (quoting 2 Wayne R. LaFave, *Search and Seizure* § 4.6(d), at 249–50 (2d ed. 1987)). For example, "[w]here a business is searched for records, specificity is required to ensure that only the records which evidence crime will be seized and other papers will remain private." *Id.* Moreover, "[t]he modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important." *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009).

### 2.   The Facebook Warrant Was Wholly Unsupported by Probable Cause.

Even if the warrant application could be construed to identify and be limited to a specific crime (which it cannot), the warrant still violated the Fourth Amendment because it was unsupported by probable cause. Where a search warrant "authorizes the search and seizure of evidence that is not supported by probable cause," it is "impermissibly overbroad." *United States v. Leary*, 846 F.2d at 605. Probable cause exists only where the affidavit indicates a "nexus . . . between suspected criminal activity and the place to be searched." *United States v. Mora*, 989 F.3d 794, 800 (10th Cir. 2021) (quoting *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009)). Importantly, the objective facts in the affidavit must be sufficient to allow the reviewing judge to determine probable cause independently; it cannot rely on bare conclusions. *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

The Facebook Warrant authorized a seizure of *all* of Chinook's Facebook Messenger chats, Facebook posts, event data, and subscriber information for a weeklong period. (Facebook Warrant at 5.) It is a heavy burden to establish probable cause for such a sweeping search, as "[t]he breadth of a warrant must be justified by the breadth of the probable cause." *Voss*, 774

**Supp.App.229**

F.2d at 408 (Logan, J., concurring); *see also In re Search of Info. That is Stored at the Premises Controlled by Google*, 542 F. Supp. 3d 1153, 1157 (D. Kan. 2021) (Where a warrant "is likely to return a large amount of data from individuals having nothing to do with the alleged criminal activity . . . the sheer amount of information lessens the likelihood that the data would reveal a criminal suspect's identity, thereby weakening the showing of probable cause.").

Here, the warrant sought all of Chinook's Facebook information from and between an unlimited number of people, without regard to what the information might contain and regardless of how many people would be swept up in the search and who had nothing to do with the march. The Officers contend that the warrant "could not limit the search to particular individuals' chats, because not all of the approximately 60 participants in the illegal march who might have confessed their intention to obstruct or their commission of obstruction had been identified." (MTD at 7.) In other words, because law enforcement failed to gather facts that would justify a particularized search, their argument now is that their dragnet search for core expressive speech and association materials need not be justified. The Fourth and First Amendments, however, reject this view; they require more.

Yet the affidavit fails to indicate any reason to believe that evidence of illegal activity would be found in any of Chinook's Facebook data, let alone in all of the corners of Facebook (posts, messages, events, subscriptions) the Officers sought to rummage through. The affidavit states the affiant's belief that "the information gained from . . . Facebook . . .will be material evidence in this case," but such a conclusory statement is the paradigmatic example of what does *not* pass constitutional muster. *Gates*, 462 U.S. at 239 ("[A] sworn statement of an affiant that 'he has cause to suspect and does believe that' [evidence] is located on certain premises will not

do."). Such a statement "gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Id.*

The sole "factual" basis offered to gain access to Chinook's Facebook data is the affidavit's assertion that "people involved in illegal demonstrations use social media to organize planned events."  (Facebook Warrant at 4.) Besides the inaccurate reference to a supposedly "illegal" demonstration, this statement also does not pass muster on its own. In order for a judge to make a probable cause determination, they must be presented with facts specific to the circumstances at hand. *See Mora*, 989 F.3d at 801 (holding boilerplate statements about the use of electronic devices insufficient to establish probable cause because the statements were not "specific to Defendant's crime or circumstances"). The only information included in Steckler's affidavit related to the Chinook Center is a single, unclear sentence stating that another detective contacted Steckler "and stated a second profile was under the name of the Chinook Center was located in which the protest was organized under the events tab." (Facebook Warrant at 4.)[1] The affidavit also suggests that the housing march was organized by the Chinook Center, but it establishes no nexus between the Chinook Center's Facebook messages and any offense that would justify such a broad seizure.

A key missing ingredient from the affidavit is any factual basis to suspect that discussion of the housing march would include evidence of *wrongdoing*. The affidavit and the Officers' motion simply assumes that if an individual is arrested at a public protest for jaywalking, the entire group and their collective political activity can be tainted as "illegal." But that is not a permissible leap, particularly when police seek to seize First Amendment protected materials.

---

[1] This statement is ungrammatical and unclear, yet neither Steckler nor Otero clarified what it meant before presenting their warrant application to the judge.

The facts in the affidavit—that some protesters marched in the street and that the event was listed on Chinook's Facebook page—hardly support an inference that the discussions would include criminal plotting or debriefing about the alleged jaywalking offense.

The Officers now state: "Had participants posted to the Chinook Facebook Messenger chats about their intent to commit or their commission of such obstruction crimes, then such evidence would be probative of their guilt in their criminal prosecutions." (MTD at 5.) But the affidavit provides no reason to believe that evidence related to criminal prosecutions *would be found* in Chinook Center's messages.

In a brazen effort at false equivalence, the Officers cite and attach a criminal complaint against an individual who participated in the January 6 attack on the United States Capitol—an event that could not be more dissimilar to the alleged jaywalking offense discussed in Steckler's affidavit—to "demonstrate[] the evidentiary value of Facebook Messenger chats." (MTD at 5.) But this case does not turn on whether Facebook Messenger chats can have evidentiary value generally. To establish probable cause to seize Facebook Messenger chats tied to a particular profile, officers must indicate in their affidavit that evidence of a specified crime is likely to be found in the specific place to be searched. *See United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). Defendants failed to do so here.

The Officers' citation to *United States v. Burgess* is also unavailing. 576 F.3d 1078 (2009). There, the court considered a warrant authorizing a search of "computer records," "'certain property and evidence to show the transportation and delivery of controlled substances, which may include but [is] not limited to' controlled substances, paraphernalia, chemicals, and containers, " and "items of personal property which would tend to show conspiracy to sell drugs, including pay-owe sheets, address books, rolodexes, pagers, firearms and monies." *Id.* at 1091.

**Supp.App.232**

The court reasoned that "[i]f the warrant is read to allow a search of all computer records without description or limitation it would not meet the Fourth Amendment's particularity requirement." *Id.* But because the search "was limited to evidence of drugs and drug trafficking and, as it relates to the computer, was limited to the kind of drug and drug trafficking information likely to be found on a computer," there was "'sufficiently particularized language' creating 'a nexus' with the crime to be investigated—drug trafficking—and therefore was not overly broad." *Id.* at 1091. Here, on the other hand, each category of data to be seized is "without description," the search was not limited to evidence of any particular offense, and there was no language—let alone particularized language—creating a nexus with any crime to be investigated.

### 3. The Warrant's Targeting of Protected Speech and Association Make Its Constitutional Invalidity Even More Apparent.

The probable cause and particularity defects of the Facebook Warrant are "made even more egregious by the fact that the search at issue implicated free speech and associational rights." *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985). The Supreme Court has recognized that the "most important places . . . for the exchange of views" are the 'vast democratic forums of the Internet' in general . . . and social media in particular." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (cleaned up). "Social media users employ these websites to engage in a wide array of protected First Amendment activity on topics 'as diverse as human thought.'" *Id.* at 105 (quoting *Reno*, 521 U.S. at 852).

The Chinook Center and its members use Facebook—and Facebook Messenger chats in particular—for political organizing, debate, and advocacy. (FAC, ¶ 46.) By obtaining a warrant to seize all such messages for a week-long period, the Officers sought to chill the speech of the Chinook Center and its members. (*Id.*, ¶ 7.) While the Facebook Warrant could not survive any

**Supp.App.233**

level of Fourth Amendment scrutiny, its targeting of First Amendment activities make its
constitutional infirmities all the more intolerable.

### B.     The Facebook Warrant Violated Chinook's and its Members' Clearly Established Rights.

The Tenth Circuit has held that it is "clearly established that warrants must contain
probable cause that a *specified crime* has occurred and meet the particularity requirement of the
Fourth Amendment in order to be constitutionally valid." *Mink v. Knox*, 613 F.3d 995, 1011 (10th
Cir. 2010) (emphasis in original). *Mink* concerned a warrant to search a student's home as part of
an investigation to determine whether a student had violated Colorado's libel law by publishing a
satirical editorial column. *Id.* at 998–99. The court reasoned that the warrant was "clearly invalid
under the particularity clause of the Fourth Amendment" because it authorized the search of
various items—including computer equipment—without "t[ying] the listed items to any
particular crime." *Id.* at 1011. The district attorney who reviewed and approved the warrant
application was not entitled to qualified immunity for violating the student's rights. *Id.* at 1012.

Similarly, the Facebook warrant failed to tie the Facebook Messenger chats and other
data to be seized to any particular crime. "Given that the particularity requirement is set forth in
the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not
comply with that requirement was valid." *Groh*, 540 U.S. at 563; *Cassady*, 567 F.3d at 644. And
any "reasonably well-trained officer" would know that Steckler's affidavit "failed to establish
probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345.

Moreover, any reasonable officer would have recognized that the Facebook Warrant
authorized a broad seizure of First Amendment-protected materials, and therefore needed to
conform to the Fourth Amendment with "scrupulous exactitude." *Stanford*, 379 U.S. at 485.
Finally, while the Officers attempt to blame the magistrate for any defects in the warrant, (MTD

**Supp.App.234**

at 8), an officer who submits a plainly deficient warrant application "cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Malley*, 475 U.S. at 346 n.9; *see also* Pls' Resp. to Federal Defs' and Ditzler's MTD at 23–24.

**II.**     **Plaintiffs' Claim 3 Properly Alleges a Violation of the Stored Communications Act.**

Plaintiffs alleged that the "private Facebook Messenger chats of the Chinook Center, its members, and its associates were wire and electronic communications stored for less than 180 days through Facebook's system." (FAC, ¶ 187.) The Stored Communications Act provides the government cannot require the disclosure of the contents of such communications in electronic storage unless it obtains "a warrant issued using . . . State warrant procedures." 18 U.S.C. § 2703(a). Similarly, for wire or electronic communications in a remote computing service, the government can require disclosure only if it obtains a warrant pursuant to State warrant procedures or if it obtains a court order and provides prior notice to the subscriber or customer. *Id.* § 2703(b)(1).

As outlined above, the Officers failed to obtain a warrant *pursuant to State warrant procedures*, i.e., by obtaining a warrant that is both supported by probable cause and sufficiently particular.[2] Additionally, because the government did not provide prior notice to Chinook, it failed to satisfy the requirements of 18 U.S.C. 2703(b)(1)(B). Indeed, the warrant affirmatively forbids such prior notice. (Facebook Warrant at 5.)

In addition, for the reasons discussed in Sections I.A.1–2, Plaintiffs plausibly alleged that the affidavit fails to identify "specific and articulable facts showing that there are reasonable

---

[2] Contrary to the Officers' assertion (MTD at 12), Chinook has consistently contested the validity of the Facebook Warrant and alleged that it failed to comply with state court warrant procedures. *See, e.g.,* FAC ¶¶ 47–54, 188, 190.

Supp.App.235

grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation," as required by 18 U.S.C. § 2703(d). Thus, the warrant fails to comply with the requirements of 18 U.S.C. § 2703(b)(1)(B)(ii), which references and incorporates the standard of § 2703(d).

Plaintiffs have set forth in more detail their basis for denying Defendants motion to dismiss the SCA claim in their opposition to the City's Motion to Dismiss and incorporate those arguments here.

## III.      Plaintiffs' Claim 5 Properly Alleges a Violation of the Colorado Constitution.

Plaintiffs' Claim 5 for violations of the Colorado Constitution's privacy, speech, and assembly protections should survive. The Officers state that Claim 5 fails "[f]or the same reasons that Chinook fails to state federal constitutional violation claims." (MTD at 12.) But the Officers' qualified immunity argument is inapplicable to Claim 5 because it was brought under Colorado's Enhance Law Enforcement Integrity Act, to which qualified immunity is no defense. C.R.S. § 13-21-131(2)(b).

Moreover, the Colorado Supreme Court has repeatedly recognized that "article II, section 7 provides greater privacy protections than the Fourth Amendment." *People v. McKnight*, 2019 CO 36, ¶ 30; *Seymour*, 536 P.3d at 1268 (noting "fact dependent" nature of the search and seizure inquiry and requiring "scrupulous exactitude" when search implicates free expression). Given that Plaintiffs plausibly state a claim under the federal constitution, they most certainly state a claim under the state constitution.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

**Supp.App.236**

Dated: December 18, 2023

_s/ Theresa W. Benz_ _____
Jacqueline V. Roeder
Theresa Wardon Benz
Kylie L. Ngu
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
303-892-9400
jackie.roeder@dgslaw.com
theresa.benz@dgslaw.com
kylie.ngu@dgslaw.com


_In cooperation with the ACLU Foundation of
Colorado_

Timothy R. Macdonald
Sara R. Neel
Anna I. Kurtz
Mark Silverstein
Laura Moraff
American Civil Liberties Union Foundation of
Colorado
303 E. 17th Ave., Suite 350, Denver, CO 80203
720-402-3151
tmacdonald@aclu-co.org
sneel@aclu-co.org
akurtz@aclu-co.org
msilverstein@aclu-co.org
lmoraff@aclu-co.org

_Attorneys For Plaintiffs_

**Supp.App.237**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2023, a copy of the foregoing was filed electronically with the Court.  In accordance with Fed. R. Civ. P. 5, notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Anne Hall Turner
OFFICE OF THE CITY ATTORNEY OF
THE CITY OF COLORADO SPRINGS
30 S. Nevada Avenue, Suite 501
Colorado Springs, CO 80903
anne.turner@coloradosprings.gov

*Counsel for Defendants City of Colorado Springs, B.K. Steckler, Jason S. Otero and Roy S. Ditzler*

Thomas Alan Isler
UNITED STATES ATTORNEY'S OFFICE
1801 California Street, Suite 1600
Denver, CO 80202
thomas.isler@usdoj.gov

*Counsel for Defendants Daniel Summey and Federal Bureau of Investigation*

*s/ Beatriz Esparza*
Beatriz Esparza

16

**Supp.App.238**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF COLORADO**

Civil Action No. 23-cv-01951-CNS

JAQUELINE ARMENDARIZ and CHINOOK CENTER,

Plaintiffs,

v.

CITY OF COLORADO SPRINGS;

DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual capacity;

B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual capacity;

JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual capacity;

ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his individual capacity; and

FEDERAL BUREAU OF INVESTIGATION;

Defendants.

---

**PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO**
**MOTION TO DISMISS BY THE FEDERAL DEFENDANTS AND**
**DITZLER'S MOTION TO DISMISS AND JOINDER**

---

## Table of Contents

INTRODUCTION ........................................................................................................... 2

LEGAL STANDARD .................................................................................................... 4

ARGUMENT .................................................................................................................. 5

**I.      Claim 1 States a Viable Claim for Relief Because Defendant Summey is Subject to Suit Under Section 1983.** ................................................................................. 5

**II.     Even if the Court Were to Interpret Claim 1 As a *Bivens* Claim Against Summey, Dismissal Would Be Improper.** ...................................................................... 9

**III.    Summey and Ditzler Are Not Entitled to Qualified Immunity on Claim 1.** ........... 10

A.      The Warrants Violated Armendariz's Constitutional rights. ......................................... 11

B.      Armendariz's Constitutional Rights Were Clearly Established. .................................... 22

**IV.    The FBI Continues to Violate Armendariz's Rights By Unlawfully Retaining Her Digital Data.** ................................................................................................... 25

**V.     Defendants Are Liable Under the Colorado Constitution.** ........................................ 29

A.      This Court Has Jurisdiction Over Plaintiff's Claim of Deprivation of Rights by Summey Under the Colorado Constitution. ................................................................ 29

B.      Defendants Violated the Colorado Constitution and Are Not Entitled to Qualified Immunity on Claim 4. ................................................................................... 31

CONCLUSION .............................................................................................................. 31

i

Plaintiffs Armendariz and Chinook Center respond to "Motion to Dismiss by the Federal Defendants" (Doc. 49, filed 11/20/23) and "Ditzler's Motion to Dismiss and Joinder in Summey's/United States' Motion to Dismiss" (Doc. 50, filed 11/20/23).

## <u>INTRODUCTION</u>

On July 31, 2021, Jacqueline Armendariz was among several activists who participated in a march to bring awareness to the housing crisis in Colorado Springs. Also at the march were Colorado Springs Police Department (CSPD) officers with photos of activists they had been surveilling and hoped to arrest. CSPD officers eventually arrested Shaun Walls and Jon Christiansen, leaders of the non-profit progressive activist organization, the Chinook Center. Armendariz saw police tackling Walls as she was walking her bicycle in the march. She dropped her bicycle when an officer in riot gear ran towards her. The officer, untouched by the bicycle, continued towards the protesters.

After the protest, Defendant Summey, a detective and Task Force Officer at CSPD, reviewed CSPD officers' body camera footage and CSPD drone footage to identify Armendariz as the person who dropped her bicycle at the march. Summey also drafted warrant applications (1) to arrest Armendariz for allegedly attempting to assault an officer and (2) to search her home and seize her digital devices. The search warrant itself does not name any crimes. The supporting affidavit references the alleged attempted bicycle assault, but provides no indicia of probable cause to believe that Armendariz's devices would contain evidence of that crime. Instead, it goes to great lengths to detail Armendariz's political beliefs and associations, and repeatedly equates First Amendment-protected activities with criminality. In applying for the warrant, Summey was supervised by his CSPD supervisor, Roy A. Ditzler, who signed off on the warrant and affidavit.

After CSPD obtained and executed the first search warrant, seizing six of Armendariz's

digital devices, Summey drafted, and Ditzler approved, an application to search each of the seized devices for words like "cop," "protest," and "Walls," unconstrained by any temporal limitation. The warrant they obtained also authorized the seizure of nearly all categories of data that could be found on a device for a period of more than two months. The only theoretical constraint on this seizure was that the data must be "determined to be relevant to this investigation." But the warrant fails to specify what "this investigation" entails, and the affidavit suggests it spans everything from investigating the messages conveyed by protesters' flags to identifying other activists' social media posts expressing anti-police brutality sentiments.

Because the search warrants authorized a sweeping search and seizure of Armendariz's First Amendment-protected activities, they are subject to a heightened Fourth Amendment standard. And because the warrants were so lacking in indicia of probable cause and insufficiently particular that no reasonable officer could rely on them, Defendants violated Armendariz's clearly established Fourth Amendment rights, and they are not entitled to qualified immunity. The warrants likewise violated the Colorado Constitution, and because Plaintiff sued under Colorado's Enhance Law Enforcement Integrity Act, qualified immunity is no defense.

Additionally, Defendants continue to infringe upon Armendariz's rights by retaining copies of her digital data. Armendariz is entitled to injunctive relief ordering Defendants to return or delete copies of her devices and the files extracted therefrom. Defendants moved to dismiss this injunctive relief claim without offering any justification for the continued retention of Armendariz's data, arguing that the Fourth Amendment places no limitations on the government's retention of private data—whether it was obtained lawfully or not. Their position would render constitutional protections theoretical and privacy obsolete.

Defendants also assert that Summey cannot be sued under Section 1983 because his

position as a Task Force Officer automatically made him a federal employee acting under color of federal law. They fail to explain why a CSPD officer supervised by his CSPD supervisor applying to a state court for warrants related to a CSPD-initiated and CSPD-supervised investigation into an alleged state crime cannot be held liable as a CSPD employee acting under color of state law.

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny the Defendants' motions to dismiss.

## LEGAL STANDARD

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A court should not dismiss a claim under Rule 12(b)(6) if "the specific allegations in the complaint '*plausibly support* a legal claim for relief.'" *Choate v. Lemmings*, 294 F. App'x 386, 391 (10th Cir. 2008) (quoting *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 n. 2 (10th Cir.2007)). A claim has facial plausibility when the plaintiff pleads "facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).[1]

Additionally, "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). "In the context of qualified immunity, [the court] may not

---

[1] To the extent the United States has also moved to dismiss under Fed. R. Civ. P. 12(b)(1) in the context of its FTCA arguments, an FTCA claim should survive unless "the alleged offending conduct" is of the type that the FTCA "shield[s] from suit." *Martin v. United States*, No. 21-CV-02107-MDB, 2023 WL 2743279, at *6 (D. Colo. Mar. 31, 2023).

dismiss a complaint for failure to state a claim unless it appears beyond doubt that plaintiffs cannot prove a set of facts that would entitle them to relief." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 858 (10th Cir. 2016).

## ARGUMENT

### I.      Claim 1 States a Viable Claim for Relief Because Defendant Summey is Subject to Suit Under Section 1983.

"To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Armendariz has alleged violations of the First and Fourth Amendments to the U.S. Constitution by CSPD officers Summey and Ditzler, as well as the City of Colorado Springs.

Summey argues that the Section 1983 claim against him must be construed as a *Bivens* claim because, as a "Task Force Officer," he was acting under color of federal law. (Motion to Dismiss by the Federal Defendants ("Fed. MTD"), Doc. 49, at 4.) The facts and law belie this argument.

Federal courts "treat[] local officers assigned to federal task forces as acting *either* under color of state law *or* color of federal law." *Fernandes v. City of Broken Arrow*, No. 16-CV-0630-CVE-FHM, 2017 WL 471561, at *3 (N.D. Okla. Feb. 3, 2017). Courts have "generally held that whether an official acts under color of state or federal law largely depends upon the authority under which the action that causes the constitutional harm is taken." *Jarno v. Lewis*, 256 F. Supp. 2d 499, 503 (E.D. Va. 2003). In answering "difficult" questions about whether action was taken under color of state or federal law in the context of agencies "with both federal and state characteristics," "[a] crucial inquiry is 'whether day-to-day operations are supervised by the Federal [or state]

5

government.'" *Johnson v. Orr*, 780 F.2d 386, 390 (3d Cir. 1986) (quoting *Detore v. Local 245 Jersey City Public Employers Union,* 615 F.2d 980, 983 (3d Cir.1980)).

In drafting and submitting the warrant applications at issue here, Summey was supervised by Roy A. Ditzler, his CSPD supervisor. (First Amended Complaint, Doc. 12 ("FAC"), ¶ 114.)[2] No defendants have argued that Ditzler had any involvement with the Joint Terrorism Task Force. Ditzler initialed Summey's affidavits as Summey's supervisor and provided his CSPD badge number. (*Id.* ¶¶ 15.) Both warrants indicate that the "Agency" for whom they were submitted was the Colorado Springs Police Department. (*Id.* ¶ 111.) There is no indication that the FBI was exercising supervisory authority over Summey during the events that gave rise to Armendariz's claims against him.

Additionally, CSPD—not the FBI—initiated the criminal case against Armendariz, which was the purported basis for the search warrants. (*Id.* ¶¶ 116–17.) The footage that Summey reviewed to determine who committed the alleged crime of dropping a bicycle came from CSPD body cameras and CSPD drones. (*Id.*, ¶ 57.) Summey checked "local law enforcement databases" to discover CSPD had previously had contact with Armendariz. (Fed. MTD at Ex. 1 (Warrant 1), Doc. 49-1,  at 10; Fed. MTD at Ex. 1 (Warrant 1), Doc. 49-2, at 12.) Neither affidavit references any FBI resources or involvement, except that Summey "requests permission for the FBI to be allowed to participate in the search" of Armendariz's residence and devices. (Warrant 1 at 17; Warrant 2 at 28.) The warrants do not request that the FBI lead or supervise the search. The warrants reference no federal crimes, and were issued by a state court. (FAC, ¶ 118.)

---

[2] Plaintiffs mistakenly referred to Ditzler as Steckler in paragraphs 87 and 113–15 of the Amended Complaint. Defendant Ditzler correctly interpreted those as references Detective Ditzler. Ditzler's (MTD, Doc. 50, at 2 n. 1.)

Moreover, Summey's warrant applications state that he is a police officer for CSPD and has been "so employed for over 6 years." (*Id.* ¶ 112; Warrant 1 at 3; Warrant 2 at 5.) While Defendants highlight the fact that the warrants identify Summey's "Position" as "Task Force Officer," (Fed. MTD at 2), they neglect to mention that this position appears right below "Employed by: Colorado Springs Police Department." (FAC, ¶ 111; Warrant 1 at 2; Warrant 2 at 4.) In other words, Summey's role as a Task Force Officer served CSPD as well as the FBI. (*See also* Warrant 1 at 17 (noting Summey "regularly works joint investigations with CSPD and the FBI"); Warrant 2 at 28 (same).) These facts plausibly support a claim for relief under Section 1983.

Similar facts led Judge Wang to conclude that a CSPD officer was not acting under color of federal law in *Halik v. Brewer*, No. 21-CV-00508-PAB-NYW, 2022 WL 488608 (D. Colo. Feb. 17, 2022), *report and recommendation adopted in part, rejected in part on other grounds,* No. 21-CV-00508-PAB-NYW, 2022 WL 897105 (D. Colo. Mar. 28, 2022). There, a plaintiff sued a CSPD officer assigned to a federal task force and members of the CSPD's SWAT team for constitutional violations arising from an invalid state-issued search warrant. *Id.* at *1. Judge Wang decided there were insufficient allegations to conclude the CSPD officer was acting under color of federal law, because the warrant was obtained by the CSPD, the affiant was identified as a CSPD detective, the warrant affidavit stated it was based on "information provided by officers and/or detectives with the Colorado Springs Police Department," and "[w]hile [the plaintiff] alleges that federal ATF agents 'accompanied' the local SWAT team in their execution of the search warrant, there are no allegations reasonably suggesting that the raid, or any other purported misconduct by law enforcement, was taken either at the behest of federal agents, or in connection with any federal purpose." *Id.* at *6.

Similarly, in a case where there was no evidence that officers of a city police department "were carrying federal credentials, supervised by federal officials, paid by the federal government, or covered by federal benefits," there was insufficient evidence to demonstrate the officers acted under color of federal law. *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 537 (M.D.N.C. 2008).

The only authority Defendants cite for the proposition that Summey was acting under color of federal law is the Sixth Circuit's statement that "the nature and character of a cooperative federal-state program is determined by the source and implementation of authority for the *program*, not for the particular work that the agency chooses, in the exercise of its authority, to perform on a given day." *King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019), *rev'd on other grounds sub nom. Brownback v. King*, 141 S. Ct. 740 (2021). (Fed. MTD at 4 n. 2.) But Defendants do not explain why the authority for the *Joint* Terrorism Task Force's programs in which Summey participated were not plausibly authorized and implemented by CSPD officers acting under color of state law. Indeed, the Sixth Circuit recognized that "[a] defendant's actions performed pursuant to a mixed federal and state program may . . . be actions under color of state law." *Id.* at 432-433. (quoting *Rowe v. Tennessee*, 609 F.2d 259, 266 (6th Cir. 1979) (internal quotations omitted)).

Moreover, the facts here are distinguishable from those in *King*. In *King*, the court held that a plaintiff could not sue a Grand Rapids Police detective under Section 1983 because he was working full time with the FBI task force, and there were no allegations that the state was involved in authorizing or administering the task force. *Id.* Here, on the other hand, Armendariz has alleged facts demonstrating that Summey was acting under color of state law and within the scope of his employment as a CSPD officer while he was assigned to be a Task Force officer, (FAC, ¶¶ 15,

Supp.App.247

111), and that the CSPD was heavily involved in supervising and administering his work (*id.* ¶¶ 88, 111, 114.) Armendariz has sufficiently pled that Summey was acting under color of state law, and this Court should therefore reject Summey's attempt to recast Plaintiff's 1983 claim as a *Bivens* claim.

## II.   Even if the Court Were to Interpret Claim 1 As a *Bivens* Claim Against Summey, Dismissal Would Be Improper.

The Fourth Amendment "guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 392, (1971) (quoting *Bell v. Hood*, 327 U.S., at 684). Recognizing that damages remedies are crucial to ensuring meaningful enforcement of constitutional rights, the Supreme Court in *Bivens* "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980).

Specifically, "*Bivens* held that the Fourth Amendment guarantee against 'unreasonable searches and seizures' was a constitutional right which Bivens could enforce through a private cause of action, and that a damages remedy was an appropriate form of redress." *Davis v. Passman*, 442 U.S. 228, 234 (1979); *see also Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1527 (10th Cir. 1994) ("[I]f claims of violations of First or Fourth Amendment rights are proven, then a *Bivens* remedy may be afforded to the plaintiffs for recovery of damages for such constitutional wrongs.").

A *Bivens* remedy exists where a case arises in a context not meaningfully different from those in which the Supreme Court has previously implied a damages action. *Ziglar v. Abbasi*, 582 U.S. 120, 139–40 (2017). This case arises in the same context as *Bivens* itself: an unreasonable

**Supp.App.248**

search and seizure. Summey argues that this case presents a new context because he obtained warrants, whereas the officers in *Bivens* did not. But courts have upheld *Bivens* actions in contexts where officers relied on a defective warrant, including where there was no excessive force. *See, e.g.*, *Groh v. Ramirez*, 540 U.S. 551 (2004) (*Bivens* action against ATF agent who obtained and executed warrant lacking particularity); *Nat'l Commodity & Barter Ass'n*, 31 F.3d at 1521 (*Bivens* action against IRS officers for obtaining and executing search warrants violating the First and Fourth Amendments). Armendariz has plausibly stated a claim for relief under *Bivens*.

**III.     Summey and Ditzler Are Not Entitled to Qualified Immunity on Claim 1.**

When a defendant claims qualified immunity, a plaintiff must show: "(1) that the defendant's actions violated a constitutional or statutory right, and (2) that the rights alleged to be violated were clearly established at the time of the conduct at issue." *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). Both prongs are met here.

Warrant 2 authorized a keyword search of six digital devices for the words "Police, officer, cop, pig, bike, bicycle, attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Crustyansen, Chrischeeansen, Shaun, [and] Walls," without any temporal limitation, and without any indication that searching for any of these words would turn up evidence of a particular crime. (Warrant 2 at 29.)

It also authorized the search of Armendariz's devices for "[p]hotos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation." (*Id.*) The warrant provided no guidance on how to determine whether data was relevant to the amorphous investigation at issue.

Moreover, neither the warrant to seize Armendariz's devices nor the warrant to search them

**Supp.App.249**

was based on probable cause to believe evidence of a crime would be found on each device. The warrants swept up vast amounts of protected speech, failed to comply with the constitutional probable cause and particularity requirements, and violated clearly established law.

**A.     The Warrants Violated Armendariz's Constitutional rights.**

"The [F]ourth [A]mendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a 'general, exploratory rummaging in a person's belongings.'" *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971)). "A warrant is adequately particularized as to the 'things to be seized' when it allows an executing officer to 'reasonably ascertain and identify the things authorized to be seized,'" *People v. Seymour*, 2023 CO 53, ¶ 50, 536 P.3d 1260, 1276 (quoting *People v. Roccaforte,* 919 P.2d 799,  803 (Colo. 1996)). "with little discretion to decide which records are responsive." *Id.* (citing *Marron v. United States,* 275 U.S. 192, 196 (1927)).

The Fourth Amendment additionally requires "that the scope of the warrant be limited to the specific areas and things for which there is probable cause to search." *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988). Probable cause exists only when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). There must be a "nexus . . . between suspected criminal activity and the place to be searched." *United States v. Mora*, 989 F.3d 794, 800 (10th Cir. 2021) (quoting *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009)).

The particularity and probable cause requirements are especially important in the context of digital devices, which "store and intermingle a huge array of one's personal papers in a single place." *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009). Warrants related to the search or seizure of digital devices must "*affirmatively limit* the search to evidence of specific federal

**Supp.App.250**

crimes or specific types of material." *Id.*

Additionally, the Fourth Amendment standards are heightened where, as here, "the materials sought to be seized may be protected by the First Amendment." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978). Judges must remain vigilant to the threat that "unrestricted power of search and seizure" could function as "an instrument for stifling liberty of expression." *Id.* at 564 (quoting *Marcus v. Search Warrant*, 367 U.S. 717, 729 (1961)).

### 1. The Keyword Search Was Unsupported by Probable Cause and Insufficiently Particular.

Warrant 2 authorized the search for 26 words on each of Armendariz's devices and affirmatively rejected the need for any temporal limitation, stating "these terms would be relevant to the investigation regardless of the time period in which they occurred." (Warrant 2 at 29.)  The affidavit provided no indicia of probable cause to believe that data containing words like "celebration" and "officer" would constitute evidence of an attempted assault on July 31, 2021— let alone data from ten years ago. Allowing officers to rummage through devices in this manner recalls the reviled general warrants of the eighteenth century. *See United States v. Zemlyansky,* 945 F. Supp. 2d 438, 460 (S.D.N.Y. 2013) (absence of temporal limitation on search "reinforces the Court's conclusion that the . . .  warrant functioned as a general warrant"); *State v. Turay*, 532 P.3d 57, 75-76, (Or. 2023) (in the warrant authorizing search for nine categories of data, some categories were insufficiently particular for failing to specify a time period).

The affidavit provides no reason to believe that a search for "human" or "right" would turn up evidence of a crime. But such a search would certainly capture a wide swath of political speech—commentary on anything from *right*-wing candidates' policy positions to support for a bill related to *human* trafficking—all protected by the First Amendment. *See Sweezy v. New*

**Supp.App.251**

*Hampshire*, 354 U.S. 234, 250 (1957) ("[T]he right to engage in political expression and association" was "enshrined in the First Amendment of the Bill of Rights.").

Similarly, rather than explaining why a keyword search for "Chinook" would turn up evidence of a crime, Summey's affidavit notes that the Chinook Center is "the central hub for multiple activist groups and their members," and that the Chinook Center and protesters were promoting the view that "Housing is a Human Right." (Warrant 2 at 5–6; *see also id.* at 20.) A warrant that allows officers to fish for information about an association promoting a view with which they disagree simply fails to satisfy Fourth Amendment requirements—especially when applied with the "scrupulous exactitude" required here. *See Stanford v. Texas*, 379 U.S. 476, 485 (1965).

The only references to "cop" or "pig" in Summey's affidavit appeared in social media posts by Shaun Walls expressing frustration with police. (Warrant 2 at 22–25.) A different activist's posts expressing his views about the police does not provide probable cause to believe that searching Armendariz's devices for Walls' words would reveal evidence that Armendariz attempted to assault an officer by dropping a bicycle at a protest. But it is certain that a search for these words would reveal a vast amount of Armendariz's speech—including criticism of police officers—protected by the First Amendment. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987); *Jordan v. Jenkins*, 73 F.4th 1162, 1168 (10th Cir. 2023).

The affidavit also provides no explanation for why mentions of Walls or other activists on Armendariz's devices would reveal evidence of the alleged attempted assault. While Summey asserted that Armendariz's appearance on a podcast hosted by Christiansen and Walls "shows her connection to the activist community, and her closeness with Christiansen and Walls," (Warrant 2 at 27), he does not explain how a close relationship with other activists would justify searching

13

**Supp.App.252**

Armendariz's devices for evidence of an alleged attempted bicycle assault she committed alone at the spur of the moment during an overly-aggressive arrest of someone for allegedly jay-walking.

The First Amendment protects "[t]he right to engage in expressive activities anonymously, without government intrusion or observation" as well as the right to speak, associate with others, and receive information and ideas. *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1051–53 (Colo. 2002), *as modified on denial of reh'g* (Apr. 29, 2002). "Anonymity is vital because individuals may be 'chilled' from exercising their rights when expressive activities are publicly disclosed." *Seymour*, 2023 CO 53, ¶ 38, 536 P.3d at 1274 (quoting *Tattered Cover*, 44 P.3d at 1052–53).

The warrants authorized fishing for communications with other activists and mentions of political topics without reason to believe they would reveal evidence of a crime, and thereby ran afoul of the Supreme Court's consistent admonitions against "governmental action . . . denying rights and privileges solely because of a citizen's association with an unpopular organization." *Healy v. James*, 408 U.S. 169, 185–86 (1972). "[G]uilt by association alone, without [establishing] that an individual's association poses the threat feared by the Government,' is an impermissible basis upon which to deny First Amendment rights." *Id.* at 186; *cf. Poolaw v. Marcantel*, 565 F.3d 721, 730, 738 (10th Cir. 2009), *as amended* (July 24, 2009) ("[M]ere propinquity" to someone suspected of a crime is "insufficient to establish probable cause" for a search warrant).

Defendants argue that, because the warrant did not need to contain "search protocols," the keywords "could not have invalidated Warrant 2." (Fed. MTD at 16.) But a warrant's description of an overbroad search cannot be rendered constitutional by referring to the description as "search protocol." Even the most particularized warrant would still be unconstitutional if it particularly described a search for which there was no probable cause. Here, the keyword search is both

14

**Supp.App.253**

insufficiently particular and overbroad. Because the keyword search provision failed to cabin the search to a particular timeframe and authorized a search reaching vast amounts of protected speech without probable cause, it violated the Fourth Amendment.

### 2. The Requirement that the Data Seized Be "relevant to this investigation" Is Insufficiently Particular.

The warrants authorized the seizure of broad categories of data so long as they were "determined to be relevant to this investigation," without providing any description of "this investigation" or any guidance on determining which data is "relevant" to it. This lack of specificity renders the warrant insufficiently particular. *See United States v. Lofstead*, 574 F. Supp. 3d 831, 844 (D. Nev. 2021) (warrant to search "[a]ny and all records and materials that may be found within [the phone], in any format and media (including, but not limited to; images videos, e-mails, chat logs, text messages, instant messages and electronic messages), pertaining to the Target Offenses" was insufficiently particular and violated the Fourth Amendment).

Far from leaving "nothing . . . to the discretion of the officer executing the warrant," *Voss*, 774 F.2d at 404 (quoting *Stanford*, 379 U.S. at 485-86), the warrants allowed officers unfettered discretion to decide what "this investigation" encompassed, and which data was relevant to it. *See United States v. Hillyard*, 677 F.2d 1336, 1339 (9th Cir. 1982) (describing as "unlawfully general" searches "where the accompanying warrant 'left to the executing officers,' rather than to the magistrate upon issuance, 'the task of determining what items fell within broad categories stated in the warrant' and where there were no clear guidelines distinguishing between property which was contraband and that which was not" (quoting United *States v. Drebin*, 557 F.2d 1316, 1322-23 (9th Cir. 1977))); *Taylor v. State*, 260 A.3d 602, 616 (Del. 2021) (warrant allowing investigators to search smartphone for "any and all data" "pertinent to the criminal investigation" was "unlimited in scope" and constituted an unlawful general warrant).

15

*Voss v. Bergsgaard* is instructive. 774 F.2d 402. There, IRS agents had probable cause to believe the National Commodities and Barter Association (NCBA) was engaged in fraud and obtained warrants for the seizure of many types of records, including "books, literature and tapes advocating nonpayment of federal income taxes; publications of tax protestor organizations; and literature relating to communications between persons conspiring to defraud the IRS." *Id.* at 404. While the warrant stated that all types of evidence listed "are evidence of violations of Title 18, United States Code, Section 371," the reference to the conspiracy statute was not "a constitutionally adequate particularization of the items to be seized," because the statute is broad and "places no real limitation on the warrant." *Id.* at 405. Similarly, Warrant 2's reference to "this investigation"—which is not tied to any crime in the warrant itself—does not limit the executing officers' discretion to "rummag[e] through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all." *Id.* at 405. Additionally, as in *Voss*, "[t]he warrants' overbreadth is made even more egregious by the fact that the search at issue implicated free speech and associational rights." *Id.* The warrant here authorized the seizure of any messages or emails to, from, or about political organizers and political topics. Here, as in *Voss*, there was "no justification for seizing records and documents relating to [the target's] legitimate activities." *Id.* at 406.

Defendants rely on information in the affidavit to argue that the warrant itself was sufficiently particular. (Fed. MTD at 9, 11.) But nothing in the affidavit limits the bounds of "this investigation." To the contrary, the affidavit recounts a sprawling expedition into everything from Armendariz's feelings about white people (based on Summey's use of a slang dictionary to look up the term "yt supremacy"), (Warrant 2 at 16), to how "active politically" Armendariz is, (*id.* at 16, 18).

16

**Supp.App.255**

The Ninth Circuit rejected a claim that an affidavit offered "the level of guidance necessary to cure a facially invalid warrant" in *United States v. Kow*, 58 F.3d 423, 429 (9th Cir. 1995). The *Kow* warrant authorized the seizure of fourteen categories of business records but "contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity." *Id.* at 427. The court determined that, "[a]lthough the affidavit contained some information that could have been used to make the warrant more specific . . . , the information was buried among thirty-five pages of less helpful material and would not have assisted officers executing the warrant to narrow the scope of their search." *Id.* at 430.

Summey's affidavit, too, is 23 pages long and contains information entirely irrelevant to any alleged crime. The affidavit contains Summey's Internet research supposedly indicating that red flags symbolize socialism and communism. (Warrant 2 at 6.) It also contains Summey's assessment of Armendariz's LinkedIn profile, which "shows she is active politically in Colorado Springs and Pueblo." (Warrant 2 at 16.) And a key feature of "this investigation" appears to be treating protest activity as "illegal." (*See, e.g.*, Warrant 2 at 5, 19, 25, 26, 27.) If the scope of "this investigation" is determined by the affidavit, then it appears to be even more wide-ranging than the warrant on its own, causing its own additional constitutional infirmities.

While the fourteenth page of the affidavit includes one mention of a specific crime—attempted assault—the affidavit as a whole suggests Defendants' view of "this investigation" was much broader than simply locating evidence that Armendariz dropped her bicycle in front of an officer at the July 31 housing rights march. And no officer executing the warrant would have known where their discretion ended.

### 3. There Was No Probable Cause to Seize or Search All of Armendariz's Devices.

In support of the application for the warrant to seize all "Digital media storage devices, to

17

include phones, computers, tablets, thumb drives, and external hard drives found to be associated with Jacqueline Armendariz," (Warrant 1 at 18), Summey made no attempt to link any of Armendariz's devices with the alleged crime, aside from boilerplate statements about the use of digital devices generally. The affidavit states: "[P]eople who engage in illegal protest activity frequently carry their phones with them to take photos of their activity and message others who are also participating in illegal protest activity." (Warrant 1 at 17.)

But general assertions that people who commit certain types of crimes often use their cell phones in the process, and boilerplate language about the types of data that may be found on cell phones, are insufficient to establish probable cause to search a particular cell phone—let alone every digital media storage device. *See Mora*, 989 F.3d at 801 ("The affiant stated . . . that alien smugglers often use electronic communication devices, GPS devices, and electronic banking systems to conduct operations and store records. None of those boilerplate statements, however, are specific to Defendant's crime or circumstances."); *United States v. Ramirez*, 180 F. Supp. 3d 491, 494, 495 (W.D. Ky. 2016) (insufficient information to establish probable cause to search defendant's phone where defendant possessed phone at time of his arrest, affiant noted "that individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or co-defendants/victim," and "cell phones . . . are generally considered the 'tools of the trade' of drug traffickers."); *United States v. Oglesby*, No. 4:18-CR-0626, 2019 WL 1877228, at *4–5 (S.D. Tex. Apr. 26, 2019) (generalizations about how cell phones are used and beliefs about evidence they might contain were insufficient to establish a nexus between the alleged crime and the suspect's phone).

In the modern era, cell phones are "a pervasive and insistent part of daily life," creating and storing "a cache of sensitive personal information" as a person moves about the world. *Riley*

*v. California*, 573 U.S. 373, 385, 395 (2014). Location information alone provides "an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (quoting *United States v. Jones*, 565 U.S. 400, 415, (2012) (Sotomayor, J., concurring)). Combined with all the other data on cell phones, these devices might contain evidence of nearly everything a person does.

But if these observations were sufficient to establish probable cause to search a person's cell phone without any specific facts linking a particular device to the alleged criminal activity, then police could seize and search cell phones in every case, warrants would merely be formalities, and the Fourth Amendment's protections would be eviscerated. *See Oglesby*, 2019 WL 1877228, at *6 (While "a person's cell phone contains evidence of almost any activity in which they participate," "[i]f these statements are held sufficient [to establish the nexus required for probable cause], every accusation of criminal activity would automatically authorize a search of the suspect's cell phone, transforming every arrest warrant into a search warrant and directly contravening the Supreme Court's decision in *Riley*."); *Commonwealth v. White*, 475 Mass. 583, 591, 59 N.E.3d 369, 377 (Mass. 2016) (If it were true that "there exists a nexus between a suspect's criminal acts and his or her cellular telephone whenever there is probable cause that the suspect was involved in an offense, accompanied by an officer's averment that, given the type of crime under investigation, the device likely would contain evidence," then "it would be a rare case where probable cause to charge someone with a crime would not open the person's cellular telephone to seizure and subsequent search.").

And if the assertion that "people store digital data on numerous devices" were enough to establish probable cause to seize all devices (Warrant 1 at 15), there would similarly be probable

**Supp.App.258**

cause to search all of a suspect's devices in nearly every investigation. *Cf. Voss*, 774 F.2d at 406 (no probable cause to seize nearly all of organization's business records without "probable cause to believe that fraud pervaded every aspect" of the organization); *State v. Castagnola*, 46 N.E.3d 638, 654 (Ohio 2015) ("[W]e are not inclined to leap to the conclusion that the information stored on a phone will necessarily be backed up on a computer"). Without a specific nexus between each of Armendariz's devices and the alleged attempted assault, there was no probable cause to seize each device.

After six of Armendariz's devices were seized, Warrant 2 authorized a similarly overbroad search of each device. Far from establishing a "nexus . . . between suspected criminal activity and the place to be searched," *Mora*, 989 F.3d at 800, the affidavit in support of Warrant 2 contained information suggesting that some of the devices were particularly *unlikely* to contain data relevant to the alleged attempted assault.

One of the computers searched pursuant to Warrant 2 had stickers on it "denoting it is a work computer, and is property of US Senator Michael Bennet's Office, and is US Senate Property." (Warrant 2 at 19.) Summey articulated no reason to believe that evidence of Armendariz dropping her bike at a Saturday protest would be found on her work computer, aside from his claimed "training and experience" that "people often engage in personal communications with their work devices even though it is oftentimes not allowed by company policy."[3] If this statement

---

[3] Defendants argue the fact that Armendariz's supervisor told Summey that Armendariz "attended the protest" and "sent her digital media of the protest" provides cause to believe "Plaintiff's devices possessed evidence that would be relevant to her prosecution." (Fed. MTD at 13.) But Armendariz's work computer was seized before Summey spoke with Armendariz's supervisor. And in any case, Summey's statement cannot justify the search of six different devices for a vast array of information besides "digital media of the protest" such as emails and location information.

**Supp.App.259**

were sufficient to provide probable cause here, then there would *always* be probable cause to search a person's work devices for evidence of non-work-related crimes.

Additionally, Warrant 2 authorized the seizure of data from a period of more than two months, even though Summey reviewed bodycam footage of the incident, and therefore knew the exact moment it occurred. (Warrant 2 at 7 (discussing photos from Officer Gilmore's bodycam from "the moment the suspect attempted to assault Officer Spicuglia").) Instead of seeking a warrant to obtain Armendariz's location information *at the time of the alleged bike-dropping crime*, Defendants impermissibly sought location data for the entire summer. *See United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) (holding overbroad a warrant that authorized a search for records from a six-year period when the evidence in support of probable cause all came from a three-month period); *Burns v. United States*, 235 A.3d 758, 773 (D.C. 2020) ("To be compliant with the Fourth Amendment, the warrant must specify the particular items of evidence to be searched for and seized from the phone and be strictly limited to the time period and information or other data for which probable cause has been properly established.").

Defendant Ditzler contends that the lengthy time period was justified by Summey's statement that it "would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer." (Ditzler MTD at 4; Warrant 2 at 29.) But the affidavit includes no facts to suggest that Armendariz planned to drop her bike at the protest or subsequently took credit for doing so—let alone that any such planning or credit would be in the form of photos, location data, etc.

Moreover, a search warrant must not only satisfy the probable cause and particularity requirements; it must also meet the "overriding test" of reasonableness. *See Zurcher*, 436 U.S. at 559–60; *United States v. Koyomejian*, 970 F.2d 536, 550 (9th Cir. 1992) (Kozinski, J., concurring).

The constitutional command that searches be "reasonable" requires that "when the State seeks to intrude upon an area in which our society recognizes a significantly heightened privacy interest, a more substantial justification is required to make the search 'reasonable.'" *Winston v. Lee*, 470 U.S. 753, 767 (1985); *see Doe v. Bagan*, 41 F.3d 571, 576 (10th Cir. 1994). This means that "even where the government shows probable cause, describes the scope of the search with particularity and complies with every other procedural requirement for issuance of a warrant, the court still must inquire into the 'extent of the intrusion on [the individual's] privacy interests and on the State's need for the evidence.'" *Koyomejian*, 970 F.2d at 550 (Kozinski, J., concurring) (quoting *Winston*, 470 U.S. at 763).

Here, the only specific crime identified in the affidavit is the alleged attempted assault of a police officer by dropping a bicycle in front of him. The affidavit shows that police already had overwhelming evidence, based on photos from the march, that Armendariz was the person they were looking for. (*See* Warrant 1 at 5–10.) The government's need for additional evidence was not so great as to justify the tremendous intrusion of a search of cellphones, computers, and external hard drives.  Indeed, the scope of the intrusion provides strong evidence of Defendants' retaliatory motives.

### B.      Armendariz's Constitutional Rights Were Clearly Established.

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits. There need not be precise factual correspondence between earlier cases and the case at hand, because general statements of the law are not inherently incapable of giving fair and clear warning." *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) (quoting *Archuleta v. Wagner*, 523

F.3d 1278, 1283 (10th Cir. 2008)). Armendariz's right to be free from unreasonable searches and seizures was clearly established when Defendants prepared and obtained the warrants at issue.

"The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984) (citing numerous cases). Defendants are not entitled to qualified immunity for obvious violations of the particularity requirement, because "[g]iven that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh*, 540 U.S. at 563; *Cassady v. Goering*, 567 F.3d 628, 644 (10th Cir. 2009).

In *United States v. Leary*, the Tenth Circuit considered a warrant directing the executing officer to seize records "relating to" violations of federal export laws. *Leary*, 846 F.2d at 609. The court held that "[a] reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized," and the warrant at issue instead left officers "to their own discretion." *Id.* The warrant was thus "so facially deficient in its description of the items to be seized that the executing officers could not reasonably rely on it." *Id.* Here, too, Defendants relied on a facially deficient warrant that allowed officers to seize any pictures, videos, messages, etc. that they deemed "relevant" to an undefined "investigation."

Additionally, it has long been clearly established that the scope of a warrant must not exceed the probable cause to support it. *See id.* at 605 ("a search warrant is . . . impermissibly overbroad if it authorizes the search and seizure of evidence that is not supported by probable cause"); 4 W. LaFave, *Search and Seizure* § 11.3(d) (2d ed. 1987) ("An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."). It is also "well-settled that for probable cause

to exist there must be a 'nexus between . . . suspected criminal activity and the place to be searched.'" *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

Here, the affidavit made no attempt to demonstrate probable cause to believe that a search for the keywords would turn up evidence of the alleged crime. And beyond boilerplate assertions about the way people use digital devices, the affidavit made no attempt to establish a nexus between the alleged attempted assault of an officer with a bicycle and each of Armendariz's digital devices. Instead, the warrants authorized sweeping, overbroad searches of nearly all data on all of Armendariz's digital devices. Where a warrant is "impermissibly overbroad, the clearly established prong is easily satisfied." *Cassady*, 567 F.3d at 643. Moreover, no reasonable officer would believe that a warrant was constitutionally authorized where the affidavits harped on the target's political activism and associations instead of providing facts to establish probable cause. S*ee Jordan*, 73 F.4th at 1171 ("[I]t is clearly established that 'a government official may not base her probable cause determination on . . . speech protected by the First Amendment.'" (quoting *Mink*, 613 F.3d at 1003–04)).

Ditzler argues he is entitled to qualified immunity because "it was not clearly established in August 2021 that merely reviewing and approving a search warrant affidavit could give rise to a First Amendment retaliation claim or that the search warrant for Armendariz's digital devices violated clearly established law." (Ditzler MTD at 8.) But "an officer need not execute a search personally to be liable." *Poolaw*, 565 F.3d at 732. By approving the warrant application and affidavit, Ditzler caused a deprivation of Armendariz's clearly established rights. *See id.* at 732–33; *Cassady*, 567 F.3d at 644 (denying qualified immunity to an officer whose subordinate obtained an unconstitutional warrant).

**Supp.App.263**

Defendants make much of the fact that the warrants were approved by judges. (Fed. MTD at 18; Ditzler MTD at 2.) But officers are not automatically entitled to qualified immunity "simply because a magistrate had approved the [warrant] application." *Messerschmidt v. Millender*, 565 U.S. 535, 554 (2012); *see also People v. Leftwich*, 869 P.2d 1260, 1269 n. 11 (Colo. 1994) ("[T]he question of reasonableness is to be judged as of the time of warrant application and thus without consideration of the fact that the magistrate thereafter issued a warrant."). An officer cannot escape liability by "rely[ing] on the judgment of a judicial officer in finding that probable cause exists," because the relevant inquiry is "whether a reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). Moreover, because Summey "himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid." *Groh*, 540 U.S. at 564. In other words, it is incumbent on Defendants to adhere to clearly established Fourth Amendment requirements, and they cannot evade liability by blaming another for their own errors which any reasonable officer would have caught. Here, Defendants plainly violated clearly established constitutional requirements and must be held liable.

## IV. The FBI Continues to Violate Armendariz's Rights By Unlawfully Retaining Her Digital Data.

Armendariz has a significant interest in keeping her digital data private. *See Church of Scientology of California v. United States*, 506 U.S. 9, 13 (1992) ("A person's interest in maintaining the privacy of her 'papers and effects' is of sufficient importance to merit constitutional protection."). By retaining Armendariz's illegally obtained data, Defendants continue to violate her constitutional rights. *See Lindell v. United States*, 82 F.4th 614, 622 (8th Cir. 2023) ("The retention of data unrelated to the government's investigation and which goes

**Supp.App.264**

beyond the terms of the search warrant implicates an individual's right to be free from unreasonable searches and seizures.").

Courts have long recognized that the government's continued retention of information injures the owner, and that the return or destruction of that information is a viable remedy. *See, e.g.*, *Doe v. U.S. Air Force*, 812 F.2d 738, 740-41 (D.C. Cir. 1987) (appropriate relief includes the government's surrender of retained copies and information obtained by an unreasonable search and seizure); *ADAPT of Phila. v. Phila. Hous. Auth.*, 417 F.3d 390, 393-94 (3rd Cir. 2005) (finding "return or destruction" of compilations made from confidential information would "alleviate, at least in part, any affront to the privacy rights of the individuals"); *Reich v. Nat'l Eng'g. Contracting. Co*., 13 F.3d 93, 98 (4th Cir. 1993) (In challenge to collection of confidential information by the Occupational Safety and Health Administration, court found that the "privacy interest . . . in the delivered copies . . . plainly would be benefited by an order requiring OSHA to return or destroy these copies").

The Eighth Circuit recently recognized that "absent sufficient justification, the government has no right to hold onto property that is not contraband indefinitely." *Lindell*, 82 F.4th at 621. *Lindell* concerned the FBI's investigation into a security breach involving the publishing of forensic images of election software used in the 2020 election in Mesa County. *Id.* at 617. As part of the investigation, the FBI obtained a warrant to seize and search the cellphone of Mike Lindell, the CEO of MyPillow who had been vocal about advancing his theories of election fraud. *Id.* Lindell maintained access to "the vast majority of information contained on the cell phone" because it had been backed up shortly before the seizure. *Id.* at 620. But even so, the Eighth Circuit held that, "[g]iven the necessity of cell phones in everyday life and the related privacy concerns regarding the breadth of data that they contain, the government's continued retention of Lindell's

**Supp.App.265**

cell phone and all its data (including that which is entirely unrelated to the government's investigation), without adequate justification, could amount to a callous disregard of Lindell's constitutional rights." *Id.* at 622.

Contrary to Defendants' contentions here, (Fed. MTD at 21), "[t]he government's continued retention of the phone and all its data raises constitutional issues distinct from the lawfulness of the search warrant or its execution." *Lindell*, 82 F.4th at 621. Regardless of whether the warrants for the seizure and search of Armendariz's devices were lawful, the government has put forth no justification for continuing to retain the data, and therefore, its continued retention is unlawful.

Many of the cases Defendants cite in support of their position do not concern the unique privacy concerns presented by the retention of vast amounts of personal, private digital data. *See Conyers v. City of Chicago*, 10 F.4th 704, 706 (7th Cir. 2021) (class action challenging city's policy of selling or destroying arrested persons' seized property it if it is unclaimed after 30 days); *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) (challenge to officers' disposal of personal property, including tractor, tire rims, money, and credit cards); *Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 856 (10th Cir. 1993) (concerning improper disposition of a seized ring); *Snider v. Lincoln Cnty. Bd. of Cnty. Comm'rs*, 313 F. App'x 85, 88, 93 (10th Cir. 2008) (retention of seized firearms); *Denault v. Ahern*, 857 F.3d 76, 79 (1st Cir. 2017) (retention of car and possessions inside).

Defendants also cite *Malik v. U.S. Department of Homeland Security*, which involved the seizure and search of an immigration attorney's phone when he was returning from international travel, but the court there relied on Fifth Circuit precedent treating Fourth Amendment protections

Supp.App.266

as "lessened by the tradition of inspection procedures at the border." 78 F.4th 191, 194, 200 (5th Cir. 2023) (quoting *United States v. Molina-Isidoro*, 884 F.3d 287, 291 (5th Cir. 2018)).

Finally, Defendants cite *Matter of the Search of Twenty-Six Digital Devices*, in which the District Court for the District of Columbia held that, when evaluating a warrant application to search data already within the government's possession, the court need not conduct "an additional and freestanding reasonable analysis" to determine whether the government's possession of that data had been reasonable. No. 21-SW-233 (GMH), 2022 WL 998896, at *6 (D.D.C. Mar. 14, 2022). But here, Armendariz is directly challenging the current, unjustified, continued retention of her data.

Other courts have recognized that the Fourth Amendment "is implicated by a delay in returning . . . property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Sandoval* v. *County of Sonoma*, 72 F.Supp.3d 997, 1004 (N.D. Cal. 2014)); *United States v. Place*, 462 U.S. 696, 709 (1983); *Lindell*, 82 F.4th at 622. "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Brewster*, 859 F.3d at 1197. In *United States v. Place*, law enforcement seized Place's luggage, suspicious that there might be narcotics in it. 462 U.S. 696, 699 (1983). "But it wasn't this initial seizure that concerned the Supreme Court. Rather, it was the '90-minute detention of [Place's] luggage [that was] sufficient to render the seizure unreasonable.'" *Brewster*, 859 F.3d at 1197 (quoting *Place*, 462 U.S. at 710).

The government's interest in retaining the data from Armendariz's devices must be balanced against Armendariz's interest in their giving it back or destroying it. *Lindell*, 82 F.4th at 622; *Doe v. U.S. Air Force*, 812 F.2d at 741. Here, the government has identified no interest in the

**Supp.App.267**

continued retention of Armendariz's data. Indeed, the criminal case against Armendariz has been dismissed. The Fourth Amendment requires that Defendants return or destroy the copies of Armendariz's devices and the files extracted from them.

**V.    Defendants Are Liable Under the Colorado Constitution.**

In Claim 4, Armendariz sued Summey and Ditzler for violating Article II, sections 7, 10, and 24 of the Colorado Constitution. The warrants to search and seize Armendariz's digital devices and data violated Armendariz's rights under the Colorado Constitution.

**A.    This Court Has Jurisdiction Over Plaintiff's Claim of Deprivation of Rights by Summey Under the Colorado Constitution.**

As explained in Plaintiffs' Opposition to the United States' Motion to Substitute, ECF No. 53, Summey was acting under the direction and control of Colorado—not the FBI—when he drafted and submitted the unconstitutional warrants at issue. Substitution would be inappropriate, and Claim 4 should proceed against Summey in his individual capacity under C.R.S. § 13-21-131.

Additionally, the requirement that Armendariz exhaust administrative processes before bringing a claim should not apply here, because when this suit was filed, Armendariz did not know and had no reason to know—and still does not know—that Summey was a federal employee. *See Peden v. Winz*, No. CIV. A. 94-117, 1994 WL 180261, at *4 (E.D. La. May 4, 1994) (excusing administrative exhaustion requirement where plaintiff would not have known defendant was government employee because he did not identify himself as such); *Van Lieu v. United States*, 542 F. Supp. 862, 868 (N.D.N.Y. 1982) (echoing "the concerns of numerous judges faced with the basic unfairness of [the statute of limitations under the FTCA] when applied to genuinely ignorant plaintiffs, especially when that ignorance should have been eliminated by the responsible representation of government involvement"); *Harris v. Burris Chem., Inc.*, 490 F. Supp. 968, 971 (N.D. Ga. 1980) ("Where the driver of a motor vehicle is sued individually in state court because

29

the plaintiff did not know and had no reason to know that the defendant was (1) a federal employee (2) on federal business at the time of the accident and the United States subsequently removes the action to federal court under Section 2679, no exhaustion of administrative remedies is required.").

Defendants' contention that Claim 4 must be dismissed because a "private person" would not be liable for conduct analogous to Summey's is similarly unavailing. The FTCA's private analogue requirement "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA 'in the performance of activities which private persons do not perform.'" *United States v. Olson,* 546 U.S. 43, 46 (2005) (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). The requirement "do[es] not restrict a court's inquiry to the same circumstances, but require[s] it to look further afield*." Id*. Thus, a claim under the FTCA for taking and searching Armendariz's devices would be analyzed under Colorado laws applicable to private persons—not to public officers. *See Stroh v. United States*, No. 11-CV-00344-LTB-BNB, 2012 WL 4069354, at *7 (D. Colo. Sept. 17, 2012) ("for the purpose of assessing FTCA applicability, I am not to review the Colorado negligence standards applicable to law enforcement officers during vehicle pursuits, but rather the liability of private persons under the circumstances.").

While Defendants are correct that C.R.S. § 13-21-131 applies to peace officers—not private persons—other statutes proscribe taking digital devices from other people's homes without permission or reason to do so, and extracting data from those devices. *See* C.R.S. § 18-4-401 ("A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization"); C.R.S. § 18-5.5-102 ("A person commits cybercrime if the person knowingly . . . [a]ccesses a computer, computer network, or computer system or any

Supp.App.269

part thereof without authorization [or] exceeds authorized access"). Thus, a private person could be held liable under state tort law for actions analogous to those that form the basis of Claim 4.

### B.     Defendants Violated the Colorado Constitution and Are Not Entitled to Qualified Immunity on Claim 4.

Armendariz brought her state constitutional claims under Colorado's Enhance Law Enforcement Integrity Act, which allows Coloradans to bring a civil cause of action for damages to vindicate violations of the state's Bill of Rights. C.R.S. § 13-21-131. Without any analysis, Ditzler argues: "For the same reasons that Armendariz fails to state federal constitutional violation claims against Officer Ditzler, she fails to allege the violation of her rights under the Colorado Constitution." (Ditzler MTD at 9.) But the Colorado Constitution "is a source of protection for individual rights that is independent of and supplemental to the protections provided by the United States Constitution." *People v. Young*, 814 P.2d 834, 843 (Colo. 1991); *see also Rocky Mt. Gun Owners v. Polis*, 2020 CO 66, ¶ 35, 467 P.3d 314, 324 (Colo. 2020) ("There is no reason to think, as an interpretive matter, that constitutional guarantees of independent sovereigns, even guarantees with the same or similar words, must be construed in the same way" (quoting Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* 181 (2018))).

Moreover, "qualified immunity is not a defense to liability" when officers are sued under Colorado's Enhance Law Enforcement Integrity Act. *Id.* § 131(2)(b). Even if the federal standard applied to the state law claims (which it does not), Armendariz has plausibly alleged violations of her state constitutional rights. And under state law, where officers are not entitled to qualified immunity, and Defendants have made no attempt to identify the proper standard, it is even clearer that Claim 4 cannot be dismissed.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss should be denied.

Supp.App.270

Dated: December 18, 2023

*s/ Theresa W. Benz* _____ _____
Jacqueline V. Roeder
Theresa Wardon Benz
Kylie L. Ngu
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
303-892-9400
jackie.roeder@dgslaw.com
theresa.benz@dgslaw.com
kylie.ngu@dgslaw.com


*In cooperation with the ACLU Foundation of Colorado*

Timothy R. Macdonald
Sara R. Neel
Anna I. Kurtz
Mark Silverstein
Laura Moraff
American Civil Liberties Union Foundation of Colorado
303 E. 17th Ave., Suite 350, Denver, CO 80203
720-402-3151
tmacdonald@aclu-co.org
sneel@aclu-co.org
akurtz@aclu-co.org
msilverstein@aclu-co.org
lmoraff@aclu-co.org


*Attorneys For Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on December 18th, 2023, a copy of the foregoing was filed electronically with the Court.  In accordance with Fed. R. Civ. P. 5, notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Anne Hall Turner
OFFICE OF THE CITY ATTORNEY OF THE CITY OF COLORADO SPRINGS
30 S. Nevada Avenue, Suite 501
Colorado Springs, CO 80903
anne.turner@coloradosprings.gov

*Counsel for Defendants City of Colorado Springs, B.K. Steckler, Jason S. Otero and Roy S. Ditzler*

Thomas Alan Isler
UNITED STATES ATTORNEY'S OFFICE
1801 California Street, Suite 1600
Denver, CO 80202
thomas.isler@usdoj.gov

*Counsel for Defendants Daniel Summey and Federal Bureau of Investigation*

*s/ Beatriz Esparza*
Beatriz Esparza

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF COLORADO**

Civil Action No. 23-cv-01951-CNS-MDB

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

Plaintiffs,

v.

CITY OF COLORADO SPRINGS;

DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual capacity;

B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual capacity;

JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual capacity;

ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his individual capacity; and

FEDERAL BUREAU OF INVESTIGATION;

Defendants.

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE CITY OF COLORADO SPRINGS' MOTION TO DISMISS**

---

## Table of Contents

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD........................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.     The City Is Liable Under Section 1983. ............................................................... 3

A.    The City's Officers Violated Plaintiffs' Constitutional Rights........................... 4

B.    The City Has a Custom, Policy, or Practice That Led to the Constitutional
Violations. ........................................................................................................... 5

C.    There Is a Direct Causal Link Between the City's Actions and the
Constitutional Violations Suffered. ................................................................... 10

II.    The City Violated the Stored Communications Act ......................................... 11

III.   The City Continues to Violate Armendariz's Constitutional Rights By Retaining Her
Data. ................................................................................................................... 13

CONCLUSION................................................................................................................... 14

Supp.App.274

Plaintiffs Armendariz and Chinook Center respond to "City of Colorado Springs' Motion to Dismiss" (ECF No. 52, filed 11/20/23).

## **INTRODUCTION**

On July 31, 2021, Plaintiff Chinook and several other groups arranged a constitutionally protected and legal housing march to address the lack of affordable housing and the associated housing crisis in Colorado Springs. Plaintiff Jacqueline Armendariz and other activists participated in the march. In response to the housing march, the City of Colorado Springs ("City") and its officers obtained unconstitutional warrants to search and seize Plaintiffs' devices and digital data in violation of their constitutional rights. These dragnet warrants were drafted, approved, and executed in accordance with City custom, practice, and policy, including  seeking and executing overbroad warrants that violate the particularity requirement and fail to limit the search to evidence of the alleged crime. The City has a history of using these warrants to send a message to protestors and organizations that unwelcome political expression in Colorado Springs will be met with intimidation. These warrants give the City unfettered access to the private lives and information of its citizens.

The City's custom, policy, and practice of unconstitutional invasion into the private lives and information of protestors and organizations has had the effect of chilling and suppressing protected speech, assembly, and association. In addition to the warrants underlying this case, Plaintiffs' Amended Complaint details several other instances where the City has issued dragnet warrants in response to a protest or demonstration. Following a demonstration to commemorate De'Von Bailey, who was killed by the City's officers, the City obtained and executed several warrants to search and seize records and data of organizations or people who were involved in

the demonstration—and even people who were merely associated with people who were involved in the demonstration. These warrants authorized incredibly broad searches for information about protesters' communications and associations without establishing a nexus between the evidence to be seized and any particular crime. These examples are more than sufficient to require denial of the City's motion to dismiss Plaintiffs' *Monell* claim, which was pled without the benefit of any discovery.

Furthermore, the City violated the Stored Communications Act by requiring the disclosure of Plaintiff Chinook Center's Facebook data without following proper procedures. And the City continues to violate Armendariz's federal and state constitutional rights by retaining copies of her digital data without justification. For at least these reasons, the City's Motion to Dismiss should be denied in its entirety.

## LEGAL STANDARD

"There is a strong presumption against the dismissal of claims under [Fed. R. Civ. P. 12(b)(6)]." *Trujillo v. City of Colo. Springs*, No. 07-cv-00753-MSK-BNB, 2008 WL 511890, at *1 (D. Colo. Feb. 22, 2008) (citing *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999)). If a complaint contains "enough facts to state a claim to relief that is plausible on its face," it cannot be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a 12(b)(6) motion, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Quest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)

**Supp.App.276**

(citation omitted). At the dismissal phase, Rule 12(b)(6) motions "are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Tal v. Hogan*, 453 F.3d 1244, 1265–66 (10th Cir. 2006). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556). Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*

Moreover, courts have rejected a heightened pleading standard for § 1983 claims for municipal liability because "a plaintiff, as an outsider to municipal government, is not expected to have information about a city's official policies, practices, or training programs at the pleading stage." *Walker v. Zepeda*, No. 1:11-cv-01242-DME-CBS, 2012 WL 13285403, at *5 (D. Colo. May 29, 2012) (citation omitted). "There is a balance demanded in pleading municipal liability which requires more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *Torre v. L.A. Plata Cnty.*, No. 21-cv-01422-CMA-NRN, 2022 WL 1193471, at *3 (D. Colo. Feb. 11, 2022) (citation and quotations omitted). "To require more could foreclose legitimate § 1983 claims that, after appropriate discovery, turn out to have evidentiary support." *Walker*, 2012 WL 13285403, at *5.

## ARGUMENT

### I. The City Is Liable Under Section 1983.

A municipality can be liable for constitutional violations when officers act pursuant to a city's custom, policy, or practice, when the city has ratified the acts of officers who violated

plaintiff's constitutional rights, and when the city has failed to train its officers. To establish

municipal liability, a plaintiff must prove (1) that a municipal employee committed a

constitutional violation, and (2) that a municipal custom, policy, or practice was the moving

force behind the constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94

(1978); *Myers v. Oklahoma Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998);

*Gonzalez v. Brunnemer*, No. 21-cv-02851-RMR-NRN, 2023 WL 3005749, at * 10 (D. Colo.

Apr. 19, 2023); *Vigil v. Laurence*, 524 F. Supp. 3d 1120, 1129 (D. Colo 2021) (Plaintiff "must

establish that [defendant] maintains a particular custom, policy, or practice, and demonstrate a

causal link between such policy and a violation of his constitutional rights."). A municipal

policy, practice, or custom includes "an informal custom amounting to a widespread practice

that, although not authorized by written law or express municipal policy, is so permanent and

well settled as to constitute a custom or usage with the force of law." *Bryson v. City of

Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation and quotations omitted).

Plaintiffs alleged sufficient facts to show that the City has a custom, policy, or practice

that led to the constitutional violations, including by weaponizing warrants to instill fear in

protestors and organizations and chill their speech and association.

### A.    The City's Officers Violated Plaintiffs' Constitutional Rights.

Although the City argues that Plaintiffs have failed to allege a plausible Fourth

Amendment claim against its officers, Plaintiffs have sufficiently alleged that officers employed

by the City drafted and executed unconstitutional warrants in violation of Plaintiffs' Fourth

Amendment Rights.  (First Amended Complaint, Doc. 12 ("FAC"), ¶¶ 153, 154, 155, 156, 159,

160, 163, 164, 173, 174, 175, 176, 177, 178, 181; *see also* Plaintiffs' Response in Opposition to

**Supp.App.278**

Motion to Dismiss by the Federal Defendants and Ditzler's Motion to Dismiss and Joinder; Plaintiffs' Response in Opposition to Steckler's and Otero's Motion to Dismiss.)

Moreover, the cases cited by the City are distinguishable. In both *Hernandez v. Correct Care Sols., LLC*, No. 18-CV-02522-DDD-GPG, 2019 WL 4200929, at *3 (D. Colo. Sept. 5, 2019) and *Ellis ex rel. Est. of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009), the individual defendants were previously dismissed from the lawsuit. "Therefore, once the claims against the officers were properly dismissed, the claims against the municipality were also properly dismissed since liability for the municipality could not attach." *Ellis ex rel. Est. of Ellis*, 589 F.3d at 1105. Here, the individual officers are still Defendants in the lawsuit, and Plaintiffs have properly alleged that the officers committed constitutional violations pursuant to the custom, policy, and practice of the City.

**B.     The City Has a Custom, Policy, or Practice That Led to the Constitutional Violations.**

Plaintiffs have alleged facts plausibly demonstrating that the officers acted pursuant to City customs, policies, and practices, including drafting, obtaining, and executing overbroad and insufficiently particular warrants to rummage through the personal and political communications of protesters, associates of protesters, and organizers. "With informal, unwritten policies, customs, or practices, the plaintiff can plead . . . a pattern of multiple similar instances of misconduct – no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible." *Gonzalez v. Brunnemer*, No. 21-cv-02851-RMR-NRN, 2023 WL 3005749, at * 10 (D. Colo. Apr. 19, 2023) (citing *Abila v. Funk*, No. CV 14-1002 JB/SMV, 1727372016 WL 9021834, at *17 (D.N.M. Dec. 14, 2016)).

Supp.App.279

Plaintiffs' complaint describes several instances of the City obtaining unconstitutional warrants to search protest participants' and organizations' private information, including but not limited to their digital devices and social media accounts.

CSPD obtained a warrant to search and seize all of Armendariz's digital media storage devices and electronic data, including a work computer, all private personal photos, videos, text messages, and emails for more than a two-month period unlimited by subject or topic. The affidavit in support of the warrant pointed to Armendariz's political expression and social ties—unrelated to any crime—as the sole motivation to search her data. There is nothing in the facts alleged – or the City's motion to dismiss – that suggest the officers were doing anything other than following official custom, policy, practice, and training of the City's police department.

Additionally, CSPD obtained a warrant to search all of Chinook's private Facebook messenger chats, posts, and events from a weeklong period as well as all subscriber information tied to the Chinook Center's Facebook profile. Despite the warrant's broad scope and intrusion on an unidentified number of innocent people's private communications, the affidavit made no attempt to establish probable cause to believe evidence of a particular crime would be found in any of the data. Here again, the facts alleged demonstrate that the officers who obtained the constitutionally deficient Facebook warrant were not rogue officers deviating from the City's standard operating procedure —the City's custom, policy, and practice condoned obtaining overbroad, insufficiently particular search warrants.

Plaintiffs' Amended Complaint also identified several other warrants that CSPD obtained in retaliation for individuals' and organizations' participation in a public demonstration. In 2020, activists held a demonstration to commemorate the one-year anniversary of CSPD's killing of

De'Von Bailey in the neighborhood of the officer who was accused of shooting him. (FAC, ¶ 136.) After the demonstration, CSPD asserted the protest had become a "riot" and began an investigation. (*Id.* ¶¶ 138–39.) Nearly six months after the demonstration, CSPD determined that an individual, M.A., had participated in the demonstration and had stood in front of blocked vehicles with a gun. (*Id.* ¶ 140.) CSPD obtained a warrant to seize not only M.A.'s phone, but also the phone of M.A.'s partner, E.B., without any evidence that E.B. had even attended the demonstration. (*Id.* ¶¶ 140–41.) The warrant to search E.B.'s phone authorized a search for all emails, internet searches, voicemail, text messages, logs of incoming and outgoing calls, photos, videos, contact and phone book information—all on the basis that, because E.B. was in a romantic relationship with M.A., her phone would contain material evidence. (*Id.* ¶ 141.)

CSPD also obtained a warrant to search the Empowerment Solidarity Network's Facebook records for a six-week period, including a listing of Facebook friends of the organization and all private messages—all on the basis that, because the group had announced the demonstration, and one of the group's leaders intended to plan similar events in the future, the group's records would provide evidence of criminal activity. (*Id.* ¶¶ 143–44.)

Additionally, CSPD obtained a warrant to search a zippered notebook that included organizational information, rosters, contact information, and personal identification of members of two political groups, described as "far-left political group[s] that organize[] predominantly among working-class people." (*Id.* ¶ 145). While the zippered notebook is not a digital device or social media account, the notebook warrant serves as an additional example of the City's practice of obtaining overbroad search warrants to uncover political associations, gain unfettered access to individuals' and associations' private information, and chill and suppress protected speech,

**Supp.App.281**

assembly, and association.

Although the City claims—without support—that each of these warrants was used to identify and prosecute individuals who engaged in criminal conduct, the warrants themselves suggest otherwise, and the fact remains that the scope of the warrants and their lack of particularity mirrors the procedure used with respect to Armendariz and Chinook. Each of the warrants discussed in Plaintiffs' Amended Complaint authorized the City to search through vast amounts of private information without probable cause to believe that doing so would turn up evidence of a particular crime.

The Supreme Court has long recognized that "unrestricted power of search and seizure could . . . be an instrument for stifling liberty of expression." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978).  As the examples above demonstrate, the City is using this instrument consistently to send a message to activists that, if they choose to exercise their First Amendment rights in ways that the City disfavors, the City will choose to rummage through their private information and scrutinize their political views and associations. Plaintiffs have alleged more than sufficient facts showing that the City retaliates against expressive activities with overbroad and general warrants.  *ee Sexton v. City of Colorado Springs*, 530 F.Supp 3d 1044, 1067 (D. Colo. 2021) (close temporal proximity and lack of probable cause are factors that show a retaliatory motive).

The City argues that "Plaintiffs must show that similarly situated individuals were mistreated by the municipality in a similar way," citing *Carney v. City & Cty. of Denver* to support its argument 534 F.3d 1269, 1274 (10th Cir. 2008). *Carney*, however, does not require that showing. Instead, it merely observes that "[i]n attempting to prove the existence of such a

**Supp.App.282**

'continuing, persistent and widespread' custom, plaintiffs *most commonly* offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Id.* The similarly situated standard is only one way of showing that a custom, policy, or practice exists, but it is neither the only way nor a requirement for a Section 1983 claim against a municipality. To show a custom, policy, or practice exists, Plaintiffs can plead "a pattern of multiple similar instances of misconduct." *Gonzalez*, 685822023 WL 3005749, at *10.  For example, in *Orlin*, plaintiff provided examples of prior incidents where Aurora officers were using "unnecessary, disproportionate, and excessive force against civilians." *Orlin v. City & Cnty. of Denver*, No. 22-CV-00242-WPJ, 2022 WL 17820900, at *8 (D. Colo. Dec. 20, 2022). The court found that plaintiff's allegations were "sufficient to plausibly allege a municipal custom of excessive force." *Id.*

Similarly, Plaintiffs here alleged numerous instances where the City issued overbroad warrants to intrude upon the protected expression and association of protestors, in violation of their Fourth Amendment rights. These allegations are sufficient to show that the City has a custom, policy, or practice of engaging in "precisely the kind of rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all, that the fourth amendment proscribes." *Cassady v. Goering,* 567 F. 3d 628, 635 (10th Cir. 2009) (citing *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 2009)).

The City also argues that because neutral judges approved the warrants drafted by the City's officers, they necessarily met constitutional requirements. That is not the law. Instead, the "uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Cassady*, 567 F. 3d

**Supp.App.283**

at 636. Therefore, the City's attempt to "separate the authorization of the search from the execution of the search is a red herring – a violation of the warrant requirement is itself a violation of the Fourth Amendment." *Id.* at 637. Moreover, where, as here, a warrant implicates First Amendment-protected activities, Fourth Amendment requirements must be applied with "scrupulous exactitude." *See Stanford v. Texas*, 379 U.S. 476, 485 (1965). The City has a custom, policy, or practice of drafting and executing warrants that, like the warrant in *Cassady*, "d[o] not confine the scope of the search to any particular crime," and violate bedrock constitutional principles. *Cassady*, 567 F.3d at 635.

**C.     There Is a Direct Causal Link Between the City's Actions and the Constitutional Violations Suffered.**

Plaintiffs sufficiently plead facts to indicate that the warrants issued by the City through its officers directly caused the harm alleged in the complaint. To establish the causation element for a municipal liability claim, "the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted). Similar to *Orlin v. City & Cnty. of Denver*, where plaintiffs specifically identified the officers who caused constitutional harm and linked the officers' conduct to the policies, practices, and customs of the City of Aurora, Plaintiffs here identified Detective Summey, Detective Steckler, Sergeant Otero, and Officer Ditzler of the City's Police Department as the individuals responsible for the violation of Plaintiffs' Fourth Amendment rights.  No. 22-cv-00242-WPJ, 2288692022 WL 17820900, at *9 (D. Colo. Dec. 20, 2022).  Plaintiffs allege that Defendant Steckler drafted the unconstitutional warrant to search the Chinook Center's Facebook account, and Defendant Otero, in his role as Steckler's City-trained supervisor following City protocol, reviewed and approved the warrant.

Plaintiffs also allege that Defendant Summey drafted and submitted the applications to search and seize Armendariz's digital devices and data, and Defendant Ditzler, in his role as Summey's City-trained supervisor following City protocol, reviewed and approved the unconstitutional search warrants. All of these actions were in accordance with City custom, policy, and practice. The warrants resulted in the unlawful search and seizure of a vast amount of Plaintiffs' private data in direct violation of their Fourth Amendment rights.

While the City contends that Plaintiffs need to show how the incident would have been different with better training or supervision, such showing is unnecessary given the facts alleged, but also the answer is that the City would not have sought or obtained unconstitutional dragnet warrants with proper training and supervision.

## II.    <u>The City Violated the Stored Communications Act</u>

The City argues that Plaintiffs failed to allege a violation of the Stored Communications Act ("SCA") because the government can require the disclosure of the contents of an electronic communication so long as it is done pursuant to a warrant. Although the government can require the disclosure of electronic communications in electronic storage under 18 U.S.C. § 2703(a) without providing notice, the disclosure of information must be made pursuant to a ***valid*** warrant. As Plaintiffs plead, the warrant to search the Chinook Center's Facebook account was invalid because it was not issued pursuant to State warrant procedures—the warrant failed to limit the search to evidence of a particular crime, violated the particularity requirement, failed to sufficiently limit the scope of the search, and was not based on any assertion of probable cause.

Alternatively, to the extent the warrant against Chinook is considered a court order, it fails to meet the requirements of 18 U.S.C. § 2703(b)(1)(B) and § 2703(d). Under Section

Supp.App.285

2703(d), a court order for disclosure "shall issue only if the government entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." Here, the order requiring the disclosure of Chinook's Facebook records failed to comply with Section 2703(d) because the affidavit failed to identify a specific crime for which the evidence is sought, it did not show that evidence of crime would be found in the records sought, and the search was not limited only to the alleged criminal conduct. Facebook disclosed Chinook's records, information, and electronic files, including private confidential communications. Moreover, the warrant was not supported by an affidavit establishing probable cause. Additionally, Chinook did not receive prior notice from the City of the disclosure of its Facebook account information, including the content of its and its members' wire or electronic communications, as required by 18 U.S.C. § 2703(b)(1)(B).

The City argues that it cannot be held liable for violating the SCA because it relied on the warrant in "good faith." But the good-faith defense is a fact-based affirmative defense, which the Officers bear the burden of proving. *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005) ("We may neither expand the good faith defense's scope, nor convert it from a fact-based affirmative defense to a basis for dismissing an indictment on legal grounds."). Defendants have failed to meet that burden here.

The good-faith defense requires "objectively reasonable reliance on a warrant." *Thompson v. Platt*, 815 Fed. Appx. 227, 233 (10th Cir. 2020) (citing *Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. App. 1997)). The objective test "asks whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.*

**Supp.App.286**

(citation omitted). "[A] warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Groh v. Ramirez*, 540 U.S. 551, 565 (2004) (citation omitted). The deficiencies of the affidavit and application for search warrant, and the warrant that issued, would have been apparent to any reasonably well-trained officer. That Chinook organized a legal housing march could not possibly provide a basis for the broad sweeping search the unconstitutional warrant authorized. The warrant authorized the seizure of *all* Facebook Messenger chats "tied to" the Chinook Center's Facebook profile without any attempt to limit the search to evidence of specific criminal conduct, which is a clear violation of the protections afforded under the Fourth Amendment. *Cassady,* 567 F. 3d at 635.

Finally, the City contends that Plaintiffs have not alleged that it violated the SCA knowingly or intentionally because to be liable, "a person must know he or she is accessing . . . subscriber records or stored communications . . . without an appropriate form of legal process." (City's Mot. at 9.)  But Plaintiff alleged that City officers acted intentionally and knowingly in accordance with the City's custom, practice, and policy of issuing unconstitutional warrants when they issued and executed a warrant that fails to comport with the requirements of 18 U.S.C. § 2703(d) and lacked probable cause. The City violated the SCA's statutory requirements, and Plaintiffs' claim must survive.

III.   **The City Continues to Violate Armendariz's Constitutional Rights By Retaining Her Data.**

Plaintiffs' Amended Complaint includes a request for "[a]n injunction ordering the City of Colorado Springs . . . to return or delete the electronic copies of Armendariz's digital devices and the files extracted from them." (FAC, at 51.) The City has not moved to dismiss Plaintiffs'

**Supp.App.287**

claim that CSPD's continued retention of Armendariz's data violates her rights under the Fourth Amendment and Article II, section 7 of the Colorado Constitution. Plaintiffs acknowledge that the headings of their state constitutional and injunctive relief claims erroneously did not identify the City. But the Amended Complaint makes clear throughout that Plaintiffs have stated a claim for injunctive relief against the City for the wrongful retention of Armendariz's files. (FAC, at 51 & ¶¶ 129, 167–69, 203–04.).

For the reasons articulated in Section IV of Plaintiffs' Response in Opposition to Motion to Dismiss by the Federal Defendants and Ditzler's Motions to Dismiss and Joinder, Plaintiffs have plausibly stated a claim for injunctive relief ordering the City to return or delete the electronic copies of Armendariz's digital devices and the files extracted from them.

## <u>CONCLUSION</u>

Plaintiffs' complaint more than sufficiently pleads claims against the City, including factual allegations sufficient to show *Monell* liability, liability under the SCA, and liability for unconstitutionally retaining Armendariz's digital data. The City's motion should be denied and the case should proceed to discovery.

Dated: December 18, 2023

*s/ Theresa W. Benz* _____
Jacqueline V. Roeder
Theresa Wardon Benz
Kylie L. Ngu
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
303-892-9400
jackie.roeder@dgslaw.com
theresa.benz@dgslaw.com
kylie.ngu@dgslaw.com

*In cooperation with the ACLU Foundation of Colorado*

Timothy R. Macdonald
Sara R. Neel
Anna I. Kurtz
Mark Silverstein
Laura Moraff
American Civil Liberties Union Foundation of Colorado
303 E. 17th Ave., Suite 350, Denver, CO 80203
720-402-3151
tmacdonald@aclu-co.org
sneel@aclu-co.org
akurtz@aclu-co.org
msilverstein@aclu-co.org
lmoraff@aclu-co.org

*Attorneys For Plaintiffs*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2023, a copy of the foregoing was filed electronically with the Court.  In accordance with Fed. R. Civ. P. 5, notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Anne Hall Turner
OFFICE OF THE CITY ATTORNEY OF
THE CITY OF COLORADO SPRINGS
30 S. Nevada Avenue, Suite 501
Colorado Springs, CO 80903
anne.turner@coloradosprings.gov

*Counsel for Defendants City of Colorado Springs, B.K. Steckler, Jason S. Otero and Roy S. Ditzler*

Thomas Alan Isler
UNITED STATES ATTORNEY'S OFFICE
1801 California Street, Suite 1600
Denver, CO 80202
thomas.isler@usdoj.gov

*Counsel for Defendants Daniel Summey and Federal Bureau of Investigation*

*s/ Beatriz Esparza*
Beatriz Esparza

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on the 2nd day of December 2024, I electronically filed the foregoing **SUPPLEMENTAL APPENDIX VOLUME I of II** with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

<u>*s/ Amy McKimmey*</u>
Amy McKimmey
Senior Paralegal