No. 24-1201

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

JACQUELINE ARMENDARIZ and CHINOOK CENTER,

*Plaintiffs–Appellants*,

v.

CITY OF COLORADO SPRINGS; DANIEL SUMMEY, a detective with the Colorado Springs Police Department, in his individual capacity; B.K. STECKLER, a detective with the Colorado Springs Police Department, in his individual capacity; JASON S. OTERO, a sergeant with the Colorado Springs Police Department, in his individual capacity; ROY A. DITZLER, a police officer with the Colorado Springs Police Department, in his individual capacity; FEDERAL BUREAU OF INVESTIGATION; and THE UNITED STATES OF AMERICA,

*Defendants–Appellees.*

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

### REPLY BRIEF OF PLAINTIFFS

Theresa Wardon Benz
Jacqueline V. Roeder
Kylie L. Ngu
DAVIS GRAHAM & STUBBS LLP
3400 Walnut Street, Suite 700
Denver, Colorado 80205
Tel.: (303) 892-9400
theresa.benz@davisgraham.com

Timothy R. Macdonald
Sara R. Neel
Anna I. Kurtz
Mark Silverstein
Laura Moraff
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, Colorado 80203
Tel.: (720) 402-3151
lmoraff@aclu-co.org

*Counsel for Jacqueline Armendariz and Chinook Center*

### ORAL ARGUMENT REQUESTED

January 24, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................i

TABLE OF AUTHORITIES ............................................................ iii

INTRODUCTION ...........................................................................1

ARGUMENT ..................................................................................2

I.    Defendants' Attempts to Evade Substantive Review with Baseless Claims of Technical Defects Fail. ........................................2

II.    The Armendariz and Chinook Warrants Are Unconstitutional. ..........5

    A.    The Warrant to Seize Armendariz's Devices Violates the Particularity Requirement. ........................................................6

    B.    The Warrant to Search Armendariz's Devices Violates the Particularity Requirement. .................................................13

        1.    The warrant is overbroad...............................................13

        2.    The affidavit expands the scope of the search beyond the alleged crime...............................................18

    C.    The Warrant to Search Chinook's Facebook Account Violates the Particularity Requirement...................................20

        1.    The warrant fails to specify the crime under investigation.................................................................20

        2.    The warrant fails to establish a nexus between Chinook's Facebook page and any particular crime. ..........................................................................23

        3.    The scope of the warrant exceeds any theoretical probable cause to support it..........................................26

    D.    The Warrants Are Subject to Scrupulous Exactitude. .............27

III.    The Municipal Liability Claim Should Be Remanded for Development of the Factual Record...................................................31

IV.    Armendariz Is Entitled to Injunctive Relief. .....................................33

V.    Individual Defendants Are Not Entitled to Qualified Immunity. .......34

    A.    Summey and Ditzler Are Not Entitled to Qualified Immunity for Obtaining the Warrant to Seize Armendariz's Devices...............................................................34

i

B.    Summey and Ditzler Are Not Entitled to Qualified
Immunity for Obtaining the Warrant to Search
Armendariz's Devices. ............................................................. 37

C.    Steckler and Otero Are Not Entitled to Qualified
Immunity for Obtaining the Chinook Warrant. ....................... 39

CONCLUSION ........................................................................................... 43

CERTIFICATE OF COMPLIANCE ........................................................... 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andresen v. Maryland*,
    427 U.S. 463 (1976)................................................................29

*Arkansas Chron. v. Murphy*,
    183 F. App'x 300 (4th Cir. 2006) .....................................30

*Buckham v. State*,
    185 A.3d 1 (Del. 2018) ......................................................7

*Cahoo v. SAS Analytics Inc.*,
    912 F.3d 887 (6th Cir. 2019) ............................................40

*Cassady v. Goering*,
    567 F.3d 628 (10th Cir. 2009) ....................................37, 39

*Commonwealth v White*,
    59 N.E.3d 369 (Mass. 2016)..............................................7

*Edrei v. Maguire*,
    892 F.3d 525 (2d Cir. 2018) .............................................39

*Fowler v. Stitt*,
    104 F.4th 770 (10th Cir. 2024) .........................................32

*Groh v. Ramirez*,
    540 U.S. 551 (2004)..........................................................36

*Halley v. Huckaby*,
    902 F.3d 1136 (10th Cir. 2018) .......................................34

*Lesoine v. County of Lackawanna*,
    77 F. App'x 74 (3d Cir. 2003) .........................................30

*Lipman v. Budish*,
    974 F.3d 726 (6th Cir. 2020) ...........................................32

iii

*Malley v. Briggs*,
    475 U.S. 335 (1986).........................................................................................35, 36

*Maryland v. Garrison*,
    480 U.S. 79 (1987)....................................................................................14, 18, 20

*Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*,
    523 F.3d 1219 (10th Cir. 2008) ..........................................................................2, 3

*Mink v. Knox*,
    613 F.3d 995 (10th Cir. 2010) ....................................................11, 20, 35, 37, 39

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978)............................................................................................31, 32

*N.A.A.C.P. v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)....................................................................................................27

*New York v. P.J. Video*,
    475 U.S. 868 (1986)....................................................................................................30

*Packingham v. North Carolina*,
    582 U.S. 98 (2017)......................................................................................................24

*People v. Seymour*,
    536 P.3d 1260 (Colo. 2023).........................................................................................31

*Pleasant v. Lovell*,
    876 F.2d 787 (10th Cir. 1989) ...............................................................................29, 30

*Poolaw v. Marcantel*,
    565 F.3d 721 (10th Cir. 2009), *as amended* (July 24, 2009)...................22, 36, 39

*Riley v. California*,
    573 U.S. 373 (2014)............................................................................................18, 36

*Matter of Search of Kitty's E.*,
    905 F.2d 1367 (10th Cir. 1990) .................................................................................30

*Stanford v. Texas*,
    379 U.S. 476 (1965).............................................................................................28, 29, 30

*Taveras v. City of New York*,
No. 06-CV-3807-SJ, 2008 WL 5062334 (E.D.N.Y. Apr. 22, 2008)..................32

*Thurston v. Frye*,
99 F.4th 665 (4th Cir. 2024) ................................................................36

*United States v. Allen*,
No. 16-10141-01-EFM, 2018 WL 1726349 (D. Kan. Apr. 10,
2018) ..............................................................................................42

*United States v. Atencio*,
No. 1:21-cr-0058-DCN, 2022 WL 1288734 (D. Idaho Apr. 29,
2022) ..............................................................................................10

*United States v. Bethel*,
Nos. 23-3482/3668, 2024 WL 1698144 (6th Cir. Apr. 19, 2024)....................12

*United States v. Brooks*,
427 F.3d 1246 (10th Cir. 2005) ...........................................................15

*United States v. Burgess*,
576 F.3d 1078 (10th Cir. 2009) .......................................................9, 15

*United States v. Chavez*,
423 F. Supp. 3d 194 (W.D.N.C. 2019) ................................................40

*United States v. Christie*,
717 F.3d 1156 (10th Cir. 2013) .....................................................14, 15

*United States v. Contreras*,
905 F.3d 853 (5th Cir. 2018) ............................................................12

*United States v. Ganias*,
824 F.3d 199 (2d Cir. 2016) .............................................................34

*United States v. Griffith*,
867 F.3d 1265 (D.C. Cir. 2017).......................................8, 9, 12, 29

*United States v. Grover*,
119 F.3d 850 (10th Cir. 1997) ..........................................................33

*United States v. Guzman*,
No. 97-CR-786 (SAS), 1998 WL 61850 (S.D.N.Y. Feb. 13, 1998) ...................7

*United States v. Harris*,
 2021 WL 4847832 (D. Minn. July 16, 2021) .....................................................41

*United States v. Leary*,
 846 F.2d 592 (10th Cir. 1988) ...........................................................................37

*United States v. Loera*,
 923 F.3d 907 (10th Cir. 2019) ......................................................................12, 14

*United States v. Lyles*,
 910 F.3d 787 (4th Cir. 2018) ..............................................................................36

*United States v. Marroquin*,
 No. 6:19-CR-31-CHB-HAI-6, 2020 WL 7016990 (E.D. Ky. July
 10, 2020) ............................................................................................................23

*United States v. Mercery*,
 591 F. Supp. 3d 1369 (M.D. Ga. 2022) ........................................................16, 19

*United States v. Mora*,
 989 F.3d 794 (10th Cir. 2021) .........................................................................7, 35

*United States v. Nieto*,
 76 M.J. 101 (C.A.A.F. 2017) ..............................................................................11

*United States v. Otero*,
 563 F.3d 1127 (10th Cir. 2009) ......................................................................18, 19

*United States v. Palms*,
 21 F.4th 689 (10th Cir. 2021) .............................................................................15

*United States v. Purcell*,
 967 F.3d 159 (2d Cir. 2020). ...............................................................................22

*United States v. Reichling*,
 781 F.3d 883 (7th Cir. 2015) ...............................................................................12

*United States v. Riccardi*,
 No. 20-3205, 2021 WL 3732261 (10th Cir. Aug. 24, 2021) ........................33, 34

*United States v. Salas*,
 106 F.4th 1050 (10th Cir. 2024) ............................................................................9

*United States v. Smith*,
110 F.4th 817 (5th Cir. 2024) ..............................................................31

*United States v. Suggs*,
998 F.3d 1125 (10th Cir. 2021) ...........................................................21

*United States v. Summage*,
575 F.3d 864 (8th Cir. 2009) .........................................................30, 31

*United States v. Turner*,
2022 WL 195083 (D. Nev. 2022) .................................................24, 25

*United States v. Turner*,
2023 WL 5696053 (9th Cir. 2023) .......................................................25

*United States v. Wagner*,
951 F.3d 1232 (10th Cir. 2020) ...........................................................15

*United States v. Walser*,
275 F.3d 981 (10th Cir. 2001) ...............................................................9

*United States v. Westley*,
2018 WL 3448161 (D. Conn. July 17, 2018) .....................................42

*United States v. Whitt*,
No. 1:17cr060, 2018 WL 447586 (S.D. Ohio Jan. 17, 2018).......................23, 24

*Voss v. Bergsgaard*,
774 F.2d 402 (10th Cir. 1985) .................................28, 29, 37, 38, 39

*Winston v. Lee*,
470 U.S. 753 (1985)...............................................................................18

*Ybarra v. Illinois*,
444 U.S. 85 (1979)................................................................................23

*Zurcher v. Stanford Daily*,
436 U.S. 547 (1978)..................................................................27, 29, 30

**Statutes**

22 U.S.C. § 2778 ..................................................................................37

**Other Authorities**

10th Cir. R. 10.4(D)(2)..................................................................................2

10th Cir. R. 28(A) .....................................................................................3

10th Cir. R. 41 .........................................................................................33

10th Cir. R. 41([e]) ...................................................................................33

10th Cir. R. 41(g) .................................................................................33, 34

Fed. R. App. P. 10(a) ...............................................................................3

## INTRODUCTION

This case concerns warrants that authorize searches of digital places unlikely to contain evidence of any specified crime and seizures of digital data untethered to criminal conduct. Jacqueline Armendariz's ("Armendariz") participation in a housing rights march and split-second decision to drop her bicycle in the path of an officer resulted in the seizure of her phones, computers, and hard drive, which were then searched for every mention of "protest," "right," and 24 other keywords from any time period. Chinook's inclusion of the march's date and location on its Facebook page resulted in an intrusive search of its private messages and other data. The scope of the warrants authorizing these searches extend far beyond any theoretical probable cause to support them. They are tailored not to finding evidence of a particular crime, but to finding evidence of political beliefs, speech, and associations that the Colorado Springs Police Department ("CSPD") dislikes. No reasonable officer would believe these warrants satisfy clearly established constitutional requirements.

Federal and City Appellees ("Defendants") raise a host of meritless arguments about technical defects in Armendariz and Chinook's ("Plaintiffs'") opening brief. To the extent they engage with the substance of Plaintiffs' arguments, they suggest radical departures from core Fourth Amendment principles with wide-reaching implications. Federal Defendants suggest that

probable cause to seize one device amounts to probable cause to seize *all* devices, FAB 27;[1] that the scope of a warrant to search digital devices need not be limited by probable cause, FAB 51–52; and that warrants themselves need not be particularized, so long as the search itself is executed in a reasonable manner, FAB 52–53. City Defendants' arguments, taken to their logical conclusion, suggest that when anything illegal happens at a protest, any Facebook account that lists the protest's date and location can be extensively searched.

Defendants' arguments would, in practice, reinstate officers' ability to execute colonial-era general warrants in the context of digital searches. This Court should reverse the district court's dismissal of Plaintiffs' claims and preserve Fourth Amendment protections for digital searches.

## ARGUMENT

### I.    Defendants' Attempts to Evade Substantive Review with Baseless Claims of Technical Defects Fail.

First, Defendants complain that Plaintiffs' appendix excludes relevant briefing, citing 10th Cir. R. 10.4(D)(2). *See, e.g.,* FAB 17–18; CAB 26. Rule 10.4(D)(2) requires that the briefing be "in the record or appendix." The briefing is in the *record*, as "[t]he record on appeal comprises all of 'the original papers and exhibits filed in the district court.'" *Milligan-Hitt v. Bd. of Trustees of Sheridan*

---

[1] Plaintiffs cite the Opening Brief as OB, Plaintiffs' Appendix as A, Federal Defendants' Answer Brief as FAB, and City Defendants' Answer Brief as CAB.

*Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1231 (10th Cir. 2008) (quoting Fed. R. App. P. 10(a)). "[D]ocuments and exhibits filed in district court remain in the record regardless of what the parties put in the appendix." *Id.* Plaintiffs' appendix is sufficient for this Court to consider the issues at hand. But even if it were not, the necessary materials are in the record and in Defendants' Supplemental Appendix, ECF Nos. 55-1, 55-2 ("Supp.App.").

Second, Defendants argue that the Opening Brief fails to identify references in the record where issues were raised and ruled on, citing 10th Cir. R. 28(A). *See, e.g.*, FAB 17; CAB 26. But the opening brief complies with Rule 28(A) by including precise references to the portions of the First Amended Complaint where each of Plaintiffs' claims was raised, and to the specific portions of the district court's opinion being challenged. OB 9–10, 22, 32, 34, 40, 50-54.

Third, Defendants argue Armendariz forfeited her challenge to a discrete portion of the warrant that authorized the search of her devices for photos, videos, messages, emails, and location data, claiming she did not raise it below. FAB 55. But this argument was raised in Plaintiffs' Amended Complaint, A41–44 ¶¶ 96–110, and Plaintiffs' opposition to Federal Defendants' Motion to Dismiss, Supp.App.274, and the district court expressly considered that part of the warrant, A139.

Fourth, Defendants argue Armendariz's Opening Brief forfeits her claim for injunctive relief seeking the return or destruction of her data. FAB 16, 60; CAB 53. But the Opening Brief thoroughly explains why the district court erred in holding that the Fourth Amendment did not entitle Armendariz to the requested relief. OB 41–45; *see also* OB 9 ("[B]oth CSPD and the FBI continue to retain all of the data and information copied from Ms. Armendariz's phones and devices, even though they have no legitimate need or basis to do so." (quoting A48 ¶ 129)); OB 10 n.3 (explaining district court's error in misconstruing Amended Complaint to request injunctive relief only from FBI (citing A152– 53 n.8.; *id.* at 58 ¶¶ 168–69; *id.* at 64 ¶¶ 203–05)); OB 14–32 (arguing warrants to seize and search Armendariz's devices are unconstitutional); OB 40 (arguing unconstitutional seizures entitle Armendariz to return or destruction of her data); OB 41–45 (explaining why retention of Armendariz's data without justification *continues* to violate Fourth Amendment). None of the cases cited by Defendants involved anywhere close to such extensive and supported analysis.

Fifth, Defendants argue that the Opening Brief forfeits Armendariz's argument that Summey and Ditzler are not entitled to qualified immunity with respect to the warrant to seize her devices. FAB 14–15, 29–31; CAB 55–56. But the Opening Brief contains an entire section arguing that Summey and Ditzler are not entitled to qualified immunity for their role in obtaining the two warrants to

seize and then search Armendariz's devices. OB 34–40 (citing numerous cases clearly establishing that the warrant violates the particularity requirement).

Finally, City Defendants' argument that Plaintiffs waived their challenges to the district court's rulings on Plaintiffs' Stored Communications Act and state law claims, CAB 53–54, is misplaced. As explained in the Opening Brief, the district court dismissed those claims "based on its erroneous conclusion that Defendants did not violate the Fourth or First Amendments." OB at 55 n.6 (citing A152, 160). Plaintiffs challenge that conclusion. OB 13–32, 41–49. Should they prevail, this Court should reverse and remand those claims to the district court.

Plaintiffs have satisfied all applicable rules and requirements for advancing their issues. Thus, Defendants cannot escape substantive review of Plaintiffs' claims.

## II.    The Armendariz and Chinook Warrants Are Unconstitutional.

The Armendariz and Chinook warrants arise out of the 2021 housing march. Armendariz was walking her bicycle in the march when police tackled Shaun Walls. A27 ¶ 42. Armendariz saw an officer running towards her, and in a split second, dropped her bicycle on the ground. *Id.* After the march, CSPD officers Summey and Ditzler obtained a warrant to seize not only the bicycle and clothing Armendariz was wearing during the incident—which they characterize as attempted assault—but also all of her digital devices. *Id.* 39–40 ¶ 88.

After CSPD already had abundant evidence that Armendariz was the person who dropped her bike at the march, Defendants obtained another warrant to search all of Armendariz's digital devices and seize files mentioning "police," "protest," or 24 other keywords from any point in time, along with photos, videos, messages, emails, and location information from a two-month period. *Id.* 41–42 ¶¶ 95–96.

Meanwhile, CSPD officers Steckler and Otero obtained a warrant to search the Facebook account of Chinook, a nonprofit activism hub that, according to CSPD, organized the march. *Id.* 120. Without establishing any reason to believe Chinook's account would contain evidence of any particular crime, the warrant authorizes the seizure of Chinook's private messages, subscriber information, events, and posts. *Id.* 28 ¶¶ 47–50.

Each of these warrants violates the Fourth Amendment.

### A.   The Warrant to Seize Armendariz's Devices Violates the Particularity Requirement.

The warrant to search Armendariz's home authorizes the seizure of "[d]igital media storage devices" to include "phones, computers, tablets, thumb drives, and external hard drives" found to be associated with Armendariz. A39–40 ¶ 88. Yet the affidavit fails to establish a credible nexus between all Armendariz's devices and the alleged bike-dropping crime. OB 14–18. In claiming the affidavit is sufficient, Defendants rely on mis-readings of caselaw, facts not present in the affidavit, and unreasonable leaps of logic.

6

Defendants suggest that an officer's statement of his training and experience automatically satisfies the nexus requirement. FAB 20. On the contrary, "[a]llowing officers to search a home based solely on an affiant's experience and pure speculation would perpetrate that evil" that the Fourth Amendment was intended to combat. *United States v. Mora*, 989 F.3d 794, 800 (10th Cir. 2021); *see also United States v. Guzman*, No. 97-CR-786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) ("Permitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent . . . would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.").

Here, Summey's "general assertions about the tools of the trade"—i.e., that people bring phones to protests and transfer data between devices—are "not enough to establish the requisite nexus" between the bicycle incident and Armendariz's digital devices. *Mora*, 989 F.3d at 803; *see also Commonwealth v White*, 59 N.E.3d 369, 377 (Mass. 2016) (If officer's "averment that, given the type of crime under investigation, the device likely would contain evidence" were enough to establish nexus, then "it would be a rare case where probable cause to charge someone with a crime would not open the person's cellular telephone to seizure and subsequent search."); *Buckham v. State*, 185 A.3d 1, 17 (Del. 2018)

("generalized suspicions" such as "criminals often communicate through cellular phones" were insufficient to connect suspect's cell phone to shooting).

Any other holding would mean that, whenever a crime occurred at a protest, police could seize every device associated with every protester simply by making the same generalizations. The decision to protest would entail a loss of privacy in the entirety of one's digital life. In other words, individuals could have First Amendment rights or Fourth Amendment rights—but not both.

Strict adherence to the particularity requirement protects against this fate. To ensure that intrusions are justified by the need to locate evidence of criminal conduct, warrants must limit the scope of searches to items for which there is probable cause.

As the D.C. Circuit recognized in *United States v. Griffith*, before searching a digital device, "there must be reason to believe that [the device] may contain evidence of the crime." 867 F.3d 1265, 1274 (D.C. Cir. 2017). Here, as in *Griffith*, the officer's boilerplate assertions about how people use phones fail to provide reason to believe that the devices to be seized would uncover evidence of the crime under investigation. *Id.* at 1274.

Defendants attempt to distinguish *Griffith* on the ground that the affidavit there—in support of a warrant to search Griffith's home and seize his phones and other devices—offered no reason to believe Griffith owned a phone. FAB 26. But

*Griffith* also recognized that police must have reason to believe the device "would contain incriminating evidence about his suspected offense" before seizing it. 867 F.3d at 1273.

Moreover, Defendants' cited cases deal with device seizures pursuant to warrants that, unlike this warrant, *describe the digital evidence targeted*. The *United States v. Burgess* warrant authorized the seizure of "evidence to show the transportation and delivery of controlled substances, which may include . . . computer records . . . ." 576 F.3d 1078, 1083 (10th Cir. 2009). The *United States v. Walser* warrant authorized a search for "evidence of the possession of controlled substances, which may include . . . records, and/or receipts, written or electronically stored." 275 F.3d 981, 983-84 (10th Cir. 2001). The *United States v. Salas* warrant authorized a search for "[e]vidence to show the use and delivery of a controlled substance; to include . . . records, and/or receipts, written or electronically." 106 F.4th 1050, 1057–58 (10th Cir. 2024). In contrast, the Armendariz warrant described no evidence of criminal activity that officers expected to find on her devices.

Federal defendants now argue that a selfie Armendariz posted to Facebook and a photo of Armendariz that RISE Southeast had posted (presumably from someone else's device) "made it more likely that Armendariz brought her phone to the protest, and that it contained photos, videos, or other relevant evidence." FAB

22. But nothing in the affidavit itself supports that inference. The affidavit—unlike Defendants' Brief—does not describe Armendariz bringing her phone to "a similar event." *Id.* And while Federal Defendants now claim Armendariz "regularly used these [social media] platforms to plan events," *id.*, the affidavit does not so indicate.

Similarly, the fact that Armendariz was Facebook friends with Shaun Walls, who promoted the July 31 protest on Facebook, and a comment from someone else saying "You are a good organizer, Chica," *see* FAB 22, do not provide a substantial basis from which to infer that Armendariz had documented or communicated about the protest on her devices—much less that all of her devices would contain evidence of the alleged crime, which was attempted assault with a bicycle, not attending a protest. S*ee United States v. Atencio*, No. 1:21-cr-0058-DCN, 2022 WL 1288734, at *17 (D. Idaho Apr. 29, 2022) (Officer's "affidavit does not indicate that any of the individuals present during the alleged riot were seen with, or used, a cell phone or any other electronic device to take photos of, or to communicate regarding, the offense.").

Defendants also contend that "[t]exts, emails, or Facebook messages in which Armendariz described or discussed the incident or plans for the protest would have been critical if the case went to trial." FAB 23. But the affidavit offers no reason to believe that Armendariz discussed the bike-dropping incident in

advance. OB 27–28. Nor does the affidavit justify an inquiry into how the protest itself was planned.

Moreover, the warrant authorizes the seizure of *all* digital devices, including thumb drives and hard drives. A39-40 ¶ 88. Such devices are particularly unlikely to contain Facebook messages and texts. This alone demonstrates the warrant's overbreadth.

Defendants take the remarkable position that the government need not establish probable cause for each device to be seized. FAB 27. Under their logic, if an affidavit establishes probable cause to seize *a single phone*, officers can seize *any electronic device* along with it. This proposition contravenes the bedrock Fourth Amendment requirement that warrants establish "a nexus between the suspected crime and the items to be seized." *Mink v. Knox*, 613 F.3d 995, 1010 (10th Cir. 2010). Probable cause to seize one device does not automatically furnish probable cause to seize other devices. *See United States v. Nieto*, 76 M.J. 101, 107 (C.A.A.F. 2017) (no probable cause to seize laptop where crime of taking photos in bathroom was allegedly committed using cellphone and affidavit made no showing that defendant "actually downloaded images (illicit or otherwise) from his cell phone to his laptop, stored images on his laptop, or transmitted images from his laptop").

Child pornography cases cited by Defendants, *United States v. Reichling*, 781 F.3d 883 (7th Cir. 2015); *United States v. Contreras*, 905 F.3d 853, 859 (5th Cir. 2018), do not require a different result. Unlike evidence of an alleged attempted assault with a bicycle, "child pornography generally exists as an electronic medium." *United States v. Bethel*, Nos. 23-3482/3668, 2024 WL 1698144, at *3 (6th Cir. Apr. 19, 2024). Where, as here, a warrant authorizes the seizure of items that "unlike drugs or other contraband, [are] not inherently illegal, there must be reason to believe that [they] may contain evidence of the crime." *Griffith*, 867 F.3d at 1274.

Defendants cite *United States v. Loera* for the proposition that "investigators executing a warrant can look anywhere where evidence described in the warrant might conceivably be located," FAB 27 (quoting 923 F.3d 907, 916 (10th Cir. 2019)), but the same paragraph of the *Loera* opinion contains an important caveat. The court notes that while this general rule "works well in the physical-search context . . . it is less effective in the electronic-search context." 923 F.3d at 916. "Given the enormous amount of data that computers can store and the infinite places within a computer that electronic evidence might conceivably be located, the *traditional rule risks allowing unlimited electronic searches*." *Id.* (emphasis added).

Summey's failure to provide any indication that evidence of the alleged crime would be found on all of Armendariz's devices renders the warrant overbroad. Defendants' arguments to the contrary are unsupported by the affidavit itself and would practically strip protesters of privacy rights in their digital devices. This Court should hold that the warrant unconstitutionally fails to establish the requisite nexus.

### B. The Warrant to Search Armendariz's Devices Violates the Particularity Requirement.

#### 1. The warrant is overbroad.

Defendants acknowledge that the keyword provision of the warrant to search Armendariz's devices contains no temporal limitation. FAB 42. They provide no answer to the numerous cases holding that warrants to search digital devices violate the Fourth Amendment's particularity requirement when they fail to constrain the search and seizure to the relevant time period. OB 23–24. That alone is enough to reverse the district court's Fourth Amendment determination.

Additionally, Defendants do not argue that there was probable cause with respect to each of the keywords listed in the warrant. Instead, they seem to take the stunning position that the scope of the keyword provision—directing the seizure of communications with or about anyone named "Sam" and any mention of "right" from any time period—need not be limited by probable cause. FAB 51. According to Defendants, as long as there was a fair probability that some sort of evidence

would be found on some of Armendariz's devices, officers were authorized to search for and seize *anything* on all of them. Defendants' logic would permit officers to include in *any* digital search warrant for *any* crime express direction to seize all files mentioning "MAGA," "Alito," "Israel," and *anything* else—however remote from the crime.

But the Fourth Amendment's particularity requirement demands that warrants limit any search "to the specific areas and things for which there is probable cause to search." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). This "ensures that the search will be carefully tailored to its justifications." *Id.*

Defendants' arguments to the contrary are based on caselaw addressing "whether a search exceeds the scope of its authorizing warrant"—not whether a warrant itself was overbroad because its scope exceeded any probable cause to support it. FAB 51 (citing *Loera*, 923 F.3d at 916). Defendants argue that, while the Fourth Amendment requires "that searches be executed in a reasonable manner," it no longer requires that the warrant itself be tailored to the scope of the search. FAB 52, 55. In fact, the Fourth Amendment still requires that warrants themselves describe items to be seized for which there is probable cause to search. *United States v. Christie*, 717 F.3d 1156, 1164 (10th Cir. 2013) ("No doubt the particularity requirement and its underlying purposes are fully engaged when investigators seek to search a personal computer.").

14

It is true this Court has acknowledged that, even when officers have reason to believe that evidence of a particular crime is stored on a digital device, they cannot always know ex ante *how to find the evidence they seek*. In some cases, warrants that particularly describe *relevant evidence* to be seized from a device have been upheld without a precise description of how that evidence should be located. Defendants rely on cases in which warrants were read, in context, to limit the search's scope to evidence of the particular crime under investigation. In *United States v. Palms*, the warrant satisfied the particularity requirement because it was limited "to evidence of the crime of human trafficking." 21 F.4th 689, 700 (10th Cir. 2021). The warrants in *United States v. Wagner* and *United States v. Brooks*, read in context, limited officers' searches to evidence related to child pornography. 951 F.3d 1232, 1248 (10th Cir. 2020); 427 F.3d 1246, 1252 (10th Cir. 2005). In *Burgess*, the authorization to search "computer records" "was limited to evidence of drugs and drug trafficking and, as it relates to the computer, was limited to the kind of drug and drug trafficking information likely to be found on a computer.'" 576 F.3d at 1091. In *Christie*, the good-faith exception applied because an officer could read the warrant as restricting the seizure to "information relating to the murder, neglect, and abuse of" the victim for the given timeframe. 717 F.3d at 1165.

15

Here, the warrant fails to cabin the scope of the search to evidence of the alleged attempted assault. Defendants attempt to analogize to a house, arguing that probable cause to search for drugs in a house authorizes officers to search for drugs in the bathroom, closet, and pantry. FAB 51. That principle is not at issue here; the Armendariz warrant does not cabin the scope of the search to *drugs*—or to evidence of the bicycle incident. Instead, the warrant directs officers to search for and seize data unrelated to the alleged crime. The keywords *guarantee* overbreadth by expressly authorizing the seizure of files containing 26 keywords untethered to the only crime mentioned in the affidavit. *See United States v. Mercery*, 591 F. Supp. 3d 1369, 1382 (M.D. Ga. 2022) (warrant violated particularity requirement where it authorized officers "to search and seize data that [was] not related to the probable cause established in [the] affidavit.").

Even if there were probable cause to believe Armendariz's devices contained evidence of the bicycle incident (which there was not), that would not justify searching them for data *unrelated to that alleged crime*. Authorizing the seizure of every mention of "Sam" from an unlimited timeframe when the only crime mentioned in the affidavit is an alleged split-second attempted assault involving nobody named Sam is not the same as authorizing the seizure of drugs from any room in a house where there is probable cause to believe the house contains drugs. The more apt analogy would be authorizing the seizure of all

16

political pamphlets, rainbow symbols, and diaries in a house when the only crime mentioned in the affidavit is illegal drug possession. In other words, officers are directed to seize evidence of sensitive personal and political materials instead of evidence of a crime for which there is probable cause.

Defendants' argument about misnaming and disguising digital files, FAB 51–52, is inapposite; the affidavit demonstrates no reason to believe that evidence about the alleged attempted assault with a bicycle would have been concealed using the words "pig" or "Chrischeeansen."

Even if the Court believes that every keyword relates to the bike-dropping incident, the warrant is still unconstitutionally overbroad. In addition to the keyword provision, the warrant authorizes the seizure of two months' worth of photos, videos, messages, emails, and location data, A41–42 ¶ 96, again without probable cause to believe those items would provide evidence of the alleged crime. Defendants offer no response to this argument, aside from their misplaced contention that such overbreadth arguments are relevant only to the execution of the search and not to the warrant itself. FAB 55.

Seizing this massive quantity of data, including sensitive information entirely unrelated to the alleged crime, was especially unreasonable because officers already had confirmation that Armendariz was the person who dropped her bicycle; Summey had body camera footage of the incident and Armendariz's

bicycle and clothing. A41 ¶¶ 93–94. "[T]he Fourth Amendment's command that searches be 'reasonable' requires that when the State seeks to intrude upon an area in which our society recognizes a significantly heightened privacy interest, a more substantial justification is required to make the search 'reasonable.'" *Winston v. Lee*, 470 U.S. 753, 767 (1985). The intrusion into Armendariz's "privacies of life," *Riley v. California*, 573 U.S. 373, 403 (2014), was unreasonable here. OB 18–19.

While Defendants now attempt to avoid scrutiny by recasting the items to be seized as "search protocols," their attempt is inconsistent with this Court's caselaw and would undermine the warrant requirement in the context of digital searches. The warrant's express direction to seize irrelevant information renders it unconstitutionally overbroad.

> 2. The affidavit expands the scope of the search beyond the alleged crime.

The affidavit in support of the warrant to search Armendariz's devices only confirms that the search extended well beyond evidence of any particular crime. "The validity of the warrant must be assessed on the basis of the information that the officers disclosed" to the magistrate. *Garrison*, 480 U.S. at 85. Where the warrant refers only to "this investigation," and the affidavit describes a wide-ranging investigation into communist beliefs, views on white supremacy, and protected associations with political activists, the only reasonable reading is that "this investigation" encompasses those noncriminal activities. *See United States v.*

18

*Otero*, 563 F.3d 1127, 1133 (10th Cir. 2009) ("[T]he most practical reading authorizes a wide-ranging search of [Defendant's] computer."). Even if this information "merely went to a working theory of the case," FAB 44, it still broadens the scope of the warrant to target First Amendment-protected activity unrelated to the alleged crime.

Defendants argue that the scope of "this investigation" is limited by the warrant's statement that the time period from June 5th to August 7th "would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer." FAB 45 (quoting A113). The text of the warrant itself undermines this argument. First, the keyword provision also purports to further "the investigation" and contains no temporal limitation. A41–42 ¶ 96. So "the investigation" necessarily includes time periods irrelevant to any planning, execution, or taking credit for the alleged crime. *See Mercery*, 591 F. Supp. 3d at 1381 ("Although five of the categories have a date limitation . . . the breadth of the other thirteen categories effectively nullifies these temporal restrictions."). Second, according to the warrant, all 26 keywords are "relevant to the investigation." A41–42 ¶ 96. Because many of the keywords bear no relation to the bicycle incident—e.g., there is no indication that the alleged attempted assault was motivated by "yt[ness]" or "Samantha"—the investigation necessarily reaches beyond that incident.

The only plausible reading of the warrant application is that "the investigation" consists of a wide-ranging fishing expedition into protected activity unrelated to criminal conduct. This Court should recognize that the Fourth Amendment does not permit warrants to authorize such overbroad searches.

### C.    The Warrant to Search Chinook's Facebook Account Violates the Particularity Requirement.

The Chinook warrant authorizes a highly intrusive search of Chinook's Facebook account; yet its purpose is not clear on the face of the affidavit. City Defendants resist the principle that CSPD should have known who or what it was looking for before applying for a warrant. CAB 40. But the core purpose of the particularity requirement is to avoid "wide-ranging exploratory searches." *Garrison*, 480 U.S. at 84.

The Chinook warrant is overbroad because it fails to establish a nexus between any crime under investigation and Chinook's Facebook account, and it authorizes a search broader than any probable cause to support it.

1.    The warrant fails to specify the crime under investigation.

Specifying the crime under investigation is crucial to ensuring that warrants are issued to investigate criminal conduct rather than to intrude on citizens' lawful activities. *See Mink*, 613 F.3d at 1011. The Chinook warrant's overbreadth is due, in part, to its failure to identify the crime for which evidence is sought. OB 45–49.

City Defendants now argue that the Chinook warrant targets information that

20

"would be material to Walls' prosecution" for resisting arrest. CAB 29. That is not a reasonable reading of the warrant. *See United States v. Suggs*, 998 F.3d 1125, 1133 (10th Cir. 2021) ("[N]o reasonable construction of the residential search warrant—be it technical, practical, or otherwise—can sustain the Government's interpretation."). When Defendants obtained the warrant, Walls had already been arrested, and Steckler had already obtained warrants for Walls' Facebook account and for another account that purportedly included photographs of Walls' arrest. A118–19. The Chinook warrant provided no reason to believe that additional evidence to support Walls' prosecution would be found in Chinook's account.

Defendants also now argue that the Chinook warrant "would aid CSPD in identifying and apprehending the 'approximately 60 protestors' who likewise 'illegally' marched up the street, blocking traffic. . . ." CAB 29. But the affidavit offers no support for this proposition. It describes no difficulties in identifying individuals suspected of obstructing traffic and contains no indication that police sought to investigate obstruction offenses.

Moreover, Defendants' argument about this purported purpose of the warrant is based on an affidavit from a *different warrant* obtained by a *different officer* signed by a *different judge*. CAB 40 (citing A73–77). It is true that the warrant to seize Armendariz's devices includes pictures of a single masked marcher—Armendariz. A73–77. But the Chinook affidavit does not mention

21

Armendariz or any masked protesters. Defendants contend: "it must be remembered that participants in the march (including Armendariz) were masked." CAB 40. But this Court cannot "remember" that fact in reviewing the warrant, because it is not in the affidavit. *See Poolaw v. Marcantel*, 565 F.3d 721, 729 (10th Cir. 2009), *as amended* (July 24, 2009) ("[I]n passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention." (quoting *Aguilar v. Texas,* 378 U.S. 108, 109 n.1 (1964)).

It is entirely unclear what crime the warrant seeks to investigate. Defendants argue that "even if . . . the Facebook Warrant failed to specify 'any particular crime' as the subject of the search authority it requested, that omission would not violate the Fourth Amendment," citing *United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020). CAB 42. But *Purcell* says the opposite: the Facebook warrant there "did not identify any specific offense for which probable cause existed. It therefore plainly failed to comply with an essential component of the particularity requirement of the Fourth Amendment." *Purcell*, 967 F.3d at 180.

"[S]pecification of the suspected offense" is "constitutionally indispensable." *Id.* at 183. The failure to identify any particular crime for which evidence was sought thus renders the Chinook warrant unconstitutional.

>    2.    The warrant fails to establish a nexus between Chinook's
>           Facebook page and any particular crime.

Even if it were reasonable to read the warrant as authorizing a search to identify 60 protesters who allegedly obstructed traffic or to gather further evidence of Walls allegedly resisting arrest, the warrant is still overbroad because it identifies no nexus between these offenses and Chinook's Facebook account.

"The 'nexus' requirement . . . applies to searches of social media accounts." *United States v. Marroquin*, No. 6:19-CR-31-CHB-HAI-6, 2020 WL 7016990, at *4 (E.D. Ky. July 10, 2020), *report and recommendation adopted,* No. 6:19-CR-031-CHB-HAI-6, 2020 WL 6336105 (E.D. Ky. Oct. 29, 2020). Just as "a search or seizure of a person must be supported by probable cause particularized with respect to that person," *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), a search of a Facebook account must be supported by probable cause particularized with respect to that Facebook account, *see United States v. Whitt*, No. 1:17cr060, 2018 WL 447586, at *2 (S.D. Ohio Jan. 17, 2018) (The affidavit "must establish *why* the government believes that relevant evidence may reside on the particular suspect's Facebook account.").

The Chinook affidavit fails to explain why evidence would be found in *Chinook's* account. It mentions posts on *other* Facebook accounts, includes Steckler's generalization that "people involved in illegal demonstrations use social media to organize planned events," and says that the housing march was listed

under the events tab of Chinook's account. A119. But it provides no reason to believe that anyone who committed illegal conduct at the march privately messaged Chinook's account about it. The affidavit fails to "establish[] information known to the agent making it likely that 'specific' evidence is likely to reside in [the] particular Facebook account" to be searched, thus rendering the "requisite nexus lacking." *Whitt*, 2018 WL 447586, at *4 (quoting *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006)).

Social media is "commonplace"—Facebook has billions of users. *Packingham v. North Carolina*, 582 U.S. 98, 106 (2017). Officers will nearly always be able to find social media posts about protests and assert that protesters use social media to plan protests. Holding that Steckler's affidavit establishes the requisite nexus would mean that *any* private Facebook account that mentions a protest could be thoroughly searched, so long as there was some illegal activity by someone at the protest. The Fourth Amendment demands more. OB 45–49.

In response, City Defendants rely on the District of Nevada's unpublished opinion in *United States v. Turner*. CAB 37 (citing 2022 WL 195083 (D. Nev. 2022)). There, an officer obtained a warrant to search two Facebook accounts. The "Kizzy Chapo" account contained photos of driver's licenses with the description "I prepare the IDs for every single test a bouncer or police officer has out there," and offered information about pricing and delivery. *Id.* at *1. The "George Turner"

account also provided the name "Kiiz Chapo." *Id.* Both accounts contained pictures of George Turner. *Id.*

The court held there was probable cause to search both Facebook accounts and that the warrant was not unconstitutionally overbroad. *Id.* at *3, *aff'd,* 2023 WL 5696053 (9th Cir. 2023). However, unlike the Chinook affidavit, the *Turner* affidavit established a nexus between the alleged crime and the accounts to be searched. Because the Kizzy Chapo account "encouraged those interested in purchasing forged documents to message the account," and because "the George Turner account was controlled by the same person" who was selling forged documents using the Kizzy Chapo account, there was sufficient probable cause. 2023 WL 5696053, at *1.

Here, the Facebook account's owner, Chinook, was not suspected of criminal activity. And the affidavit establishes no reason to believe that Walls or 60 unidentified protesters used Chinook's Facebook page to communicate about their alleged traffic-obstruction crime. Defendants argue that, as in *Turner*, the Chinook warrant provides examples of items to be seized: "posts regarding the march, 'pictures and videos from the protest,' [and] 'photographs of Mr. Walls being taken into custody.'" CAB 39. But examples of items to be seized can serve to particularize a warrant only insofar as the affidavit links those items to the place to be searched and to the specified crime. In *Turner*, the "examples" themselves

25

demonstrated how the criminal suspect was using Facebook to commit the crime under investigation: "a video showcasing a false Pennsylvania driver's license, a post regarding prices for forged documents, evidence related to co-conspirators, and evidence to identify other potential suspects or witnesses to the crime." *Id.* at *6. The Chinook affidavit offers no reason to believe that criminal suspects used Chinook's account to discuss or commit crimes.

While City Defendants' brief speculates as to how the account could have theoretically contained evidence, CAB 35, its speculations are irrelevant because they are neither included in, nor supported by, the affidavit. The affidavit's failure to establish a nexus between Chinook's account and any particular crime is fatal.

### 3. The scope of the warrant exceeds any theoretical probable cause to support it.

City Defendants seem to argue that the warrant's scope is permissible because of "the nature" of the digital search, CAB 36, and because "it did not authorize the search and seizure of *all* data" on the account, CAB 39. But the permissible scope for a warrant also depends on the nature *of the crime under investigation* and the amount of data that *is* subject to seizure. The Chinook warrant targets sensitive information unmoored from any crime. And, contrary to Defendants' suggestion, the warrant's overbreadth here has a practical effect on the scope of the seizure, because it permits the seizure of data unrelated to any crime.

Additionally, the Chinook warrant authorizes a seizure of data from four days before the march and two days after the march, without any justification for that time period. Defendants now argue that it "defies common sense and common experience" to suggest that one day of data would capture any material evidence. CAB 42. But the affidavit provides no reason to believe that a private message from before the march or an event created after the march would provide evidence of criminal conduct at the march.

The affidavit also offers no reason to believe that "[a]ll subscriber information" for Chinook would aid in the apprehension of a criminal. Association with Chinook is not evidence of criminal activity; indeed, it is squarely protected by the First Amendment. *See N.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 908, (1982). Because the Chinook warrant sweeps in a vast amount of information unlikely to constitute evidence of a crime, it is overbroad.

### D.     The Warrants Are Subject to Scrupulous Exactitude.

Armendariz and Chinook plausibly plead that the warrants to search their digital data are based on and targeted at protected ideas and associations. A30–44 ¶¶ 60–64, 71, 79, 86, 109. Prior cases "insist that the courts apply the warrant requirements with particular exactitude when First Amendment interests would be endangered by the search." *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978). "[T]he constitutional requirement that warrants must particularly describe the

'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." *Stanford v. Texas*, 379 U.S. 476, 485 (1965).

The warrant to search Armendariz's devices specifically targets political speech (any mention of "protest," "officer," and "human" "rights") and political association (any mention of "Shaun" "Walls" and "Jon" and "Samantha" "Christiansen"). A41–43 ¶¶ 94–101, A44 ¶ 109, A56 ¶ 155. The warrant to search Chinook's Facebook account targets constitutionally protected messages to and associations with an activist organization. A18 ¶ 5, A28 ¶¶ 45–48, A59 ¶¶ 171–73. Under these circumstances, scrupulous exactitude is particularly necessary.

Defendants argue that scrupulous exactitude is not required here because the warrants are based on criminal conduct. CAB 41; FAB 56. That is no more true here than in *Voss v. Bergsgaard*, where the affidavit "pointed to evidence in support of a substantial tax fraud scheme." 774 F.2d 402, 406 (10th Cir. 1985). *Voss*'s application of "scrupulous exactitude" depended not on showing that the warrant was entirely unrelated to criminal conduct, but on "the fact that the search at issue implicated free speech and associational rights." *Id.* at 405. The Court determined that "[e]ven if the allegedly fraudulent activity constitutes a large portion, or even the bulk, of the NCBA's activities, there is no justification for seizing records and documents relating to its legitimate activities." *Id.* at 406.

Had the warrants in *Voss* or *Stanford* authorized a seizure *only of contraband*, the outcome may have been different. Indeed, the *Stanford* Court expressly declined to decide "whether the description of the things to be seized would have been too generalized to pass constitutional muster, had the things been weapons, narcotics or 'cases of whiskey.'" 379 U.S. at 486. When the items to be seized are, themselves, contraband, there is typically a more apparent nexus between those items and the crime under investigation. Thus, "[c]ourts have allowed more latitude in connection with searches for contraband items like 'weapons [or] narcotics.'" *Griffith*, 867 F.3d at 1276 (quoting *Stanford*, 379 U.S. at 486). "But the understanding is different when police seize 'innocuous' objects" like protected communications and political organizing activities. *See id.* (quoting *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976)). These situations call for special "care to assure that [the searches] are conducted in a manner that minimizes unwarranted intrusions upon privacy." *Andresen*, 427 U.S. at 482 n.11. Because none of the materials to be seized under the Armendariz and Chinook warrants are contraband, and most are core First Amendment-protected activity, that heightened care is crucial.

Defendants cite *Pleasant v. Lovell*, 876 F.2d 787, 803 (10th Cir. 1989), for the proposition that "the [F]irst [A]mendment does not protect against investigation of suspected criminal activity." FAB 57. But they omit *Lovell*'s

recognition that "when [F]irst [A]mendment freedoms are involved, the [F]irst [A]mendment may justify greater protection than mere compliance with the [F]ourth [A]mendment." *Lovell*, 876 F.3d at 794; *id.* ("[s]earches and seizures of items presumptively protected by the [F]irst [A]mendment must strictly comply with the [F]ourth [A]mendment.").

Defendants also attempt to cast doubt on whether the scrupulous exactitude standard remains viable, citing *New York v. P.J. Video*, 475 U.S. 868, 870 (1986). FAB 57. *P.J. Video* declined to apply a heightened *probable cause* standard to a warrant that authorized the seizure of suspected contraband (obscene films). It focused exclusively on whether there was probable cause to believe that the films to be seized were legally obscene. *Id.* at 876. The case contained no discussion of the warrant's scope and whether it met the Fourth Amendment's particularity requirement. The Court offered no indication that it was overruling *Stanford*, which did focus on *particularity* in the context of warrants aimed at ideas. *Stanford*, 379 U.S. at 480.

Courts since *P.J. Video* have continued to recognize that scrupulous exactitude is required where search warrants implicate First Amendment-protected materials. *See, e.g.*, *Matter of Search of Kitty's E.*, 905 F.2d 1367, 1372–73 (10th Cir. 1990); *Lesoine v. County of Lackawanna*, 77 F. App'x 74, 79 (3d Cir. 2003); *Arkansas Chron. v. Murphy*, 183 F. App'x 300, 305 (4th Cir. 2006); *United States*

*v. Summage*, 575 F.3d 864, 871 (8th Cir. 2009); *United States v. Smith*, 110 F.4th 817, 837 (5th Cir. 2024); *People v. Seymour*, 536 P.3d 1260, 1274 (Colo. 2023). This Court should do the same.

### III.   The Municipal Liability Claim Should Be Remanded for Development of the Factual Record.

Plaintiffs' municipal liability claim must survive because the Amended Complaint plausibly alleges that (1) a municipal employee committed a constitutional violation, and (2) a municipal custom, policy, or practice was the moving force behind the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). Plaintiffs plausibly pled that Summey, Ditzler, Steckler, and Otero committed Fourth Amendment violations. OB 13–31, 45–49. And Defendants offer no response to Plaintiffs' argument that the dismissal of their municipal liability claim was improper because, with respect to the search of Armendariz's devices, it was based on the district court's finding of only "arguable" probable cause. OB 32. Even if individual Defendants were entitled to qualified immunity, that would not absolve the City of liability for the officers' constitutional violations committed pursuant to the City's custom, policy, or practice.

Defendants focus their argument on why Plaintiffs' other examples of the City's custom, policy, or practice at issue involved no constitutional violation. CAB 47–51. But it is not this Court's province to make factual determinations regarding whether the unconstitutional custom, policy, or practice actually exists.

The only issue before this Court is whether the Amended Complaint includes "enough facts" to state a plausible *Monell* claim. *Fowler v. Stitt*, 104 F.4th 770, 781 (10th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It does. *See* OB 33, 52.

The "ability to compile evidence that will enable [Plaintiff] to prevail under the *Monell* standard is shaped in large part by the extent of relevant discovery made available to him." *Taveras v. City of New York*, No. 06-CV-3807-SJ, 2008 WL 5062334, at *3 (E.D.N.Y. Apr. 22, 2008). Thus, at the motion to dismiss stage, "it is all but impossible for the plaintiff to have secured evidence of misconduct with respect to other individuals" to support a *Monell* claim. *Lipman v. Budish*, 974 F.3d 726, 748 n. 11 (6th Cir. 2020).

Here, Plaintiffs were in the unusual position of having access to other examples of similarly overbroad warrants. The Amended Complaint discussed those warrants as examples of the custom, policy, or practice in play. A48–55 ¶¶ 131–147. But discovery is necessary to uncover additional evidence and context to support Plaintiffs' municipal liability claim. This Court should not undertake a full analysis of warrants that were *not* attached to the Amended Complaint at this stage of the litigation; the Court should conclude that Plaintiffs plausibly alleged a *Monell* claim and remand to the district court so that discovery may begin.

**IV.    Armendariz Is Entitled to Injunctive Relief.**

Plaintiffs claim that Armendariz's data was seized in violation of the Fourth Amendment. OB 13–32. If they are correct, then injunctive relief in the form of returning or destroying that data is an appropriate remedy. OB 40–41. Even if the Court determines that the seizure was lawful, Armendariz's claim for injunctive relief survives, because she has plausibly pled that Defendants violate the Fourth Amendment by continuing to retain her data without justification. A58 ¶ 168, A66 ¶ 215; OB 41–45.

Federal Defendants argue Armendariz's injunctive relief claim should be dismissed because Armendariz should have pursued a different strategy to destroy or recover her data: Rule 41(g). FAB 63. But they cite no authority holding that Rule 41 precludes a remedy under the Fourth Amendment.

Defendants assert that Armendariz's injunctive relief claim would require the court to exercise its equitable jurisdiction, so she should have used Rule 41 instead. But Rule 41 itself is "'an equitable remedy' that is available only if the movant 'can show irreparable harm and an inadequate remedy at law." *United States v. Riccardi*, No. 20-3205, 2021 WL 3732261, at *2 (10th Cir. Aug. 24, 2021) (quoting *United States v. Bacon*, 900 F.3d 1234, 1237 (10th Cir. 2018)); *United States v. Grover*, 119 F.3d 850, 851 (10th Cir. 1997) ("A Rule 41([e]) motion is governed by equitable principles."). A rule of criminal procedure that has

been interpreted to offer an equitable remedy cannot be the basis for denying other equitable relief.

Moreover, the *Riccardi* Court has warned that "Rule 41[(g)] jurisdiction should be exercised with caution and restraint." No. 20-3205, 2021 WL 3732261, at *2 (quoting Bacon, 900 F.3d at 1237). The dubious availability of this other equitable remedy does not warrant dismissal of Armendariz's constitutional claim. *Cf. United States v. Ganias*, 824 F.3d 199, 219 (2d Cir. 2016) ("Statutory approaches, of course, do not relieve courts from their obligation to interpret the Constitution.").

The Opening Brief explains precisely why Armendariz is entitled to injunctive relief. OB 40–45. Other equitable remedies provide no reason to dismiss Armendariz's constitutional claim.

## V.    Individual Defendants Are Not Entitled to Qualified Immunity.

### A.    Summey and Ditzler Are Not Entitled to Qualified Immunity for Obtaining the Warrant to Seize Armendariz's Devices.

"[A] prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018). Indeed, "'general statements of the law' can clearly establish a right for qualified immunity purposes if they apply 'with obvious clarity to the specific conduct in question.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

It is clearly established that a nexus between the alleged crime and the items to be seized is required to ensure that a warrant's scope is limited to the probable cause that supports it. *Mink*, 613 F.3d at 1010. *In Mora,* this Court clearly established that an affiant's boilerplate statement about his training and experience cannot supply the requisite nexus without facts "specific to Defendant's crime or circumstances." *Mora*, 989 F.3d at 801. Summey's affidavit fails to link Armendariz's devices to the bike-dropping incident. Given that the *Mora* affiant's "inferences about where a suspect would store evidence, without corroborating evidence, . . . fail[ed] to justify the search of Defendant's home," *id.* at 803, no reasonable officer would believe Summey's inferences about how protesters use devices could justify seizing all of Armendariz's devices.

Defendants claim that "a reasonable officer would not have been on notice" of any constitutional problems because the warrant was approved by a judge and by Ditzler. FAB 35. But the judge's signature does not immunize Defendants. While in an "ideal system," no judge would approve an unreasonable warrant request, "ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should." *Malley v. Briggs*, 475 U.S. 335, 345–46 (1986). City Defendants fault Plaintiffs for not citing *Messerschmidt v. Millender* in their opening brief, but that case acknowledges that "the fact that a neutral magistrate has issued a warrant authorizing the allegedly

unconstitutional search or seizure does not end the inquiry into objective reasonableness." 565 U.S. 535, 547 (2012); *see also Poolaw*, 565 F.3d at 735 ("[T]he issuance of the warrant simply does not control the outcome of [the Court's] inquiry into the officers' exercise of their own professional judgment."). The officer who "himself prepared the invalid warrant . . . may not argue that he reasonably relied on the Magistrate's assurance" that the warrant was valid. *Groh v. Ramirez*, 540 U.S. 551, 564 (2004).

Defendants are likewise incorrect that Ditzler's review of the warrant entitles Summey to qualified immunity. *Cf. Thurston v. Frye*, 99 F.4th 665, 679 (4th Cir. 2024) ("If 'the greater incompetence of the magistrate' issuing a warrant cannot excuse the officer's conduct . . . then it's hard to see why the greater incompetence of the district attorney can do so." (quoting *Malley*, 475 U.S. at 346 n.9)). If it did, "police departments might be tempted to immunize warrants through perfunctory superior review, thereby displacing the need for 'a neutral and detached magistrate' to make an independent assessment of an affidavit's probable cause." *United States v. Lyles*, 910 F.3d 787, 796–97 (4th Cir. 2018) (quoting *Riley*, 573 U.S. 373, 382 (2014)). And Ditzler's review of the warrant certainly would not entitle Ditzler—who did not present the warrant to a supervisor—to qualified immunity.

Summey and Ditzler unreasonably obtained a warrant that violates the clearly established nexus requirement; they must be held liable.

### B. Summey and Ditzler Are Not Entitled to Qualified Immunity for Obtaining the Warrant to Search Armendariz's Devices.

Plaintiffs' Opening Brief cites several cases clearly establishing that the warrant to search Armendariz's devices is unconstitutional. *See, e.g.*, *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988); *Voss*, 774 F.2d 402; *Mink*, 613 F.3d at 1010-11; *Cassady v. Goering*, 567 F.3d 628, 639 (10th Cir. 2009). Defendants incorrectly assert that none of these cases involved warrants or affidavits that "(1) identified a specific crime, (2) cabined the evidence law enforcement could seize, and (3) imposed affirmative limits on the methods" of the search. FAB 48. But the *Leary* affidavit, in fact, "alleg[ed] violations of the Arms Export Control Act, 22 U.S.C. § 2778, and the Export Administration Act." 846 F.2d at 594. The evidence subject to seizure was cabined to documents related to "the purchase, sale and illegal exportation of materials in violation of the federal export laws," and the warrant limited the seizure to documents which fell "within a long list of business records typical of the documents kept by an export company." *Leary,* 846 F.2d at 600–601. But, like here, the limitations *in context* "provide no limitation at all," *id.* at 601, and the warrant was "so facially deficient" that reliance on it was unreasonable, *id.* at 609.

The *Voss* affidavit, too, "alleged a scheme of tax fraud." 774 F.2d at 404. It imposed limitations on the types of materials that could be seized and described which materials would be relevant. *See id.* ("all books, records or documents relating to the following: NCBE/NCE customer accounts; financial transactions; [etc.]" or "books, literature and tapes advocating nonpayment of federal income taxes; publications of tax protestor organizations; and literature relating to communications between persons conspiring to defraud the IRS, or to conceal such fraud."). But because "[t]he bulk of the warrant was not restricted to evidence relating to tax fraud," and practically allowed unconstrained rummaging, the warrant was insufficiently particular. *Id.* at 404–405. These cases clearly establish that the Armendariz warrant violates the particularity requirement. OB 35–38.

Defendants also claim that under *Palms*, *Christie*, and *Brooks*, a warrant automatically meets the particularity requirement if it identifies a specific crime. FAB 48. But the warrants in those cases did not obviously violate the particularity requirement because they limited the items to be seized to evidence *of that specific crime*. *Supra*, Section II.B.1. No reasonable officer would believe that simply mentioning a crime in the affidavit ensures that the scope of the warrant is tailored to the probable cause on which it is based; that would allow officers to search for *anything* merely by inserting a citation to any crime into the affidavit.

The warrant to search Armendariz's devices violated clearly established law, and Summey and Ditzler cannot escape liability.

### C. Steckler and Otero Are Not Entitled to Qualified Immunity for Obtaining the Chinook Warrant.

The Chinook warrant violates the clearly established requirements that warrants be based on probable cause, that their scope be confined to particularly described evidence relating to that crime, and that there be a nexus between the suspected crime and the place to be searched. OB at 52–54 (citing *Mink*, 613 F.3d at 1011; *Voss*, 774 F.2d at 404; *Cassady*, 567 F.3d at 643; *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005); *Poolaw*, 565 F.3d at 734).

Defendants fault Chinook for relying on cases that did not involve warrants to search *Facebook accounts*. This is "a common refrain in qualified immunity cases— 'pointing to the absence of prior case law concerning the precise weapon, method, or technology employed by the police.'" *Edrei v. Maguire*, 892 F.3d 525, 542 (2d Cir. 2018) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 237 n. 20 (2d Cir. 2014)). But the constitutional requirements that the Chinook warrant violates are not specific to Facebook searches; they are principles that were clearly established long before Facebook existed. "If this Court accepted [Defendants'] argument that Plaintiffs must identify cases with virtually identical facts to defeat a qualified immunity defense, this Court would enable state actors to violate citizens'

constitutional rights with impunity simply by employing new technologies."
*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 904 (6th Cir. 2019).

City Defendants' out-of-circuit district court cases are easily distinguishable
from this case. In *United States v. Chavez*, officers learned that the perpetrators of
a fraud scheme used Facebook to discuss fraudulent deposits, commissions, and
avoiding government scrutiny. 423 F. Supp. 3d 194, 197–98 (W.D.N.C. 2019).
They had a substantial basis to believe both that Chavez was involved in the
fraudulent scheme, and that Chavez's "particular Facebook account would contain
evidence of the crime." *Id.* at 205–06. The officers thus got a warrant to obtain
several categories of information from Chavez's Facebook account. *Id.* at 199. The
warrant was insufficiently particular because it "compelled Facebook to disclose
sixteen broad categories of evidence, without limiting disclosure to the purported
members or purported dates," *id.* at 207, but it was "'a close enough question' that
executing officers reasonably could have believed the warrant was valid." *Id.* at
208 (quoting *United States v. Blake*, 868 F.3d 960, 975 (11th Cir. 2017)).

The particularity violation is far more egregious in the Chinook warrant.
First, while the categories of evidence in the *Chavez* warrant were broad, they were
all housed in the Facebook account of a person reasonably suspected of
(1) participating in an illegal scheme and (2) using his Facebook account to discuss
the details of that scheme. *Id.* at 205–206. It was a *close question* whether those

categories were sufficiently tailored to the underlying probable cause, in part because the underlying probable cause was robust. *Id.* at 206. Chinook, by contrast, was not suspected of committing a crime, and the affidavit offers no facts indicating Chinook used its Facebook account to discuss criminal activity. A28 ¶¶ 47–51. The warrant is in no way tailored to finding evidence of a crime. No reasonable officer would believe that a warrant could authorize a seizure far broader in scope than any probable cause supporting it, merely because the seizure is of *Facebook data*.

*United States v. Harris* likewise recognized that, critical to the particularity question is "whether the warrant limited the information seized to the crime being investigated." No. 20-cr-98 (SRN/TNL), 2021 WL 4847832, at *6 (D. Minn. July 16, 2021), *report and recommendation adopted,* No. 20-cr-98 (SRN/TNL), 2021 WL 3929270 (D. Minn. Sept. 2, 2021). Courts also determine "whether the offense being investigated was sufficiently identified in the warrant." *Id.* at *6. The *Harris* court held that the good-faith exception applied to a Facebook search. *Id.* at *7. But the *Harris* application—unlike the Chinook application—"articulated probable cause to believe evidence of unlawful possession of firearms by Defendant would be found" within the specific Facebook account believed to be operated by the defendant. *Harris,* 2021 WL 4847832, at *9.

In *United States v. Westley*, officers were investigating "not 'single-act' crimes" but "complex offenses of broad scope, such as RICO conspiracy, which is an ongoing offense requiring proof of a 'continuing' enterprise." No. 3:17-CR-171 (MPS), 2018 WL 3448161, at *16 (D. Conn. July 17, 2018). The complexity and breadth of the offense made it difficult to determine "whether some date restriction was required and, if so, how it should have been framed." *Id.* at *16; *see also United States v. Allen*, No. 16-10141-01-EFM, 2018 WL 1726349, at *6 (D. Kan. Apr. 10, 2018) ("[T]he very nature of the crime under investigation—conspiracy to use a weapon of mass destruction—permits a broader search of Facebook communications and activities."). The court did not answer that question, holding instead that any deficiency in the warrants at issue "concerns nuances about searching social media accounts that a reasonable officer may not have yet confronted." *Westley*, 2018 WL 3448161, at *16. That is not true here. The deficiencies in the Chinook warrant—failing to link the place to be searched to criminal activity and failing to provide reason to believe that the items to be seized would reveal evidence of a particular crime—would render any type of warrant so facially deficient that no reasonable officer would rely on it.

The judge's approval of the warrant application also does not entitle Steckler and Otero to qualified immunity. *Supra* Section V.A. Any reasonably well-trained

42

officer would have recognized the constitutional violations in the Chinook warrant; Steckler and Otero must be held liable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the district court's order be reversed in full.

Date: January 24, 2025             Respectfully submitted,

                                   /s/ *Theresa Wardon Benz*
                                   Theresa Wardon Benz
                                   Jacqueline V. Roeder
                                   Kylie L. Ngu
                                   DAVIS GRAHAM & STUBBS LLP
                                   1550 17th Street, Suite 500
                                   Denver, Colorado 80202
                                   Tel.: (303) 892-9400
                                   theresa.benz@davisgraham.com


                                   /s/ *Laura Moraff*
                                   Timothy R. Macdonald
                                   Sara R. Neel
                                   Anna I. Kurtz
                                   Mark Silverstein
                                   Laura Moraff
                                   AMERICAN CIVIL LIBERTIES UNION
                                   FOUNDATION OF COLORADO
                                   303 East 17th Avenue, Suite 350
                                   Denver, Colorado 80203
                                   Tel.: (720) 402-3151
                                   lmoraff@aclu-co.org

                                   *Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Times New Roman in 14-point type with the exception of the caption which is in Time New Roman 13-point type.

I further certify that this brief complies with the length of Fed. R. App. P. 32(a)(7)(B)(ii) and the Court's order on Plaintiffs-Appellants' Motion to Exceed Word Count of the Reply Brief because it contains 9,790 words, excluding the parts of the brief exempted under Rule 32(f), according to the count of Microsoft Word.

Dated: January 24, 2025                    */s/ Theresa Wardon Benz*

**CERTIFICATE OF SERVICE**

I certify that on January 24, 2025, the foregoing opening brief was filed

electronically through CM/ECF. Notice of this filing will be sent by email to all

parties by operation of the Court's electronic filing system, including:


Anne Hall Turner
OFFICE OF THE CITY ATTORNEY OF THE CITY OF COLORADO SPRINGS
30 South Nevada Avenue, Suite 501
Colorado Springs, Colorado 80903
anne.turner@coloradosprings.gov

*Counsel for Defendants City of Colorado Springs, B.K. Steckler, Jason S. Otero
and Roy S. Ditzler*

Marissa R. Miller
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Marissa.Miller@usdoj.gov

*Attorney for Defendants Daniel Summey, Federal
Bureau of* Investigation*, and the United States*


Dated: January 24, 2025                    /s/ *Brigid Bungum*